| | |
|---|---|
| UNITED STATES DISTRICT COURT | |
| NORTHERN DISTRICT OF CALIFORNIA | |

| | |
|---|---|
| LOGAN HESSEFORT, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SUPER MICRO COMPUTER, INC., et al.,<br><br>Defendants. | Case No. 18-cv-00838-JST<br><br>**ORDER GRANTING MOTION TO CONSOLIDATE, APPOINTING LEAD PLAINTIFF, AND APPROVING SELECTION OF COUNSEL**<br><br>Re: ECF Nos. 12, 29 |
| UNITED UNION OF ROOFERS, WATERPROOFERS & ALLIED WORKERS LOCAL UNION NO. 8 WBPA FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SUPER MICRO COMPUTER, INC., et al.,<br><br>Defendants. | Case No. 3:18-cv-00850-JST |

In these securities class actions, the Court now considers motions for consolidation and for appointment as lead plaintiff and approval of selected counsel for a securities class action. The New York Hotel Trades Council & Hotel Association of New York City, Inc. Pension Fund ("NYHTC") filed one motion. ECF No. 12. The Oklahoma Police Pension and Retirement System ("Oklahoma Pension") filed the second. ECF No. 29. The Court will grant NYHTC's motion and appoint the pension fund as lead plaintiff, and their selected counsel. The Court will also consolidate the two related cases: *Hessefort v. Super Micro Computer, Inc.* No 3:18-cv-838

and *United Union of Roofers, Waterproofers & Allied Workers Local Union No. 8 WBPA Fund v. Super Micro Computer, Inc.* No. 3:18-cv-850.[1]

## I. BACKGROUND

This is a federal securities class action on behalf of persons who purchased or otherwise acquired shares of Defendant Super Micro Computer Inc.'s securities between August 5, 2016 and January 30, 2018. ECF No. 12 at 2.[2] Super Micro designs, develops, manufactures, and sells servers, motherboards and other computer parts and accessories. *Id.* at 3. The complaints allege that Super Micro made false and misleading statements and failed to disclose adverse information regarding the company. *Id.*

Originally, four parties filed motions seeking appointment as lead plaintiff and approval of their selection of counsel. ECF Nos. 12, 17, 25, 29. Two of the parties subsequently withdrew or chose not to oppose, leaving NYHTC and the Oklahoma Pension as the remaining competing plaintiffs. ECF Nos. 33, 34.

## II. LEGAL STANDARD

The Private Securities Litigation Reform Act of 1995 ("PSLRA") provides that "[n]ot later than 20 days after the date on which the complaint is filed," the plaintiff shall publish a notice alerting members of the purported class of the pendency of the action, the claims asserted, and the purported class period. 15 U.S.C. § 78u-4(3)(a)(i). The notice should also inform potential class members that "not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." *Id.* § 78u-4(3)(a)(i)(II).

Under the PSLRA, "[t]he 'most capable' plaintiff – and hence the lead plaintiff – is the one who has the greatest financial stake in the outcome of the case, so long as [the proposed lead plaintiff] meets the requirements of Rule 23" of the Federal Rules of Civil Procedure. *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002). "While the PSLRA does not specify how to

---

[1] The court related the two cases on May 8, 2018.

[2] There is currently a difference between the class periods in the two related cases, which will be resolved upon the filing of a consolidated complaint. ECF No. 12 at 2 n.1.

2

calculate the largest financial interest, approximate losses in the subject securities is the preferred measure." *Bruce v. Suntech Power Holdings Co.*, No. CV 12-04061 RS, 2012 WL 5927985, at *2 (N.D. Cal. Nov. 13, 2012) (internal citation omitted).

After the Court determines who the presumptive lead plaintiff is, other plaintiffs in the class are provided with "an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Cavanaugh*, 306 F.3d at 730. "If, as a result of this process, the district court determines that the presumptive lead plaintiff does not meet the typicality or adequacy requirement, it then must proceed to determine whether the plaintiff with the next lower stake in the litigation has made a prima facie showing of typicality and adequacy." *Id.* at 731.

"The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice," and "should not reject a lead plaintiff's proposed counsel merely because it would have chosen differently." *Cohen v. U.S. Dist. Court for N. Dist. of California*, 586 F.3d 703, 711-12 (9th Cir. 2009).

