1   ROBBINS GELLER RUDMAN
        & DOWD LLP
2   SHAWN A. WILLIAMS (213113)
    DANIEL J. PFEFFERBAUM (248631)
3   ARMEN ZOHRABIAN (230492)
    Post Montgomery Center
4   One Montgomery Street, Suite 1800
    San Francisco, CA  94104
5   Telephone:  415/288-4545
    415/288-4534 (fax)
6   shawnw@rgrdlaw.com
    dpfefferbaum@rgrdlaw.com
7   azohrabian@rgrdlaw.com

8   Lead Counsel for Plaintiffs

9

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12               SAN FRANCISCO DIVISION

13  LOGAN HESSEFORT, Individually and on    )  Lead Case No. 3:18-cv-00838-JST
    Behalf of All Others Similarly Situated,  )
14                                           )  CLASS ACTION
                         Plaintiff,           )
15                                           )  CONSOLIDATED CLASS ACTION
           vs.                                )  COMPLAINT FOR VIOLATION OF THE
16                                           )  FEDERAL SECURITIES LAWS
    SUPER MICRO COMPUTER, INC.,              )
17  CHARLES LIANG, HOWARD HIDESHIMA )
    and PERRY G. HAYES,                       )
18                                           )
                         Defendants.          )
19  _____ )  DEMAND FOR JURY TRIAL

20

21

22

23

24

25

26

27

28

1475324_1

# TABLE OF CONTENTS

**Page**

SUMMARY OF ACTION.................................................................................................1

INTRODUCTION ............................................................................................................1

JURISDICTION AND VENUE ........................................................................................7

THE PARTIES..................................................................................................................7

BACKGROUND ..............................................................................................................9

    Before the Class Period Super Micro Twice Misses SEC Filing Deadlines and
    Implements New Accounting System to Improve Internal Controls..................................9

FALSE AND MISLEADING STATEMENTS ISSUED DURING THE CLASS
PERIOD ........................................................................................................................10

    Super Micro Announces 4Q16 and FY16 Financial Results and Files Form 10-K...........10

    Super Micro Announces 1Q17 Financial Results and Files Form 10-Q ...........................15

    Super Micro Announces 2Q17 Financial Results and Files Form 10-Q ...........................17

    Super Micro Announces 3Q17 Financial Results and Files Form 10-Q ...........................17

    Super Micro Announces Preliminary 4Q17 Financial Results .........................................18

    Super Micro Requests 15-Day Extension to File Form 10-K...........................................21

    Super Micro Fails to Meet Extended Deadline to File Form 10-K and Announces
    Audit Committee Review ...............................................................................................22

    Super Micro Reveals Premature Revenue Recognition; Fails to File 1Q18 Form
    10-Q .............................................................................................................................23

    Super Micro Announces Departure of Senior Executives and Cannot State if Its
    Historical Financial Statements Are Accurate; Audit Committee Investigation
    Results in Further Inquiry and Delay............................................................................27

POST-CLASS PERIOD EVENTS AND DISCLOSURES................................................29

    Super Micro Subject to Delisting by NASDAQ ..............................................................30

    Super Micro Fails to File 3Q18 Form 10-Q....................................................................32

    Super Micro Fails to Meet Filing Deadline; NASDAQ Suspends Trading.......................35

ADDITIONAL SCIENTER ALLEGATIONS ..................................................................41

LOSS CAUSATION AND ECONOMIC LOSS ...............................................................44

NO SAFE HARBOR ......................................................................................................45

APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET ..........46

CLASS ACTION ALLEGATIONS ..........................................................................................47

     COUNT I ..........................................................................................................48

     COUNT II .........................................................................................................49

PRAYER FOR RELIEF ..............................................................................................................50

JURY DEMAND .........................................................................................................................50

1.     Lead Plaintiff New York Hotel Trades Council & Hotel Association of New York City, Inc. Pension Fund ("Plaintiff" or "New York Hotel Pension Fund"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Super Micro Computer, Inc.'s ("Super Micro" or the "Company") press releases, United States Securities and Exchange Commission ("SEC") filings, analyst reports, media reports and other publicly disclosed information about the Defendants.[1] Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## SUMMARY OF ACTION

2.     This is a securities fraud class action alleging violations of the anti-fraud provisions of the federal securities laws on behalf of all purchasers of the common stock of Super Micro between August 5, 2016, and January 30, 2018, inclusive (the "Class Period").  The claims asserted herein are brought against Super Micro and certain of its current and former officers and directors, including Charles Liang ("Liang"), the Company's President, Chief Executive Officer ("CEO") and Chairman of the Board (Principal Executive Officer), Howard Hideshima ("Hideshima"), former Senior Vice President and Chief Financial Officer ("CFO") until January 30, 2018, and Perry G. Hayes ("Hayes"), Senior Vice President-Investor Relations.

3.     During the Class Period, Defendants violated §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5, by making false and misleading statements concerning the Company's operations, financial performance and prospects.

## INTRODUCTION

4.     Super Micro was incorporated in California in September 1993, and reincorporated in Delaware in March 2007.  The Company is headquartered in San Jose, California.  During the Class

---

[1]     As defined below.

CONSOLIDATED COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS -
3:18-cv-00838-JST                                                                                                  - 1 -

Period, the Company traded on the NASDAQ Global Select Market ("NASDAQ") under the ticker symbol "SMCI." The Company bills itself as a global leader in high-performance, high-efficiency server technology and innovation, and as a premier provider of end-to-end green computing solutions and integration/support services for Data Center, Cloud Computing, Enterprise IT, Big Data, High Performance Computing ("HPC") and internet of things ("IoT") Embedded Systems worldwide.

5.      In 2015, prior to the Class Period, the Company twice failed to timely file its required financial disclosures with the SEC. First, at the end of August 2015, the Company required a 15-day extension to file its FY15 Form 10-K after discovering irregularities regarding certain marketing expenses; second, in November 2015, the Company disclosed issues with extended warranties which should have been accounted for as deferred revenue, resulting in a delayed 1Q16[2] Form 10-Q and a prior period adjustment. Under heightened scrutiny, the Company assured investors that it had taken the necessary steps to remedy these issues, including through substantial investment in the implementation of an SAP accounting system.

6.      On July 18, 2016, approximately two weeks prior to the Class Period, Super Micro pre-announced disappointing preliminary results for the completed 4Q16, including revenue of $520-$524 million, down from previous guidance of $580-$640 million, and earnings per share ("EPS") of $0.15-$0.17, down from previous guidance of $0.46-$0.58. This pre-announcement put significant pressure on the Company to deliver at the higher end of their pre-announced ranges going forward. As one analyst put it going into the August 4, 2016 earnings conference call: "Thursday's call has the potential to be a pivotal event for the company."[3]

7.      On August 4, 2016, after the close of trading, on the eve of the Class Period, the Company reported 4Q16 and FY16 financial results, including revenues of $524 million and EPS of $0.20, both of which met or exceeded the pre-announced figures, and gave 1Q17 revenue guidance

---

[2]   Super Mirco's fiscal year ends on June 30. 1Q refers to the period ending September 30; 2Q refers to the period ending December 31; 3Q refers to the period ending March 31; and 4Q refers to the period ending June 30.

[3]   Roth Capital Partners August 2, 2016 Company Note.

CONSOLIDATED COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST

of $470-$550 million and EPS guidance of $0.15-$0.30.  Liang described Super Micro as "one of the fastest growing companies in the IT industry" and well-positioned going forward.  The Company's stock price rose to above $21 on these false and misleading statements and omissions.

8.     On August 26, 2016, the Company filed its FY16 Form 10-K which materially misrepresented the Company's commitment to effective disclosure controls and procedures and noted that the Company had remediated prior-year material weaknesses in internal controls.  The Form 10-K disclosed that management had evaluated the Company's internal controls over financial reporting, had determined them to be effective as of June 30, 2016, and claimed that the consolidated financial statements were presented consistent with generally accepted accounting principles ("GAAP").  Moreover, the Company falsely stated it only "recognize[d] revenue from sales of products when persuasive evidence of an arrangement exists, shipment has occurred and title has transferred, the sales price is fixed or determinable, collection of the resulting receivable is reasonably assured, and all significant obligations have been met."  The FY16 Form 10-K also disclosed that the Company had "adopted a 'Code of Business Conduct and Ethics'" applicable to all employees and further referenced senior officers' responsibility for maintaining sufficient internal controls over financial reporting.  The FY16 Form 10-K also attached Sarbanes-Oxley of 2002 ("SOX") certifications, signed by Liang and Hideshima, attesting that the Company's financial statements did not contain false or misleading statements, that each had designed the Company's disclosure controls and internal controls over financial reporting and that such controls were effective.

9.     Defendants continued their false and misleading representations concerning the Company's financial results during each quarter in FY17 through the issuance of earnings releases and on investor conference calls.[4]  In addition, Defendants made similar misrepresentations as those contained in the FY16 Form 10-K with its 1Q17 Form 10-Q filed in November 2016, its 2Q17 Form 10-Q filed in February 2017, and its 3Q17 Form 10-Q filed in May 2017.  For example, in its Form

---

[4]    The 1Q17 Form 8-K earnings release was issued on October 27, 2016, the 2Q17 Form 8-K earnings release was issued on January 26, 2017, the 3Q17 Form 8-K earnings release was issued on April 27, 2017, and the 4Q17 Form 8-K earnings release was issued on August 3, 2017.

1   10-Q filings between 1Q17 through 3Q17, Super Micro expressly stated that no changes had

2   occurred concerning its critical accounting policies, including its revenue recognition policy, since

3   its previous disclosure in its FY16 Form 10-K.  Moreover, the Forms 10-Q contained similar

4   misrepresentations regarding the Company's compliance with GAAP and the effectiveness of its

5   disclosure controls and internal controls.  Each filing also included SOX certifications signed by

6   Liang and Hideshima.  These false and misleading statements caused further inflation in Super

7   Micro's stock price.

8          10.     On July 20, 2017, the Company pre-announced preliminary 4Q17 results and touted

9   continued growth.  Two weeks later, the Company issued a press release and held an earnings

10   conference call proclaiming "record revenue and strong momentum" in FY17 and that "fiscal 2018

11   will be one of the strongest years in Super Micro's history."  These false statements and omissions

12   drove the stock price above $27 per share.

13          11.     Defendants' statements concerning the Company's financial performance, operations

14   and prospects – in particular its reported results and claims of effective internal controls over

15   revenue recognition, as well as compliance with GAAP, were materially false and misleading

16   because Defendants knew, or were deliberately reckless in not knowing, that: (a) the Company

17   suffered from a failure of effective internal controls over revenue recognition; (b) the accounting for

18   thousands of transactions from FY15 through FY17 required reassessment for determining

19   appropriate revenue recognition treatment; (c) the Company improperly and prematurely recognized

20   revenue on certain quarter-end transactions in violation of GAAP when offering free shipping; (d)

21   the Company improperly recorded as revenue at least one transaction during 2Q17 (*i.e.*, the quarter

22   ending December 31, 2016), instead of 3Q17 (*i.e.*, the quarter ending March 31, 2017); (e) the

23   Company failed to maintain sufficient documentation to support the appropriate accounting

24   treatment of certain transactions; and (f) as a result of the foregoing, the Company was exposed to

25   the risk of restatement, inability to attest to the accuracy of its historical financial statements,

26   inability to obtain auditor sign-off, de-listing from the NASDAQ, investigation by the SEC and other

27   regulatory action or civil liability.

28

12.     The truth began to emerge in a series of partial disclosures – some obscured by further false and misleading statements – on August 29, 2017, when the Company announced it would be unable to timely file its FY17 Form 10-K.  Defendants, however, revealed only that they needed additional time "to compile and analyze certain information and documentation" prior to auditor review but would file within 15 days.  On September 15, 2017, after failing to meet the 15-day extension, the Company stated that it was "unable at this time to provide a date as to when the review and the audits will be completed," but that it "intends to file its 10-K promptly upon completion of the audit committee's review and the completion of the audit."  The stock price declined 15% during the ensuing two trading days.

13.     On October 26, 2017, Super Micro disclosed that it was still unable to file its FY17 Form 10-K and revealed that the internal investigation was spurned by a review of a transaction improperly recorded as revenue in 2Q17 which was subsequently reversed and recorded as revenue in 3Q17.  The ongoing investigation was to "determine whether there were any similar transactions and if so, whether such transactions were properly accounted for."  The Company admitted that "[d]ue to the volume of data to be reviewed to complete the investigation" it could not "predict the possible outcome of the investigation."  During an earnings conference call that day, Defendants refused to answer questions about the investigation or when it might file its Form 10-K.  The stock price continued its descent as these partial disclosures began to shed light on the nature of the fraudulent accounting.

14.     During the ongoing investigation and review, Defendants falsely claimed that the investigation was nearing completion and the Company would become current on its SEC filings.  On December 6, 2017, Wells Fargo reported on a conference at which Hayes stated that he "believes that Super Micro is in the final stages of audit review before filing its 10-K (and subsequent updated 10-Q)."  This and similar false statements and omissions caused Super Micro's stock price to remain inflated as Defendants revealed some information while concealing the full scope, magnitude and impact of the fraud.

15.     Multiple senior executives departed shortly thereafter.  On January 30, 2018, the last day of the Class Period, Wally Liaw ("Liaw"), Sr. Vice President of International Sales (and owner

1   of 4% of the Company), Phidias Chou, Sr. Vice President, Worldwide Sales and Hideshima resigned

2   effective immediately.  Liaw also resigned from the Company's Board of Directors.  A new CFO

3   was appointed.  Unsurprisingly, an analyst described the resignations as "disturbing."  The Company

4   also announced that the Audit Committee completed its investigation but that further investigation

5   still remained to be done and the Company could no longer verify the accuracy of prior financial

6   statements.  The stock price fell again.