### III. DISCUSSION

#### A. Consolidation

Under the PSLRA, the Court must decide whether to consolidate related actions prior to selecting a plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(ii).

NYHTC argues the Court should consolidate the cases under Federal Rule of Civil Procedure Rule 42(a) because both involve "virtually identical factual and legal issues." ECF No. 12 at 5. The Oklahoma Pension argues the case should be consolidated for similar reasons. ECF No. 29-1 at 18. No party opposes the motions to consolidate. ECF No. 37 at 7 n.1.

Rule 42(a) provides that a court may consolidate cases which "involve a common question of law or fact." Fed. R. Civ. P. 42(a). "In determining whether or not to consolidate cases, the Court should 'weigh the interest of judicial convenience against the potential for delay, confusion and prejudice.'" *Zhu v. UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049, 1052 (N.D. Cal. 2010) (quoting *Southwest Marine, Inc. v. Triple A Machine Shop, Inc.*, 720 F. Supp. 805, 806–807 (N.D.

Cal. 1989)). "Courts have recognized that class action shareholder suits are particularly well suited to consolidation pursuant to Rule 42(a) because unification expedites pretrial proceedings, reduces case duplication, avoids the need to contact parties and witnesses for multiple proceedings, and minimizes the expenditure of time and money for all parties involved." *Miami Police Relief & Pension Fund v. Fusion-io, Inc.*, No. 13-CV-05368-LHK, 2014 WL 2604991, at *3 (N.D. Cal. June 10, 2014) (citing *In re Equity Funding Corp. of Am. Sec. Litig.*, 416 F. Supp. 161, 176 (C.D. Cal. 1976)).

These related cases address nearly identical factual issues and legal claims. Given this factual and legal overlap, judicial convenience and a just resolution of the parties' claims would be best served through consolidation. The Court grants the motions for consolidation.

### B. Largest Financial Interest

NYHTC argues it is the most adequate plaintiff because it sustained $180,622 in losses. ECF No. 12 at 7. The Oklahoma Pension sustained $172,826 in losses. ECF No. 29-1 at 8. The Oklahoma Pension argues that the difference in losses is *de minimis* and therefore should not control the selection of lead plaintiff. ECF No. 36 at 3, 7-8. Neither has the Court found persuasive authority, nor have the parties provided any to the Court, suggesting that the Court should not determine that a plaintiff has largest financial share when its lead is small. To the contrary, courts in this circuit have concluded that any financial difference is meaningful in determining a lead plaintiff. *See, e.g.*, *Hall v. Medicis Pharm. Corp.*, No. CV08-1821PHX-GMS, 2009 WL 648626, at *6 (D. Ariz. Mar. 11, 2009) ("[T]he Court cannot rely on the fact that the difference between Steamfitters and Rand is only a few hundred dollars. Rand has a greater financial stake in the controversy, however minute that greater stake may be in relation to the overall damage claim."); *Ferrari v. Gisch*, 225 F.R.D. 599, 605 (C.D. Cal. 2004) ("Although the Massachusetts Group concludes that the 'de minimus' difference of $26,000 should not be conclusive on the financial interest determination, the Ninth Circuit has given no indication that courts are free to ignore the statutory presumption given to the plaintiff with the "largest financial interest in the relief sought by the class.") (citing *Cavanaugh*, 306 F.3d at 732). The Court concludes that NYHTC has the greatest financial stake in the outcome of the case, and is the

1  presumptive lead plaintiff.

**C.  Rule 23**

Once a movant has demonstrated that it has the largest financial interest, it need only make a prima facie showing of its typicality and adequacy. *See Cavanaugh*, 306 F.3d at 730-31. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, No. 5:11-CV-04003-LHK, 2012 WL 78780, at *5 (N.D. Cal. Jan. 9, 2012) (citing *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992)). "The test for adequacy is whether the class representative and his counsel 'have any conflicts of interest with other class members' and whether the class representative and his counsel will 'prosecute the action vigorously on behalf of the class.'" *Id.* (quoting *Staton v. Boeing Co.,* 327 F.3d 938, 957 (9th Cir. 2003)).

NYHTC argues that it is a typical plaintiff because it purchased Super Micro securities and suffered harm when defendants' alleged misconduct was revealed, and it "is not aware of any conflicts between its claims and those asserted on behalf of the putative class and is not subject to any unique defenses." ECF No. 12 at 8. As for adequacy, NYHTC argues that it is a sophisticated institutional investor with a substantial interest in the litigation. *Id.* at 7-8.