7        16.    The disclosures did not stop, however, as subsequent filings, press releases and

8   earnings conference calls further revealed the falsity of Defendants' prior statements as well as their

9   knowledge or deliberate disregard for the truth.  Despite repeated statements that the Company

10  intended to become current on its SEC filings, on August 21, 2018 – a year after its FY17 Form 10-

11  K was required to be filed – the Company admitted that substantial work still remained as the

12  Company needed to review thousands of transactions from FY15 through FY17 with no set

13  completion date *and it would not meet the filing deadline* necessary to remain listed on the

14  NASDAQ.  The Company detailed at least one type of accounting violation *i.e.*, it prematurely

15  recognized revenue on certain quarter-end transactions where free shipping was offered.  Further,

16  Company executives admitted that they still could not determine the impact on the Company's

17  historical financial statements, whether a restatement was required, or when the Company might file

18  with the SEC.  On August 22, 2018, Super Micro was suspended from trading on the NASDAQ.

19       17.    As a result of Defendants' misconduct, investors suffered tens of millions of dollars

20  in economic loss.  And yet, a full accounting of their fraud remains concealed from the investing

21  public as the Company's FY17 Form 10-K (for the period ending June 30, 2017), and all quarterly

22  and annual filings thereafter, remain delinquent as of September 24, 2018.  Super Micro remains

23  unable to determine the impact of their accounting violations, cannot rule out a restatement and has

24  refused to provide a date certain by which it will file its delinquent reports.[5]

25

26

27  _____
    [5]   To date the Company's delinquent reports include 1Q18, 2Q18, 3Q18 Forms 10-Q and FY17 and
28  FY18 Forms 10-K.

CONSOLIDATED COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS -
3:18-cv-00838-JST                                                              - 6 -

1

**JURISDICTION AND VENUE**

2      18.     The claims asserted arise under §§10(b) and 20(a) of the Exchange Act, 15 U.S.C.

3    §78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R. §240.10b-5.  Jurisdiction is conferred by §27 of the

4    Exchange Act, 15 U.S.C. §77aa.   Venue is proper pursuant to §27 of the Exchange Act.   The

5    Company's headquarters are in San Jose, California, false statements were made in this District, and

6    acts giving rise to the violations complained of occurred in this District.

7

**THE PARTIES**

8      19.     Lead Plaintiff New York Hotel Pension Fund provides health, pension and other

9    benefits to over 90,000 Union members, dependents and retirees of the New York City hotel

10   industry.  The New York Hotel Pension Fund purchased Super Micro common stock during the

11   Class Period and was damaged thereby.

12     20.     Defendant Super Micro describes itself as a global leader in high-performance, high-

13   efficiency server technology and innovation, and as a premier provider of end-to-end green

14   computing solutions and integration/support services for Data Center, Cloud Computing, Enterprise

15   IT, Big Data, HPC and IoT Embedded Systems worldwide.  The Company is headquartered in San

16   Jose, California, and traded on the NASDAQ, an efficient market, under the ticker symbol SMCI

17   until August 22, 2018.   Numerous analysts covered Super Micro including those from Stifel

18   Nicolaus, D.A. Davidson & Co, Susquehanna Financial Group LLP, Pacific Crest, Roth Capital

19   Partners, LLC and Maxim Group LLC.

20     21.     Defendant Liang was, at all relevant times, the Company's President, CEO and

21   Chairman of the Board (Principal Executive Officer).  He founded Super Micro and has served as

22   President, CEO and Chairman of the Board since its inception in September 1993.  Liang has been

23   developing server system architectures and technologies for the past two decades.  Liang holds an

24   M.S. in Electrical Engineering from the University of Texas at Arlington and a B.S. in Electrical

25   Engineering from National Taiwan University of Science & Technology in Taiwan. Liang is known

26   to obsess over every detail of Super Micro's business from approving custom orders to dictating

27

28

environmentally themed green neckties that executives wear to customer meetings.[6]  "'He is the person who approves and looks at everything the company is doing – every new product, marketing effort, sales effort, anything you want to do or promote,'" said a former employee who was manager of American sales.[7]  Liang, as a director, officer and significant stockholder of Super Micro has considerable influence over the management of the Company's business.  Super Micro's FY16 Form 10-K states that Liang is critical to the overall management of the Company and notes that he is personally involved in key relationships with suppliers, customers and strategic partners.  Super Micro's FY16 Form 10-K also states that Liang is the chief operating decision maker.  Liang, together with his wife Chiu-Chu (Sara) Liu Liang (who co-founded Super Micro and has served as Senior Vice President of Operations, Chief Administration Officer, Treasurer and member of the Company's Board of Directors since 1993), collectively own 18% of the outstanding Super Micro stock as of December 31, 2016.

22.     Defendant Hideshima was the Senior Vice President and CFO of the Company until his resignation on January 30, 2018.  Hideshima had served as CFO since May 2006.  Hideshima holds an M.B.A. from San Francisco State University and a B.S. in Business Administration from the University of California at Berkeley.

23.     Defendant Hayes was at all relevant times Senior Vice President-Investor Relations at Super Micro.

24.     The Defendants named in ¶¶21-23 are referred to herein as the "Individual Defendants."

25.     The Individual Defendants controlled the contents of the Company's quarterly reports, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  They were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their

---

[6]     https://www.nytimes.com/2008/11/24/technology/business-computing/24micro.html.

[7]     https://www.nytimes.com/2008/11/24/technology/business-computing/24micro.html.

positions within the Company, and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false and misleading statements and omissions pleaded herein.

## BACKGROUND

**Before the Class Period Super Micro Twice Misses SEC Filing Deadlines and Implements New Accounting System to Improve Internal Controls**

26.     In 2015, prior to the Class Period, the Company twice failed to timely file its required financial reports with the SEC.  First, at the end of August 2015, the Company required a 15-day extension to file its FY15 Form 10-K because it discovered irregularities regarding certain marketing expenses; second, in November 2015, the Company disclosed issues with extended warranties which should have been accounted for as deferred revenue, resulting in a delayed 1Q16 Form 10-Q and a prior period adjustment that was corrected in the same period.  This prior period adjustment resulted in the Company amending its previously filed FY15 Form 10-K.  Specifically, on November 16, 2015, the Company filed a Form 10-K/A to restate that its disclosure controls and procedures and its internal controls over financial reporting as of June 30, 2015, were now ineffective because of a material weakness related to its revenue recognition of contracts with extended product warranties. Notably, the Company assured investors that it had taken the necessary steps to remedy these issues through a remediation plan for the material weakness and substantial investment in the implementation of an SAP accounting system.

27.     On January 13, 2016, Hideshima spoke at the Needham Growth Conference about Super Micro's adoption of the new SAP based accounting that went live in July 2015, and noted that the Company had invested in infrastructure and accounting processes to avoid delayed SEC filings:

> [Unidentified Audience Member]: I don't want to embarrass you as a CFO, but we've had a couple of surprises on the accounting side and I would like to get your perspective or what you learned about it, what you are doing actively so that we are not overexposed to surprises.

> [Hideshima]: We have had a couple of missteps in the last couple of quarters. Timing wise was unfortunate, because they seemed to happen back to back with each other.  Somewhat unrelated events, but both delayed our K filing and our Q filing.

CONSOLIDATED COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS -
3:18-cv-00838-JST                                                                                      - 9 -

***We have added a new accounting system, SAP***.  We went live in the US in July.  We just went live in the Netherlands and Taiwan; they have gone well.  ***But we have invested in our infrastructure to improve our accounting and our books and what have you and our ability to manage the operations in the Company***.  This is an investment we have made for a number of different years.

***On the accounting side of it we have increased our resources in that area too and increased our processes.  So, again, we are hopeful that it doesn't happen again***.

[Unidentified Audience Member]: But the other side would be people-related or the entities regarding that.  I'm just trying to get more color?

[Hideshima]: Both.  They go in conjunction with each other because the system will provide data to us.  ***We will analyze the data, build processes around the new data that we have for it.  Again, it's a combination of both, more efficient system backing up, generating reports; obviously more people reviewing and looking at the reports***.

28.    On July 18, 2016, Super Micro pre-announced disappointing preliminary results for the completed 4Q16, including revenue of $520-$524 million, down from previous guidance of $580-$640 million, and EPS of $0.15-$0.17, down from previous guidance of $0.46-$0.58.  This poor pre-announcement put significant pressure on the Company to begin delivering at the higher end of their pre-announced ranges.

29.    On August 2, 2016, Roth Capital Partners issued a report titled "SMCI: Thursday's Earnings Call Could be Pivotal," noting that the Company's upcoming earnings conference call and the Company's financial results would define the Company's growth story to Wall Street:

***[W]e believe this Thursday's call has the potential to be a pivotal event for the company***.  Either it will be able to convince us and the rest of the Street that the June debacle was an anomaly and that its go-to-market strategy differentiates it from the competition, or we will be faced with the prospects of a slower growth company achieving substantially lower gross margins than we previously perceived.

**FALSE AND MISLEADING STATEMENTS ISSUED DURING THE CLASS PERIOD**

**Super Micro Announces 4Q16 and FY16 Financial Results and Files Form 10-K**

30.    <u>False and Misleading Statements</u>: On August 4, 2016, after the close of trading, Super Micro filed a Current Report on Form 8-K, signed by Liang, which included a press release titled "Super Micro Computer, Inc. Announces 4th Quarter 2016 Financial Results," and slides for the Company's earnings presentation.  The financial metrics and Defendants' statements touting the Company's performance, and the similar statements made on the earnings conference call later the

1     same day, were materially false and misleading because Super Micro and the Individual Defendants

2     knew but failed to disclose that the Company lacked effective internal controls over revenue

3     recognition, prematurely recognized revenue in violation of GAAP and subsequently declared the

4     reliability of its financial statements to be uncertain:

5          •   *Quarterly net sales of $524.3 million* . . . .

6          •   *GAAP net income of $7.0 million* . . . .

7          •   *GAAP gross margin was 14.1%* . . . .

8                                 *       *       *

9          **GAAP net income for the fourth quarter of fiscal year 2016 was $7.0**

10     **million or $0.13 per diluted share**, a decrease of 73.9% from net income of $26.7 million, or $0.51 per diluted share in the same period a year ago.

11                                   *       *       *

12     Fiscal Year 2016 Summary

13          **Net sales for the fiscal year ended June 30, 2016 were $2,215.6 million, up**

14     **11.3% from $1,991.2 million for the fiscal year ended June 30, 2015. GAAP net income for fiscal year 2016 decreased to $72.0 million, or $1.39 per diluted share, a decrease of 29.3% from $101.9 million, or $2.03 per diluted share, for fiscal year**

15     **2015**. . . .

16     Business Outlook & Management Commentary

17                                   *       *       *

18     "[W]e will take actions to leverage our capacity and improve operational efficiency

19     to become more flexible and competitive in winning new business. By offering the best value for innovation and emphasizing strategic customer relationships, **we are**

20     **confident that we can achieve stronger growth and improve financial performance**." [said Liang].

21         31.   <u>False and Misleading Statements</u>: The same day, Super Micro held an earnings

22     conference call where the Company discussed 4Q16 and FY16 financial results:

23         [Liang]: Thank you, Howard. **For the entire fiscal year, we saw 11%**

24     **[revenue growth] for the year, which means Super Micro is still one of the fastest-growing companies in the IT industry**.

25         32.   Liang also repeatedly highlighted the implementation of the Company's new SAP

26     accounting system to assure investors of the strength of the Company's internal controls:

27         [Liang]: We are much better positioned with our new global SAP implementation, new global operation and corporate tax restructure, and bonded warehouse.

28

\* \* \*

Basically it's a big transition.  And not just SAP implementation global wide, but also a big impact from our restructure for production, operation, and also global tax, a new system.

\* \* \*

I guess start from December quarter, right?  Start from October, for example, as our SAP global reorg become much more stable, become more ready.  Our iteration rate will grow and our volume, for sure, will grow.  And that will improve our profit margin and overall profitability.

33.     Following the August 4, 2016 press release and earnings conference call, the price of Super Micro's common stock increased from its close of $20.42 per share on August 4, 2016, to a close at $21.48 per share on August 5, 2016, on increased trading volume.

34.     <u>False and Misleading Statements</u>: On August 26, 2016, after the close of trading, Super Micro filed the Company's FY16 Form 10-K, signed by Liang and Hideshima, reiterating the 4Q16 and FY16 financial results, describing the Company's commitment to effective internal controls and attaching signed SOX certifications:

***Evaluation of Effectiveness of Disclosure Controls and Procedures***

We are committed to maintaining disclosure controls and procedures designed to ensure that information required to be disclosed in our periodic reports filed under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms, and that such information is accumulated and communicated to our management, including our Chief Executive Officer and Chief Financial Officer, as appropriate, to allow for timely decisions regarding required disclosure.

Under the supervision and with the participation of our management, including our Chief Executive Officer and our Chief Financial Officer, we evaluated the effectiveness of our disclosure controls and procedures, as such term is defined in Rule 13a-15(e) and 15d-15(e) promulgated under the Exchange Act.  The evaluation considered the procedures designed to ensure that information required to be disclosed by us in the reports filed or submitted by us under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the Securities and Exchange Commission rules and forms and is accumulated and communicated to our management, including our Chief Executive Officer and Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure.  ***Based on that evaluation, our Chief Executive Officer and our Chief Financial Officer concluded that our disclosure controls and procedures were effective at a reasonable assurance level as of June 30, 2016***.

\* \* \*

Remediation of Prior Year Material Weakness

As disclosed in our fiscal year 2015 Form 10-K/A, in November 2015 our management determined that we had a material weakness in the design of our internal controls related to recording revenue. Since that time, with the oversight of our management and audit committee, we have taken steps to remediate the material weakness to ensure that proper extended warranty and any other deliverables in our bill of materials are tracked and related revenue deferrals are recorded.

\*          \*          \*

### Management's Report on Internal Control over Financial Reporting

Our management is responsible for establishing and maintaining adequate internal control over financial reporting (as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act). Under the supervision and with the participation of our management, including our Chief Executive Officer and Chief Financial Officer, we conducted an evaluation of the effectiveness of our internal control over financial reporting based on the criteria set forth in *Internal Control – Integrated Framework* issued by the Committee of Sponsoring Organizations of the Treadway Commission (2013 framework). ***Based on our evaluation, our management has concluded that our internal control over financial reporting was effective as of June 30, 2016 to provide reasonable assurance regarding the reliability of financial reporting and preparation of consolidated financial statements for external reporting purposes in accordance with United States generally accepted accounting principles***.