According to the Oklahoma Pension, a post-disclosure stock purchase by NYHTC raises "potential concerns" regarding NYHTC's "ability to adequately represent the proposed class." ECF No. 36 at 4. Super Micro announced on August 29, 2017 that it would not timely file its Form 10-K, and NYHTC purchased 1,581 shares the next day, incurring $11,000 in losses. *Id.* at 3. According to the Oklahoma Pension, this post-disclosure purchase subjects NYHTC to unique defenses. *Id.*

The weight of authority is substantially against Oklahoma Pension's argument and "favor[s] the position that the purchase of stock after a partial disclosure is not a per-se bar to satisfying the typicality requirement." *In re Connetics Corp. Sec. Litig.*, 257 F.R.D. 572, 577 (N.D. Cal. 2009) (concluding as much at the more rigorous class certification stage); *see also*

5

*Hufnagle v. Rino Int'l Corp.*, No. CV 10-8695-VBFVBKX, 2011 WL 710704, at *8 (C.D. Cal. Feb. 14, 2011), *adopted*, No. CV 10-1754-VBFVBKX, 2011 WL 710676 (C.D. Cal. Feb. 16, 2011) (concluding purchases after disclosures do not destroy typicality). Moreover, "other class members also presumably purchased after [the] first corrective disclosure and during the disclosure period." *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 602 (C.D. Cal. 2009). Oklahoma Pension quotes selectively from *Faris v. Longtop Fin.Techs. Ltd.*, No. 11 Civ. 3658-SAS, 2011 WL 4597553, at *8 (S.D.N.Y. Oct. 4, 2011) to suggest the case held that that court saw "'no reason to subject the class to this potential defense where there is another movant' that does not suffer from the same potential unique defenses arising from post-disclosure trading." ECF No. 38 at 5-6. But in fact, the *Faris* court appointed a lead plaintiff that did purchase some of its shares after a corrective disclosure, as the full quote from the case makes clear. *Faris*, 2011 WL 4597553, at *8 ("But this Court sees no reason to subject the class to this potential defense where there is another movant, Danske–Local One, that purchased the vast majority of its Longtop shares before the first corrective disclosure was made on April 26, 2011.").

Moreover, even as compared to the few cases which have concluded that post-disclosure purchases defeated typicality, NYHTC purchased a much smaller percentage – less than 5% of its total shares – after the disclosure than did other plaintiffs who were disqualified. *See In re Valence Tech. Sec. Litig.*, No. C 95-20459 JW, 1996 WL 119468, at *5 (N.D. Cal. Mar. 14, 1996) (finding plaintiff who tripled their shares post-disclosure was atypical); *Faris*, 2011 WL 4597553, at *8 (purchasing 87% of shares post-disclosure can render plaintiff atypical).[3] The Court concludes that, at least at this preliminary stage, NYHTC has demonstrated adequacy and typicality.

### D. Selection of Counsel

"Once a lead plaintiff is chosen, that plaintiff may select its counsel, subject to approval of the court." *Suntech Power Holdings Co.*, 2012 WL 5927985, at *3 (citing 15 U.S.C. § 78u–

---

[3] Similarly, the case on which the Oklahoma Pension heavily relies, *Erickson v. Snap, Inc.*, 2:17-cv-3679-SVW-AGR (C.D. Cal. Sept. 18, 2017), ECF No. 54 at 4, involved a 60% purchase after a disclosure.

6

4(a)(3) (B)(iv)). So long as the lead plaintiff has made "a reasonable choice of counsel, the district court should generally defer to that choice." *Cohen*, 586 F.3d at 712. NYHTC selected Robbins Geller Rudman & Dowd, LLP to serve as led counsel, and this designation is approved. ECF No. 12 at 8. Robbins Geller has experience as lead counsel in securities class action lawsuits, including lawsuits in this district. *Id.* The Court approves lead plaintiff's choice of counsel.

## CONCLUSION

The Court grants the motions to consolidate the cases. The Court also grants NYHTC's motion for appointment as lead counsel and approval of selection of counsel. The Court denies the Oklahoma Pension's motion for appointment as lead plaintiff and approval of selection of counsel.

**IT IS SO ORDERED.**

Dated: May 25, 2018

JON S. TIGAR
United States District Judge