35.    <u>False and Misleading Statements</u>: In describing its Critical Accounting Policies, Super Micro's FY16 Form 10-K stated that the Company's consolidated financial statements complied with GAAP and described its compliance with revenue recognition criteria:

Our discussion and analysis of our financial condition and results of operations are based upon ***our consolidated financial statements, which have been prepared in accordance with accounting principles generally accepted in the United States***. . . .

***Revenue recognition***. ***We recognize revenue from sales of products when persuasive evidence of an arrangement exists, shipment has occurred and title has transferred, the sales price is fixed or determinable, collection of the resulting receivable is reasonably assured, and all significant obligations have been met. Generally this occurs at the time of shipment when risk of loss and title has passed to the customer if all other revenue recognition criteria have been met***. ***Our standard arrangement with our customers includes a signed purchase order or contract, 30 to 60 days payment terms, Ex-works terms***, ***except for a few customers who have free-on-board destination terms, for which revenue is recognized when the products arrive at the destination if all other revenue recognition criteria have been met***.

36.    <u>False and Misleading Statements</u>:  Super Micro's FY16 Form 10-K also disclosed that the Company had "adopted a 'Code of Business Conduct and Ethics' that is applicable to all directors and employees and embodies our principles and practices relating to the ethical conduct of our business and our long-standing commitment to honesty, fair dealing and full compliance with all

laws affecting our business."  Moreover, the FY16 Form 10-K directed readers to Super Micro's website to access the Code of Business Conduct and Ethics which reads:

> *Senior Officers are also responsible for establishing and maintaining adequate internal control over financial reporting to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles. The Senior Officers will take all necessary steps to ensure compliance with established accounting procedures, the Company's system of internal controls and generally accepted accounting principles. Senior Officers will ensure that the Company makes and keeps books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the Company. Senior Officers will also ensure that the Company devises and maintains a system of internal accounting controls sufficient to provide reasonable assurances that*:

> - transactions are executed in accordance with management's general or specific authorization;
>
> - *transactions are recorded as necessary (a) to permit preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements, and (b) to maintain accountability for assets*;

37.    <u>False and Misleading Statements</u>: The Company's FY16 Form 10-K also attached SOX certifications, pursuant to §302 and 906, signed by Liang and Hideshima on August 26, 2016, affirming that the financial statements were in compliance with GAAP, that each had designed the Company's controls over financial reporting and that such controls were effective during the Class Period:

> I, [Charles Liang/Howard Hideshima], certify that:

> 1.    I have reviewed this annual report on Form 10-K of Super Micro Computer, Inc.;

> 2.    Based on my knowledge, *this report does not contain any untrue statement of a material fact or omit to state a material fact* . . . ;

> 3.    Based on my knowledge, *the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant* as of, and for, the periods presented in this report;

> 4.    The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

a)      *Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared*;

b)      *Designed such internal control over financial reporting*, or caused such internal control over financial reporting to be designed under our supervision, *to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles*;

\*          \*          \*

d)      *Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and*

5.      The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

a)      *All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information* . . . .[8]

38.     <u>False and Misleading Statements</u>: Super Micro's 1Q17, 2Q17 and 3Q17 Forms 10-Q contained substantially similar SOX certifications, signed by Liang and Hideshima, on November 7, 2016, February 7, 2017 and May 10, 2017, respectively.  These certifications attested to the accuracy of the Company's financial statements and the effectiveness of its disclosure controls and its internal controls over financial reporting.

**Super Micro Announces 1Q17 Financial Results and Files Form 10-Q**

39.     <u>False and Misleading Statements</u>: On October 27, 2016, after the close of trading, Super Micro filed a Current Report on Form 8-K, signed by Liang, which included a press release titled "Super Micro Computer, Inc. Announces 1st Quarter 2017 Financial Results," and slides for the Company's earnings presentations:

- *Quarterly net sales of $529.0 million* . . . .

---

[8]      Exhibits 31.1 and 31.2 to the FY16 Form 10-K.

1     • *GAAP net income of $13.5 million* . . . .

2     • *GAAP gross margin was 15.1%* . . . .

3                          *        *        *

4          *GAAP net income for the first quarter of fiscal year 2017 was $13.5 million
          or $0.26 per diluted share*, a decrease of 1.2% from net income of $13.7 million, or
5          $0.27 per diluted share in the same period a year ago. . . .

6                          *        *        *

7          "*We are pleased that SuperMicro was able to report revenues and profits at
          the higher end of our expectations for the first quarter*. . . ." said Charles Liang,
8          President and Chief Executive Officer.

9          40.    <u>False and Misleading Statements</u>:  The same day, Super Micro held an earnings

10   conference call where the Company reiterated its false and misleading 1Q17 financial results.

11   Defendants also further discussed the status of the implementation of the Company's SAP

12   accounting system:

13          [Liang]: Last quarter we discussed the restructuring of our global operational
          infrastructure, including our new SAP implementation, global tax restructure and a
14          bonded warehouse.  This quarter we saw much smoother operations, and reduced
          impact from the transition.  We expect to 100% complete the transition in this
15          December quarter, and see sustained long-term improvement to our operational
          efficiency and profitability.
16

17          41.    After the October 27, 2016 financial results and earnings conference call, the price of

18   Super Micro's common stock increased from its close of $22.10 per share on October 27, 2016, to a

19   close at $24.40 per share on October 28, 2016, on increased trading volume.

20          42.    <u>False and Misleading Statements</u>: On November 7, 2016, after the close of trading,

21   Super Micro filed the Company's 1Q17 Form 10-Q, signed by Liang and Hideshima, and made

22   similar false and misleading statements concerning its financial results as contained in the October

23   27, 2016 press release, including among other matters, that the Company had earned $0.26 EPS, had

24   net income of $13,532,000 and made net sales $528,968,000.  As detailed above, the Company's

25   1Q17 Form 10-Q also attached SOX certifications, signed by Liang and Hideshima, attesting that the

26   financial statements were in compliance with GAAP and that the Company's disclosure controls and

27   its internal controls over financial reporting were designed such that the controls were effective.

28

**Super Micro Announces 2Q17 Financial Results and Files Form 10-Q**

43.   <u>False and Misleading Statements</u>: On January 26, 2017, after the close of trading, Super Micro filed a Current Report on Form 8-K, signed by Liang, which included a press release titled "Super Micro Computer, Inc. Announces 2nd Quarter 2017 Financial Results," and slides for Super Micro's earnings presentation:

- *Quarterly net sales of $652.0 million* . . . .

- *GAAP net income of $22.0 million* . . . .

- *GAAP gross margin was 14.3%* . . . .

  \*      \*      \*

*GAAP net income for the second quarter of fiscal year 2017 was $22.0 million or $0.43 per diluted share*, a decrease of 36.6% from net income of $34.7 million, or $0.67 per diluted share in the same period a year ago.

  \*      \*      \*

"*We are pleased to report record second quarter revenues of $652.0 million that exceeded our guidance and outpaced a strong compare with last year*. . . ." said Charles Liang, Chairman and Chief Executive Officer. "We expect to continue the growth of last quarter and be reflected in the year-over-year revenue growth in the March quarter based on an increasing number of sizable customer engagements demanding the performance and advantages of our leading product lines."

44.   <u>False and Misleading Statements</u>: On February 7, 2017, after the close of trading, Super Micro filed the Company's 2Q17 Form 10-Q, signed by Liang and Hideshima, and made similar false and misleading statements concerning its financial results as contained in the January 26, 2017 press release, including among other matters, that the Company had earned $0.43 EPS, had net income of $21,996,000 and made net sales $651,954,000. The Company's 2Q17 Form 10-Q also attached SOX certifications, signed by Liang and Hideshima, attesting that the financial statements were in compliance with GAAP and that the Company's disclosure controls and its internal controls over financial reporting were designed such that the controls were effective.

**Super Micro Announces 3Q17 Financial Results and Files Form 10-Q**

45.   <u>False and Misleading Statements</u>: On April 27, 2017, after the close of trading, Super Micro filed a Current Report on Form 8-K, signed by Liang, which included a press release titled

"Super Micro Computer, Inc. Announces 3rd Quarter 2017 Financial Results," and slides for the Company's earnings presentation:

- ***Quarterly net sales of $631.1 million* . . . .**

- ***GAAP net income of $16.7 million* . . . .**

- ***GAAP gross margin was 14.0%* . . . .**

\*        \*        \*

        ***GAAP net income for the third quarter of fiscal year 2017 and for the same period a year ago were both $16.7 million or $0.32 per diluted share***.

        46.    <u>False and Misleading Statements</u>: On May 10, 2017, after the close of trading, Super Micro filed the Company's 3Q17 Form 10-Q, signed by Liang and Hideshima, and made similar false and misleading statements concerning its financial results as contained in the April 27, 2017 press release, including among other matters, that the Company had earned $0.32 EPS, had net income of $16,666,000 and made net sales $631,124,000.  The Company's 3Q17 Form 10-Q also attached SOX certifications, signed by Liang and Hideshima, attesting that the financial statements were in compliance with GAAP and that the Company's disclosure controls and its internal controls over financial reporting were designed such that the controls were effective.

**Super Micro Announces Preliminary 4Q17 Financial Results**

        47.    <u>False and Misleading Statements</u>: On July 20, 2017, after the close of trading, Super Micro filed a Current Report on Form 8-K, signed by Liang, which incorporated a press release titled "Super Micro Computer, Inc. Schedules Conference Call and Webcast for Fourth Quarter and Fiscal 2017 Financial Results Company to Report Preliminary Financial Results":

        ***The Company now anticipates it will report revenue for its fourth quarter of fiscal 2017 in the range of $712 million to $717 million***.  This compares to the Company's previous guidance range of $655 million to $715 million.  Revenue exceeded expectations primarily due to stronger sales in Asia and at storage customers with strong shipments that accelerated late in the quarter.

        ***The Company also anticipates its non-GAAP earnings per diluted share will be in a range of $0.35 to $0.37***.

\*        \*        \*

        "***While Super Micro exceeded revenue expectations with record high revenues due to growth in our Asia business as well as new storage customers***, earnings were lower than forecast. . . .  We will provide more detail on the fourth

quarter at the time of our earnings call," said Charles Liang, Chairman and Chief Executive Officer.

48.     <u>False and Misleading Statements</u>:  On August 3, 2017, Super Micro filed a Current Report on Form 8-K, signed by Liang, which included a press release titled "Super Micro Computer, Inc. Announces 4th Quarter 2017 Financial Results":

- *Quarterly net sales of $717.9 million* . . . .

- *GAAP net income of $17.1 million* . . . .

- *GAAP gross margin was 13.5%* . . . .

                    *        *        *

        *GAAP net income for the fourth quarter of fiscal year 2017 was $17.1 million or $0.33 per diluted share,* an increase of 145.7% from net income of $7.0 million, or $0.13 per diluted share in the same period a year ago.

                    *        *        *

        *Net sales for the fiscal year ended June 30, 2017 were $2,529.9 million*, up 14.2% from $2,215.6 million for the fiscal year ended June 30, 2016.

                    *        *        *

**Business Outlook & Management Commentary**

        The Company expects net sales of $625 million to $685 million for the first quarter of fiscal year 2018 ending September 30, 2017.  The Company expects non-GAAP earnings per diluted share of approximately $0.30 to $0.40 for the first quarter.

        "*Super Micro has built a strong foundation for sustained high growth while improving profitability*.  During the last couple of years we have made significant investments in global production capacity, engineering, quality, global services, and systems and datacenter management software.  It is these investments that will power the new Super Micro 3.0" said Charles Liang, Chairman and Chief Executive Officer. . . .  "With the major investments in place and the new Skylake product portfolio shipping, future investment and expenses will begin to flatten driving improved profitability moving forward."

49.     <u>False and Misleading Statements</u>: On August 3, 2017, after the close of trading, Super Micro held an earnings conference call where Liang touted the Company's revenues and strong momentum:

        [Liang]: Thank you, Howard.  *We finished the fiscal year 2017 with record revenue and strong momentum*.  Super Micro 3.0 provides the foundation and product to take advantage of this cycle of technology transition.  We believe that fiscal 2018 will be one of the strongest years in Super Micro's history.

50.    Reasons why the statements in ¶¶30-31, 34-40, 42-49 were false and misleading: Defendants' statements concerning: (i) the Company's financial condition and performance, including revenue, net income and EPS; (ii) its operations, internal controls and disclosure controls and procedures; (iii) its compliance with GAAP; and (iv) its outlook and prospects going forward were materially false and misleading because Defendants knew, or were deliberately reckless in not knowing, the following:

(a)    The Company suffered from a significant failure of effective internal controls over revenue recognition and its disclosure controls and procedures were ineffective;

(b)    The accounting for thousands of transactions from FY15 through FY17 required reassessment to determine the appropriate revenue recognition treatment;

(c)    The Company improperly and prematurely recognized revenue in violation of GAAP on certain transactions near quarter-end when offering free shipping, causing the Company to record transactions as revenue in the wrong period;[9]

(d)    At least one transaction was improperly recorded as revenue during 2Q17 (*i.e.*, the quarter ending December 31, 2016), when it should have been recorded in 3Q17 (*i.e.*, the quarter ending March 31, 2017);

(e)    The Company failed to maintain sufficient documentation to support the appropriate accounting treatment of certain transactions; and

(f)    As a result of the foregoing, the Company was exposed to the risk of restatement, inability to attest to the accuracy of its historical financial statements, inability to obtain

---

[9]    The relevant accounting principles under GAAP that are applicable to revenue recognition are found in the Financial Accounting Standards Board ("FASB") Accounting Standards Codification Topic 605, *Revenue Recognition* ("ASC 605"). ASC 605 states that revenue may only be recognized when all of the following criteria are met: (1) persuasive evidence of an arrangement exists; (2) delivery has occurred or services have been rendered; (3) the seller's price to the buyer is fixed or determinable; and (4) collectability is reasonably assured. By offering free shipping and recognizing revenue before the customer received the product, Super Micro violated the second criteria (*i.e.*, delivery has occurred) and therefore could not recognize the revenue until the customer was in receipt of the product (*e.g.*, free-on-board destination terms). On the August 2018 earnings conference call, CFO Kevin Bauer ("Bauer") disclosed this premature revenue recognition for certain quarter-end transactions caused the appropriate date for recognizing the revenue "to slip from one quarter into the next."

1    auditor sign-off, de-listing from the NASDAQ, investigation by the SEC and other regulatory action

2    or civil liability.

3    **Super Micro Requests 15-Day Extension to File Form 10-K**

4          51.    <u>False and Misleading Statements</u>: On August 29, 2017, after the close of trading, less

5    than a month after announcing its 4Q17 results, Super Micro filed a Notification of Late Filing on

6    Form 12b-25, signed by Hideshima, revealing that the Company could not meet the August 29, 2017

7    deadline to file its FY17 Form 10-K, but falsely reassured analysts and investors that it "will be filed

8    on or before the fifteenth calendar day following the prescribed due date" (*i.e.*, September 13, 2017):

9              ***The subject annual report . . . on Form 10-K . . . will be filed on or before***

10          ***the fifteenth calendar day following the prescribed due date . . . .***

                          \*      \*      \*

11

12          Super Micro Computer, Inc. (the "Company") is not in a position to file its
Form 10-K for fiscal year ended June 30, 2017 (the "Form 10-K"), in a timely

13    manner because the Registrant cannot complete the Form 10-K in a timely manner
without unreasonable effort or expense. Additional time is needed for the Company

14    to compile and analyze certain information and documentation and complete
preparation of its financial statements in order to permit the Company's independent

15    registered public accounting firm to complete its audit of the financial statements to
be incorporated in the Form 10-K and complete its audit of the Company's internal

16    controls over financial reporting as of June 30, 2017.

17          52.    On this disclosure concerning the Company's inability to meet the deadline to file its

18    FY17 Form 10-K, the price of Super Micro's common stock declined from its close of $27.20 per

19    share on August 29, 2017, to a close at $25.85 per share on August 30, 2017, on increased trading

20    volume, but remained inflated by the false assurance that the delay in filing would be temporary.

21          53.    On August 31, 2017, Maxim Group issued a report noting that the Company's

22    repeated inability to timely file mandatory SEC disclosures was damaging "management's

23    credibility" in the eyes of investors but – in light of the information made available at the time – it

24    expected the delay to be "innocuous":

25          **We expect better execution with respect to filing reports in a timely &
accurate manner**. . . .  We note a similar situation took place in 2015, when SMCI

26    required a 15-day extension to file its FY15 10-K in connection to a certain
employee's unadvised activity relating to sales and marketing, but ultimately did not

27    impact financial results.  Then in the following quarter (September 2015 quarter,
F1Q16), management discovered some extended warranty revenue that should have

28    been accounted for as deferred revenue, which delayed the 10-Q and led to a minor
restatement of revenue (see our Nov-2015 note).  While we expect the current

CONSOLIDATED COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS -
3:18-cv-00838-JST                                        

1
delayed filing to prove innocuous as well, *we note that the recurring one-time*
2
*nature of delayed filings are eroding management's credibility, based on our*
*conversations with investors*. We believe management will make changes to ensure
3
that delayed filings do not recur, albeit the delays have been for unique reasons.

**Super Micro Fails to Meet Extended Deadline to File Form 10-K and Announces Audit**
4
**Committee Review**

5
54. On September 14, 2017, Super Micro issued a press release titled "Super Micro

6
Computer, Inc. Announces Receipt of Non-Compliance Letter From Nasdaq." The following day,

7
September 15, 2017, after the close of trading, the Company filed a Current Report on Form 8-K

8
disclosing the Company would not be able to meet the 15-day extension for filing the Form 10-K

9
and that an Audit Committee review was underway, but nonetheless reassured analysts and investors

10
that "[t]he Company intends to file its 10-K promptly upon completion of the audit committee's

11
review and the completion of the audit":

12
On September 14, 2017, Super Micro Computer, Inc. (the "Company")
received a notification letter (the "Letter") from the Listing Qualifications
13
Department of the NASDAQ Stock Market LLC ("NASDAQ") indicating that the
Company is not in compliance with NASDAQ Listing Rule 5250(c)(1), as a result of
14
the Company's delay in filing its Annual Report on Form 10-K for fiscal year 2017
(the "Form 10-K"). *The Form 10-K was due on August 29, 2017. The Company*
15
*filed a Form 12b-25 on August 29, 2017, the effect of which was to extend the due*
*date for the Form 10-K to September 13, 2017. The Company was unable to file the*
16
*Form 10-K by September 13, 2017, for the reasons reported in the Form 12b-25*
*and further described below*. The Letter has no immediate effect on the listing or
17
trading of the Company's common stock on the NASDAQ Global Select Market.
The Letter stated that, under NASDAQ rules, the Company has 60 calendar days to
18
regain compliance or to submit a plan to do so, and that if a plan is submitted and
accepted, NASDAQ could grant the Company an exception of up to 180 calendar
19
days from the filing's due date to regain compliance. If NASDAQ does not accept
the Company's plan, then the Company will have the opportunity to appeal that
20
decision to a NASDAQ hearings panel.

21
As previously disclosed by the Company, additional time is needed for the
Company to compile and analyze certain information and documentation and finalize
22
its financial statements, *as well as complete a related audit committee review*, in
order to permit the Company's independent registered public accounting firm to
23
complete its audit of the financial statements to be incorporated in the Form 10-K
and complete its audit of the Company's internal controls over financial reporting as
24
of June 30, 2017. The Company is unable at this time to provide a date as to when
the review and the audits will be completed. The Company intends to file its 10-K
25
promptly upon completion of the audit committee's review and the completion of the
audit.

26
55. On these disclosures, the price of Super Micro's common stock declined from its
27
close of $25.25 per share on September 14, 2017, to a close at $23.35 per share on September 15,
28

1  2017, on extremely high trading volume, followed by a further decline on September 18, 2017, the

2  next trading day, to a close of $21.20, again on extremely high trading volume. Still, Super Micro's

3  stock price remained inflated as Defendants continued to conceal the nature, scope and magnitude of

4  the issues related to their financial results and internal controls.

5  **Super Micro Reveals Premature Revenue Recognition; Fails to File 1Q18 Form 10-Q**

6  56.    On October 26, 2017, after the close of trading, Super Micro filed a Current Report

7  on Form 8-K, signed by Liang, incorporating a press release titled "Super Micro® Announces First

8  Quarter Fiscal 2018 Preliminary Financial Information," including revenue, income and earnings

9  figures for 1Q18. For the first time, the press release disclosed details of improper revenue

10  recognition specifically related to a sales transaction originally recorded as revenue during 2Q17

11  (*i.e.*, the period ending December 31, 2016), later reversed and recognized in 3Q17 (*i.e.*, the period

12  ending March 31, 2017). Due to this inappropriate transaction, the Company's Audit Committee

13  initiated an independent investigation to assess whether similar transactions existed and were

14  properly accounted for:

15      In connection with the in-process audit of the Company's financial results for
the year ended June 30, 2017, a sales transaction was subject to additional inquiry

16  and review. ***The transaction in question was originally recorded as revenue during
the quarter ended December 31, 2016***. However, prior to review by the Company's

17  independent auditors and prior to the Company's public announcement of its results
for the quarter, ***the recognition of revenue was reversed and the revenue was***

18  ***subsequently recognized in the quarter ended March 31, 2017. When the audit
committee was made aware of this transaction, the Audit Committee of the***

19  ***Company's Board of Directors initiated an independent investigation to determine
whether there were any similar transactions and if so, whether such transactions***

20  ***were properly accounted for. Due to the volume of data to be reviewed to complete
the investigation, the Company was unable to file its Form 10-K on a timely basis***.

21

22      The Company is unable at this time to provide a date as to when the
investigation and the 2017 audits will be completed or predict the possible outcome
of the investigation.

23

24  57.    <u>False and Misleading Statements</u>: In the October 26, 2017 press release, Super Micro

25  also claimed that it would take the necessary steps "as soon as practicable" to achieve compliance

with NASDAQ listing requirements:

26

27      Super Micro announced on September 14, 2017 that it received a notification
letter from Nasdaq stating that the Company is not in compliance with Nasdaq listing

28  rule 5250(c)(1), which requires timely filing of reports with the U.S. Securities and
Exchange Commission. . . .

CONSOLIDATED COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS -
3:18-cv-00838-JST

1      The Nasdaq notice has no immediate effect on the listing or trading of the
Company's common stock on the Nasdaq Global Select Market. Under the Nasdaq

2  rules, the Company has 60 days from the date of the notice either to file the Form 10-
K or to submit a plan to Nasdaq to regain compliance with Nasdaq's listing rules.

3  The Company intends to submit a plan within the required time period and if the plan
accepted, the Company could be granted up to 180 days from the Form 10-K's due

4  date to regain compliance. If NASDAQ does not accept the Company's plan, then
the Company will have the opportunity to appeal that decision to a NASDAQ

5  hearings panel.

6      ***Super Micro intends to take all necessary steps to achieve compliance with
the NASDAQ continued listing requirements as soon as practicable***.

7

8  58.  On October 26, 2017, Super Micro held an earnings conference call where Liang

9  spoke alongside Hayes.  Notably absent was CFO Hideshima who had participated in all prior

10  earnings conference calls during the Class Period.  When asked about the CFO's status, Liang stated

11  he was "working very hard on the issues":

12      [Alexander Kurtz]:  Last question for me.  Can you give us any update on
your CFO, Howard, and his status with the company at this point?

13      [Hayes]:  Howard is working very hard on the issues related to the filing of
the 10-K at this moment.

14

15  Three months later, Hideshima would "resign" from the Company effective immediately.

16  59.  During the October 26, 2017 earnings conference call, Super Micro reiterated that the

17  Company needed additional time to compile and analyze materials and finalize its financial

18  statements, as was reported in prior press releases.  Super Micro refused to answer several questions

19  concerning the Company's delinquent reports and ongoing Audit Committee investigation:

20      [Brian Matthew Alger]:  Just for a clarification point, reading through the
release today and kind of going back to the delay that we're incurring here on the 10-

21  K.  To be clear, what's being evaluated by the audit committee isn't whether or not
the revenues were real, but rather not the documentation around which period the

22  revenues were recognized, is that the case?

23      [Hayes]:  Brian, as indicated, we're not going to answer any questions related
to the filing of the 10-K.

24      *    *    *

25      [Nehal Sushil Chokshi]:  Okay.  And the reason why there's more uncertainty
around what channel was as a percent of revenue is that that's where the uncertainty

26  resides with the one revenue recognition.  Should be getting done.  Is that a correct
interpretation?

27      [Hayes]:  Again, Nehal, we're not going to discuss anything related to the 10-

28  K filing.

1   60.   On these additional disclosures, the price of Super Micro's common stock declined

2   from its close of $21.70 per share on October 26, 2017, to a close at $20.48 per share on October 27,

3   2017, on extremely high trading volume.  On October 30, 2017, the next trading date, Super Micro's

4   stock fell to a close of $19.85 per share, but remained inflated as Defendants continued to conceal

5   the details of their fraudulent accounting.

6   61.   On October 27, 2017, Susquehanna Financial Group issued a report titled "Super

7   Micro: Audit Review To Remain Overhang On Shares; Gross Margins Remain Constrained," noting

8   the overhang on the Company's stock price due to questions concerning its revenue recognition

9   processes and delinquent reports:

10   ***The audit investigation of SMCI's revenue recognition practices (and associated delay in 10-K filing) is expected to remain an overhang on shares,*** while the fundamental backdrop remains mired by a lack of Gross Margin expansion. Maintain Neutral rating.

13   The delay in 10-K filing associated with a review of revenue recognition practices is likely to remain an overhang on shares until this is resolved and the company has adequately addressed its internal controls. . . .

15   <u>Audit committee investigation to remain an overhang, unclear when this will be resolved.</u> ***SMCI indicated that the reason its 10-K had been delayed was due to an investigation into revenue recognition practices around revenue that was originally recognized in the Dec Q'16 and then reversed and recognized in Mar Q'17.***  This has resulted in a more thorough review of sales recognition practices. SMCI did not provide any insight into when this matter would be resolved.

18   62.   On November 13, 2017, after the close of trading, Super Micro filed a Notification of

19   Late Filing on Form 12b-25, signed by Hideshima, disclosing that it could not timely file its 1Q18

20   Form 10-Q:

21   As previously announced, the Company has been unable to file its Annual Report on Form 10-K for the fiscal year ended June 30, 2017 (the "Form 10-K") pending the completion of an independent investigation by the Audit Committee of the Company's Board of Directors and any additional work required thereafter in order for the Company to finalize its financial statements and have the Company's independent registered public accounting firm complete its audit of the financial statements to be incorporated in the Form 10-K and complete its audit of the Company's internal controls over financial reporting as of June 30, 2017. The Form 10-Q cannot be completed and filed until the Form 10-K is completed and filed. The Company does not expect the filing to be made within the time period required for a timely filing pursuant to Rule 12b-25(b) under the Securities Exchange Act of 1934.

63.     On November 20, 2017, after the close of trading, Super Micro filed a Current Report on Form 8-K, signed by Liang, incorporating a press release titled "Super Micro Computer Inc. Announces Receipt of Non-Compliance Letter from Nasdaq":

> On November 16, 2017, Super Micro Computer, Inc. (the "Company") received a notification letter (the "Letter") from the Listing Qualifications Department of the NASDAQ Stock Market LLC ("NASDAQ") **indicating that the Company is not in compliance with NASDAQ Listing Rule 5250(c)(1)**, as a result of the Company's delay in filing its Quarterly Report on Form 10-Q for the period ended September 30, 2017 and its continued delay in filing its Annual Report on Form 10-K for the period ending June 30, 2017 (the "Form 10-K"). The Company previously submitted a plan of compliance to Nasdaq on November 10, 2017 (the "Plan") with respect to its delay in filing the Form 10-K (the "Initial Delinquent Filing"). **Upon review of the Company's Plan and in connection with this additional delinquency, the Letter requires that the Company submit an update to the Plan by November 30, 2017** (the "Revised Plan"). The Letter has no immediate effect on the listing or trading of the Company's common stock on the NASDAQ Global Select Market. If the Revised Plan is submitted and accepted, the Company could be granted up to 180 days from the due date of the Initial Delinquent Filing, or March 12, 2018, to regain compliance. If NASDAQ does not accept the Company's plan, then the Company will have the opportunity to appeal that decision to a NASDAQ hearings panel.

64.     <u>False and Misleading Statements</u>: On December 6, 2017, Wells Fargo issued a report titled "SMCI: Takeaways from Wells Fargo Tech Summit 2017," noting that the Company faced an "[o]ngoing unknown risk / overhang related to continued Audit Committee revenue recognition investigation." The Wells Fargo Tech Summit 2017 was held at the St. Regis Deer Valley in Park City, Utah, between December 4-6, 2017. Hayes was scheduled to present for Super Micro on December 6, 2017. Following Hayes's presentation, Wells Fargo reported that "**Mr. Hayes believes that Supermicro is in the final stages of audit review before filing its 10-K (and subsequent updated 10-Q)**."

65.     <u>Reasons why the statements in ¶¶51, 57, 64 were false and misleading:</u>  Defendants' statements concerning: (i) the completion of the Company's internal investigations; (ii) the timing of and its ability to comply with SEC filing requirements; and (iii) its ability to comply with NASDAQ listing requirements were materially false and misleading because Defendants knew, or were deliberately reckless in not knowing, the following:

(a)     The Company suffered from a significant failure of effective internal controls over revenue recognition and its disclosure controls and procedures were ineffective;

1          (b)     The accounting for thousands of transactions from FY15 through FY17

2  required reassessment for determining appropriate revenue recognition treatment;

3          (c)     In light of the volume to transactions to be reviewed, at no point was the

4  Company in the "final stages" of filing its FY17 Form 10-K or its 1Q18 Form 10-Q;

5          (d)     The Company lacked a defined process for reviewing transactions and lacked

6  visibility into the work required to complete its investigation and SEC filings;

7          (e)     The Company failed to maintain sufficient documentation to support the

8  appropriate accounting treatment of certain transactions; and

9          (f)     Given the foregoing, the Company's statements concerning the Company's

10  internal investigation, the status of its SEC filings, and its ability to comply with NASDAQ listing

11  requirements were false and misleading.

12  **Super Micro Announces Departure of Senior Executives and Cannot State if Its Historical Financial Statements Are Accurate; Audit Committee Investigation Results in Further**

13  **Inquiry and Delay**

14          66.    On January 30, 2018, after the close of trading, Super Micro filed a Current Report on

15  Form 8-K, signed by Liang, incorporating two press releases, one titled "Super Micro® Announces

16  Second Quarter Fiscal 2018 Preliminary Financial Information; Management Changes," and another

17  titled "Super Micro® Announces the Appointment of Kevin Bauer as Chief Financial Officer,"

18  disclosing that three senior management level employees had resigned and that the Company had

19  appointed a new CFO:

20          The Company announced the appointment of Kevin Bauer, as the Company's Senior Vice President and Chief Financial Officer ("CFO"), effective January 30,

21          2018. Mr. Bauer, 58, has served as the Company's Senior Vice President, Corporate Development and Strategy since January 2017.

22

                                     *       *       *

23

24          ***The Company also announced that Wally Liaw, Sr. Vice President of International Sales, Phidias Chou, Sr. Vice President, Worldwide Sales and***

25          ***Howard Hideshima, Senior Vice President and Chief Financial Officer, have resigned, effective January 30, 2018. Mr. Liaw has also resigned as a member of the Board of Directors of the Company (the "Board"), effective January 30, 2018.***

26

27          67.    In addition to providing preliminary financial results for 2Q18, the January 30, 2018

28  press release also revealed for the first time that the Audit Committee had finished its investigation

1    but that further investigation was necessary and the Company could not represent that its historical

2    financial statements were accurate.  The Company reiterated that it had no completion date for its

3    investigation or delinquent reports:

>    The Audit Committee has completed the previously disclosed investigation. **Additional time is required to analyze the impact, if any, of the results of the investigation on the Company's historical financial statements, as well as to conduct additional reviews** before the Company will be able to finalize its Annual Report on Form 10-K for the fiscal year ended June 30, 2017 (the "Form 10-K"). **The Company is unable at this time to provide a date as to when the Form 10-K will be filed or to determine whether the Company's historical financial statements will be adjusted or, if so, the amount of any such adjustment(s) and what periods any such adjustments may impact.**  The Company intends to file its Quarterly Reports on Form 10-Q for the quarters ended September 30 and December 31, 2017 promptly after filing the Form 10-K.

10        68.     On January 30, 2018, Wells Fargo issued a report titled "SMCI: Significant Revenue

11   Upside; Still Await Finalized Financial Filings," detailing expectations that the Company's shares

12   would be weak due to, among other matters:

>    (1) uncertainty related to the resignation of high-level sales executives, including co-founder, Wally Liaw, who owns 4.4% of shares outstanding.  The company elected to not comment on the reasoning of these resignations / relation to the Audit Committee investigation. (2) While the Audit Committee has completed its investigation, Super Micro reported additional time is required to analyze the impact, *if any*, to historical results (Nasdaq filing deadline on March 13th)."

17   With respect to the management changes and the Audit Committee investigation, the January 30,

18   2018 Wells Fargo report disclosed:

>    Management Changes: (1) Supermicro reported that Wally Liaw, co-founder and SVP of International Sales, has resigned from the company and its board of directors. We would note that Mr. Liaw owns 4.4% of shares outstanding.  (2) Phidias Chou, SVP of worldwide sales, has resigned from Super Micro; Don Clegg, VP of Worldwide Business Develop & Marketing will succeed Mr. Chou on an interim basis. (3) The company also announced that it has appointed Kevin Bauer as its new CFO.  Mr. Bauer joined Super Micro in January 2017 as SVP, Corporate Development and Strategy.  He holds previous CFO experience at Pericom Semiconductor and Exar Corporation.  In connection with this prior CFO, Howard Hideshima, has resigned from the company.

>    Supermicro announced the Audit Committee completed its investigation; however, additional time is required to analyze the impact (if any) of its findings to historical financial statements and to conduct additional reviews prior to filing its F2017 10-K and F1Q18 / F2Q18 10-Q filings. The company is unable to provide an update on when these will be filed; however, we would note that Super Micro's Nasdaq extension expires on March 13th.

69.      On January 31, 2018, CFRA Research issued a report detailing concerns about Super Micro's failure to meet filing deadlines, management changes and the departure of Hideshima:

> *We note SMCI has delayed filing of its 10-K given a pending independent audit review that began from the identification of a sales transaction that was realized during an incorrect quarter*.

> We await a resolution to the independent audit review amid a time of favorable business trends but *view recent management changes, including the departure of the CFO, as disturbing*.

70.      On these further disclosures and developments, the price of Super Micro's common stock declined from its close of $24.65 per share on January 30, 2018, to a close at $22.83 per share on January 31, 2018, on increased trading volume. The Company's stock price continued falling over the next several trading days, closing at $19.30 on February 5, 2018, representing a decline of over 21.7% from the January 30, 2018 closing price.

## POST-CLASS PERIOD EVENTS AND DISCLOSURES

71.      On February 9, 2018, after the close of trading, Super Micro filed a Notification of Late Filing on Form 12b-25, signed by Bauer, disclosing it could not file its 2Q18 Form 10-Q and repeated the Company's prior disclosures that it could not determine when the investigation would be completed, its impact on the Company's historical financial statements or when it would become current with its SEC filings:

> Super Micro Computer, Inc. (the "Company") is not in a position to file its Quarterly Report on Form 10-Q for the period ended December 31, 2017 (the "Form 10-Q"), in a timely manner because the Registrant cannot complete the Form 10-Q in a timely manner without unreasonable effort or expense. As previously announced, the Company has been unable to file its Annual Report on Form 10-K for the fiscal year ended June 30, 2017 (the "Form 10-K") and Quarterly Report on Form 10-Q for the quarter ended September 30, 2017 ("Q1 10-Q"). The Audit Committee of the Company's Board of Directors has completed the previously disclosed investigation. Additional time is required to analyze the impact, if any, of the results of the investigation on the Company's historical financial statements, as well as to conduct additional reviews before the Company will be able to finalize the Form 10-K. *The Company is unable at this time to provide a date as to when the Form 10-K will be filed or to determine whether the Company's historical financial statements will be adjusted or, if so, the amount of any such adjustment(s) and what periods any such adjustments may impact.* The Form 10-Q cannot be completed and filed until the Form 10-K and Q1 10-Q are completed and filed. The Company does not expect the filing to be made within the time period required for a timely filing pursuant to Rule 12b-25(b) under the Securities Exchange Act of 1934. The Company intends to file its Quarterly Reports on Form 10-Q for the quarters ended September 30 and December 31, 2017 promptly after filing the Form 10-K.

72.     On February 20, 2018, after the close of trading, Super Micro filed a Current Report on Form 8-K, signed by Liang, incorporating a press release titled "Super Micro Computer Inc. Announces Receipt of Non-Compliance Letter from Nasdaq," disclosing that the Company was not in compliance with NASDAQ listing rules due to failure to file its 2Q18 Form 10-Q and that it had until February 28, 2018, to submit a revised plan to regain compliance. The Company also repeated that the Audit Committee had completed its investigation but that it needed additional time to analyze any impact on the Company's historical financial statements and conduct additional reviews prior to filing its FY17 Form 10-K:

On February 20, 2018, Super Micro Computer, Inc. (the "Company") announced that it received a notification letter (the "Letter") from the Listing Qualifications Department of the Nasdaq Stock Market LLC ("Nasdaq") indicating that the Company is not in compliance with Nasdaq Listing Rule 5250(c)(1), as a result of the Company's delay in filing its Quarterly Report on Form 10-Q for the period ended December 31, 2017 (the "Q2 10-Q") and its continued delay in filing its Annual Report on Form 10-K for the period ending June 30, 2017 (the "Form 10-K") and its Quarterly Report on Form 10-Q for the period ended September 30, 2017 ("Q1 10-Q"). As described in the letter, the Company has until February 28, 2018 to submit to Nasdaq an update to its original plan to regain compliance with the Nasdaq Listing Rules (the "Revised Plan"). As previously disclosed, Nasdaq has granted the Company an extension until March 13, 2018 to file the Form 10-K, the Q1 10-Q and the Q2 10-Q.

The Letter has no immediate effect on the listing or trading of the Company's common stock on the Nasdaq Global Select Market. If the Revised Plan is submitted and accepted, the Company could be granted up to 180 days from the due date of the Initial Delinquent Filing, or March 13, 2018, to regain compliance. If Nasdaq does not accept the Company's plan, then the Company will have the opportunity to appeal that decision to a Nasdaq hearings panel.

73.     On these disclosures, the price of Super Micro's common stock declined from its close of $18.85 per share on February 20, 2018, to a close at $18.15 per share on February 21, 2018, on increased trading volume.

**Super Micro Subject to Delisting by NASDAQ**

74.     On March 16, 2018, after the close of trading, Super Micro filed a Current Report on Form 8-K, signed by Bauer, incorporating a press release titled "Super Micro® Receives Nasdaq Staff Determination Letter; Has Requested Hearing Before Hearings Panel," disclosing that its stock was subject to delisting by NASDAQ:

On March 14, 2018, Super Micro Computer, Inc. (the "Company") received a letter from the staff of the Listing Qualifications Department (the "Staff") of The

Nasdaq Stock Market LLC ("Nasdaq") notifying the Company that since the Company had not filed its Annual Report on Form 10-K for the fiscal year ended June 30, 2017 and its Quarterly Reports on Form 10-Q for the quarterly periods ended September 30, 2017 and December 31, 2017 (collectively, the "Delinquent Filings") by March 13, 2018, the deadline by which the Company was to file its Delinquent Filings in order to regain compliance with Nasdaq Listing Rule 5250(c)(1), the Company's common stock is subject to delisting from Nasdaq. The letter further noted that, unless the Company requested an appeal of the Staff's determination, trading of the Company's common stock on Nasdaq would be suspended at the opening of business on March 23, 2018, and a Form 25-NSE would be filed with the SEC removing the Company's securities from listing and registration on Nasdaq.

On March 16, 2018, the Company submitted a letter to Nasdaq requesting a hearing before a Hearings Panel at which it intends to present its plan to regain and thereafter maintain compliance with all applicable listing requirements. In connection with its request for a hearing, the Company has also requested a stay of the suspension of trading and delisting of its common stock, pending the hearing and decision of the Hearings Panel. The Hearings Panel will notify the Company of its decision to allow the Company to continue to trade on Nasdaq pending the hearing and a decision by the Hearings Panel by April 5, 2018. There can be no assurance that the Hearings Panel will grant the Company's request for continued listing or stay the delisting of its common stock.

75. On March 16, 2018, Wells Fargo issued a report titled "SMCI: Supermicro Requests Hearing With Nasdaq To Avoid Delisting (Negative)," describing Super Micro's March 16, 2018 announcements regarding its non-compliance with NASDAQ listing requirements as "clearly negative":

News: Supermicro has announced that today (3/16) it submitted a letter to Nasdaq requesting a hearing before a Hearings Panel to present a plan in which it intends to regain compliance related to the inability to file its F2017 10-K and F1Q18 / F2Q18 10-Qs. The request is for a hearing by March 21, 2018. This follows the company missing its 3/13 deadline to reach compliance. Supermicro has also requested a stay in the suspension of trading / delisting of its stock from Nasdaq.

Supermicro noted that the hearing request automatically stays the delisting process for a period of 15 calendar days from the date of the deadline to request a hearing (or until April 5th). The Hearings Panel has the authority to grant Super Micro additional time of up to 360 days from the original due date of the company's first late filing to regain compliance (late August timeframe) before further action to delist the company's common stock will occur. **The Hearings Panel will notify the Company by April 5, 2018 of its decision to allow Supermicro to continue to trade on Nasdaq pending the hearing and a decision by the Hearings Panel**.

Quick Thoughts: ***This news is clearly negative as the company has persistently struggled to regain compliance with Nasdaq – in this release SuperMicro did not provide an update on the progress of completing its internal audit investigation***. At the time of the company's December quarter results, SuperMicro reported that it was continuing to analyze the findings of its investigation to determine the amount (if any) of a potential financial restatement.

76.     On these disclosures, the price of Super Micro's common stock declined from its close of $19.70 per share on March 16, 2018, to a close at $18.70 per share on March 17, 2018, on increased trading volume.

**Super Micro Fails to File 3Q18 Form 10-Q**

77.     On May 3, 2018, after the close of trading, Super Micro filed a Current Report on Form 8-K, signed by Liang, incorporating a press release titled "Super Micro® Announces Third Quarter Fiscal 2018 Preliminary Financial Information."  In addition to preliminary 3Q18 results, the press release also disclosed that the additional testing overseen by the Audit Committee was "nearing completion":

> ***The Company has completed the previously disclosed investigation conducted by the Audit Committee.  In furtherance of the preparation of the financial statements, the Audit Committee is overseeing additional testing that the Company believes is nearing completion***.  To date, the Company's cash flows have not been impacted by the findings of the investigation or the additional testing. Additional time is required to analyze any impact of the results of the investigation and additional testing on the Company's historical financial statements, as well as to complete additional reviews before the Company will be able to finalize its Annual Report on Form 10-K for the fiscal year ended June 30, 2017 (the "2017 10-K").

> The Company presented an updated compliance plan to The Nasdaq Stock Market Hearings Panel on April 26, 2018 and the Company requested an additional exception period for continued listing of its common stock on The Nasdaq Global Select Market through August 24, 2018 in order for it to complete and file its 2017 10-K and subsequent delinquent SEC quarterly filings.  The Company is unable at this time to provide a date as to when the 2017 10-K will be filed or to predict whether the Company's historical financial statements will be adjusted or, if so, the amount of any such adjustment.  The Company intends to file its Quarterly Reports on Form 10-Q for the quarters ended September 30, December 31, 2017, and March 31, 2018 promptly after filing the 2017 10-K.

78.     On May 3, 2018, Super Micro held an earnings conference call where Liang and Bauer spoke alongside Hayes.  During the earnings conference call, Hayes reiterated that the Audit Committee had completed its investigation and additional testing was nearing completion; the Company had until August 24, 2018, to complete and file its delinquent reports:

> [Hayes]: Good afternoon, and thank you, for attending SuperMicro's business update conference call for the third quarter fiscal 2018, which ended March 31, 2018. As announced in our press release earlier today, ***the company has completed the previously disclosed investigation conducted by the audit committee. In furtherance of the preparation of the financial statements, the audit committee is overseeing additional testing that the company believes is nearing completion***.

1
2
3
4

To date, the company's cash flows have not been impacted by the findings of the investigation or the additional testing.  Additional time is required to analyze any impact of the results of the investigation and additional testing on the company's historical financial statements as well as to complete additional reviews before the company will be able to finalize its annual report on Form 10-K for the fiscal year ended June 30, 2017.  Otherwise known as the 2017 10-K.

5
6

The company presented an updated compliance plan to the NASDAQ stock market hearings panel on April 26, 2018.  And the company requested an additional exception period for continued listing of its common stock on the NASDAQ Global Select Market, through August 24, 2018, in order for it to complete and file its 2017 10-K and subsequent delinquent SEC quarterly filings.

7
8
9

The company is unable at this time to provide a date as to when the 2017 10-K will be filed or to predict whether the company's historical financial statements will be adjusted or, if so, the amount of any such adjustments.  The company intends to file its quarterly reports on Form 10-Q for the quarters ended September 30 and December 31, 2017, and March 31, 2018, promptly after filing the 2017 10-K.

10
11

79.     Additionally, during the May 3, 2018 earnings conference call, Bauer stated that the

12

Company would not answer questions regarding the delinquent reports but that it was nearing

13

completion of its investigation and filings:

14
15
16
17

[Bauer]:  The SEC filings process.  As we stated in our press release and as Perry articulated during the introduction, we continue to expend great effort to complete our financial statements and work with our independent auditor to complete the fiscal year 2017 audit process and ultimately file our delinquent reports with the SEC.  As previously indicated, we'll now have a Q&A session, where sell-side analysts will be permitted to ask questions.  *I'd like to remind you that your questions should be directed to the business update that we just provided and we'll not answer any further questions relating to the audit committee investigation or the delayed filing of our 10-K*.  Operator, at this time, we're ready for questions.

18
19

*            *            *

20
21
22

As it relates to the additional testing, I'll remind you that we're not going to be answering questions about that.  But it's just the continuation of the process to get our arms around all of the issues that occurred during that timeframe.  So as we said, *we believe that we think we're nearing completion there and we're working in parallel with other teams to be able to our get our filings done as expeditiously as possible and we'll leave it at that*.

23

80.     The price of Super Micro's common stock increased from its close of $18.05 per

24

share on May 3, 2018, to a close at $21.25 per share on May 4, 2018, on increased trading volume.

25

Super Micro's stock price continued to increase to nearly $24.00 over the ensuing two trading days.

26

81.     On May 10, 2018, after the close of trading, Super Micro filed a Notification of Late

27

Filing on Form 12b-25, signed by Bauer, disclosing that it could not timely complete its 3Q18 Form

28

10-Q:

Super Micro Computer, Inc. (the "Company") is unable to file its Quarterly Report on Form 10-Q for the period ended March 31, 2018 (the "Form 10-Q") in a timely manner without unreasonable effort or expense. As previously announced, the Company has been unable to file its Annual Report on Form 10-K for the fiscal year ended June 30, 2017 (the "Form 10-K"), Quarterly Report on Form 10-Q for the quarter ended September 30, 2017 ("Q1 10-Q") and Quarterly Report on Form 10-Q for the quarter ended December 31, 2017 ("Q2 10-Q").

*        *        *

The Company presented an updated compliance plan to The Nasdaq Stock Market Hearings Panel (the "Panel") on April 26, 2018 and the Company requested an additional exception period for continued listing of its common stock on The Nasdaq Global Select Market ("Nasdaq") through August 24, 2018 in order for it to complete and file its 2017 10-K and subsequent delinquent SEC quarterly filings. The Panel has since granted the Company's request to continue its listing on Nasdaq through August 24, 2018, subject to the condition that the Company becomes current with its SEC filings by that date and informs the Panel the Company is current with such filings.

82.     On May 21, 2018, after the close of trading, Super Micro filed a Current Report on Form 8-K, signed by Bauer, disclosing that it had received a letter from NASDAQ detailing additional delinquencies with listing rules but that it remained "on track" to meet the August 24, 2018 deadline:

On May 15, 2018, Super Micro Computer, Inc. (the "Company") received a letter (the "Letter") from the Listing Qualifications Department of The Nasdaq Stock Market ("Nasdaq") notifying the Company of its determination of an additional delinquency related to the Company's noncompliance with Nasdaq Listing Rule 5250(c)(1) (the "Rule") because the Company has not yet filed its Quarterly Report on Form 10-Q for the quarter ended March 31, 2018 (the "Q3 10-Q"). . . . The Letter states that the Nasdaq Hearings Panel (the "Panel") will consider this matter in their decision regarding the Company's continued listing on The Nasdaq Global Market, and that the Company should present its views with respect to this additional deficiency to the Panel in writing no later than May 22, 2018.

On May 18, 2018, the Company submitted a response to the Nasdaq Hearings Panel (the "Panel") stating that, consistent with the Company's presentation at the recent hearing before the Panel and as of the date of the reply, ***the Company believes it remains on track to file the Delinquent Reports with the SEC and thereby evidence compliance with the Rule on or before the Panel deadline of August 24, 2018***.

As the Company previously announced, the Panel has granted the Company's request to continue its listing on Nasdaq through August 24, 2018, subject to the condition that the Company becomes current with its SEC filings by that date and informs the Panel the Company is current with such filings. The Company is diligently working to become current with its SEC filings and intends to continue to take all steps necessary to regain compliance with the Rule.

83.    On July 13, 2018, after the close of trading, Super Micro filed a Current Report on Form 8-K, signed by Liang, disclosing that the Company had failed to hold a required annual meeting of shareholders:

On July 9, 2018, Super Micro Computer, Inc. (the "Company") received a letter (the "Letter") from the Listing Qualifications Department of The Nasdaq Stock Market LLC ("Nasdaq") notifying the Company of its determination of an additional deficiency related to the Company's noncompliance with the annual meeting requirement set forth in Nasdaq Listing Rule 5260(a) (the "Rule") because the Company did not hold an annual meeting of shareholders within twelve months of the end of the Company's prior fiscal year end. The Letter states that the Nasdaq Hearings Panel (the "Panel") will consider this matter in their decision regarding the Company's continued listing on The Nasdaq Global Select Market, and that the Company should present its views with respect to the additional deficiency to the Panel in writing no later than July 16, 2018.

The Company is diligently working to become current with its SEC filings and intends to continue to take all steps necessary to regain compliance with the Nasdaq Listing Rules, including the Rule.

## Super Micro Fails to Meet Filing Deadline; NASDAQ Suspends Trading

84.    On August 21, 2018, after the close of trading, Super Micro filed a Current Report on Form 8-K, signed by Liang, disclosing that its SEC filings dating back to the Company's FY17 Form 10-K would remain delinquent, and as such, the Company would face delisting proceedings:

On August 20, 2018, Super Micro Computer, Inc. (the "Company") submitted a supplemental letter to the Hearings Panel (the "Panel") of The Nasdaq Stock Market LLC ("Nasdaq") notifying the Panel that *the Company will be unable to meet the Panel's August 24, 2018 deadline to regain compliance with Nasdaq Listing Rule 5250(c)(1)* because the Company will not be able to complete and file its Annual Report on Form 10-K for its fiscal year ended June 30, 2017 (the "2017 Form 10-K") and its Quarterly Reports on Form 10-Q for its fiscal quarters ended September 30, 2017, December 31, 2017 and March 31, 2018 (collectively with the 2017 Form 10-K, the "Delinquent Reports") with the Securities and Exchange Commission ("SEC") by such date.

As previously disclosed, by decision dated May 9, 2018, the Panel granted the Company's request to continue its listing on Nasdaq's Global Select Market through August 24, 2018, subject to the condition that the Company become current with its SEC filings by that date and informs the Panel the Company is current with such filings. *While the Company has made significant progress toward completing the necessary accounting review processes, it has determined that the Delinquent Reports will not be filed with the SEC by August 24, 2018.*

*As a result of the updated timing, the Company expects that its common stock will soon be suspended from trading on Nasdaq's Global Select Market and the Panel will begin delisting proceedings.*

CONSOLIDATED COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST

85.   The Form 8-K incorporated a press release disclosing the Company would not file its delinquent reports with the SEC given the magnitude of transactions that needed to be reviewed for revenue recognition purposes and reiterated that it expected to be delisted from the NASDAQ:

> The Company is currently in the process of preparing its financial statements in light of the results of the Audit Committee investigation and other ongoing testing. *A significant number of transactions remain to be reviewed.* To date, none of the hundreds of reviewed transactions has involved revenue that could not ultimately be recognized, however, we have not concluded that a restatement to previously filed financial results is necessary. The Company's cumulative cash flows have not been impacted by the findings of the investigation or other testing, although the expenses associated with the investigation and testing have been significant.

> *The delay primarily relates to the magnitude of work that the Company still must perform in order to review the Company's accounting judgments, estimates and records for transactions that occurred during fiscal years 2015 through 2017, as well as the Company's assessment and conclusions on the effectiveness of its internal control over financial reporting during such periods, so that it can complete the financial statements for the 2017 Form 10-K.* Although the Company has made substantial progress in these matters and committed extraordinary resources and personnel toward the effort, the amount of work is substantial and the additional testing required has taken longer than anticipated. The Company is committed to filing its Delinquent Reports as soon as practicable.

> Charles Liang, Chairman and Chief Executive Officer commented, "Despite our substantial progress in these matters, we are very disappointed that we did not meet the filing deadline. *We are strongly committed to completing our SEC filings as soon as possible. In addition, we continue to strengthen our internal accounting, audit and compliance functions*. . . ."

> *As a result of the updated timing, the Company expects that its common stock will soon be suspended from trading on Nasdaq's Global Select Market and the Panel will begin delisting proceedings.* If the Panel decides to delist the Company's common stock, the Company will evaluate all of its options, including filing an appeal to the Nasdaq Listing and Hearing Review Council.

> Following a possible suspension of trading in the Company's common stock on Nasdaq, the Company expects that its shares will be quoted over the- counter on the OTC Markets. The Company intends to continue to work diligently toward completing its Delinquent Reports, regaining compliance with its SEC reporting obligations, and regaining its listing on Nasdaq or another national stock exchange as soon as practicable.

86.   Later that day, Super Micro held an earnings conference call where Liang and Bauer disclosed that the Company still had a substantial amount of transactions to review for revenue recognition purposes and reiterated that its stock would be suspended from trading on the NASDAQ:

> [Bauer]: We have worked diligently and deployed significant resources towards completing the 2017 and 2018 financial statements, but are not able to file by the deadline of August 24, 2018. . . . We have made tremendous progress on this matter,

CONSOLIDATED COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS -
3:18-cv-00838-JST                                                                      - 36 -

having completed the analysis of specific revenue transactions identified through our audit committee's investigation.

To-date, our cash flows have not been impacted by our findings and no transaction reviewed by the company as part of this process has involved revenue that could not ultimately be recognized nor have we concluded that a restatement of financial results is necessary. ***The question you must be asking is; why is this matter taking so long.  The answer is that in order to be thorough, we are reviewing transactions near the end of each quarter for similar issues found in the earlier testing, but particularly as it relates to the matching of purchase order and shipping terms to the timing of revenue***.

As we are a high-volume business, this entails locating documentation that is onsite, archived, or [ph] at third-parties.  ***I'm reviewing thousands of revenue transactions in detail using a structured approach.  There are a number of issues***. However, let me share an example of an issue that has arisen in our reviews.

We have from time to time offered free shipping to customers even though terms of our agreements with those customers provided that the customer would arrange for its own shipping company to pick the products up at our factory shipping dock. ***This practice had the unintended accounting consequence of converting the transaction from an Ex Works transaction to an FOB transaction.  If end-of-quarter shipments are adjusted in this way, it can cause the appropriate date for recognizing the revenue for those shipments to slip from one quarter into the next.  This is one example of what we are looking for as we review thousands of transactions***.

The company believes the revenue recognized for review transactions is valid revenue. ***The main issue is the quarter in which revenue must be recognized.  We have not yet determined whether the magnitude of any timing adjustment will be material to any of our previously filed financial statements***.

We continue to work diligently to complete the review, assess the impact, and complete our financial statements and assessment of internal controls over financial reporting.  ***We have engaged KPMG to assist us with our review*** and we are also working closely with our independent auditor, Deloitte, to complete the job.  We appreciate the efforts of both KPMG and Deloitte.

***We are not able today to project the date by which we will complete this review and file all our delinquent SEC reports, but we believe that date is not too far in the future***.

87. On August 21, 2018, during the 4Q18 earnings conference call, analysts recognized that the Company's stock price was declining in reaction to the Super Micro's delayed SEC filings and noted that the Company had disclosed significant work remained to be done in connection with the delinquent reports:

[Nehal Sushil Chokshi]: ***But, Kevin, as you know, the stock is reacting to delayed filing*** and really great color on some of the examples that's going on.  You made a statement at the end that you believe that the ability to [ph] solve these problems is not too far away, but in the second press release of the day it does say that there is

still significant work to do.  So can you help bridge the delta between the verbal comment and what's in the file – in what's the 8-K?

88.      In response, Bauer admitted that the Company still had a substantial amount of work remaining, possessed "pretty good visibility" on completing the process, had analyzed the largest transactions first and was just now moving toward assessing smaller transactions:

[Bauer]: Yeah. So I think it is true that *we still have a substantial amount of work to do*.  I think what we said in terms of being able to see it in the future is that *now that we are later in the process we actually have pretty good visibility on what it takes to remain to be able to complete the process*.  So that's how I would string them together that it's one of better visibility, but there's still a fair amount to do.

[Nehal Sushil Chokshi]:  Okay.  *So the process that was defined on what needs to be done to review a transaction was established relatively late relative to when the investigation started about a year ago*.  Is that fair to say?

[Bauer]: *Well, certainly, as the results of the investigation came in, we were able to see a little bit more in terms of the processes that we [ph] would needing [] to do*.  *So certainly it was evolving*.

[Nehal Sushil Chokshi]: Okay.  And just to be clear, you said significant transactions left for review, but you've already reviewed hundreds of transactions. So are you only a fraction of the way through?  Are you like 10% to 20% the way through or are you more like 80%, 90% the way through of what needs to be reviewed?

[Bauer]: Yeah.  We really can't go into that level of detail.  *What I can share with you is that we've taken the approach of largest transactions and are now going towards smaller transactions*.

89.      On August 21, 2018, Wells Fargo issued a report titled "SMCI: Suspension of Coverage," disclosing that Wells Fargo was suspending research coverage in light of Super Micro's failure to meet SEC filing deadlines and the risk of NASDAQ delisting:  "[O]ur current policy is that we will suspend research coverage when the Analyst is unable to maintain our existing coverage status due to various legal, regulatory and/or company policy circumstances."

90.      On these disclosures, the price of Super Micro's common stock declined from its close of $18.35 per share on August 21, 2018, to a close at $15.65 per share on August 22, 2018 – a decline of over 14.7% – on increased trading volume.

91.      On August 22, 2018, Susquehanna Financial Group issued a report titled "Super Micro: Suspending Coverage," disclosing that they were suspending coverage of their ratings and estimates due to Super Micro's failure to meet SEC filing deadlines and NASDAQ listing standards:

1    *Why is it taking the company so long to complete the reviews*: SMIC
2    disclosed last night that its cash flows have not been impacted by the on-going
     investigation, and there is no need for restatement of financial results.  However,
3    ***SMCI is still reviewing transactions near the end of each quarter for similar issues
     found in the earlier reviews, but particularly as it relates to the matching of
4    purchase order and shipping terms to the timing of revenue.  In our view, lack of
     proper internal controls has lengthened this review process.  Yes, there is no
5    restatement, but lack of proper internal controls has also made it difficult for the
     company to provide necessary documentation for the past transactions which is
6    consequently [sic] making it difficult for the company to determine the timing of
     revenue recognition***.

7    92.    On August 22, 2018, CFRA issued a report detailing concerns about Super Micro's

8    failure to meet SEC filing deadlines and anticipated NASDAQ delisting:

9    ***We are growing wary after SMCI states it has been unable to complete the
     analysis of specific revenue transactions found through its audit committee's
10   investigation.  We expect SMCI to be delisted from the Nasdaq Exchange given its
     inability to properly file SEC required documents***.

11

12                              *        *        *

13   ***We remain concerned about the timetable as well as necessary costs it will take for
     SMCI to complete its review, as the company still noted a substantial amount of
     transactions that need to be reviewed***.
14

15   Our 12-month target price of $20 is based on a P/E of 7.7X our FY 19
     operating  EPS  estimate,  below  comparable  peers  ***to  reflect  limited  visibility
16   surrounding accounting issues***.

17   93.    CFRA's report also contained a research note dated August 22, 2018, 8:33 a.m. ET,

18   which reiterated that the limited visibility surrounding Super Micro's failure to meet SEC filing

19   deadlines coupled with NASDAQ delisting and the substantial number of transactions that needed to

     be reviewed impacted the value of the Company's shares:
20

21   08:33 am ET . . . CFRA KEEPS HOLD OPINION ON SHARES OF SUPER
     MICRO COMPUTER, INC. (SMCI 18.35***): ***We cut our 12-month target to $20
22   from $24, on steep peer-discount P/E of 7.7X our FY 19 (Jun.) EPS estimate given
     limited visibility surrounding accounting issues***. . . .   While SMCI is benefiting
23   from secular trends within its end-markets, we are growing more cautious after
     SMCI states it has been unable to complete the analysis of specific revenue
24   transactions identified through its audit committee's investigation.  While SMCI
     cited its findings thus far will not impact its cash flows, we expect the company to be
25   delisted from the Nasdaq Exchange given its inability to properly file SEC required
     documents.  We remain concerned about the timetable as well as necessary costs it
26   will take for SMCI to complete its review, as it still noted a substantial amount of
     transactions that need to be reviewed.  /Angelo Zino, CFA

27

28

CONSOLIDATED COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS -
3:18-cv-00838-JST                                                                      - 39

94.     On August 23, 2018, Super Micro issued a press release titled "Super Micro® Announces Suspension of Trading of Common Stock on Nasdaq and its Intention to Appeal," disclosing the Company anticipated its stock suspension from trading on the NASDAQ:

> **Super Micro** Computer, Inc. (NASDAQ:SCMI) (the "Company"), a global leader in high performance, high-efficiency server, storage technology and green computing, ***today announced that, as expected, the Company received a notification letter from** The **Nasdaq** Stock Market Hearings Panel (the "Panel") **on August 22, 2018, indicating that trading in the Company's common stock on Nasdaq's Global Select Market will be suspended effective at the open of business on August 23, 2018.***

> \*     \*     \*

> While the Company's common stock is suspended from trading on Nasdaq, the Company expects that its shares will be quoted on the OTC Markets under the trading symbol SMCI.  For quotes or additional information on the OTC Markets, you may visit http://www.otcmarkets.com.

95.     On August 23, 2018, after the close of trading, Super Micro filed a Current Report on Form 8-K, signed by Liang, disclosing the NASDAQ Hearing Panel had delisted the Company's common stock and suspend trading on the NASDAQ as of August 23, 2018.   The Company indicated that it intended to appeal:

> On August 22, 2018, Super Micro Computer, Inc. (the "Company") received a letter from the Hearings Panel (the "Panel") of The Nasdaq Stock Market LLC ("Nasdaq") notifying the Company that ***the Panel has determined to delist the Company's common stock and that trading on Nasdaq's Global Select Market will be suspended effective at the open of business on August 23, 2018***.

> \*     \*     \*

> The Company intends to appeal the Panel's decision to the Nasdaq Listing and Hearing Review Council.  During the appeal period, trading in the Company's common stock on Nasdaq will remain suspended and Nasdaq will not delist the Company's common stock pending such appeal.

> \*     \*     \*

> While the Company's common stock is suspended from trading on Nasdaq, the Company expects that its shares will be quoted on the OTC Markets under the trading symbol SMCI.

96.     On August 29, 2018, after the close of trading, Super Micro filed a Notification of Late Filing on Form 12b-25, signed by Bauer:

> Super Micro Computer, Inc. (the "Company") is unable to file its Annual Report on Form 10-K for fiscal year ended June 30, 2018 (the "2018 Form 10-K") in a timely manner without unreasonable effort or expense.  As previously announced,

the Company has been unable to file its Annual Report on Form 10-K for the fiscal year ended June 30, 2017 (the "2017 Form 10-K"), Quarterly Report on Form 10-Q for the quarter ended September 30, 2017 ("Q1 10-Q"), Quarterly Report on Form 10-Q for the quarter ended December 31, 2017 ("Q2 10-Q") and Quarterly Report on Form 10-Q for the quarter ended March 31, 2018 ("Q3 10-Q") (the 2017 Form 10-K, Q1 10-Q, Q2 10-Q, Q3 10-Q and the 2018 Form 10-K being collectively referred to herein as the "Delinquent Reports"). The Audit Committee of the Company's Board of Directors has completed the previously disclosed investigation. The Company is currently in the process of preparing its financial statements in light of the results of the Audit Committee investigation and other ongoing testing. *A significant number of transactions remain to be reviewed*.

   *The delay primarily relates to the magnitude of work that the Company still must perform in order to review the Company's accounting judgments, estimates and records for transactions that occurred during fiscal years 2015 through 2017, as well as the Company's assessment and conclusions on the effectiveness of its internal control over financial reporting during such periods, so that it can complete the financial statements for the 2017 Form 10-K and subsequently complete the other delinquent reports*. Although the Company has made substantial progress in these matters and committed extraordinary resources and personnel toward the effort, the amount of work is substantial and the additional testing required has taken longer than anticipated.

## ADDITIONAL SCIENTER ALLEGATIONS

97.    Defendants acted with scienter in that they knew, or were deliberately reckless in not knowing, that: (i) the public documents and statements issued or disseminated in Super Micro's name, or their own name, were materially false and misleading; (ii) that such statements or documents would be issued or disseminated to the investing public; and (iii) substantially participated or acquiesced in the issuance of such statements or documents as primary violations of the federal securities laws.

98.    By virtue of their receipt or deliberate disregard of information reflecting the true facts regarding Super Micro, their control over, receipt or modification of Super Micro's materially misleading statements, or their other associations with the Company, each Defendant was privy to confidential information concerning Super Micro and knowingly or with deliberate recklessness participated in the fraudulent scheme and conduct alleged herein.

99.    The departure of numerous high-ranking management further supports scienter. Scienter may also be inferred from Hideshima's absence from the October 26, 2017 earnings conference call purportedly because he was "working very hard on the issues related to the filing of the 10-K at this moment," yet he "resigned" on January 30, 2018, the same date the Company

1  announced the appointment of a new CFO and the Audit Committee completed its internal

2  investigation. As of January 30, 2018, the Audit Committee investigation had been proceeding since

3  October 26, 2017, and more likely since August 29, 2017, when the Company filed a notification

4  that it would need additional time before filing its FY17 Form 10-K. Notably, two other high

5  ranking sales managers resigned on January 30, 2018, further strengthening the inference that

6  Defendants knew, or were deliberately reckless not knowing, about the magnitude of the accounting

7  failures.

8      100.   Scienter is also inferred by Defendants' failure to comply with basic accounting rules

9  governing revenue recognition. As explained at n.9, ASC 605 concisely and clearly states that

10  revenue is realized or realizable and earned only when all of the following criteria are met:

11         (a)   "Persuasive evidence of an arrangement exists," with the term "arrangement"

12  meaning the final understanding between the parties as to the specific nature and terms of the

13  agreed-upon transaction";

14         (b)   "Delivery has occurred or services have been rendered";[10]

15         (c)   "The seller's price to the buyer is fixed or determinable"; and

16         (d)   "Collectability is reasonably assured."

17  Based on Bauer's statements, Super Micro violated the second criterion that delivery had occurred

18  before revenue could be recognized. Specifically, by offering free shipping to certain customers on

19  their end-of-quarter shipments, the Company changed the timing of appropriate revenue recognition

20  to when the customer physically received the product (*e.g.*, free-on-board destination terms). *See*

21  ¶86. With these end-of-quarter shipments, based on Bauer's statements, Super Micro improperly

22  recognized revenue because the Company retained the risks of ownership and title did not pass to the

23  customer until the product was received in the following quarter.[11] This premature revenue

24  recognition was a basic accounting violation based on clear, defined rules and did not involve

25  significant judgment or estimates. As a result, Defendants' statements that it followed GAAP and

---

[10]   In further explanation of the delivery criterion, ASC 605 references FASB Concepts Statement 5, which states: "Revenue should not be recognized until the seller has substantially accomplished what it must do pursuant to the terms of the arrangement, which usually occurs upon delivery or performance of services." ASC 605-10-S99-1.

[11]   ASC 605-10-S99-1.

CONSOLIDATED COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS -
3:18-cv-00838-JST                                                          - 42

1  recognized revenue only when all four of the revenue recognition criteria were met were false and

2  misleading.

3       101.    The inference of scienter is further strengthened by the existence of SEC enforcement

4  activities at Super Micro.  At least one research firm indicated that such SEC enforcement activities

5  began at least by October 23, 2015, and were still unresolved as of July 11, 2018, supporting the

6  inference that the SEC is investigating Super Micro's internal control and accounting failures and

7  inability to timely file its financial statements.

8       102.    Each of the Individual Defendants was a senior executive involved in Super Micro's

9  daily operations with access to all material information regarding the Company's core operations.

10  Each of the Individual Defendants is presumed to have knowledge of all material facts regarding

11  Super Micro's core business.  Given the importance of the Company's financial results including

12  revenues and earnings, internal controls and maintaining compliance with NASDAQ listing

13  requirements, the inference of scienter is strong.  Moreover, the SOX certifications make clear Super

14  Micro's CEO and CFO supervised and analyzed the Company's disclosure controls and internal

15  controls over financial reporting.

16       103.    The core operations inference as to Liang is particularly strong because he is known

17  to obsess over every detail of Super Micro's business and is the chief operating decision maker at the

18  Company.  According to a former Super Micro sales manager, Liang "'is the person who approves

19  and looks at everything the company is doing – every new product, marketing effort, sales effort,

20  anything you want to do or promote.'"  The same article notes: "'As an individual, Charles [Liang] is

21  very aggressive and motivated,' said Patrick P. Gelsinger, Intel's senior vice president in charge of

22  server chips.  'Every once in a while, he appears on the verge of reckless, but if you're going up

23  against the big guys, you have to be willing to take risks.'"  Super Micro's FY16 Form 10-K reads:

24  "Charles Liang, our President, Chief Executive Officer and Chairman of the Board, is critical to the

25  overall management of our company . . . .  His experience in running our business and his personal

26  involvement in key relationships with suppliers, customers and strategic partners are extremely

27  valuable to our company."

28

104.     The magnitude and length of time of the Company's internal investigation, and remediation efforts, with no set end point, also supports scienter.  The investigation has been ongoing for over a year and the Company is reviewing thousands of transactions over a three-year time period.  The fact that the Company must review thousands of sales transactions over a three-year period demonstrates a deliberately reckless and absence of internal controls over the revenue recognition process.  Moreover, Super Micro has admitted that revenue was incorrectly recognized on some transactions and is continuing to investigate for additional issues which supports the complete lack of internal controls and that Defendants signed false SOX certifications claiming their effectiveness during the Class Period.  The magnitude of work that Super Micro still needs to finish before filing its delinquent reports with the SEC strongly suggests that Defendants would have known, or were deliberately reckless in not knowing, of the lack of internal controls and disclosure controls.

## LOSS CAUSATION AND ECONOMIC LOSS

105.     During the Class Period, as detailed herein, Defendants made false and misleading statements and omissions regarding Super Micro's financial results and operations, the sufficiency of its internal controls and consistency with GAAP of its revenue recognition practices, as well as the status of its investigation and ability to become current on its delinquent reports.  This artificially inflated Super Micro's stock price and operated as a fraud or deceit on all persons who purchased Super Micro's common stock during the Class Period (the "Class").  When Defendants' prior misrepresentations, omissions and fraudulent conduct became apparent to the market Super Micro's stock price fell precipitously, as the prior artificial inflation came out of the stock price over time.  As a result of their purchases of Super Micro common stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.  The timing and magnitude of the declines in Super Micro's stock price negates any inference that the loss suffered by Plaintiff and other Class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to Defendants' fraudulent conduct.

1    106.    Defendants' false or misleading statements and omissions had their intended effect,

2    causing Super Micro's common stock to trade at artificially inflated prices throughout the Class

3    Period, reaching as high as $28.80 per share on December 19, 2016.  The economic loss, *i.e.*,

4    damages, suffered by Plaintiff and other members of the Class was a direct and proximate result of

5    Defendants' misrepresentations artificially inflating Super Micro's common stock price and the

6    subsequent significant declines in the value of Super Micro common stock as the true state of the

7    Company's operations was revealed to the market in a series of partial disclosures correcting the

8    misrepresentations or revealing the economic impact thereof.

9    107.    Defendants' false and misleading statements and omissions were revealed to the

10   market through a series of partial disclosures – some mitigated by further false or misleading

11   statements or omissions – beginning with the revelation on August 29, 2017, of the Company's

12   inability to timely file its FY17 Form 10-K and extending through (and potentially beyond) August

13   21, 2018, following the announcement of its impending suspension from the NASDAQ and its

14   ongoing investigation into the accounting treatment of thousands of transactions and its potential

15   impact on the Company's historical financial statements.

16                                            **NO SAFE HARBOR**

17   108.    Super Micro's verbal "safe harbor" warnings accompanying its oral forward-looking

18   statements ("FLS") issued during the Class Period were ineffective to shield those statements from

19   liability.

20   109.    Defendants are also liable for any false or misleading FLS plead because, at the time

21   each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized

22   or approved by an executive officer of Super Micro who knew that the FLS was false.  None of the

23   historic or present tense statements made by Defendants were assumptions underlying or relating to

24   any plan, projection or statement of future economic performance, as they were not stated to be such

25   assumptions underlying or relating to any projection or statement of future economic performance

26   when made, nor were any of the projections or forecasts made by Defendants expressly related to or

27   stated to be dependent on those historic or present tense statements when made.

28

110.     Super Micro's purported cautionary language is inadequate to insulate Defendants' false statements under the statutory safe harbor because each of the disclosures is vague and boilerplate language.  For example, warning that "[b]ecause of the inherent limitations in all control systems, no evaluation of controls can provide absolute assurance that all control issues and instances of management override or improper acts, if any, have been detected" and that "[t]hese inherent limitations include the realities that judgments in decision making can be faulty, and that breakdowns can occur because of simple errors or mistakes" applies to virtually any company.  The language is so vague as to be meaningless.  Similarly meaningless are the universally applicable and contingent statements that:

- "If we are unable to favorably assess the effectiveness of our internal control over financial reporting, or if our independent auditors are unable to provide an unqualified attestation report on our internal control over financial reporting, our stock price could be adversely affected."

- "If we identify such issues or if we are unable to produce accurate and timely financial statements, our stock price may be adversely affected and we may be unable to maintain compliance with Nasdaq listing requirements."

- "If we fail to maintain effective internal controls in future periods, our operating results, financial position and stock price could be adversely affected."

### APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET

111.     Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

(a)     Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)     The omissions and misrepresentations were material;

(c)     The Company's stock traded in an efficient market;

(d)     The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's stock; and

(e)     Plaintiff and other members of the Class purchased Super Micro common stock between the time Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

1    112.   At all relevant times, the market for Super Micro's common stock was efficient for

2 the following reasons, among others:

3           (a)     As a regulated issuer, Super Micro filed periodic public reports with the SEC

4 with the exception of its delinquent reports (*i.e.*, its annual reports on Forms 10-K for FY17 and

5 FY18 ended June 30, 2017 and 2018, respectively, and its quarterly reports on Forms 10-Q for 1Q17

6 ended September 30, 2017, 2Q18 ended December 31, 2017 and 3Q18 ended March 31, 2018);

7           (b)     Super Micro's stock traded on the NASDAQ until August 22, 2018, and

8 thereafter its shares were quoted on the OTC Markets under the trading symbol SMCI; and

9           (c)     Super Micro regularly communicated with public investors via established

10 market communication mechanisms, including through regular dissemination of press releases on the

11 major news wire services and through other wide-ranging public disclosures, such as

12 communications with the financial press, securities analysts and other similar reporting services.

13                          **CLASS ACTION ALLEGATIONS**

14    113.   Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules

15 of Civil Procedure on behalf of all members of the Class.  Excluded from the Class are Defendants

16 and their families, and directors and officers of Super Micro and their families and affiliates.

17    114.   The members of the Class are so numerous that joinder of all members is

18 impracticable.  The disposition of their claims in a class action will provide substantial benefits to

19 the parties and the Court.  Super Micro has 48.69 million shares of common stock outstanding.

20    115.   There is a well-defined community of interest in the questions of law and fact

21 involved in this case.  Questions of law and fact common to the members of the Class which

22 predominate over questions which may affect individual Class members include:

23          (a)     Whether the Exchange Act was violated by Defendants;

24          (b)     Whether Defendants omitted or misrepresented material facts;

25          (c)     Whether Defendants' statements omitted material facts necessary in order to

26 make the statements made, in light of the circumstances under which they were made, not

27 misleading;

28

1    (d)      Whether Defendants knew, or were deliberately reckless in not knowing, that

2    their statements were false and misleading;

3    (e)      Whether the price of Super Micro's common stock was artificially inflated;

4    and

5    (f)      The extent of damage sustained by Class members and the appropriate

6    measure of damages.

7    116.    Plaintiff's claims are typical of those of the Class because Plaintiff and the Class

8    sustained damages from Defendants' wrongful conduct.

9    117.    Plaintiff will adequately protect the interests of the Class and has retained counsel

10   who are experienced in class action securities litigation.  Plaintiff has no interests which conflict

11   with those of the Class.

12   118.    A class action is superior to other available methods for the fair and efficient

13   adjudication of this controversy.

14   ## COUNT I

15   **For Violation of §10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants**

16

17   119.    Plaintiff incorporates ¶¶1-118 by reference.

18   120.    During the Class Period, Defendants disseminated or approved the false statements

19   specified above, which they knew, or were deliberately reckless in not knowing, were misleading in

20   that they contained misrepresentations and failed to disclose material facts necessary in order to

21   make the statements made, in light of the circumstances under which they were made, not

22   misleading.

23   121.    Defendants violated §10(b) of the Exchange Act and Rule 10b-5 promulgated

24   thereunder in that they:

25   (a)      Employed devices, schemes, and artifices to defraud;

26   (b)      Made untrue statements of material facts or omitted to state material facts

27   necessary in order to make the statements made, in light of the circumstances under which they were

28   made, not misleading; or

1          (c)     Engaged in acts, practices, and a course of business that operated as a fraud or

2   deceit upon Plaintiff and others similarly situated in connection with their purchases of Super Micro

3   common stock during the Class Period.

4         122.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of

5   the market, they paid artificially inflated prices for Super Micro's common stock.  Plaintiff and the

6   Class would not have purchased Super Micro common stock at the prices they paid, or at all, if they

7   had been aware that the market prices had been artificially and falsely inflated by Defendants'

8   misleading statements.

9         123.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the

10   other members of the Class suffered damages in connection with their purchases of Super Micro

11   common stock during the Class Period.

12   **COUNT II**

13   **For Violation of §20(a) of the Exchange Act**
   **Against All Defendants**

14

15        124.    Plaintiff incorporates ¶¶1-123 by reference.

16        125.    The Individual Defendants acted as controlling persons of Super Micro within the

17   meaning of §20(a) of the Exchange Act.  By virtue of their positions and their power to control

18   public statements about Super Micro, the Individual Defendants had the power and ability to control

19   the actions of Super Micro and its employees.  Super Micro controlled the Individual Defendants and

20   its other officers and employees.  By reason of such conduct, Defendants are liable pursuant to

21   §20(a) of the Exchange Act.

22

23

24

25

26

27

28

1    **PRAYER FOR RELIEF**

2        WHEREFORE, Plaintiff prays for relief and judgment, as follows:

3        A.    Determining that this action is a proper class action and certifying Plaintiff as Class

4   representatives under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead

5   Counsel;

6        B.    Awarding compensatory damages in favor of Plaintiff and the other Class members

7   against all Defendants, jointly and severally, for all damages sustained as a result of Defendants'

8   wrongdoing, in an amount to be proven at trial, including interest thereon;

9        C.    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this

10  action, including counsel fees and expert fees; and

11       D.    Such equitable, injunctive or other relief as may be deemed appropriate by the Court.

12    **JURY DEMAND**

13       Plaintiff demands a trial by jury.

14  DATED:  September 24, 2018          ROBBINS GELLER RUDMAN
                                          & DOWD LLP
15                                      SHAWN A. WILLIAMS
                                        DANIEL J. PFEFFERBAUM
16                                      ARMEN ZOHRABIAN

17

18                                           s/ Daniel J. Pfefferbaum
                                        DANIEL J. PFEFFERBAUM
19
                                        Post Montgomery Center
20                                      One Montgomery Street, Suite 1800
                                        San Francisco, CA  94104
21                                      Telephone:  415/288-4545
                                        415/288-4534 (fax)
22
                                        Lead Counsel for Plaintiffs
23

24

25

26

27

28

1

<u>CERTIFICATE OF SERVICE</u>

2

I hereby certify under penalty of perjury that on September 24, 2018, I authorized the

3

electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will

4

send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List,

5

and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to

6

the non-CM/ECF participants indicated on the attached Manual Notice List.

7

s/ Daniel J. Pfefferbaum
DANIEL J. PFEFFERBAUM

8

9

ROBBINS GELLER RUDMAN
& DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
E-mail:  dpfefferbaum@rgrdlaw.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONSOLIDATED COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS -
3:18-cv-00838-JST

## Mailing Information for a Case 3:18-cv-00838-JST Hessefort v. Super Micro Computer, Inc. et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Richard Martin Heimann**
  rheimann@lchb.com

- **J Alexander Hood , II**
  ahood@pomlaw.com,abarbosa@pomlaw.com

- **Lester Rene Hooker**
  lhooker@saxenawhite.com,e-file@saxenawhite.com,cwallace@saxenawhite.com

- **Jeremy A Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com,lpvega@pomlaw.com

- **Katherine Collinge Lubin**
  klubin@lchb.com,rtexier@lchb.com

- **Tricia Lynn McCormick**
  triciam@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,kmsaletto@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Daniel Jacob Pfefferbaum**
  DPfefferbaum@rgrdlaw.com,smorris@rgrdlaw.com,khuang@rgrdlaw.com,mburch@rgrdlaw.com,abell@rgrdlaw.com,e_file_sd@rgrdlaw.com,6064570420@filings.dc

- **Laurence M. Rosen**
  lrosen@rosenlegal.com,larry.rosen@earthlink.net

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Armen Zohrabian**
  AZohrabian@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)