ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
DANIEL J. PFEFFERBAUM (248631)
ARMEN ZOHRABIAN (230492)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
dpfefferbaum@rgrdlaw.com
azohrabian@rgrdlaw.com

Lead Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LOGAN HESSEFORT, Individually and on Behalf of All Others Similarly Situated,<br><br>                  Plaintiff,<br><br>   vs.<br><br>SUPER MICRO COMPUTER, INC., CHARLES LIANG, HOWARD HIDESHIMA and PERRY G. HAYES,<br><br>                  Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Lead Case No. 3:18-cv-00838-JST

CLASS ACTION

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

DEMAND FOR JURY TRIAL

1521375_1

# TABLE OF CONTENTS

**Page**

SUMMARY OF ACTION......................................................................................................1

INTRODUCTION .................................................................................................................1

JURISDICTION AND VENUE ............................................................................................8

THE PARTIES.......................................................................................................................8

BACKGROUND ..................................................................................................................10

    Before the Class Period Super Micro Twice Misses SEC Filing Deadlines and
    Implements New Accounting System to Improve Internal Controls.................................10

FALSE AND MISLEADING STATEMENTS ISSUED DURING THE CLASS
PERIOD ..............................................................................................................................11

    Super Micro Announces 4Q16 and FY16 Financial Results and Files Form 10-K ..........11

    Super Micro Announces 1Q17 Financial Results and Files Form 10-Q ..........................17

    Super Micro Announces 2Q17 Financial Results and Files Form 10-Q ..........................18

    Super Micro Announces 3Q17 Financial Results and Files Form 10-Q ..........................20

    Super Micro Announces Preliminary 4Q17 Financial Results ........................................21

    Super Micro Requests 15-Day Extension to File Form 10-K...........................................24

    Super Micro Fails to Meet Extended Deadline to File Form 10-K and Announces
    Audit Committee Review ................................................................................................25

    Super Micro Reveals Premature Revenue Recognition; Fails to File 1Q18 Form
    10-Q ...............................................................................................................................26

    Super Micro Announces Departure of Senior Executives and Cannot State if Its
    Historical Financial Statements Are Accurate; Audit Committee Investigation
    Results in Further Inquiry and Delay................................................................................30

POST-CLASS PERIOD EVENTS AND DISCLOSURES...................................................32

    Super Micro Subject to Delisting by NASDAQ ..............................................................34

    Super Micro Fails to File 3Q18 Form 10-Q....................................................................35

    Super Micro Fails to Meet Filing Deadline; NASDAQ Suspends Trading.......................38

    Super Micro Announces Restatement and Material Weaknesses.....................................44

SUPER MICRO'S FINANCIAL STATEMENTS WERE MATERIALLY MISSTATED .........47

    Defendants Will Restate Super Micro's Financial Statements ..........................................47

Defendants Identified Material Weaknesses in Internal Controls and Ineffective Disclosure Controls in the Restatement Announcement ....................................................49

Super Micro's Restatement Announcement Is an Admission of Falsity ...........................51

Defendants' GAAP Violations and Announced Restatement Were Material ..................52

Defendants' Violations of SEC Regulations Related to Super Micro's Inadequate Internal Controls ....................................................53

ADDITIONAL SCIENTER ALLEGATIONS ...........................................................................55

LOSS CAUSATION AND ECONOMIC LOSS ........................................................................59

NO SAFE HARBOR ..................................................................................................................60

APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET ..........61

CLASS ACTION ALLEGATIONS ..........................................................................................62

COUNT I ....................................................................................................................63

COUNT II ...................................................................................................................64

PRAYER FOR RELIEF .............................................................................................................65

JURY DEMAND ........................................................................................................................65

1.     Lead Plaintiff New York Hotel Trades Council & Hotel Association of New York City, Inc. Pension Fund ("Plaintiff" or "New York Hotel Pension Fund"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Super Micro Computer, Inc.'s ("Super Micro" or the "Company") press releases, United States Securities and Exchange Commission ("SEC") filings, analyst reports, media reports and other publicly disclosed information about the Defendants.[1] Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**SUMMARY OF ACTION**

2.     This is a securities fraud class action alleging violations of the anti-fraud provisions of the federal securities laws on behalf of all purchasers of the common stock of Super Micro between August 5, 2016, and January 30, 2018, inclusive (the "Class Period"). The claims asserted herein are brought against Super Micro and certain of its current and former officers and directors, including Charles Liang ("Liang"), the Company's President, Chief Executive Officer ("CEO") and Chairman of the Board (Principal Executive Officer), Howard Hideshima ("Hideshima"), former Senior Vice President and Chief Financial Officer ("CFO") until January 30, 2018, and Perry G. Hayes ("Hayes"), Senior Vice President-Investor Relations.

3.     During the Class Period, Defendants violated §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5, by making false and misleading statements concerning the Company's operations, financial performance and prospects.

**INTRODUCTION**

4.     Super Micro was incorporated in California in September 1993, and reincorporated in Delaware in March 2007. The Company is headquartered in San Jose, California. During the Class

---

[1]     As defined below.

1521375_1

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                                                                      - 1 -

Period, the Company traded on the NASDAQ Global Select Market ("NASDAQ") under the ticker symbol "SMCI."  The Company bills itself as a global leader in high-performance, high-efficiency server technology and innovation, and as a premier provider of end-to-end green computing solutions and integration/support services for Data Center, Cloud Computing, Enterprise IT, Big Data, High Performance Computing ("HPC") and internet of things ("IoT") Embedded Systems worldwide.

5.    In 2015, prior to the Class Period, the Company twice failed to timely file its required financial disclosures with the SEC.  First, at the end of August 2015, the Company required a 15-day extension to file its FY15 Form 10-K after discovering irregularities regarding certain marketing expenses; second, in November 2015, the Company disclosed issues with extended warranties which should have been accounted for as deferred revenue, resulting in a delayed 1Q16[2] Form 10-Q and a prior period adjustment.  Under heightened scrutiny, the Company assured investors that it had taken the necessary steps to remedy these issues, including through substantial investment in the implementation of an SAP accounting system.

6.    On July 18, 2016, approximately two weeks prior to the Class Period, Super Micro pre-announced disappointing preliminary results for the completed 4Q16, including revenue of $520-$524 million, down from previous guidance of $580-$640 million, and earnings per share ("EPS") of $0.15-$0.17, down from previous guidance of $0.46-$0.58.  This pre-announcement put significant pressure on the Company to deliver at the higher end of their pre-announced ranges going forward.  As one analyst put it going into the August 4, 2016 earnings conference call: "Thursday's call has the potential to be a pivotal event for the company."[3]

7.    On August 4, 2016, after the close of trading, on the eve of the Class Period, the Company reported 4Q16 and FY16 financial results, including revenues of $524 million and EPS of $0.20, both of which met or exceeded the pre-announced figures, and gave 1Q17 revenue guidance

---

[2]    Super Micro's fiscal year ends on June 30.  1Q refers to the period ending September 30; 2Q refers to the period ending December 31; 3Q refers to the period ending March 31; and 4Q refers to the period ending June 30.

[3]    Roth Capital Partners August 2, 2016 Company Note.

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                                    - 2 -

of $470-$550 million and EPS guidance of $0.15-$0.30.  Liang described Super Micro as "one of the fastest growing companies in the IT industry" and well-positioned going forward.  The Company's stock price rose to above $21 on these false and misleading statements and omissions.

8.      On August 26, 2016, the Company filed its FY16 Form 10-K which materially misrepresented the Company's commitment to effective disclosure controls and procedures and noted that the Company had remediated prior-year material weaknesses in internal controls.  The Form 10-K disclosed that management had evaluated the Company's internal controls over financial reporting, had determined them to be effective as of June 30, 2016, and claimed that the consolidated financial statements were presented consistent with generally accepted accounting principles ("GAAP").  Moreover, the Company falsely stated it only "recognize[d] revenue from sales of products when persuasive evidence of an arrangement exists, shipment has occurred and title has transferred, the sales price is fixed or determinable, collection of the resulting receivable is reasonably assured, and all significant obligations have been met."  The FY16 Form 10-K also disclosed that the Company had "adopted a 'Code of Business Conduct and Ethics'" applicable to all employees and further referenced senior officers' responsibility for maintaining sufficient internal controls over financial reporting.  The FY16 Form 10-K also attached Sarbanes-Oxley Act of 2002 ("SOX") certifications, signed by Liang and Hideshima, attesting that the Company's financial statements did not contain false or misleading statements, that each had designed the Company's disclosure controls and internal controls over financial reporting and that such controls were effective.

9.      Defendants continued their false and misleading representations concerning the Company's financial results during each quarter in FY17 through the issuance of earnings releases and on investor conference calls.[4]  In addition, Defendants made similar misrepresentations as those contained in the FY16 Form 10-K with its 1Q17 Form 10-Q filed in November 2016, its 2Q17 Form 10-Q filed in February 2017, and its 3Q17 Form 10-Q filed in May 2017.  For example, in its Form

---

[4]      The 1Q17 Form 8-K earnings release was issued on October 27, 2016, the 2Q17 Form 8-K earnings release was issued on January 26, 2017, the 3Q17 Form 8-K earnings release was issued on April 27, 2017, and the 4Q17 Form 8-K earnings release was issued on August 3, 2017.

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST

- 3 -

1   10-Q filings between 1Q17 through 3Q17, Super Micro expressly stated that no changes had

2   occurred concerning its critical accounting policies, including its revenue recognition policy, since

3   its previous disclosure in its FY16 Form 10-K.  Moreover, the Forms 10-Q contained similar

4   misrepresentations regarding the Company's compliance with GAAP and the effectiveness of its

5   disclosure controls and internal controls.  Each filing also included SOX certifications signed by

6   Liang and Hideshima.  These false and misleading statements caused or maintained further inflation

7   in Super Micro's stock price.

8        10.     On July 20, 2017, the Company pre-announced preliminary 4Q17 results and touted

9   continued growth.  Two weeks later, the Company issued a press release and held an earnings

10  conference call proclaiming "record revenue and strong momentum" in FY17 and that "fiscal 2018

11  will be one of the strongest years in Super Micro's history."  These false statements and omissions

12  drove the stock price above $27 per share.

13       11.     Defendants' statements concerning the Company's financial results, operations and

14  prospects – in particular its reported revenue and earnings results and claims of effective internal

15  controls over revenue recognition, as well as compliance with GAAP and SOX certifications, were

16  materially false and misleading because Defendants knew, or were deliberately reckless in not

17  knowing, that: (a) the Company materially misstated revenues, net income and EPS for three fiscal

18  years, *i.e.*, FY15-FY17, including improperly recording approximately $60 million of revenue, $8.5

19  million of net income and $0.16 of EPS in aggregate over the three year period; (b) the Company

20  suffered from material weaknesses in internal controls over revenue recognition and the Company's

21  disclosure controls and procedures were ineffective; (c) the Company lacked appropriate revenue

22  cut-off controls, including failing to lock the shipping dock at quarter close, insufficient quarter-end

23  revenue testing procedures and an inadequate sales sub-certification process at quarter-end; (d) the

24  Company's lack of internal controls was so severe that the accounting for thousands of transactions

25  from FY15 through FY17 required reassessment to determine the appropriate revenue recognition

26  treatment; (e) the Company failed to allocate revenue accurately for customer contracts with service

27  elements; (f) the Company failed to properly account for certain inventory used for engineering

28  purposes and certain products returned to the Company for repair as inventory; (g) the Company

1521375_1

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                        - 4 -

improperly and prematurely recognized revenue in violation of GAAP on certain transactions near quarter-end when offering free shipping; (h) the Company lacked sufficient personnel with expertise required for proper revenue recognition; (i) the Company failed to maintain sufficient documentation to support the appropriate accounting treatment of certain transactions; and (j) as a result of the foregoing, the Company was exposed to the risk of restatement, inability to attest to the accuracy of its historical financial statements, inability to obtain auditor sign-off, de-listing from the NASDAQ, investigation by the SEC and other regulatory action or civil liability.

12.     The truth began to emerge in a series of partial disclosures – some obscured by further false and misleading statements – on August 29, 2017, when the Company announced it would be unable to timely file its FY17 Form 10-K.  Defendants, however, revealed only that they needed additional time "to compile and analyze certain information and documentation" prior to auditor review but would file within 15 days.  On September 15, 2017, after failing to meet the 15-day extension, the Company stated that it was "unable at this time to provide a date as to when the review and the audits will be completed," but that it "intends to file its 10-K promptly upon completion of the audit committee's review and the completion of the audit."  The stock price declined 15% during the ensuing two trading days.

13.     On October 26, 2017, Super Micro disclosed that it was still unable to file its FY17 Form 10-K and revealed that the internal investigation was spurned by a review of a transaction improperly recorded as revenue in 2Q17 which was subsequently reversed and recorded as revenue in 3Q17.  The ongoing investigation was to "determine whether there were any similar transactions and if so, whether such transactions were properly accounted for."  The Company admitted that "[d]ue to the volume of data to be reviewed to complete the investigation" it could not "predict the possible outcome of the investigation."  During an earnings conference call that day, Defendants refused to answer questions about the investigation or when it might file its Form 10-K.  The stock price continued its descent as these partial disclosures began to shed light on the nature of the fraudulent accounting.

14.     During the ongoing investigation and review, Defendants falsely claimed that the investigation was nearing completion and the Company would become current on its SEC filings.

1521375_1

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                                          - 5 -

1    On December 6, 2017, Wells Fargo reported on a conference at which Hayes stated that he "believes

2    that Super Micro is in the final stages of audit review before filing its 10-K (and subsequent updated

3    10-Q)." This and similar false statements and omissions caused Super Micro's stock price to remain

4    inflated as Defendants revealed some information while concealing the full scope, magnitude and

5    impact of the fraud.

6           15.    Multiple senior executives departed shortly thereafter. On January 30, 2018, the last

7    day of the Class Period, Wally Liaw ("Liaw"), Sr. Vice President of International Sales (and owner

8    of 4% of the Company), Phidias Chou, Sr. Vice President, Worldwide Sales and Hideshima resigned

9    effective immediately. Liaw also resigned from the Company's Board of Directors. A new CFO

10   was appointed. Unsurprisingly, an analyst described the resignations as "disturbing." The Company

11   also announced that the Audit Committee completed its investigation but that further investigation

12   still remained to be done and the Company could no longer verify the accuracy of prior financial

13   statements. The stock price fell again.

14          16.    The disclosures did not stop, however, as subsequent filings, press releases and

15   earnings conference calls further revealed the falsity of Defendants' prior statements as well as their

16   knowledge or deliberate disregard for the truth. Despite repeated statements that the Company

17   intended to become current on its SEC filings, on August 21, 2018 – a year after its FY17 Form 10-

18   K was required to be filed – the Company admitted that substantial work still remained as the

19   Company needed to review thousands of transactions from FY15 through FY17 with no set

20   completion date and it would not meet the filing deadline necessary to remain listed on the

21   NASDAQ. The Company detailed at least one type of accounting violation *i.e.*, it prematurely

22   recognized revenue on certain quarter-end transactions where free shipping was offered. Further,

23   Company executives admitted that they still could not determine the impact on the Company's

24   historical financial statements, whether a restatement was required, or when the Company might file

25   with the SEC. On August 22, 2018, Super Micro was suspended from trading on the NASDAQ; its

26   stock price continued to decline.

27          17.    On November 15, 2018, Super Micro disclosed in its Form 8-K that its financial

28   statements from FY15 (*i.e.*, July 1, 2014 to June 30, 2015), FY16 (*i.e.*, July 1, 2015 to June 30,

1521375_1

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                                    - 6 -

2016) and the first three quarters of FY17 (as well as 4Q17 preliminary results) "should no longer be relied upon because of errors" and would be restated: "***The errors primarily related to the timing of recognition of revenue*** and classification of certain inventory used for engineering purposes and certain products returned to the Company for repair as inventory.  Revenue recognition timing issues included quarter-end cut-off determinations and allocation of revenue determinations for customer contracts with service elements."   The Company also reported that it planned "to correct other accounting errors discovered through management's review process."  Furthermore, "***The Company will report material weaknesses in internal control over financial reporting related to this matter and will report that its disclosure controls and procedures were ineffective.***"   The Company estimated that it overstated, in aggregate from FY15-FY17, approximately $60 million of revenue, $8.5 million of net income and $0.16 of EPS.

18.    In a conference call the same day, Company executives reported that the "number and breadth of the adjustments, coupled with their aggregate magnitude was significant enough for us to conclude that restating prior periods was necessary."   The Company also described efforts to remediate its material weaknesses including hiring additional personnel in the revenue area, implementing "strong cut-off controls including locking the shipping dock at the close of the quarter," enhanced revenue testing at quarter end, a revamped sales sub-certification process at quarter-end and the formation of a new internal audit team.  The Company still could not estimate when it would be able to file its FY17 Form 10-K or any subsequent SEC filing.

19.    As a result of Defendants' misconduct, investors suffered tens of millions of dollars in economic loss.  And yet, a full accounting of their fraud remains concealed from the investing public as investors can no longer rely on the Company's quarterly and annual filings from FY15, FY16, or the first three quarters of FY17 (as well as 4Q17 preliminary results) and the Company's FY17 Form 10-K (for the period ending June 30, 2017), and all quarterly and annual filings thereafter, remain delinquent as of January 22, 2019.  While Super Micro has provided an estimated range of a restatement, it has not been finalized or approved by the Company's auditors.[5]

---

[5]    To date, the Company's delinquent reports include 1Q18, 2Q18, 3Q18, 1Q19 Forms 10-Q and FY17 and FY18 Forms 10-K.

1521375_1

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                                                    - 7 -

1

**JURISDICTION AND VENUE**

2          20.     The claims asserted arise under §§10(b) and 20(a) of the Exchange Act, 15 U.S.C.

3    §78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R. §240.10b-5.  Jurisdiction is conferred by §27 of the

4    Exchange Act, 15 U.S.C. §77aa.  Venue is proper pursuant to §27 of the Exchange Act.  The

5    Company's headquarters are in San Jose, California, false statements were made in this District, and

6    acts giving rise to the violations complained of occurred in this District.

7                                          **THE PARTIES**

8          21.     Lead Plaintiff New York Hotel Pension Fund provides health, pension and other

9    benefits to over 90,000 Union members, dependents and retirees of the New York City hotel

10   industry.  The New York Hotel Pension Fund purchased Super Micro common stock during the

11   Class Period and was damaged thereby.

12          22.     Defendant Super Micro describes itself as a global leader in high-performance, high-

13   efficiency server technology and innovation, and as a premier provider of end-to-end green

14   computing solutions and integration/support services for Data Center, Cloud Computing, Enterprise

15   IT, Big Data, HPC and IoT Embedded Systems worldwide.  The Company is headquartered in San

16   Jose, California, and traded on the NASDAQ, an efficient market, under the ticker symbol SMCI

17   until August 22, 2018 when it was delisted.  Super Micro shares continued to trade over-the-counter

18   thereafter.  Numerous analysts covered Super Micro including those from Stifel Nicolaus, D.A.

19   Davidson & Co, Susquehanna Financial Group LLP, Pacific Crest, Roth Capital Partners, LLC and

20   Maxim Group LLC.

21          23.     Defendant Liang was, at all relevant times, the Company's President, CEO and

22   Chairman of the Board (Principal Executive Officer).  He founded Super Micro and has served as

23   President, CEO and Chairman of the Board since its inception in September 1993.  Liang has been

24   developing server system architectures and technologies for the past two decades.  Liang holds an

25   M.S. in Electrical Engineering from the University of Texas at Arlington and a B.S. in Electrical

26   Engineering from National Taiwan University of Science & Technology in Taiwan.  Liang is known

27   to obsess over every detail of Super Micro's business from approving custom orders to dictating

28

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                              - 8 -

environmentally themed green neckties that executives wear to customer meetings.[6]  "'He is the person who approves and looks at everything the company is doing – every new product, marketing effort, sales effort, anything you want to do or promote,'" said a former employee who was manager of American sales.[7]  Liang, as a director, officer and significant stockholder of Super Micro has considerable influence over the management of the Company's business.  Super Micro's FY16 Form 10-K states that Liang is critical to the overall management of the Company and notes that he is personally involved in key relationships with suppliers, customers and strategic partners.  Super Micro's FY16 Form 10-K also states that Liang is the chief operating decision maker.  Liang, together with his wife Chiu-Chu (Sara) Liu Liang (who co-founded Super Micro and has served as Senior Vice President of Operations, Chief Administration Officer, Treasurer and member of the Company's Board of Directors since 1993), collectively own 18% of the outstanding Super Micro stock as of December 31, 2016.

24.     Defendant Hideshima was the Senior Vice President and CFO of the Company until his resignation on January 30, 2018.  Hideshima had served as CFO since May 2006.  Hideshima holds an M.B.A. from San Francisco State University and a B.S. in Business Administration from the University of California at Berkeley.

25.     Defendant Hayes was at all relevant times Senior Vice President-Investor Relations at Super Micro and President of Super Micro Netherlands BV.  Hayes manages investor relations and other external communications with the financial community.

26.     The Defendants named in ¶¶23-25 are referred to herein as the "Individual Defendants."

27.     The Individual Defendants controlled the contents of the Company's quarterly reports, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  They were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the

---

[6]     https://www.nytimes.com/2008/11/24/technology/business-computing/24micro.html.

[7]     https://www.nytimes.com/2008/11/24/technology/business-computing/24micro.html.

1521375_1

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                                      - 9 -

ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions within the Company, and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false and misleading statements and omissions pleaded herein.

## BACKGROUND

**Before the Class Period Super Micro Twice Misses SEC Filing Deadlines and Implements New Accounting System to Improve Internal Controls**

28.     In 2015, prior to the Class Period, the Company twice failed to timely file its required financial reports with the SEC.  First, at the end of August 2015, the Company required a 15-day extension to file its FY15 Form 10-K because it discovered irregularities regarding certain marketing expenses; second, in November 2015, the Company disclosed issues with extended warranties which should have been accounted for as deferred revenue, resulting in a delayed 1Q16 Form 10-Q and a prior period adjustment that was corrected in the same period.  This prior period adjustment resulted in the Company amending its previously filed FY15 Form 10-K.  Specifically, on November 16, 2015, the Company filed a Form 10-K/A to restate that its disclosure controls and procedures and its internal controls over financial reporting as of June 30, 2015, were now ineffective because of a material weakness related to its revenue recognition of contracts with extended product warranties.  Notably, the Company assured investors that it had taken the necessary steps to remedy these issues through a remediation plan for the material weakness and substantial investment in the implementation of an SAP accounting system.

29.     On January 13, 2016, Hideshima spoke at the Needham Growth Conference about Super Micro's adoption of the new SAP based accounting that went live in July 2015, and noted that the Company had invested in infrastructure and accounting processes to avoid delayed SEC filings:

> [Unidentified Audience Member]: I don't want to embarrass you as a CFO, but we've had a couple of surprises on the accounting side and I would like to get your perspective or what you learned about it, what you are doing actively so that we are not overexposed to surprises.

1521375_1

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                    - 10 -

[Hideshima]: We have had a couple of missteps in the last couple of quarters. Timing wise was unfortunate, because they seemed to happen back to back with each other. Somewhat unrelated events, but both delayed our K filing and our Q filing.

*We have added a new accounting system, SAP*. We went live in the US in July. We just went live in the Netherlands and Taiwan; they have gone well. ***But we have invested in our infrastructure to improve our accounting and our books and what have you and our ability to manage the operations in the Company***. This is an investment we have made for a number of different years.

***On the accounting side of it we have increased our resources in that area too and increased our processes***. So, again, we are hopeful that it doesn't happen *again*.

[Unidentified Audience Member]: But the other side would be people-related or the entities regarding that. I'm just trying to get more color?

[Hideshima]: Both. They go in conjunction with each other because the system will provide data to us. *We will analyze the data, build processes around the new data that we have for it*. Again, it's a combination of both, more efficient *system backing up, generating reports; obviously more people reviewing and looking at the reports*.

30.     On July 18, 2016, Super Micro pre-announced disappointing preliminary results for the completed 4Q16, including revenue of $520-$524 million, down from previous guidance of $580-$640 million, and EPS of $0.15-$0.17, down from previous guidance of $0.46-$0.58. This poor pre-announcement put significant pressure on the Company to begin delivering at the higher end of their pre-announced ranges.

31.     On August 2, 2016, Roth Capital Partners issued a report titled "SMCI: Thursday's Earnings Call Could be Pivotal," noting that the Company's upcoming earnings conference call and the Company's financial results would define the Company's growth story to Wall Street:

*[W]e believe this Thursday's call has the potential to be a pivotal event for the company*. Either it will be able to convince us and the rest of the Street that the June debacle was an anomaly and that its go-to-market strategy differentiates it from the competition, or we will be faced with the prospects of a slower growth company achieving substantially lower gross margins than we previously perceived.

**FALSE AND MISLEADING STATEMENTS ISSUED DURING THE CLASS PERIOD**

**Super Micro Announces 4Q16 and FY16 Financial Results and Files Form 10-K**

32.     <u>False and Misleading Statements</u>: On August 4, 2016, after the close of trading, Super Micro filed a Current Report on Form 8-K, signed by Liang, which included a press release titled "Super Micro Computer, Inc. Announces 4th Quarter 2016 Financial Results," and slides for the

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                                   - 11 -

Company's earnings presentation.  The financial metrics and Defendants' statements touting the Company's performance, and the similar statements made on the earnings conference call later the same day, were materially false and misleading because Super Micro and the Individual Defendants knew, or were reckless in not knowing, but failed to disclose that the Company materially misstated revenues, net income and EPS, had material weaknesses in internal controls over revenue recognition, ineffective disclosure controls, prematurely recognized revenue in violation of GAAP and thereby increasing the likelihood that it would have to restate its financial results:

- *Quarterly net sales of $524.3 million* . . . .

- *GAAP net income of $7.0 million* . . . .

- *GAAP gross margin was 14.1%* . . . .

*        *        *

*GAAP net income for the fourth quarter of fiscal year 2016 was $7.0 million or $0.13 per diluted share*, a decrease of 73.9% from net income of $26.7 million, or $0.51 per diluted share in the same period a year ago.  Included in net income for the quarter is $4.4 million of stock-based compensation expense (pre-tax). Excluding this item and the related tax effect, *non-GAAP net income for the fourth quarter was $10.4 million, or $0.20 per diluted share*, compared to non-GAAP net income of $30.0 million, or $0.57 per diluted share, in the same quarter of the prior year.

*        *        *

Fiscal Year 2016 Summary

*Net sales for the fiscal year ended June 30, 2016 were $2,215.6 million, up 11.3% from $1,991.2 million for the fiscal year ended June 30, 2015.  GAAP net income for fiscal year 2016 decreased to $72.0 million, or $1.39 per diluted share, a decrease of 29.3% from $101.9 million, or $2.03 per diluted share, for fiscal year 2015.*  Included in net income for the fiscal year ended June 30, 2016 is $16.1 million of stock-based compensation expense (pre-tax). Excluding this item and the related tax effect, *non-GAAP net income for the fiscal year 2016 was $83.8 million or $1.59 per diluted share*, a decrease of 24.9% compared to $111.6 million or $2.15 per diluted share for fiscal year 2015.

Business Outlook & Management Commentary

*        *        *

"[W]e will take actions to leverage our capacity and improve operational efficiency to become more flexible and competitive in winning new business.  By offering the best value for innovation and emphasizing strategic customer relationships, *we are confident that we can achieve stronger growth and improve financial performance*."  [said Liang].

33.   <u>False and Misleading Statements</u>:  The same day, Super Micro held an earnings conference call where the Company discussed 4Q16 and FY16 financial results:

> [Liang]: Thank you, Howard.  ***For the entire fiscal year, we saw 11% [revenue growth] for the year, which means Super Micro is still one of the fastest-growing companies in the IT industry***.

34.   Liang also repeatedly highlighted the implementation of the Company's new SAP accounting system to assure investors of the strength of the Company's internal controls:

> [Liang]: We are much better positioned with our new global SAP implementation, new global operation and corporate tax restructure, and bonded warehouse.
>
> \*      \*      \*
>
> Basically it's a big transition.  And not just SAP implementation global wide, but also a big impact from our restructure for production, operation, and also global tax, a new system.
>
> \*      \*      \*
>
> I guess start from December quarter, right?  Start from October, for example, as our SAP global reorg become much more stable, become more ready.  Our iteration rate will grow and our volume, for sure, will grow.  And that will improve our profit margin and overall profitability.

35.   Following the August 4, 2016 press release and earnings conference call, the price of Super Micro's common stock increased from its close of $20.42 per share on August 4, 2016, to a close at $21.48 per share on August 5, 2016, on increased trading volume.

36.   <u>False and Misleading Statements</u>: On August 26, 2016, after the close of trading, Super Micro filed the Company's FY16 Form 10-K, signed by Liang and Hideshima, reiterating the 4Q16 and FY16 financial results, describing the Company's commitment to effective internal controls and attaching signed SOX certifications:

> ***Evaluation of Effectiveness of Disclosure Controls and Procedures***
>
> We are committed to maintaining disclosure controls and procedures designed to ensure that information required to be disclosed in our periodic reports filed under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms, and that such information is accumulated and communicated to our management, including our Chief Executive Officer and Chief Financial Officer, as appropriate, to allow for timely decisions regarding required disclosure.
>
> Under the supervision and with the participation of our management, including our Chief Executive Officer and our Chief Financial Officer, we evaluated the effectiveness of our disclosure controls and procedures, as such term is defined in

Rule 13a-15(e) and 15d-15(e) promulgated under the Exchange Act. The evaluation considered the procedures designed to ensure that information required to be disclosed by us in the reports filed or submitted by us under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the Securities and Exchange Commission rules and forms and is accumulated and communicated to our management, including our Chief Executive Officer and Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure. ***Based on that evaluation, our Chief Executive Officer and our Chief Financial Officer concluded that our disclosure controls and procedures were effective at a reasonable assurance level as of June 30, 2016***.

*       *       *

Remediation of Prior Year Material Weakness

As disclosed in our fiscal year 2015 Form 10-K/A, in November 2015 our management determined that we had a material weakness in the design of our internal controls related to recording revenue. Since that time, with the oversight of our management and audit committee, we have taken steps to remediate the material weakness to ensure that proper extended warranty and any other deliverables in our bill of materials are tracked and related revenue deferrals are recorded.

*       *       *

### *Management's Report on Internal Control over Financial Reporting*

Our management is responsible for establishing and maintaining adequate internal control over financial reporting (as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act). Under the supervision and with the participation of our management, including our Chief Executive Officer and Chief Financial Officer, we conducted an evaluation of the effectiveness of our internal control over financial reporting based on the criteria set forth in *Internal Control – Integrated Framework* issued by the Committee of Sponsoring Organizations of the Treadway Commission (2013 framework). ***Based on our evaluation, our management has concluded that our internal control over financial reporting was effective as of June 30, 2016 to provide reasonable assurance regarding the reliability of financial reporting and preparation of consolidated financial statements for external reporting purposes in accordance with United States generally accepted accounting principles***.

37.     <u>False and Misleading Statements</u>: In describing its Critical Accounting Policies, Super Micro's FY16 Form 10-K stated that the Company's consolidated financial statements complied with GAAP and described its compliance with revenue recognition criteria:

Our discussion and analysis of our financial condition and results of operations are based upon ***our consolidated financial statements, which have been prepared in accordance with accounting principles generally accepted in the United States***. . . .

***Revenue recognition. We recognize revenue from sales of products when persuasive evidence of an arrangement exists, shipment has occurred and title has transferred, the sales price is fixed or determinable, collection of the resulting receivable is reasonably assured, and all significant obligations have been met. Generally this occurs at the time of shipment when risk of loss and title has passed***

*to the customer if all other revenue recognition criteria have been met. Our standard arrangement with our customers includes a signed purchase order or contract, 30 to 60 days payment terms, Ex-works terms, except for a few customers who have free-on-board destination terms, for which revenue is recognized when the products arrive at the destination if all other revenue recognition criteria have been met.*

38.   <u>False and Misleading Statements</u>:  Super Micro's FY16 Form 10-K also disclosed that the Company had "adopted a 'Code of Business Conduct and Ethics' that is applicable to all directors and employees and embodies our principles and practices relating to the ethical conduct of our business and our long-standing commitment to honesty, fair dealing and full compliance with all laws affecting our business."  Moreover, the FY16 Form 10-K directed readers to Super Micro's website to access the Code of Business Conduct and Ethics which reads:

*Senior Officers are also responsible for establishing and maintaining adequate internal control over financial reporting to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles. The Senior Officers will take all necessary steps to ensure compliance with established accounting procedures, the Company's system of internal controls and generally accepted accounting principles.  Senior Officers will ensure that the Company makes and keeps books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the Company.  Senior Officers will also ensure that the Company devises and maintains a system of internal accounting controls sufficient to provide reasonable assurances that*:

- transactions are executed in accordance with management's general or specific authorization;

- *transactions are recorded as necessary (a) to permit preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements, and (b) to maintain accountability for assets*;

39.   <u>False and Misleading Statements</u>: The Company's FY16 Form 10-K also attached SOX certifications, pursuant to §302 and 906, signed by Liang and Hideshima on August 26, 2016, affirming that the financial statements were in compliance with GAAP, that each had designed the Company's controls over financial reporting and that such controls were effective during the Class Period:

I, [Charles Liang/Howard Hideshima], certify that:

1.   I have reviewed this annual report on Form 10-K of Super Micro Computer, Inc.;

1521375_1

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                                    - 15 -

2.      Based on my knowledge, *this report does not contain any untrue statement of a material fact or omit to state a material fact* . . . ;

3.      Based on my knowledge, *the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant* as of, and for, the periods presented in this report;

4.      The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

a)      *Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared*;

b)      *Designed such internal control over financial reporting*, or caused such internal control over financial reporting to be designed under our supervision, *to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles*;

*           *           *

d)      *Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and*

5.      The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

a)      *All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information* . . . .[8]

40.     <u>False and Misleading Statements</u>: Super Micro's 1Q17, 2Q17 and 3Q17 Forms 10-Q contained substantially similar SOX certifications, signed by Liang and Hideshima, on November 7, 2016, February 7, 2017 and May 10, 2017, respectively.  These certifications attested to the accuracy

---

[8]      Exhibits 31.1 and 31.2 to the FY16 Form 10-K.

1521375_1

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                                   - 16 -

1    of the Company's financial statements and the effectiveness of its disclosure controls and its internal

2    controls over financial reporting.

3    **Super Micro Announces 1Q17 Financial Results and Files Form 10-Q**

4          41.     <u>False and Misleading Statements</u>: On October 27, 2016, after the close of trading,

5    Super Micro filed a Current Report on Form 8-K, signed by Liang, which included a press release

6    titled "Super Micro Computer, Inc. Announces 1st Quarter 2017 Financial Results," and slides for

7    the Company's earnings presentations:

8          • *Quarterly net sales of $529.0 million* . . . .

9          • *GAAP net income of $13.5 million* . . . .

10         • *GAAP gross margin was 15.1%* . . . .

11                              *      *      *

12                *GAAP net income for the first quarter of fiscal year 2017 was $13.5 million
         or $0.26 per diluted share*, a decrease of 1.2% from net income of $13.7 million, or
13       $0.27 per diluted share in the same period a year ago.  Included in net income for the
         quarter is $4.5 million of stock-based compensation expense (pre-tax). Excluding this
14       item and the related tax effect, *non-GAAP net income for the first quarter was
         $16.7 million, or $0.32 per diluted share*, compared to non-GAAP net income of
15       $16.5 million, or $0.32 per diluted share, in the same quarter of the prior year.

16                              *      *      *

17                "*We are pleased that SuperMicro was able to report revenues and profits at
         the higher end of our expectations for the first quarter*. . . ." said Charles Liang,
18       President and Chief Executive Officer.

19         42.     <u>False and Misleading Statements</u>:  The same day, Super Micro held an earnings

20   conference call where the Company reiterated its false and misleading 1Q17 financial results.

21   Defendants also further discussed the status of the implementation of the Company's SAP

22   accounting system:

23                [Liang]: Last quarter we discussed the restructuring of our global operational
         infrastructure, including our new SAP implementation, global tax restructure and a
24       bonded warehouse.  This quarter we saw much smoother operations, and reduced
         impact from the transition.  We expect to 100% complete the transition in this
25       December quarter, and see sustained long-term improvement to our operational
         efficiency and profitability.

26

27

28

43.     After the October 27, 2016 financial results and earnings conference call, the price of Super Micro's common stock increased from its close of $22.10 per share on October 27, 2016, to a close at $24.40 per share on October 28, 2016, on increased trading volume.

44.     <u>False and Misleading Statements</u>: On November 7, 2016, after the close of trading, Super Micro filed the Company's 1Q17 Form 10-Q, signed by Liang and Hideshima, and made similar false and misleading statements concerning its financial results as contained in the October 27, 2016 press release, including among other matters, that the Company had earned $0.26 EPS, had net income of $13,532,000 and made net sales $528,968,000.  As detailed above, the Company's 1Q17 Form 10-Q also attached SOX certifications, signed by Liang and Hideshima, attesting that the financial statements were in compliance with GAAP and that the Company's disclosure controls and its internal controls over financial reporting were designed such that the controls were effective. Further, the 1Q17 Form 10-Q falsely stated, "The unaudited condensed consolidated financial statements included herein ***reflect all adjustments, including normal recurring adjustments, which are, in the opinion of management, necessary for a fair presentation of the consolidated financial position, results of operations and cash flows for the periods presented***."

45.     <u>False and Misleading Statements</u>: Super Micro also disclosed in the 1Q17 Form 10-Q that no changes had occurred concerning its critical accounting policies, including its revenue recognition policy, since its previous disclosure in its FY16 Form 10-K:

> ***There have been no material changes in the matters for which we make critical accounting policies and estimates in the preparation of our Condensed Consolidated Financial Statements during the three months ended September 30, 2016***, as compared to those disclosed in our Annual Report on Form 10-K for the fiscal year ended June 30, 2016.

**Super Micro Announces 2Q17 Financial Results and Files Form 10-Q**

46.     <u>False and Misleading Statements</u>: On January 26, 2017, after the close of trading, Super Micro filed a Current Report on Form 8-K, signed by Liang, which included a press release titled "Super Micro Computer, Inc. Announces 2nd Quarter 2017 Financial Results," and slides for Super Micro's earnings presentation:

- ***Quarterly net sales of $652.0 million*** . . . .

- ***GAAP net income of $22.0 million*** . . . .

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                                                    - 18 -

1    • *GAAP gross margin was 14.3%* . . . .

2                          *        *        *

3        *GAAP net income for the second quarter of fiscal year 2017 was $22.0
4    million or $0.43 per diluted share*, a decrease of 36.6% from net income of $34.7
     million, or $0.67 per diluted share in the same period a year ago.  Included in net
     income for the quarter is $4.7 million of stock-based compensation expense (pre-
5    tax). Excluding this item and the related tax effect, *non-GAAP net income for the
     second quarter was $25.0 million, or $0.48 per diluted share*, compared to non-
6    GAAP net income of $38.0 million, or $0.73 per diluted share, in the same quarter of
     the prior year.

7                          *        *        *

8        "*We are pleased to report record second quarter revenues of $652.0 million
9    that exceeded our guidance and outpaced a strong compare with last year*. . . ."
     said Charles Liang, Chairman and Chief Executive Officer.  "We expect to continue
10   the growth of last quarter and be reflected in the year-over-year revenue growth in
     the March quarter based on an increasing number of sizable customer engagements
11   demanding the performance and advantages of our leading product lines."

12       47.    <u>False and Misleading Statements</u>: On February 7, 2017, after the close of trading,

13   Super Micro filed the Company's 2Q17 Form 10-Q, signed by Liang and Hideshima, and made

14   similar false and misleading statements concerning its financial results as contained in the January

15   26, 2017 press release, including among other matters, that the Company had earned $0.43 EPS, had

16   net income of $21,996,000 and made net sales $651,954,000.  The Company's 2Q17 Form 10-Q also

17   attached SOX certifications, signed by Liang and Hideshima, attesting that the financial statements

18   were in compliance with GAAP and that the Company's disclosure controls and its internal controls

19   over financial reporting were designed such that the controls were effective.  Further, the 2Q17 Form

20   10-Q falsely stated, "The unaudited condensed consolidated financial statements included herein

21   *reflect all adjustments, including normal recurring adjustments, which are, in the opinion of*

22   *management, necessary for a fair presentation of the consolidated financial position, results of*

23   *operations and cash flows for the periods presented*."

24       48.    <u>False and Misleading Statements</u>: Super Micro also disclosed in the 2Q17 Form 10-Q

25   that no changes had occurred concerning its critical accounting policies, including its revenue

26   recognition policy, since its previous disclosure in its FY16 Form 10-K:

27       *There have been no material changes in the matters for which we make
         critical accounting policies and estimates in the preparation of our Condensed
28       Consolidated Financial Statements during the three and six months ended*

*December 31, 2016*, as compared to those disclosed in our Annual Report on Form 10-K for the fiscal year ended June 30, 2016.

**Super Micro Announces 3Q17 Financial Results and Files Form 10-Q**

49.   <u>False and Misleading Statements</u>: On April 27, 2017, after the close of trading, Super Micro filed a Current Report on Form 8-K, signed by Liang, which included a press release titled "Super Micro Computer, Inc. Announces 3rd Quarter 2017 Financial Results," and slides for the Company's earnings presentation:

- *Quarterly net sales of $631.1 million* . . . .

- *GAAP net income of $16.7 million* . . . .

- *GAAP gross margin was 14.0%* . . . .

*      *      *

*GAAP net income for the third quarter of fiscal year 2017 and for the same period a year ago were both $16.7 million or $0.32 per diluted share.* Included in net income for the quarter is $4.8 million of stock-based compensation expense (pre-tax). Excluding this item and the related tax effect*, non-GAAP net income for the third quarter was $20.3 million, or $0.38 per diluted share*, compared to non-GAAP net income of $19.0 million, or $0.36 per diluted share, in the same quarter of the prior year.

50.   <u>False and Misleading Statements</u>: On May 10, 2017, after the close of trading, Super Micro filed the Company's 3Q17 Form 10-Q, signed by Liang and Hideshima, and made similar false and misleading statements concerning its financial results as contained in the April 27, 2017 press release, including among other matters, that the Company had earned $0.32 EPS, had net income of $16,666,000 and made net sales $631,124,000. The Company's 3Q17 Form 10-Q also attached SOX certifications, signed by Liang and Hideshima, attesting that the financial statements were in compliance with GAAP and that the Company's disclosure controls and its internal controls over financial reporting were designed such that the controls were effective. Further, the 3Q17 Form 10-Q falsely stated, "The unaudited condensed consolidated financial statements included herein *reflect all adjustments, including normal recurring adjustments, which are, in the opinion of management, necessary for a fair presentation of the consolidated financial position, results of operations and cash flows for the periods presented*."

1521375_1

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                                   - 20 -

51.     <u>False and Misleading Statements</u>: Super Micro also disclosed in the 3Q17 Form 10-Q that no changes had occurred concerning its critical accounting policies, including its revenue recognition policy, since its previous disclosure in its FY16 Form 10-K:

> ***There have been no material changes in the matters for which we make critical accounting policies and estimates in the preparation of our Condensed Consolidated Financial Statements during the three and nine months ended March 31, 2017***, as compared to those disclosed in our Annual Report on Form 10-K for the fiscal year ended June 30, 2016.

**Super Micro Announces Preliminary 4Q17 Financial Results**

52.     <u>False and Misleading Statements</u>: On July 20, 2017, after the close of trading, Super Micro filed a Current Report on Form 8-K, signed by Liang, which incorporated a press release titled "Super Micro Computer, Inc. Schedules Conference Call and Webcast for Fourth Quarter and Fiscal 2017 Financial Results Company to Report Preliminary Financial Results":

> ***The Company now anticipates it will report revenue for its fourth quarter of fiscal 2017 in the range of $712 million to $717 million***.  This compares to the Company's previous guidance range of $655 million to $715 million.  Revenue exceeded expectations primarily due to stronger sales in Asia and at storage customers with strong shipments that accelerated late in the quarter.
>
> ***The Company also anticipates its non-GAAP earnings per diluted share will be in a range of $0.35 to $0.37***.
>
> *             *             *
>
> "***While Super Micro exceeded revenue expectations with record high revenues due to growth in our Asia business as well as new storage customers***, earnings were lower than forecast. . . .   We will provide more detail on the fourth quarter at the time of our earnings call," said Charles Liang, Chairman and Chief Executive Officer.

53.     <u>False and Misleading Statements</u>:  On August 3, 2017, Super Micro filed a Current Report on Form 8-K, signed by Liang, which included a press release titled "Super Micro Computer, Inc. Announces 4th Quarter 2017 Financial Results":

> •   ***Quarterly net sales of $717.9 million*** . . . .
>
> •   ***GAAP net income of $17.1 million*** . . . .
>
> •   ***GAAP gross margin was 13.5%*** . . . .
>
> *             *             *
>
> ***GAAP net income for the fourth quarter of fiscal year 2017 was $17.1 million or $0.33 per diluted share,*** an increase of 145.7% from net income of $7.0

1521375_1

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                        - 21 -

million, or $0.13 per diluted share in the same period a year ago.  Included in net income for the quarter is $5.1 million of stock-based compensation expense (pre-tax). Excluding this item and the related tax effect, ***non-GAAP net income for the fourth quarter was $20.7 million, or $0.39 per diluted share***, compared to non-GAAP net income of $10.4 million, or $0.20 per diluted share, in the same quarter of the prior year.

*          *          *

***Net sales for the fiscal year ended June 30, 2017 were $2,529.9 million***, up 14.2% from $2,215.6 million for the fiscal year ended June 30, 2016.  ***GAAP net income for fiscal year 2017 decreased to $69.3 million, or $1.34 per diluted share***, a decrease of 3.7% ***from $72.0 million, or $1.39 per diluted share, for fiscal year 2016***. Included in net income for the fiscal year ended June 30, 2017 is $19.2 million of stock-based compensation expense (pre-tax). Excluding this item and the related tax effect, ***non-GAAP net income for the fiscal year 2017 was $82.8 million or $1.57 per diluted share***, a decrease of 1.3% compared to ***$83.8 million or $1.59 per diluted share for fiscal year 2016***.

**Business Outlook & Management Commentary**

The Company expects net sales of $625 million to $685 million for the first quarter of fiscal year 2018 ending September 30, 2017.  The Company expects non-GAAP earnings per diluted share of approximately $0.30 to $0.40 for the first quarter.

"***Super Micro has built a strong foundation for sustained high growth while improving profitability***.  During the last couple of years we have made significant investments in global production capacity, engineering, quality, global services, and systems and datacenter management software.  It is these investments that will power the new Super Micro 3.0" said Charles Liang, Chairman and Chief Executive Officer.  "Supermicro 3.0 positions us as the only Tier 1 IT Infrastructure Provider capable of both first to market product innovation and global scale, quality, services and support to engage our rapidly growing enterprise customer base deeply in their business requirements. ***The record high revenue and strong 27.6% second half growth over last year*** is a direct result of these Supermicro 3.0 investments.  With the major investments in place and the new Skylake product portfolio shipping, future investment and expenses will begin to flatten driving improved profitability moving forward."

54.     <u>False and Misleading Statements</u>: On August 3, 2017, after the close of trading, Super Micro held an earnings conference call where Liang touted the Company's revenues and strong momentum:

[Liang]: Thank you, Howard. ***We finished the fiscal year 2017 with record revenue and strong momentum***.  Super Micro 3.0 provides the foundation and product to take advantage of this cycle of technology transition.  We believe that fiscal 2018 will be one of the strongest years in Super Micro's history.

55.     <u>Reasons Why the Statements in ¶¶32-33, 36-42, 44-54 Were False and Misleading</u>: Defendants' statements concerning: (i) the Company's financial condition and performance,

including revenue, net income and EPS; (ii) its operations, internal controls, disclosure controls and procedures, and SOX certifications; (iii) its compliance with GAAP; and (iv) its outlook and prospects going forward were materially false and misleading because Defendants knew, or were deliberately reckless in not knowing, and failed to disclose the following:

(a)     The Company materially misstated revenues, net income and EPS for three fiscal years, *i.e.*, FY15-FY17, including improperly recording approximately $60 million of revenue, $8.5 million of net income and $0.16 of EPS in aggregate over the three year period;

(b)     The Company suffered from material weaknesses in internal controls over revenue recognition and the Company's disclosure controls and procedures were ineffective;

(c)     The Company lacked appropriate revenue cut-off controls, including failing to lock the shipping dock at quarter close, insufficient quarter-end revenue testing procedures and an inadequate sales sub-certification process at quarter-end;

(d)     The Company's lack of internal controls was so severe that the accounting for thousands of transactions from FY15 through FY17 required reassessment to determine the appropriate revenue recognition treatment;

(e)     The Company failed to allocate revenue accurately for customer contracts with service elements;

(f)     The Company failed to properly account for certain inventory used for engineering purposes and certain products returned to the Company for repair as inventory;

(g)     The Company improperly and prematurely recognized revenue in violation of GAAP on certain transactions near quarter-end when offering free shipping;[9]

---

[9]     The relevant accounting principles under GAAP that are applicable to revenue recognition are found in the Financial Accounting Standards Board ("FASB") Accounting Standards Codification Topic 605, *Revenue Recognition* ("ASC 605"). ASC 605 states that revenue may only be recognized when all of the following criteria are met: (1) persuasive evidence of an arrangement exists; (2) delivery has occurred or services have been rendered; (3) the seller's price to the buyer is fixed or determinable; and (4) collectability is reasonably assured. By offering free shipping and recognizing revenue before the customer received the product, Super Micro violated the second criteria (*i.e.*, delivery has occurred) and therefore could not recognize the revenue until the customer was in receipt of the product (*e.g.*, free-on-board destination terms). On the August 21, 2018 earnings conference call, CFO Kevin Bauer ("Bauer") disclosed this premature revenue recognition for certain quarter-end transactions caused the appropriate date for recognizing the revenue "to slip from one quarter into the next."

1521375_1

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                                        - 23 -

1              (h)      The Company lacked sufficient personnel with the expertise required for

2 proper revenue recognition;

3              (i)      The Company failed to maintain sufficient documentation to support the

4 appropriate accounting treatment of certain transactions; and

5              (j)      As a result of the foregoing, the Company was exposed to the risk of

6 restatement, inability to attest to the accuracy of its historical financial statements, inability to obtain

7 auditor sign-off, de-listing from the NASDAQ, investigation by the SEC and other regulatory action

8 or civil liability.

9 **Super Micro Requests 15-Day Extension to File Form 10-K**

10      56.    <u>False and Misleading Statements</u>: On August 29, 2017, after the close of trading, less

11 than a month after announcing its 4Q17 results, Super Micro filed a Notification of Late Filing on

12 Form 12b-25, signed by Hideshima, revealing that the Company could not meet the August 29, 2017

13 deadline to file its FY17 Form 10-K, but falsely reassured analysts and investors that it "will be filed

14 on or before the fifteenth calendar day following the prescribed due date" (*i.e.*, September 13, 2017):

15         ***The subject annual report . . . on Form 10-K . . . will be filed on or before***
         ***the fifteenth calendar day following the prescribed due date . . . .***

16

17                               *      *      *

18        Super Micro Computer, Inc. (the "Company") is not in a position to file its
Form 10-K for fiscal year ended June 30, 2017 (the "Form 10-K"), in a timely

19 manner because the Registrant cannot complete the Form 10-K in a timely manner
without unreasonable effort or expense.  Additional time is needed for the Company

20 to compile and analyze certain information and documentation and complete
preparation of its financial statements in order to permit the Company's independent

21 registered public accounting firm to complete its audit of the financial statements to
be incorporated in the Form 10-K and complete its audit of the Company's internal

22 controls over financial reporting as of June 30, 2017.

23      57.    On this disclosure concerning the Company's inability to meet the deadline to file its

24 FY17 Form 10-K, the price of Super Micro's common stock declined from its close of $27.20 per

25 share on August 29, 2017, to a close at $25.85 per share on August 30, 2017, on increased trading

26 volume, but remained inflated by the false assurance that the delay in filing would be temporary.

27      58.    On August 31, 2017, Maxim Group issued a report noting that the Company's

28 repeated inability to timely file mandatory SEC disclosures was damaging "management's

1521375_1

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST          - 24 -

1  credibility" in the eyes of investors but – in light of the information made available at the time – it

2  expected the delay to be "innocuous":

3          **We expect better execution with respect to filing reports in a timely &**
    **accurate manner**. . . .  We note a similar situation took place in 2015, when SMCI

4      required a 15-day extension to file its FY15 10-K in connection to a certain
        employee's unadvised activity relating to sales and marketing, but ultimately did not

5      impact financial results.  Then in the following quarter (September 2015 quarter,
        F1Q16), management discovered some extended warranty revenue that should have

6      been accounted for as deferred revenue, which delayed the 10-Q and led to a minor
        restatement of revenue (see our Nov-2015 note).  While we expect the current

7      delayed filing to prove innocuous as well, **we note that the recurring one-time**
        **nature of delayed filings are eroding management's credibility, based on our**

8      **conversations with investors**.  We believe management will make changes to ensure
        that delayed filings do not recur, albeit the delays have been for unique reasons.

9
    **Super Micro Fails to Meet Extended Deadline to File Form 10-K and Announces Audit**
10  **Committee Review**

11          59.      <u>False and Misleading Statements</u>: On September 14, 2017, Super Micro issued a press

12  release titled "Super Micro Computer, Inc. Announces Receipt of Non-Compliance Letter From

13  Nasdaq."  The following day, September 15, 2017, after the close of trading, the Company filed a

14  Current Report on Form 8-K disclosing the Company would not be able to meet the 15-day

15  extension for filing the Form 10-K and that an Audit Committee review was underway, but

16  nonetheless reassured analysts and investors that "*[t]he Company intends to file its 10-K promptly*

17  *upon completion of the audit committee's review and the completion of the audit*":

18          On September 14, 2017, Super Micro Computer, Inc. (the "Company")
        received a notification letter (the "Letter") from the Listing Qualifications

19      Department of the NASDAQ Stock Market LLC ("NASDAQ") indicating that the
        Company is not in compliance with NASDAQ Listing Rule 5250(c)(1), as a result of

20      the Company's delay in filing its Annual Report on Form 10-K for fiscal year 2017
        (the "Form 10-K").  **The Form 10-K was due on August 29, 2017.  The Company**

21      **filed a Form 12b-25 on August 29, 2017, the effect of which was to extend the due**
        **date for the Form 10-K to September 13, 2017. The Company was unable to file the**

22      **Form 10-K by September 13, 2017, for the reasons reported in the Form 12b-25**
        **and further described below**.  The Letter has no immediate effect on the listing or

23      trading of the Company's common stock on the NASDAQ Global Select Market.
        The Letter stated that, under NASDAQ rules, the Company has 60 calendar days to

24      regain compliance or to submit a plan to do so, and that if a plan is submitted and
        accepted, NASDAQ could grant the Company an exception of up to 180 calendar

25      days from the filing's due date to regain compliance.  If NASDAQ does not accept
        the Company's plan, then the Company will have the opportunity to appeal that

26      decision to a NASDAQ hearings panel.

27          As previously disclosed by the Company, additional time is needed for the
        Company to compile and analyze certain information and documentation and finalize

28      its financial statements, **as well as complete a related audit committee review**, in

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                          - 25 -

1  order to permit the Company's independent registered public accounting firm to complete its audit of the financial statements to be incorporated in the Form 10-K

2  and complete its audit of the Company's internal controls over financial reporting as of June 30, 2017.  The Company is unable at this time to provide a date as to when

3  the review and the audits will be completed.  ***The Company intends to file its 10-K promptly upon completion of the audit committee's review and the completion of***

4  ***the audit.***

5  60.   On these disclosures, the price of Super Micro's common stock declined from its

6  close of $25.25 per share on September 14, 2017, to a close at $23.35 per share on September 15,

7  2017, on extremely high trading volume, followed by a further decline on September 18, 2017, the

8  next trading day, to a close of $21.20, again on extremely high trading volume.  Still, Super Micro's

9  stock price remained inflated as Defendants continued to conceal the nature, scope and magnitude of

10  the issues related to their financial results and internal controls.

11  **Super Micro Reveals Premature Revenue Recognition; Fails to File 1Q18 Form 10-Q**

12  61.   On October 26, 2017, after the close of trading, Super Micro filed a Current Report

13  on Form 8-K, signed by Liang, incorporating a press release titled "Super Micro® Announces First

14  Quarter Fiscal 2018 Preliminary Financial Information," including revenue, income and earnings

15  figures for 1Q18.  For the first time, the press release disclosed details of improper revenue

16  recognition specifically related to a sales transaction originally recorded as revenue during 2Q17

17  (*i.e.*, the period ending December 31, 2016), later reversed and recognized in 3Q17 (*i.e.*, the period

18  ending March 31, 2017).  Due to this inappropriate transaction, the Company's Audit Committee

19  initiated an independent investigation to assess whether similar transactions existed and were

20  properly accounted for:

21  In connection with the in-process audit of the Company's financial results for the year ended June 30, 2017, a sales transaction was subject to additional inquiry

22  and review. ***The transaction in question was originally recorded as revenue during the quarter ended December 31, 2016***.  However, prior to review by the Company's

23  independent auditors and prior to the Company's public announcement of its results for the quarter, ***the recognition of revenue was reversed and the revenue was***

24  ***subsequently recognized in the quarter ended March 31, 2017.  When the audit committee was made aware of this transaction, the Audit Committee of the***

25  ***Company's Board of Directors initiated an independent investigation to determine whether there were any similar transactions and if so, whether such transactions***

26  ***were properly accounted for.  Due to the volume of data to be reviewed to complete the investigation, the Company was unable to file its Form 10-K on a timely basis.***

27

28

1521375_1

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                                    - 26 -

1    The Company is unable at this time to provide a date as to when the
2    investigation and the 2017 audits will be completed or predict the possible outcome
     of the investigation.

3    62.    <u>False and Misleading Statements</u>:  In the October 26, 2017 press release, Super Micro

4    also claimed that it would take the necessary steps "as soon as practicable" to achieve compliance

5    with NASDAQ listing requirements:

6    Super Micro announced on September 14, 2017 that it received a notification
     letter from Nasdaq stating that the Company is not in compliance with Nasdaq listing
7    rule 5250(c)(1), which requires timely filing of reports with the U.S. Securities and
     Exchange Commission. . . .

8    The Nasdaq notice has no immediate effect on the listing or trading of the
9    Company's common stock on the Nasdaq Global Select Market. Under the Nasdaq
     rules, the Company has 60 days from the date of the notice either to file the Form 10-
10   K or to submit a plan to Nasdaq to regain compliance with Nasdaq's listing rules.
     The Company intends to submit a plan within the required time period and if the plan
11   accepted, the Company could be granted up to 180 days from the Form 10-K's due
     date to regain compliance. If NASDAQ does not accept the Company's plan, then
12   the Company will have the opportunity to appeal that decision to a NASDAQ
     hearings panel.

13   ***Super Micro intends to take all necessary steps to achieve compliance with***
14   ***the NASDAQ continued listing requirements as soon as practicable***.

15   63.    On October 26, 2017, Super Micro held an earnings conference call where Liang

16   spoke alongside Hayes.  Notably absent was CFO Hideshima who had participated in all prior

17   earnings conference calls during the Class Period.  When asked about the CFO's status, Liang stated

18   he was "working very hard on the issues":

19   [Alexander Kurtz]:  Last question for me.  Can you give us any update on
     your CFO, Howard, and his status with the company at this point?
20
21   [Hayes]:  Howard is working very hard on the issues related to the filing of
     the 10-K at this moment.

22   Three months later, Hideshima would "resign" from the Company effective immediately.

23   64.    During the October 26, 2017 earnings conference call, Super Micro reiterated that the

24   Company needed additional time to compile and analyze materials and finalize its financial

25   statements, as was reported in prior press releases.  Super Micro refused to answer several questions

26   concerning the Company's delinquent reports and ongoing Audit Committee investigation:

27   [Brian Matthew Alger]:  Just for a clarification point, reading through the
     release today and kind of going back to the delay that we're incurring here on the 10-
28   K.  To be clear, what's being evaluated by the audit committee isn't whether or not

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                              - 27 -

1    the revenues were real, but rather not the documentation around which period the
     revenues were recognized, is that the case?

2

3           [Hayes]:  Brian, as indicated, we're not going to answer any questions related
     to the filing of the 10-K.

4                                    *        *        *

5           [Nehal Sushil Chokshi]:  Okay.  And the reason why there's more uncertainty
     around what channel was as a percent of revenue is that that's where the uncertainty

6    resides with the one revenue recognition.  Should be getting done.  Is that a correct
     interpretation?

7

8           [Hayes]:  Again, Nehal, we're not going to discuss anything related to the 10-
     K filing.

9           65.    On these additional disclosures, the price of Super Micro's common stock declined

10   from its close of $21.70 per share on October 26, 2017, to a close at $20.48 per share on October 27,

11   2017, on extremely high trading volume.  On October 30, 2017, the next trading date, Super Micro's

12   stock fell to a close of $19.85 per share, but remained inflated as Defendants continued to conceal

13   the details of their fraud.

14          66.    On October 27, 2017, Susquehanna Financial Group issued a report titled "Super

15   Micro: Audit Review To Remain Overhang On Shares; Gross Margins Remain Constrained," noting

16   the overhang on the Company's stock price due to questions concerning its revenue recognition

17   processes and delinquent reports:

18          ***The audit investigation of SMCI's revenue recognition practices (and
            associated delay in 10-K filing) is expected to remain an overhang on shares***, while

19          the fundamental backdrop remains mired by a lack of Gross Margin expansion.
            Maintain Neutral rating.

20
            The delay in 10-K filing associated with a review of revenue recognition

21          practices is likely to remain an overhang on shares until this is resolved and the
            company has adequately addressed its internal controls. . . .

22
            Audit committee investigation to remain an overhang, unclear when this will

23          be resolved.  ***SMCI indicated that the reason its 10-K had been delayed was due to
            an investigation into revenue recognition practices around revenue that was***

24          ***originally recognized in the Dec Q'16 and then reversed and recognized in Mar***
            ***Q'17.***  This has resulted in a more thorough review of sales recognition practices.

25          SMCI did not provide any insight into when this matter would be resolved.

26          67.    On November 13, 2017, after the close of trading, Super Micro filed a Notification of

27   Late Filing on Form 12b-25, signed by Hideshima, disclosing that it could not timely file its 1Q18

28   Form 10-Q:

As previously announced, the Company has been unable to file its Annual Report on Form 10-K for the fiscal year ended June 30, 2017 (the "Form 10-K") pending the completion of an independent investigation by the Audit Committee of the Company's Board of Directors and any additional work required thereafter in order for the Company to finalize its financial statements and have the Company's independent registered public accounting firm complete its audit of the financial statements to be incorporated in the Form 10-K and complete its audit of the Company's internal controls over financial reporting as of June 30, 2017. The Form 10-Q cannot be completed and filed until the Form 10-K is completed and filed. The Company does not expect the filing to be made within the time period required for a timely filing pursuant to Rule 12b-25(b) under the Securities Exchange Act of 1934.

68. On November 20, 2017, after the close of trading, Super Micro filed a Current Report on Form 8-K, signed by Liang, incorporating a press release titled "Super Micro Computer Inc. Announces Receipt of Non-Compliance Letter from Nasdaq":

On November 16, 2017, Super Micro Computer, Inc. (the "Company") received a notification letter (the "Letter") from the Listing Qualifications Department of the NASDAQ Stock Market LLC ("NASDAQ") *indicating that the Company is not in compliance with NASDAQ Listing Rule 5250(c)(1)*, as a result of the Company's delay in filing its Quarterly Report on Form 10-Q for the period ended September 30, 2017 and its continued delay in filing its Annual Report on Form 10-K for the period ending June 30, 2017 (the "Form 10-K"). The Company previously submitted a plan of compliance to Nasdaq on November 10, 2017 (the "Plan") with respect to its delay in filing the Form 10-K (the "Initial Delinquent Filing"). *Upon review of the Company's Plan and in connection with this additional delinquency, the Letter requires that the Company submit an update to the Plan by November 30, 2017* (the "Revised Plan"). The Letter has no immediate effect on the listing or trading of the Company's common stock on the NASDAQ Global Select Market. If the Revised Plan is submitted and accepted, the Company could be granted up to 180 days from the due date of the Initial Delinquent Filing, or March 12, 2018, to regain compliance. If NASDAQ does not accept the Company's plan, then the Company will have the opportunity to appeal that decision to a NASDAQ hearings panel.

69. <u>False and Misleading Statements</u>: On December 6, 2017, Wells Fargo issued a report titled "SMCI: Takeaways from Wells Fargo Tech Summit 2017," noting that the Company faced an "[o]ngoing unknown risk / overhang related to continued Audit Committee revenue recognition investigation." The Wells Fargo Tech Summit 2017 was held at the St. Regis Deer Valley in Park City, Utah, between December 4-6, 2017. Hayes was scheduled to present for Super Micro on December 6, 2017. Following Hayes's presentation, Wells Fargo reported that "*Mr. Hayes believes that Supermicro is in the final stages of audit review before filing its 10-K (and subsequent updated 10-Q)*."

1521375_1

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                                    - 29 -

70.   <u>Reasons Why the Statements in ¶¶56, 59, 62, 69 Were False and Misleading</u>:   In addition to the reasons detailed in ¶55, Defendants' statements concerning: (i) the completion of the Company's internal investigations; (ii) the timing of and its ability to comply with SEC filing requirements; and (iii) its ability to comply with NASDAQ listing requirements were materially false and misleading because Defendants knew, or were deliberately reckless in not knowing, and failed to disclose the following:

(a)   As a result of material weaknesses in internal controls, the accounting for thousands of transactions from FY15 through FY17 required reassessment for determining appropriate revenue recognition treatment;

(b)   As of December 6, 2017, Super Micro was not in the "final stages" of its audit review for its FY17 Form 10-K or its 1Q18 Form 10-Q given the volume of transactions the Company and its auditing firms were required to review;

(c)   The Company lacked a defined process for reviewing transactions and lacked visibility into the work required to complete its investigation and SEC filings;

(d)   The Company failed to maintain sufficient documentation to support the appropriate accounting treatment of certain transactions; and

(e)   Given the foregoing, the Company's statements concerning the Company's internal investigation, the status of its SEC filings, and its ability to comply with NASDAQ listing requirements were false and misleading.

**Super Micro Announces Departure of Senior Executives and Cannot State if Its Historical Financial Statements Are Accurate; Audit Committee Investigation Results in Further Inquiry and Delay**

71.   On January 30, 2018, after the close of trading, Super Micro filed a Current Report on Form 8-K, signed by Liang, incorporating two press releases, one titled "Super Micro® Announces Second Quarter Fiscal 2018 Preliminary Financial Information; Management Changes," and another titled "Super Micro® Announces the Appointment of Kevin Bauer as Chief Financial Officer," disclosing that three senior management level employees had resigned and that the Company had appointed a new CFO:

1521375_1

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                                      - 30 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Company announced the appointment of Kevin Bauer, as the Company's Senior Vice President and Chief Financial Officer ("CFO"), effective January 30, 2018. Mr. Bauer, 58, has served as the Company's Senior Vice President, Corporate Development and Strategy since January 2017.

\*     \*     \*

***The Company also announced that Wally Liaw, Sr. Vice President of International Sales, Phidias Chou, Sr. Vice President, Worldwide Sales and Howard Hideshima, Senior Vice President and Chief Financial Officer, have resigned, effective January 30, 2018. Mr. Liaw has also resigned as a member of the Board of Directors of the Company (the "Board"), effective January 30, 2018***.

72.     In addition to providing preliminary financial results for 2Q18, the January 30, 2018 press release also revealed for the first time that the Audit Committee had finished its investigation but that further investigation was necessary and the Company could not represent that its historical financial statements were accurate. The Company reiterated that it had no completion date for its investigation or delinquent reports:

The Audit Committee has completed the previously disclosed investigation. ***Additional time is required to analyze the impact, if any, of the results of the investigation on the Company's historical financial statements, as well as to conduct additional reviews*** before the Company will be able to finalize its Annual Report on Form 10-K for the fiscal year ended June 30, 2017 (the "Form 10-K"). ***The Company is unable at this time to provide a date as to when the Form 10-K will be filed or to determine whether the Company's historical financial statements will be adjusted or, if so, the amount of any such adjustment(s) and what periods any such adjustments may impact***. The Company intends to file its Quarterly Reports on Form 10-Q for the quarters ended September 30 and December 31, 2017 promptly after filing the Form 10-K.

73.     On January 30, 2018, Wells Fargo issued a report titled "SMCI: Significant Revenue Upside; Still Await Finalized Financial Filings," detailing expectations that the Company's shares would be weak due to, among other matters:

(1) uncertainty related to the resignation of high-level sales executives, including co-founder, Wally Liaw, who owns 4.4% of shares outstanding. The company elected to not comment on the reasoning of these resignations / relation to the Audit Committee investigation. (2) While the Audit Committee has completed its investigation, Super Micro reported additional time is required to analyze the impact, *if any*, to historical results (Nasdaq filing deadline on March 13th)."

With respect to the management changes and the Audit Committee investigation, the January 30, 2018 Wells Fargo report disclosed:

Management Changes: (1) Supermicro reported that Wally Liaw, co-founder and SVP of International Sales, has resigned from the company and its board of directors. We would note that Mr. Liaw owns 4.4% of shares outstanding. (2)

Phidias Chou, SVP of worldwide sales, has resigned from Super Micro; Don Clegg, VP of Worldwide Business Develop & Marketing will succeed Mr. Chou on an interim basis. (3) The company also announced that it has appointed Kevin Bauer as its new CFO. Mr. Bauer joined Super Micro in January 2017 as SVP, Corporate Development and Strategy. He holds previous CFO experience at Pericom Semiconductor and Exar Corporation. In connection with this prior CFO, Howard Hideshima, has resigned from the company.

<u>Supermicro announced the Audit Committee completed its investigation; however, additional time is required to analyze the impact (if any) of its findings to historical financial statements</u> and to conduct additional reviews prior to filing its F2017 10-K and F1Q18 / F2Q18 10-Q filings. The company is unable to provide an update on when these will be filed; however, we would note that Super Micro's Nasdaq extension expires on March 13th.

74.    On January 31, 2018, CFRA Research issued a report detailing concerns about Super Micro's failure to meet filing deadlines, management changes and the departure of Hideshima:

*We note SMCI has delayed filing of its 10-K given a pending independent audit review that began from the identification of a sales transaction that was realized during an incorrect quarter*.

We await a resolution to the independent audit review amid a time of favorable business trends but *view recent management changes, including the departure of the CFO, as disturbing*.

75.    On these further disclosures and developments, the price of Super Micro's common stock declined from its close of $24.65 per share on January 30, 2018, to a close at $22.83 per share on January 31, 2018, on increased trading volume. The Company's stock price continued falling over the next several trading days, closing at $19.30 on February 5, 2018, representing a decline of over 21.7% from the January 30, 2018 closing price.

**POST-CLASS PERIOD EVENTS AND DISCLOSURES**

76.    On February 9, 2018, after the close of trading, Super Micro filed a Notification of Late Filing on Form 12b-25, signed by Bauer, disclosing it could not file its 2Q18 Form 10-Q and repeated the Company's prior disclosures that it could not determine when the investigation would be completed, its impact on the Company's historical financial statements or when it would become current with its SEC filings:

Super Micro Computer, Inc. (the "Company") is not in a position to file its Quarterly Report on Form 10-Q for the period ended December 31, 2017 (the "Form 10-Q"), in a timely manner because the Registrant cannot complete the Form 10-Q in a timely manner without unreasonable effort or expense. As previously announced, the Company has been unable to file its Annual Report on Form 10-K for the fiscal year ended June 30, 2017 (the "Form 10-K") and Quarterly Report on Form 10-Q for

1521375_1

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                                   - 32 -

the quarter ended September 30, 2017 ("Q1 10-Q"). The Audit Committee of the Company's Board of Directors has completed the previously disclosed investigation. Additional time is required to analyze the impact, if any, of the results of the investigation on the Company's historical financial statements, as well as to conduct additional reviews before the Company will be able to finalize the Form 10-K. ***The Company is unable at this time to provide a date as to when the Form 10-K will be filed or to determine whether the Company's historical financial statements will be adjusted or, if so, the amount of any such adjustment(s) and what periods any such adjustments may impact***. The Form 10-Q cannot be completed and filed until the Form 10-K and Q1 10-Q are completed and filed. The Company does not expect the filing to be made within the time period required for a timely filing pursuant to Rule 12b-25(b) under the Securities Exchange Act of 1934. The Company intends to file its Quarterly Reports on Form 10-Q for the quarters ended September 30 and December 31, 2017 promptly after filing the Form 10-K.

77.    On February 20, 2018, after the close of trading, Super Micro filed a Current Report on Form 8-K, signed by Liang, incorporating a press release titled "Super Micro Computer Inc. Announces Receipt of Non-Compliance Letter from Nasdaq," disclosing that the Company was not in compliance with NASDAQ listing rules due to failure to file its 2Q18 Form 10-Q and that it had until February 28, 2018, to submit a revised plan to regain compliance. The Company also repeated that the Audit Committee had completed its investigation but that it needed additional time to analyze any impact on the Company's historical financial statements and conduct additional reviews prior to filing its FY17 Form 10-K:

On February 20, 2018, Super Micro Computer, Inc. (the "Company") announced that it received a notification letter (the "Letter") from the Listing Qualifications Department of the Nasdaq Stock Market LLC ("Nasdaq") indicating that the Company is not in compliance with Nasdaq Listing Rule 5250(c)(1), as a result of the Company's delay in filing its Quarterly Report on Form 10-Q for the period ended December 31, 2017 (the "Q2 10-Q") and its continued delay in filing its Annual Report on Form 10-K for the period ending June 30, 2017 (the "Form 10-K") and its Quarterly Report on Form 10-Q for the period ended September 30, 2017 ("Q1 10-Q"). As described in the letter, the Company has until February 28, 2018 to submit to Nasdaq an update to its original plan to regain compliance with the Nasdaq Listing Rules (the "Revised Plan"). As previously disclosed, Nasdaq has granted the Company an extension until March 13, 2018 to file the Form 10-K, the Q1 10-Q and the Q2 10-Q.

The Letter has no immediate effect on the listing or trading of the Company's common stock on the Nasdaq Global Select Market. If the Revised Plan is submitted and accepted, the Company could be granted up to 180 days from the due date of the Initial Delinquent Filing, or March 13, 2018, to regain compliance. If Nasdaq does not accept the Company's plan, then the Company will have the opportunity to appeal that decision to a Nasdaq hearings panel.

1521375_1

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                              - 33 -

1    78.    On these disclosures, the price of Super Micro's common stock declined from its

2  close of $18.85 per share on February 20, 2018, to a close at $18.15 per share on February 21, 2018,

3  on increased trading volume.

4  **Super Micro Subject to Delisting by NASDAQ**

5    79.    On March 16, 2018, after the close of trading, Super Micro filed a Current Report on

6  Form 8-K, signed by Bauer, incorporating a press release titled "Super Micro® Receives Nasdaq

7  Staff Determination Letter; Has Requested Hearing Before Hearings Panel," disclosing that its stock

8  was subject to delisting by NASDAQ:

> On March 14, 2018, Super Micro Computer, Inc. (the "Company") received a
> letter from the staff of the Listing Qualifications Department (the "Staff") of The
> Nasdaq Stock Market LLC ("Nasdaq") notifying the Company that since the
> Company had not filed its Annual Report on Form 10-K for the fiscal year ended
> June 30, 2017 and its Quarterly Reports on Form 10-Q for the quarterly periods
> ended September 30, 2017 and December 31, 2017 (collectively, the "Delinquent
> Filings") by March 13, 2018, the deadline by which the Company was to file its
> Delinquent Filings in order to regain compliance with Nasdaq Listing Rule
> 5250(c)(1), the Company's common stock is subject to delisting from Nasdaq. The
> letter further noted that, unless the Company requested an appeal of the Staff's
> determination, trading of the Company's common stock on Nasdaq would be
> suspended at the opening of business on March 23, 2018, and a Form 25-NSE would
> be filed with the SEC removing the Company's securities from listing and
> registration on Nasdaq.
>
> On March 16, 2018, the Company submitted a letter to Nasdaq requesting a
> hearing before a Hearings Panel at which it intends to present its plan to regain and
> thereafter maintain compliance with all applicable listing requirements.    In
> connection with its request for a hearing, the Company has also requested a stay of
> the suspension of trading and delisting of its common stock, pending the hearing and
> decision of the Hearings Panel.  The Hearings Panel will notify the Company of its
> decision to allow the Company to continue to trade on Nasdaq pending the hearing
> and a decision by the Hearings Panel by April 5, 2018.  There can be no assurance
> that the Hearings Panel will grant the Company's request for continued listing or stay
> the delisting of its common stock.

22    80.    On March 16, 2018, Wells Fargo issued a report titled "SMCI: Supermicro Requests

23  Hearing With Nasdaq To Avoid Delisting (Negative)," describing Super Micro's March 16, 2018

24  announcements regarding its non-compliance with NASDAQ listing requirements as "clearly

25  negative":

> News: Supermicro has announced that today (3/16) it submitted a letter to
> Nasdaq requesting a hearing before a Hearings Panel to present a plan in which it
> intends to regain compliance related to the inability to file its F2017 10-K and F1Q18
> / F2Q18 10-Qs.  The request is for a hearing by March 21, 2018.  This follows the

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                                    - 34 -

company missing its 3/13 deadline to reach compliance. Supermicro has also requested a stay in the suspension of trading / delisting of its stock from Nasdaq.

Supermicro noted that the hearing request automatically stays the delisting process for a period of 15 calendar days from the date of the deadline to request a hearing (or until April 5th).  The Hearings Panel has the authority to grant Super Micro additional time of up to 360 days from the original due date of the company's first late filing to regain compliance (late August timeframe) before further action to delist the company's common stock will occur.  **The Hearings Panel will notify the Company by April 5, 2018 of its decision to allow Supermicro to continue to trade on Nasdaq pending the hearing and a decision by the Hearings Panel**.

Quick Thoughts: ***This news is clearly negative as the company has persistently struggled to regain compliance with Nasdaq – in this release SuperMicro did not provide an update on the progress of completing its internal audit investigation***.  At the time of the company's December quarter results, SuperMicro reported that it was continuing to analyze the findings of its investigation to determine the amount (if any) of a potential financial restatement.

81.    On these disclosures, the price of Super Micro's common stock declined from its close of $19.70 per share on March 16, 2018, to a close at $18.70 per share on March 17, 2018, on increased trading volume.

**Super Micro Fails to File 3Q18 Form 10-Q**

82.    On May 3, 2018, after the close of trading, Super Micro filed a Current Report on Form 8-K, signed by Liang, incorporating a press release titled "Super Micro® Announces Third Quarter Fiscal 2018 Preliminary Financial Information."  In addition to preliminary 3Q18 results, the press release also disclosed that the additional testing overseen by the Audit Committee was "nearing completion":

> ***The Company has completed the previously disclosed investigation conducted by the Audit Committee.  In furtherance of the preparation of the financial statements, the Audit Committee is overseeing additional testing that the Company believes is nearing completion***.  To date, the Company's cash flows have not been impacted by the findings of the investigation or the additional testing. Additional time is required to analyze any impact of the results of the investigation and additional testing on the Company's historical financial statements, as well as to complete additional reviews before the Company will be able to finalize its Annual Report on Form 10-K for the fiscal year ended June 30, 2017 (the "2017 10-K").
>
> The Company presented an updated compliance plan to The Nasdaq Stock Market Hearings Panel on April 26, 2018 and the Company requested an additional exception period for continued listing of its common stock on The Nasdaq Global Select Market through August 24, 2018 in order for it to complete and file its 2017 10-K and subsequent delinquent SEC quarterly filings.  The Company is unable at this time to provide a date as to when the 2017 10-K will be filed or to predict whether the Company's historical financial statements will be adjusted or, if so, the amount of any such adjustment.  The Company intends to file its Quarterly Reports

1521375_1

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                                    - 35 -

on Form 10-Q for the quarters ended September 30, December 31, 2017, and March 31, 2018 promptly after filing the 2017 10-K.

83.     On May 3, 2018, Super Micro held an earnings conference call where Liang and Bauer spoke alongside Hayes.  During the earnings conference call, Hayes reiterated that the Audit Committee had completed its investigation and additional testing was nearing completion; the Company had until August 24, 2018, to complete and file its delinquent reports:

> [Hayes]: Good afternoon, and thank you, for attending SuperMicro's business update conference call for the third quarter fiscal 2018, which ended March 31, 2018. As announced in our press release earlier today, ***the company has completed the previously disclosed investigation conducted by the audit committee. In furtherance of the preparation of the financial statements, the audit committee is overseeing additional testing that the company believes is nearing completion***.

> To date, the company's cash flows have not been impacted by the findings of the investigation or the additional testing.  Additional time is required to analyze any impact of the results of the investigation and additional testing on the company's historical financial statements as well as to complete additional reviews before the company will be able to finalize its annual report on Form 10-K for the fiscal year ended June 30, 2017.  Otherwise known as the 2017 10-K.

> The company presented an updated compliance plan to the NASDAQ stock market hearings panel on April 26, 2018.  And the company requested an additional exception period for continued listing of its common stock on the NASDAQ Global Select Market, through August 24, 2018, in order for it to complete and file its 2017 10-K and subsequent delinquent SEC quarterly filings.

> The company is unable at this time to provide a date as to when the 2017 10-K will be filed or to predict whether the company's historical financial statements will be adjusted or, if so, the amount of any such adjustments.  The company intends to file its quarterly reports on Form 10-Q for the quarters ended September 30 and December 31, 2017, and March 31, 2018, promptly after filing the 2017 10-K.

84.     Additionally, during the May 3, 2018 earnings conference call, Bauer stated that the Company would not answer questions regarding the delinquent reports but that it was nearing completion of its investigation and filings:

> [Bauer]:  The SEC filings process.  As we stated in our press release and as Perry articulated during the introduction, we continue to expend great effort to complete our financial statements and work with our independent auditor to complete the fiscal year 2017 audit process and ultimately file our delinquent reports with the SEC.  As previously indicated, we'll now have a Q&A session, where sell-side analysts will be permitted to ask questions.  ***I'd like to remind you that your questions should be directed to the business update that we just provided and we'll not answer any further questions relating to the audit committee investigation or the delayed filing of our 10-K***.  Operator, at this time, we're ready for questions.

*          *          *

1521375_1

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                                  - 36 -

1   As it relates to the additional testing, I'll remind you that we're not going to be
    answering questions about that. But it's just the continuation of the process to get
2   our arms around all of the issues that occurred during that timeframe. So as we said,
    ***we believe that we think we're nearing completion there and we're working in***
3   ***parallel with other teams to be able to our get our filings done as expeditiously as***
    ***possible and we'll leave it at that***.

4       85.     The price of Super Micro's common stock increased from its close of $18.05 per

5   share on May 3, 2018, to a close at $21.25 per share on May 4, 2018, on increased trading volume.

6   Super Micro's stock price continued to increase to nearly $24.00 over the ensuing two trading days.

7       86.     On May 10, 2018, after the close of trading, Super Micro filed a Notification of Late

8   Filing on Form 12b-25, signed by Bauer, disclosing that it could not timely complete its 3Q18 Form

9   10-Q:

10      Super Micro Computer, Inc. (the "Company") is unable to file its Quarterly
11      Report on Form 10-Q for the period ended March 31, 2018 (the "Form 10-Q") in a
        timely manner without unreasonable effort or expense. As previously announced,
12      the Company has been unable to file its Annual Report on Form 10-K for the fiscal
        year ended June 30, 2017 (the "Form 10-K"), Quarterly Report on Form 10-Q for the
13      quarter ended September 30, 2017 ("Q1 10-Q") and Quarterly Report on Form 10-Q
        for the quarter ended December 31, 2017 ("Q2 10-Q").

14                              *       *       *

15      The Company presented an updated compliance plan to The Nasdaq Stock
16      Market Hearings Panel (the "Panel") on April 26, 2018 and the Company requested
        an additional exception period for continued listing of its common stock on The
17      Nasdaq Global Select Market ("Nasdaq") through August 24, 2018 in order for it to
        complete and file its 2017 10-K and subsequent delinquent SEC quarterly filings.
18      The Panel has since granted the Company's request to continue its listing on Nasdaq
        through August 24, 2018, subject to the condition that the Company becomes current
19      with its SEC filings by that date and informs the Panel the Company is current with
        such filings.

20      87.     On May 21, 2018, after the close of trading, Super Micro filed a Current Report on

21  Form 8-K, signed by Bauer, disclosing that it had received a letter from NASDAQ detailing

22  additional delinquencies with listing rules but that it remained "on track" to meet the August 24,

23  2018 deadline:

24      On May 15, 2018, Super Micro Computer, Inc. (the "Company") received a
25      letter (the "Letter") from the Listing Qualifications Department of The Nasdaq Stock
        Market ("Nasdaq") notifying the Company of its determination of an additional
26      delinquency related to the Company's noncompliance with Nasdaq Listing Rule
        5250(c)(1) (the "Rule") because the Company has not yet filed its Quarterly Report
27      on Form 10-Q for the quarter ended March 31, 2018 (the "Q3 10-Q"). . . . The Letter
        states that the Nasdaq Hearings Panel (the "Panel") will consider this matter in their
28      decision regarding the Company's continued listing on The Nasdaq Global Market,

1521375_1

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                    - 37 -

and that the Company should present its views with respect to this additional deficiency to the Panel in writing no later than May 22, 2018.

On May 18, 2018, the Company submitted a response to the Nasdaq Hearings Panel (the "Panel") stating that, consistent with the Company's presentation at the recent hearing before the Panel and as of the date of the reply, ***the Company believes it remains on track to file the Delinquent Reports with the SEC and thereby evidence compliance with the Rule on or before the Panel deadline of August 24, 2018***.

As the Company previously announced, the Panel has granted the Company's request to continue its listing on Nasdaq through August 24, 2018, subject to the condition that the Company becomes current with its SEC filings by that date and informs the Panel the Company is current with such filings. The Company is diligently working to become current with its SEC filings and intends to continue to take all steps necessary to regain compliance with the Rule.

88.     On July 13, 2018, after the close of trading, Super Micro filed a Current Report on Form 8-K, signed by Liang, disclosing that the Company had failed to hold a required annual meeting of shareholders:

On July 9, 2018, Super Micro Computer, Inc. (the "Company") received a letter (the "Letter") from the Listing Qualifications Department of The Nasdaq Stock Market LLC ("Nasdaq") notifying the Company of its determination of an additional deficiency related to the Company's noncompliance with the annual meeting requirement set forth in Nasdaq Listing Rule 5260(a) (the "Rule") because the Company did not hold an annual meeting of shareholders within twelve months of the end of the Company's prior fiscal year end. The Letter states that the Nasdaq Hearings Panel (the "Panel") will consider this matter in their decision regarding the Company's continued listing on The Nasdaq Global Select Market, and that the Company should present its views with respect to the additional deficiency to the Panel in writing no later than July 16, 2018.

The Company is diligently working to become current with its SEC filings and intends to continue to take all steps necessary to regain compliance with the Nasdaq Listing Rules, including the Rule.

**Super Micro Fails to Meet Filing Deadline; NASDAQ Suspends Trading**

89.     On August 21, 2018, after the close of trading, Super Micro filed a Current Report on Form 8-K, signed by Liang, disclosing that its SEC filings dating back to the Company's FY17 Form 10-K would remain delinquent, and as such, the Company would face delisting proceedings:

On August 20, 2018, Super Micro Computer, Inc. (the "Company") submitted a supplemental letter to the Hearings Panel (the "Panel") of The Nasdaq Stock Market LLC ("Nasdaq") notifying the Panel that ***the Company will be unable to meet the Panel's August 24, 2018 deadline to regain compliance with Nasdaq Listing Rule 5250(c)(1)*** because the Company will not be able to complete and file its Annual Report on Form 10-K for its fiscal year ended June 30, 2017 (the "2017 Form 10-K") and its Quarterly Reports on Form 10-Q for its fiscal quarters ended September 30, 2017, December 31, 2017 and March 31, 2018 (collectively with the

2017 Form 10-K, the "Delinquent Reports") with the Securities and Exchange Commission ("SEC") by such date.

As previously disclosed, by decision dated May 9, 2018, the Panel granted the Company's request to continue its listing on Nasdaq's Global Select Market through August 24, 2018, subject to the condition that the Company become current with its SEC filings by that date and informs the Panel the Company is current with such filings. *While the Company has made significant progress toward completing the necessary accounting review processes, it has determined that the Delinquent Reports will not be filed with the SEC by August 24, 2018.*

*As a result of the updated timing, the Company expects that its common stock will soon be suspended from trading on Nasdaq's Global Select Market and the Panel will begin delisting proceedings.*

90.     The Form 8-K incorporated a press release disclosing the Company would not file its delinquent reports with the SEC given the magnitude of transactions that needed to be reviewed for revenue recognition purposes and reiterated that it expected to be delisted from the NASDAQ:

The Company is currently in the process of preparing its financial statements in light of the results of the Audit Committee investigation and other ongoing testing. *A significant number of transactions remain to be reviewed.* To date, none of the hundreds of reviewed transactions has involved revenue that could not ultimately be recognized, however, we have not concluded that a restatement to previously filed financial results is necessary. The Company's cumulative cash flows have not been impacted by the findings of the investigation or other testing, although the expenses associated with the investigation and testing have been significant.

*The delay primarily relates to the magnitude of work that the Company still must perform in order to review the Company's accounting judgments, estimates and records for transactions that occurred during fiscal years 2015 through 2017, as well as the Company's assessment and conclusions on the effectiveness of its internal control over financial reporting during such periods, so that it can complete the financial statements for the 2017 Form 10-K.* Although the Company has made substantial progress in these matters and committed extraordinary resources and personnel toward the effort, the amount of work is substantial and the additional testing required has taken longer than anticipated. The Company is committed to filing its Delinquent Reports as soon as practicable.

Charles Liang, Chairman and Chief Executive Officer commented, "Despite our substantial progress in these matters, we are very disappointed that we did not meet the filing deadline. *We are strongly committed to completing our SEC filings as soon as possible. In addition, we continue to strengthen our internal accounting, audit and compliance functions*. . . ."

*As a result of the updated timing, the Company expects that its common stock will soon be suspended from trading on Nasdaq's Global Select Market and the Panel will begin delisting proceedings.* If the Panel decides to delist the Company's common stock, the Company will evaluate all of its options, including filing an appeal to the Nasdaq Listing and Hearing Review Council.

Following a possible suspension of trading in the Company's common stock on Nasdaq, the Company expects that its shares will be quoted over the- counter on

1521375_1

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                                                    - 39 -

the OTC Markets.  The Company intends to continue to work diligently toward completing its Delinquent Reports, regaining compliance with its SEC reporting obligations, and regaining its listing on Nasdaq or another national stock exchange as soon as practicable.

91.     Later that day, Super Micro held an earnings conference call where Liang and Bauer disclosed that the Company still had a substantial amount of transactions to review for revenue recognition purposes and reiterated that its stock would be suspended from trading on the NASDAQ:

[Bauer]:  We have worked diligently and deployed significant resources towards completing the 2017 and 2018 financial statements, but are not able to file by the deadline of August 24, 2018. . . . We have made tremendous progress on this matter, having completed the analysis of specific revenue transactions identified through our audit committee's investigation.

To-date, our cash flows have not been impacted by our findings and no transaction reviewed by the company as part of this process has involved revenue that could not ultimately be recognized nor have we concluded that a restatement of financial results is necessary.  **The question you must be asking is; why is this matter taking so long.  The answer is that in order to be thorough, we are reviewing transactions near the end of each quarter for similar issues found in the earlier testing, but particularly as it relates to the matching of purchase order and shipping terms to the timing of revenue**.

As we are a high-volume business, this entails locating documentation that is onsite, archived, or [ph] at third-parties.  **I'm reviewing thousands of revenue transactions in detail using a structured approach.  There are a number of issues.** However, let me share an example of an issue that has arisen in our reviews.

We have from time to time offered free shipping to customers even though terms of our agreements with those customers provided that the customer would arrange for its own shipping company to pick the products up at our factory shipping dock. ***This practice had the unintended accounting consequence of converting the transaction from an Ex Works transaction to an FOB transaction.  If end-of-quarter shipments are adjusted in this way, it can cause the appropriate date for recognizing the revenue for those shipments to slip from one quarter into the next.  This is one example of what we are looking for as we review thousands of transactions***.

The company believes the revenue recognized for review transactions is valid revenue. ***The main issue is the quarter in which revenue must be recognized.  We have not yet determined whether the magnitude of any timing adjustment will be material to any of our previously filed financial statements***.

We continue to work diligently to complete the review, assess the impact, and complete our financial statements and assessment of internal controls over financial reporting.  ***We have engaged KPMG to assist us with our review*** and we are also working closely with our independent auditor, Deloitte, to complete the job.  We appreciate the efforts of both KPMG and Deloitte.

***We are not able today to project the date by which we will complete this review and file all our delinquent SEC reports, but we believe that date is not too far in the future***.

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                                                - 40 -

1       92.     On August 21, 2018, during the 4Q18 earnings conference call, analysts recognized

2  that the Company's stock price was declining in reaction to the Super Micro's delayed SEC filings

3  and noted that the Company had disclosed significant work remained to be done in connection with

4  the delinquent reports:

> [Nehal Sushil Chokshi]: ***But, Kevin, as you know, the stock is reacting to delayed filing*** and really great color on some of the examples that's going on. You made a statement at the end that you believe that the ability to [ph] solve these problems is not too far away, but in the second press release of the day it does say that there is still significant work to do. So can you help bridge the delta between the verbal comment and what's in the file – in what's the 8-K?

       93.     In response, Bauer admitted that the Company still had a substantial amount of work

remaining, possessed "pretty good visibility" on completing the process, had analyzed the largest

transactions first and was just now moving toward assessing smaller transactions:

> [Bauer]: Yeah. So I think it is true that ***we still have a substantial amount of work to do***. I think what we said in terms of being able to see it in the future is that ***now that we are later in the process we actually have pretty good visibility on what it takes to remain to be able to complete the process***. So that's how I would string them together that it's one of better visibility, but there's still a fair amount to do.

> [Nehal Sushil Chokshi]: Okay. ***So the process that was defined on what needs to be done to review a transaction was established relatively late relative to when the investigation started about a year ago***. Is that fair to say?

> [Bauer]: ***Well, certainly, as the results of the investigation came in, we were able to see a little bit more in terms of the processes that we [ph] would needing [] to do***. ***So certainly it was evolving***.

> [Nehal Sushil Chokshi]: Okay. And just to be clear, you said significant transactions left for review, but you've already reviewed hundreds of transactions. So are you only a fraction of the way through? Are you like 10% to 20% the way through or are you more like 80%, 90% the way through of what needs to be reviewed?

> [Bauer]: Yeah. We really can't go into that level of detail. ***What I can share with you is that we've taken the approach of largest transactions and are now going towards smaller transactions***.

       94.     On August 21, 2018, Wells Fargo issued a report titled "SMCI: Suspension of

Coverage," disclosing that Wells Fargo was suspending research coverage in light of Super Micro's

failure to meet SEC filing deadlines and the risk of NASDAQ delisting: "[O]ur current policy is that

we will suspend research coverage when the Analyst is unable to maintain our existing coverage

status due to various legal, regulatory and/or company policy circumstances."

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST         - 41 -

95.     On these disclosures, the price of Super Micro's common stock declined from its close of $18.35 per share on August 21, 2018, to a close at $15.65 per share on August 22, 2018 – a decline of over 14.7% – on increased trading volume.

96.     On August 22, 2018, Susquehanna Financial Group issued a report titled "Super Micro: Suspending Coverage," disclosing that they were suspending coverage of their ratings and estimates due to Super Micro's failure to meet SEC filing deadlines and NASDAQ listing standards:

> <u>Why is it taking the company so long to complete the reviews</u>: SMIC disclosed last night that its cash flows have not been impacted by the on-going investigation, and there is no need for restatement of financial results.  However, ***SMCI is still reviewing transactions near the end of each quarter for similar issues found in the earlier reviews, but particularly as it relates to the matching of purchase order and shipping terms to the timing of revenue.  In our view, lack of proper internal controls has lengthened this review process.  Yes, there is no restatement, but lack of proper internal controls has also made it difficult for the company to provide necessary documentation for the past transactions which is consequnetly [sic] making it difficult for the company to determine the timing of revenue recognition***.

97.     On August 22, 2018, CFRA issued a report detailing concerns about Super Micro's failure to meet SEC filing deadlines and anticipated NASDAQ delisting:

> ***We are growing wary after SMCI states it has been unable to complete the analysis of specific revenue transactions found through its audit committee's investigation.  We expect SMCI to be delisted from the Nasdaq Exchange given its inability to properly file SEC required documents***.
>
> \*       \*       \*
>
> ***We remain concerned about the timetable as well as necessary costs it will take for SMCI to complete its review, as the company still noted a substantial amount of transactions that need to be reviewed***.
>
> Our 12-month target price of $20 is based on a P/E of 7.7X our FY 19 operating EPS estimate, below comparable peers ***to reflect limited visibility surrounding accounting issues***.

98.     CFRA's report also contained a research note dated August 22, 2018, 8:33 a.m. ET, which reiterated that the limited visibility surrounding Super Micro's failure to meet SEC filing deadlines coupled with NASDAQ delisting and the substantial number of transactions that needed to be reviewed impacted the value of the Company's shares:

> 08:33 am ET . . . CFRA KEEPS HOLD OPINION ON SHARES OF SUPER MICRO COMPUTER, INC. (SMCI 18.35\*\*\*): ***We cut our 12-month target to $20 from $24, on steep peer-discount P/E of 7.7X our FY 19 (Jun.) EPS estimate given limited visibility surrounding accounting issues*** . . . .   While SMCI is benefiting

from secular trends within its end-markets, we are growing more cautious after SMCI states it has been unable to complete the analysis of specific revenue transactions identified through its audit committee's investigation. While SMCI cited its findings thus far will not impact its cash flows, we expect the company to be delisted from the Nasdaq Exchange given its inability to properly file SEC required documents. We remain concerned about the timetable as well as necessary costs it will take for SMCI to complete its review, as it still noted a substantial amount of transactions that need to be reviewed. /Angelo Zino, CFA

99.     On August 23, 2018, Super Micro issued a press release titled "Super Micro® Announces Suspension of Trading of Common Stock on Nasdaq and its Intention to Appeal," disclosing the Company anticipated its stock suspension from trading on the NASDAQ:

> **Super Micro** Computer, Inc. (NASDAQ:SMCI) (the "Company"), a global leader in high performance, high-efficiency server, storage technology and green computing, *today announced that, as expected, the Company received a notification letter from The Nasdaq Stock Market Hearings Panel (the "Panel") on August 22, 2018, indicating that trading in the Company's common stock on Nasdaq's Global Select Market will be suspended effective at the open of business on August 23, 2018.*
>
> *         *         *
>
> While the Company's common stock is suspended from trading on Nasdaq, the Company expects that its shares will be quoted on the OTC Markets under the trading symbol SMCI. For quotes or additional information on the OTC Markets, you may visit http://www.otcmarkets.com.

100.     On August 23, 2018, after the close of trading, Super Micro filed a Current Report on Form 8-K, signed by Liang, disclosing the NASDAQ Hearing Panel had delisted the Company's common stock and suspend trading on the NASDAQ as of August 23, 2018. The Company indicated that it intended to appeal:

> On August 22, 2018, Super Micro Computer, Inc. (the "Company") received a letter from the Hearings Panel (the "Panel") of The Nasdaq Stock Market LLC ("Nasdaq") notifying the Company that *the Panel has determined to delist the Company's common stock and that trading on Nasdaq's Global Select Market will be suspended effective at the open of business on August 23, 2018.*
>
> *         *         *
>
> The Company intends to appeal the Panel's decision to the Nasdaq Listing and Hearing Review Council. During the appeal period, trading in the Company's common stock on Nasdaq will remain suspended and Nasdaq will not delist the Company's common stock pending such appeal.
>
> *         *         *

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                        - 43 -

1         While the Company's common stock is suspended from trading on Nasdaq, the Company expects that its shares will be quoted on the OTC Markets under the trading symbol SMCI.

2

3        101.    On August 29, 2018, after the close of trading, Super Micro filed a Notification of

4 Late Filing on Form 12b-25, signed by Bauer:

5         Super Micro Computer, Inc. (the "Company") is unable to file its Annual Report on Form 10-K for fiscal year ended June 30, 2018 (the "2018 Form 10-K") in a timely manner without unreasonable effort or expense. As previously announced, the Company has been unable to file its Annual Report on Form 10-K for the fiscal year ended June 30, 2017 (the "2017 Form 10-K"), Quarterly Report on Form 10-Q for the quarter ended September 30, 2017 ("Q1 10-Q"), Quarterly Report on Form 10-Q for the quarter ended December 31, 2017 ("Q2 10-Q") and Quarterly Report on Form 10-Q for the quarter ended March 31, 2018 ("Q3 10-Q") (the 2017 Form 10-K, Q1 10-Q, Q2 10-Q, Q3 10-Q and the 2018 Form 10-K being collectively referred to herein as the "Delinquent Reports"). The Audit Committee of the Company's Board of Directors has completed the previously disclosed investigation. The Company is currently in the process of preparing its financial statements in light of the results of the Audit Committee investigation and other ongoing testing. *A significant number of transactions remain to be reviewed*.

6

7

8

9

10

11

12        *The delay primarily relates to the magnitude of work that the Company still*

13 *must perform in order to review the Company's accounting judgments, estimates and records for transactions that occurred during fiscal years 2015 through 2017,*

14 *as well as the Company's assessment and conclusions on the effectiveness of its internal control over financial reporting during such periods, so that it can*

15 *complete the financial statements for the 2017 Form 10-K and subsequently complete the other delinquent reports*. Although the Company has made substantial

16 progress in these matters and committed extraordinary resources and personnel toward the effort, the amount of work is substantial and the additional testing

17 required has taken longer than anticipated.

18 **Super Micro Announces Restatement and Material Weaknesses**

19        102.    On November 15, 2018, Super Micro filed a Current Report on Form 8-K (the

20 "Restatement Announcement") that disclosed the need to restate its financials for each of the

21 quarterly and annual periods during FY15, FY16 and the first three quarters of FY17 (as well as

22 4Q17 preliminary results), estimated ranges for the restatement, and announced material weaknesses

23 in internal controls and ineffective disclosure controls, as well as remediation efforts taken to date:

24        **Item 4.02(a) Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review**

25

26        On November 14, 2018, the Board of Directors of the Company, based on the recommendation of the Audit Committee and in consultation with management,

27 determined that (i) *the Company's consolidated financial statements and the related reports of its independent registered public accounting firm contained in its*

28 *Annual Report on Form 10-K for the fiscal years ended June 30, 2016 and 2015, (ii) the Company's previously issued condensed consolidated financial statements*

*contained in its Quarterly Reports on Form 10-Q for the interim quarterly periods for the previously mentioned fiscal years ended June 30, 2016 and 2015 and (iii) the Company's previously issued condensed consolidated financial statements contained in its Quarterly Reports on Form 10-Q for the quarterly periods ended March 31, 2017, December 31, 2016 and September 30, 2016 should no longer be relied upon because of errors. The errors primarily related to the timing of recognition of revenue and classification of certain inventory used for engineering purposes and certain products returned to the Company for repair as inventory. Revenue recognition timing issues included quarter-end cut-off determinations and allocation of revenue determinations for customer contracts with service elements.* To date, none of the revenue recognition errors identified relating to customer transactions involved revenues that could not ultimately be recognized. The Company also plans to correct other accounting errors discovered through management's review process. To date, the Company believes total cash flows from operating, investing, and financing have not been impacted, with the exception of certain balance sheet classification errors that have been determined to have an immaterial effect on cash and cash flows from operations.

\*     \*     \*

***The Company intends to restate its financial statements for prior periods as required.*** The Company's preliminary estimates for the changes in revenue, net income and GAAP earnings per share for the fiscal years ended June 30, 2015 and 2016 (as contained in the Company's Annual Reports on Form 10-K filed with the Securities and Exchange Commission (the "SEC") on September 10, 2015 and August 26, 2016, respectively) and the fiscal year ended June 30, 2017 (as announced on a preliminary basis in an exhibit to the Company's Current Report on Form 8-K furnished on August 3, 2017) resulting from the expected restatement is as set forth below (in millions, except per share amounts):

\*     \*     \*

The Company intends to file its restated consolidated financial statements as soon as practicable; however, the Company cannot predict with certainty when the preparation of its prior period restated financial statements, as well as its Forms 10-Q and Forms 10-K for subsequent periods, will be completed. As part of the restatement process, the Company is continuing to assess the adjustments identified above and will assess any other potential items for correction as needed.

In addition, the Company is evaluating the impact of the identified errors on its internal control over financial reporting and disclosure controls and procedures. ***The Company will report material weaknesses in internal control over financial reporting related to this matter and will report that its disclosure controls and procedures were ineffective.*** The Company has already commenced efforts to remediate its material weaknesses. The Company will report those material weaknesses and its remediation efforts in its Annual Report on Form 10-K for the year ended June 30, 2017.

103.    The Company also issued a press release the same day titled "Supermicro® Announces First Quarter Fiscal 2019 Preliminary Financial Information and Decision to Restate Prior Period Financial Statements," which discussed the need for restatement and continued testing:

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                                                    - 45 -

**Decision to Restate Prior Period Financial Statements**

Also today, the Company filed a Current Report on Form 8-K with the Securities and Exchange Commission noting that on November 14, 2018, the Board of Directors of the Company, based on the recommendation of the Audit Committee and in consultation with management, determined to restate prior period financial statements and advised that those financial statements should not be relied upon. The restatement primarily relates to the timing of recognition of revenue and classification of certain inventory. The Company believes total cash flows from operating, investing, and financing have not been affected with the exception of certain balance sheet classification errors that have been determined to have an immaterial effect on cash and cash flows from operations. Investors are encouraged to review that report. Included in the Form 8-K are the Company's preliminary estimates for the changes in revenue, net income, GAAP diluted earnings per share and non-GAAP diluted earnings per share for the fiscal years ended June 30, 2015 and 2016 (as reported) and fiscal year ended June 30, 2017 (as announced).

104.   On November 15, 2018, the Company held an earnings conference call in which it discussed the restatement and elaborated on steps taken to remediate certain material weaknesses:

[Bauer:]  Now, let's turn to the progress we are making on the fiscal 2017 Form 10-K.  The company has substantially completed its testing and assessments. Today, we announced that we have determined to restate prior period financials and provided estimated adjusted amounts. We are in the final stages of preparation and conclusion, so that we may continue to work with our auditors to complete our 2017 Form 10-K. ***The core basis of the restatements remains the timing of revenue recognition.*** Based on our assessment to date, the company confirms that, although in our restated financials some revenue recognized in prior periods will be recognized in a subsequent period, all revenue from customer transactions in the period subject to the restatement is valid revenue. ***During our review of prior periods, we also discovered additional errors relating to the classification of certain inventories***.

***The number and breadth of the adjustments, coupled with their aggregate magnitude was significant enough for us to conclude that restating prior periods was necessary.*** To date, we believe total cash flows from operating, investing and financing have not been impacted with the exception of certain balance sheet classification errors that have been determined to have an immaterial effect on cash and cash flow from operations.

***Based on our findings, we expect to report material weaknesses of our financial reporting***. We have, depending on the matter, begun remediation measures to varying degrees. Along the way, ***we have developed stronger revenue policies, trained employees, and developed new standards***.

There are a number of remediation efforts. Let me share a few examples. ***We have hired senior revenue talent and grown our revenue team, implemented strong cut-off controls including locking the shipping dock at the close of the quarter and enhancing our revenue testing, and we have revamped the sales sub-certification process at quarter end***. In addition, we have formed a new internal audit team that is conducting testing on the second half of 2018 and absorbing the transfer of knowledge from the efforts of our advisors in the process.

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                                                  - 46 -

1521375_1

**SUPER MICRO'S FINANCIAL STATEMENTS WERE MATERIALLY MISSTATED**

**Defendants Will Restate Super Micro's Financial Statements**

105.   During the Class Period, Super Micro's reported financial results were included in Forms 10-Q and 10-K and in related earnings releases filed with the SEC.  Super Micro's SEC filings represented that the financial information was a fair statement of the Company's financial results and that the results were prepared in accordance with GAAP.[10]  These representations were false and misleading as the financial results were not a fair statement and were not prepared in accordance with GAAP.

106.   On November 15, 2018, Defendants filed the Restatement Announcement disclosing that Super Micro would restate its previously issued financial statements for FY15 (*i.e.*, July 1, 2014 to June 30, 2015), FY16 (*i.e.*, July 1, 2015 to June 30, 2016) and the first three quarters of FY17 (as well as 4Q17 preliminary results), due to improper revenue recognition and inventory misstatements:

> On November 14, 2018, the Board of Directors of the Company, based on the recommendation of the Audit Committee and in consultation with management, determined that (i) the Company's consolidated financial statements and the related reports of its independent registered public accounting firm contained in its Annual Report on Form 10-K for the fiscal years ended June 30, 2016 and 2015, (ii) the Company's previously issued condensed consolidated financial statements contained in its Quarterly Reports on Form 10-Q for the interim quarterly periods for the previously mentioned fiscal years ended June 30, 2016 and 2015 and (iii) the Company's previously issued condensed consolidated financial statements contained in its Quarterly Reports on Form 10-Q for the quarterly periods ended March 31, 2017, December 31, 2016 and September 30, 2016 should no longer be relied upon because of errors.  The errors primarily related to the timing of recognition of revenue and classification of certain inventory used for engineering purposes and certain products returned to the Company for repair as inventory.  Revenue

---

[10]   GAAP are those principles recognized by the accounting profession as the conventions, rules, and procedures necessary to define accepted accounting practice at a particular time.  SEC Regulation S-X (17 C.F.R. §210.4-01(a)(1)) ("Regulation S-X") states that financial statements filed with the SEC that are not prepared in compliance with GAAP are presumed to be misleading and inaccurate, despite footnotes and other disclosure.  Regulation S-X requires that interim financial statements must also comply with GAAP, with the exception that interim financial statements need not include disclosures that would be duplicative of disclosures accompanying annual disclosures, pursuant to 17 C.F.R. §210.10-01(a).  On June 30, 2009, the FASB issued the Statement of Financial Accounting Standards No. 168, *The FASB Accounting Standards Codification and the Hierarchy of Generally Accepted Accounting Principles – a replacement of FASB Statement No. 162*.  FASB Accounting Standards Codification ("ASC") became the source of authoritative U.S. accounting and reporting standards for nongovernmental entities, in addition to guidance issued by the SEC, effective for financial statements issued for reporting periods that ended after September 15, 2009.  The ASC did not change existing U.S. GAAP.

recognition timing issues included quarter-end cut-off determinations and allocation of revenue determinations for customer contracts with service elements.[11]

107.    Defendants' intention to restate the Company's financial results is an admission that the previously reported financial results issued during the Class Period were false and misleading and not prepared in accordance with GAAP.[12]   This would include the financial results issued in Forms 10-Q and 10-K and related earnings releases for the periods ended: June 30, 2016 (FY16), September 30, 2016 (1Q17), December 31, 2016 (2Q17), March 31, 2017 (3Q17) and June 30, 2017 (FY17).   Moreover, as of the date of this filing (January 22, 2019), Super Micro has still not issued a final restatement and the preliminary restatement impact is subject to change and new material adjustments still could be identified.

108.    In the Restatement Announcement, Super Micro reported the preliminary estimated restatement impact on its revenues, net income and diluted EPS for the fiscal years ended June 30, 2015, June 30, 2016 and June 30, 2017.   Using the mid-point estimate from the "Expected Adjustment Range," Super Micro over a three year cumulative period overstated revenues by $60 million, net income by $8.5 million and EPS by $0.16.

| | Year Ended as Reported | | | | | | Year Ended as Announced | | |
|---|---|---|---|---|---|---|---|---|---|
| | June 30, 2015 | | | June 30, 2016 | | | June 30, 2017 | | |
| | As Reported | Expected Adjustment Range | Expected as Adjusted Range | As Reported | Expected Adjustment Range | Expected as Adjusted Range | As Announced | Expected Adjustment Range | Expected as Adjusted Range |
| Revenue | $1,991 | $(40) - $(20) | $1,951 - $1,971 | $2,216 | $3 - $23 | $2,219 - $2,239 | $2,530 | $(53) - $(33) | $2,477 - $2,497 |
| Net Income | $102 | $(8) - $(5) | $94 - $97 | $72 | $2 - $5 | $74 - $77 | $69 | $(7) - $(4) | $62 - $65 |
| Diluted Earnings per Share | $2.03 | $(0.15) - $(0.09) | $1.88 - $1.94 | $1.39 | $0.04 - $0.10 | $1.43 - $1.49 | $1.34 | $(0.14) - $(0.08) | $1.20 - $1.26 |

109.    The Restatement Announcement also announced the Company's intention to restate the non-GAAP EPS amounts that it previously disclosed for prior periods in its quarterly earnings releases.   Using the mid-point estimate, Super Micro over a three year cumulative period overstated

[11]   The Restatement Announcement stated the Company's intention to restate the financial results for the fiscal year ended June 30, 2017 as announced on a preliminary basis in an exhibit to the Company's Current Report on Form 8-K furnished on August 3, 2017.

[12]   The announcement of a restatement is also an admission that Defendants Liang and Hideshima signed false SOX certifications during the Class Period attesting to the accuracy and compliance with GAAP of Super Micro's financial statements.  *See* ¶¶39-40.

1521375_1

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                                      - 48 -

non-GAAP EPS by $0.13.  The Company's estimates of the changes to the non-GAAP EPS amounts are set forth below:

| | Year Ended as Reported | | | | | | Year Ended as Announced | | |
|---|---|---|---|---|---|---|---|---|---|
| | June 30, 2015 | | | June 30, 2016 | | | June 30, 2017 | | |
| | As Reported | Expected Adjustment Range | Expected as Adjusted Range | As Reported | Expected Adjustment Range | Expected as Adjusted Range | As Announced | Expected Adjustment Range | Expected as Adjusted Range |
| GAAP | $2.03 | $(0.15) - $(0.09) | $1.88 - $1.94 | $1.39 | $0.04 - $0.10 | $1.43 - $1.49 | $1.34 | $(0.14) - $(0.08) | $1.20 - $1.26 |
| Less: Stock-based Compensation net of Tax Effect | 0.12 | 0.01   0.01 | 0.13   0.13 | 0.20 | 0.01   0.01 | 0.21   0.21 | 0.23 | 0.01   0.01 | 0.24   0.24 |
| Non-GAAP | $2.15 | $(0.14) - $(0.08) | $2.01 - $2.07 | $1.59 | $0.05 - $0.11 | $1.64 - $1.70 | $1.57 | $(0.13) - $(0.07) | $1.44 - $1.50 |

110.    According to the Restatement Announcement, Defendants materially misstated revenues during the Class Period due to quarter-end cut-off determinations and allocation of revenue determinations for customer contracts with service elements.  These material misstatements in revenue included improperly and prematurely recognizing revenue on certain quarter-end transactions and improper revenue recognition due to a failure to lock the shipping dock at the end of quarters. *See* ¶¶129-130.  Super Micro also misstated inventory due to misclassification of certain inventory used for engineering purposes and certain products returned to the Company for repair as inventory.

**Defendants Identified Material Weaknesses in Internal Controls and Ineffective Disclosure Controls in the Restatement Announcement**

111.    The Restatement Announcement also disclosed that Super Micro would report material weaknesses in internal control over financial reporting ("ICFR") and would report that its disclosure controls and procedures were ineffective.  As a result, Super Micro has admitted that ineffective ICFR and ineffective disclosure controls were material factors contributing to Super Micro's falsified financial statements.  As the Restatement Announcement makes clear:

> In addition, the Company is evaluating the impact of the identified errors on its internal control over financial reporting and disclosure controls and procedures. ***The Company will report material weaknesses in internal control over financial reporting related to this matter and will report that its disclosure controls and procedures were ineffective***. The Company has already commenced efforts to remediate its material weaknesses.  The Company will report those material weaknesses and its remediation efforts in its Annual Report on Form 10-K for the year ended June 30, 2017.

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                                  - 49 -

112.    As discussed above, Super Micro will report material weaknesses in ICFR when its final restatement is issued.  A material weakness, as defined in the Public Company Accounting Oversight Board ("PCAOB"), Auditing Standard No. 5 ("AS 5") is a:

> [D]eficiency, or a combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of the company's annual or interim financial statements will not be prevented or detected on a timely basis.[13]

113.    Control deficiencies that are determined to be a material weakness must be disclosed in management's annual report on its assessment of the effectiveness of ICFR.  Management may not disclose that it has assessed ICFR as effective if there is one or more control deficiencies determined to be a material weakness in ICFR.[14]

114.    AS 5 also provides indicators of material weaknesses in ICFR that includes the following:

> Identification of fraud, whether or not material, on the part of senior management;

> ***Restatement of previously issued financial statements to reflect the correction of a material misstatement***;

> Identification by the auditor of a material misstatement of financial statements in the current period in circumstances that indicate that the misstatement would not have been detected by the company's internal control over financial reporting; and

> Ineffective oversight of the company's external financial reporting and internal control over financial reporting by the company's audit committee.[15]

115.    During the Class Period, Defendants made repeated assurances that Super Micro's internal controls functioned properly to prevent or detect material misstatements in its financial statements.  Specifically, the FY16 Form 10-K, 1Q17 Form 10-Q, 2Q17 Form 10-Q and 3Q17 Form 10-Q falsely stated that the Company's ICFR and its disclosure controls were effective when they

---

[13]   An Audit of Internal Control Over Financial Reporting That Is Integrated with An Audit of Financial Statements, AS 5. A7.

[14]   Management's Report on Internal Control Over Financial Reporting, Exchange Act Release No. 34-54976 at 41 (Dec. 20, 2006).

[15]   AS 5. 69; By reporting material weaknesses in ICFR, Super Micro will also receive an adverse audit opinion from its independent auditors (Deloitte) when its final restatement is issued. AS 5. 90.

1521375_1

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                                                    - 50 -

were not.  The Company failed to disclose that its ICFR and disclosure controls were ineffective and ultimately contributed to a material restatement required of its financial statements.  Super Micro's disclosure of material weaknesses in ICFR occurred despite assurances to investors that prior material weaknesses related to revenue recognition had been fully remediated.  *See* ¶28.

116.    Defendants' remediation efforts to address the material weaknesses demonstrate a lack of controls around Super Micro's revenue recognition processes.  For example, Defendants have now admitted that during the Class Period the Company lacked strong cut-off controls and failed to lock the shipping dock at the close of quarters.  Further, the Company is revamping its sales sub-certification process at quarter end to help identify any problematic sales at quarter-end.  Finally, Super Micro is increasing the size and expertise of its revenue team, enhancing its revenue testing and forming a new internal audit team to conduct revenue testing for the second half of 2018.  The significant remediation items necessary to deal with Super Micro's material weaknesses demonstrate a failure of adequate internal and disclosure controls around revenue recognition during the Class Period.

117.    The Restatement Announcement demonstrates that the SOX certifications signed by Defendants Liang and Hideshima during the Class Period were false and misleading because of the Company's failure to disclose the existence of material weaknesses in ICFR.  Specifically, the Defendants' certifications were false and misleading because they failed to disclose to the Company's auditors and Audit Committee the following:

> "*[A]ll significant deficiencies and material weaknesses* in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information."

The Restatement Announcement disclosure regarding the existence of material weaknesses are effectively a concession that SuperMicro's ICFR and disclosure controls were ineffective during the Class Period.

**Super Micro's Restatement Announcement Is an Admission of Falsity**

118.    As detailed above, the fact that Super Micro has now indicated its intention to restate its revenues, net income and EPS is an admission that its financial statements originally issued and

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                                                    - 51 -

1   approved by Defendants during the Class Period were false when they were reported and that the

2   misstatements were material.  Pursuant to GAAP, as set forth in ASC 250 – *Accounting Changes*

3   *and Error Corrections*, the type of restatement and revisions announced by Super Micro were to

4   correct for material errors in previously issued financial statements.  Pursuant to ASC 250,

5   restatement of previously issued financial statements is only allowed when a Company makes "[a]n

6   error in recognition, measurement, presentation, or disclosure in financial statements resulting from

7   mathematical mistakes, mistakes in the application of generally accepted accounting principles

8   (GAAP), or oversight or misuse of facts that *existed at the time the financial statements were*

9   *prepared*."  ASC 250-10-20.  Thus, GAAP provides that financial statements should only be restated

10   in limited circumstances, *i.e.*, there is a change in reporting entity, there is a change in accounting

11   principles used or *to correct an error in previously issued financial statements*.  Super Micro's

12   restatement was not due to a change in reporting entity or a change in accounting principle, but

13   rather to correct errors in previously issued financial statements approved by Defendants.  Thus, the

14   restatement is an admission by Defendants that Super Micro's previously issued financial results and

15   Defendants' public statements regarding those results were false and misleading.

16   **Defendants' GAAP Violations and Announced Restatement Were Material**

17   119.   Defendants' false and misleading Class Period statements and omissions regarding

18   Super Micro's accounting were material, particularly in light of SEC guidance on materiality.  The

19   SEC Staff Accounting Bulletin: Codification of Staff Accounting Bulletins' Topic 1-M, *Materiality*

20   ("SEC Topic 1-M"), sets forth the generally accepted methods for accountants to evaluate

21   materiality as it relates to the financial statements of SEC registrants.  SEC Topic 1-M states that:

22   > The omission or misstatement of an item in a financial report is material if, in
23   > the light of surrounding circumstances, the magnitude of the item is such that it is
24   > probable that the judgment of a reasonable person relying upon the report would
25   > have been changed or influenced by the inclusion or correction of the item.

24   120.   SEC Topic 1-M also stresses that materiality requires qualitative, as well as

25   quantitative, considerations.[16]   For example, if a known misstatement would cause a significant

26

27   _____

28   [16]   SEC Topic 1-M provides: "[T]here are numerous circumstances in which misstatements below 5% could well be material.  Qualitative factors may cause misstatements of quantitatively small amounts to be material."   SEC Topic 1-M also notes that assessing materiality solely on a

market reaction that reaction should be taken into account in determining the materiality of the misstatement.

SEC Topic 1-M further states:

Among the considerations that may well render material a quantitatively small misstatement of a financial statement item are –

- Whether the misstatement arises from an item capable of precise measurement or whether it arises from an estimate and, if so, the degree of imprecision inherent in the estimate.

- Whether the misstatement concerns a segment or other portion of the registrant's business that has been identified as playing a significant role in the registrant's operations or profitability.

- Whether the misstatement hides a failure to meet analysts' consensus expectations for the enterprise.

121.    Defendants' misstatements, by their own admission, satisfy these criteria and thus were material from both a quantitative and qualitative perspective.  For example, the fact that Defendants have announced their intention to restate certain of Super Micro's previously released financial statements demonstrates Defendants' conclusion that the misstatements were material under GAAP and SEC rules.  GAAP only permits (and requires) restatements of previously issued financial statements to correct *material* errors.

**Defendants' Violations of SEC Regulations Related to Super Micro's Inadequate Internal Controls**

122.    Section 13(b)(2) of the Exchange Act states, in pertinent part, that every reporting company must: "A. make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer; [and] B. devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that . . . transactions are recorded as necessary . . . to permit preparation of financial statements in conformity with [GAAP]."  15 U.S.C. §78m(b)(2)(A), (B).  These provisions require a reporting company to employ and supervise reliable personnel, to maintain reasonable assurances

---

quantitative basis "has no basis in the accounting literature or the law."  It notes that the FASB "has long emphasized that materiality cannot be reduced to a numerical formula."

1521375_1

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                                                 - 53 -

1   that transactions are executed as authorized, to record transactions on an issuer's books and, at

2   reasonable intervals, to compare accounting records with physical assets.

3       123.   Notably, Defendants recognized the importance for Super Micro's senior officers to

4   maintain an effective internal control system as evidenced by the Company's "Code of Business

5   Conduct and Ethics" accessible on its website.[17]   Super Micro's Code of Business Conduct and

6   Ethics required its senior officers to follow the SEC regulations of Section 13(b)(2), which they

7   failed to do.  *Compare* ¶38 to ¶122.

8       124.   As discussed herein, Super Micro suffered from a failure of effective internal controls

9   over revenue recognition as the Company: (a) failed to maintain sufficient documentation to support

10  the appropriate accounting treatment of transactions; (b) improperly and prematurely recognized

11  revenue on certain quarter-end transactions in violation of GAAP when offering free shipping; (c)

12  needed to reassess the appropriate revenue recognition treatment for thousands of transactions from

13  FY15 through FY17; and (d) improperly recorded revenue related to quarter-end cutoff

14  determinations.  And, although the Company's review is still ongoing after 17 months, it has now

15  admitted that material weaknesses existed in its revenue recognition processes during the Class

16  Period.

17      125.   As a result, Defendants violated §13(b)(2)(A),(B) of the Exchange Act and its own

18  Code of Conduct by failing to ensure that the Company maintained adequate internal controls in

19  order to ensure that Super Micro's financial statements were prepared in conformity with GAAP and

20  that its public filings were accurate.  Super Micro's lack of adequate internal controls (including its

21  undisclosed material weaknesses) rendered the Company's Class Period financial reporting

22  inherently unreliable and precluded the Company from preparing financial statements that complied

23  with GAAP.  Nonetheless, throughout the Class Period, Defendants Liang and Hideshima knowingly

24  or recklessly caused the Company to issue quarterly and annual financial statements that did not

25  disclose the existence of significant and material deficiencies in the Company's internal accounting

26  controls and falsely asserted that Super Micro's financial statements complied with GAAP.

27

28
_____

[17]   https://ir.supermicro.com/static-files/6dedc126-3312-40a8-97c6-79d6b18b572d

1521375_1

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                      - 54 -

**ADDITIONAL SCIENTER ALLEGATIONS**

126.     Defendants acted with scienter in that they knew, or were deliberately reckless in not knowing, that: (i) the public documents and statements issued or disseminated in Super Micro's name, or their own name, were materially false and misleading; (ii) that such statements or documents would be issued or disseminated to the investing public; and (iii) substantially participated or acquiesced in the issuance of such statements or documents as primary violations of the federal securities laws.

127.     By virtue of their receipt or deliberate disregard of information reflecting the true facts regarding Super Micro, their control over, receipt or modification of Super Micro's materially misleading statements, or their other associations with the Company, each Defendant was privy to confidential information concerning Super Micro and knowingly or with deliberate recklessness participated in the fraudulent scheme and conduct alleged herein.

128.     The departure of numerous high-ranking management further supports scienter. Scienter may also be inferred from Hideshima's absence from the October 26, 2017 earnings conference call purportedly because he was "working very hard on the issues related to the filing of the 10-K at this moment," yet he "resigned" on January 30, 2018, the same date the Company announced the appointment of a new CFO and the Audit Committee completed its internal investigation.  As of January 30, 2018, the Audit Committee investigation had been proceeding since October 26, 2017, and more likely since August 29, 2017, when the Company filed a notification that it would need additional time before filing its FY17 Form 10-K.  Notably, two other high ranking sales managers resigned on January 30, 2018, further strengthening the inference that Defendants knew, or were deliberately reckless not knowing, about the magnitude of the accounting failures.

129.     Scienter is also inferred by the Company's need to restate its financial statements due to its failure to comply with basic accounting rules governing revenue recognition.  As explained at ¶55 n.9, ASC 605 concisely and clearly states that revenue is realized or realizable and earned only when all of the following criteria are met:

1521375_1

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                                          - 55 -

1       (a)      "Persuasive evidence of an arrangement exists," with the term "arrangement"

2 meaning the final understanding between the parties as to the specific nature and terms of the

3 agreed-upon transaction";

4       (b)      "Delivery has occurred or services have been rendered";[18]

5       (c)      "The seller's price to the buyer is fixed or determinable"; and

6       (d)      "Collectability is reasonably assured."

7 Super Micro's Restatement Announcement disclosed it had violated these basic revenue recognition

8 rules through improper "quarter-end cut-off determinations" and improper "allocation of revenue

9 determinations for customer contracts with service elements." These were basic revenue recognition

10 timing issues that violated the second revenue recognition criterion: "delivery has occurred or

11 services have been rendered." Similarly, on the August 21, 2018 conference call Bauer described

12 another basic revenue violation where delivery had not occurred by the end of the quarter because

13 the Company offered free shipping. Specifically, by offering free shipping to certain customers on

14 their end-of-quarter shipments, Defendants changed the Company's timing of appropriate revenue

15 recognition to when the customer physically received the product (*e.g.*, free-on-board destination

16 terms). *See* ¶91. With these end-of-quarter shipments, based on Bauer's statements, Super Micro

17 improperly recognized revenue because the Company retained the risks of ownership and title did

18 not pass to the customer until the product was received in the following quarter.[19] This was another

19 basic accounting violation that was based on clear, defined rules and did not involve significant

20 accounting judgment or estimates. As a result, Defendants' statements that its financial statements

21 were compliant with GAAP and revenue was recognized only when all four of the revenue

22 recognition criteria were met were false and misleading.

23       130.     Scienter is also established by the presence of material weaknesses in Super Micro's

24 ICFR. Defendants have admitted that the Company's material weaknesses in the revenue

---

25 [18]   In further explanation of the delivery criterion, ASC 605 references FASB Concepts Statement

26 No. 5, which states: "Revenue should not be recognized until the seller has substantially accomplished what it must do pursuant to the terms of the arrangement, which usually occurs upon

27 delivery or performance of services." ASC 605-10-S99-1.

28 [19]   ASC 605-10-S99-1.

1521375_1

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST      - 56 -

1   recognition process directly contributed to the Company's false financial statements.  The pervasive

2   nature of the internal control failures indicate that Defendants knew about or turned a blind eye to

3   their non-existent control environment around revenue recognition and allowed the issuance of false

4   financial statements.  The remediation items disclosed to date demonstrates a significant absence of

5   internal controls over the revenue recognition process during the Class Period.  For example, on the

6   November 15, 2018 conference call, Bauer stated that Super Micro did not lock the shipping dock at

7   the close of quarters which would be a basic internal control to mitigate fraudulent revenue on

8   quarter-end shipments.  Other remediation items, including the need to hire more experienced

9   personnel in the revenue area, revamp the sales sub-certification process at quarter-end, enhance

10  revenue testing and form a new internal audit team also demonstrate that Defendants knew, or were

11  reckless in not knowing, that the Company's financial statements were materially misstated and that

12  material weaknesses existed in ICFR.

13          131.    Defendants' false SOX certifications attached to Super Micro's Form 10-Qs and

14  Form 10-K, also establish scienter.  Defendants Liang and Hideshima certified that they had

15  personally reviewed Super Micro's financial statements, had designed, established, maintained and

16  evaluated Super Micro's disclosure controls and procedures, and had designed Super Micro's ICFR.

17  Defendants Liang and Hideshima also certified that the financial statements "[do] not contain any

18  untrue statement of a material fact or omit to state a material fact necessary to make the statements

19  made, in light of the circumstances under which such statements were made, not misleading" and

20  "fairly present in all material respects the financial condition, results of operation and cash flows of

21  [Super Micro]."  Such reviews and evaluations, if performed as represented, would have alerted the

22  Individual Defendants to the problems with Super Micro's financial results, disclosure controls and

23  ICFR.  Defendants Liang and Hideshima were also on notice of past material weaknesses with the

24  Company's revenue recognition and failures by the Company to timely file its SEC filings and yet

25  affirmatively assured investors that appropriate remediation had occurred.  *See* ¶¶5, 28.  The

26  Individual Defendants either knew of the material misstatements or failed to perform the required

27  reviews and falsely represented that they had.  In either case, Defendants knew or recklessly

28  disregarded that the SOX certifications Liang and Hideshima signed were false and misleading.

1521375_1

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                              - 57 -

132.   Finally, the substantial length of time it is taking Super Micro to complete its investigation, finalize its restatement and file its delinquent reports evidences the enormity of the problems with the Company's accounting and internal controls that the Individual Defendants knew or were reckless in not knowing about.  The investigation has been ongoing for 17 months now, and a final account of the false accounting is still uncertain as the preliminary restatement is subject to the change.  The Company has been delisted, is now late on filing its last six financial reports (FY17, 1Q18, 2Q18, 3Q18, FY18, 1Q19) and no deadline has been set by when the Company will file a final restatement or become current with its SEC filings.  Further, the fact that the Company has needed to review thousands of sales transactions over a three-year period demonstrates an utter absence of internal controls over the revenue recognition process.  The magnitude of work that Super Micro still needs to finish before filing its delinquent reports with the SEC strongly suggests that Defendants would have known, or were deliberately reckless in not knowing, of the lack of internal and disclosure controls and further evidences scienter against Defendants Liang and Hideshima.

133.   The inference of scienter is further strengthened by the existence of SEC enforcement activities at Super Micro.  At least one research firm indicated that such SEC enforcement activities began at least by October 23, 2015, and were still unresolved as of July 11, 2018, supporting the inference that the SEC is investigating Super Micro's internal control and accounting failures and inability to timely file its financial statements.

134.   Each of the Individual Defendants was a senior executive involved in Super Micro's daily operations with access to all material information regarding the Company's core operations.  Each of the Individual Defendants is presumed to have knowledge of all material facts regarding Super Micro's core business.  Given the importance of the Company's financial results including revenues and earnings, internal controls and maintaining compliance with NASDAQ listing requirements, the inference of scienter is strong.  Moreover, the SOX certifications make clear Super Micro's CEO and CFO supervised and analyzed the Company's disclosure controls and internal controls over financial reporting.

135.   The core operations inference as to Liang is particularly strong because he is known to obsess over every detail of Super Micro's business and is the chief operating decision maker at the

1  Company.  According to a former Super Micro sales manager, Liang "'is the person who approves
2  and looks at everything the company is doing – every new product, marketing effort, sales effort,
3  anything you want to do or promote.'"  The same article notes: "'As an individual, Charles [Liang] is
4  very aggressive and motivated,' said Patrick P. Gelsinger, Intel's senior vice president in charge of
5  server chips.  'Every once in a while, he appears on the verge of reckless, but if you're going up
6  against the big guys, you have to be willing to take risks.'"  Super Micro's FY16 Form 10-K reads:
7  "Charles Liang, our President, Chief Executive Officer and Chairman of the Board, is critical to the
8  overall management of our company . . . .  His experience in running our business and his personal
9  involvement in key relationships with suppliers, customers and strategic partners are extremely
10 valuable to our company."

**LOSS CAUSATION AND ECONOMIC LOSS**

12     136.    During the Class Period, as detailed herein, Defendants made false and misleading
13 statements and omissions regarding Super Micro's financial results and operations, the sufficiency of
14 its internal controls and consistency with GAAP of its revenue recognition practices, as well as the
15 status of its investigation and ability to become current on its delinquent reports.  This artificially
16 inflated Super Micro's stock price and operated as a fraud or deceit on all persons who purchased
17 Super Micro's common stock during the Class Period (the "Class").  When Defendants' prior
18 misrepresentations, omissions and fraudulent conduct became apparent to the market Super Micro's
19 stock price fell precipitously, as the prior artificial inflation came out of the stock price over time.
20 As a result of their purchases of Super Micro common stock during the Class Period, Plaintiff and
21 other members of the Class suffered economic loss, i.e., damages, under the federal securities laws.
22 The timing and magnitude of the declines in Super Micro's stock price negates any inference that the
23 loss suffered by Plaintiff and other Class members was caused by changed market conditions,
24 macroeconomic or industry factors or Company-specific facts unrelated to Defendants' fraudulent
25 conduct.

26     137.    Defendants' false or misleading statements and omissions had their intended effect,
27 causing Super Micro's common stock to trade at artificially inflated prices throughout the Class
28 Period, reaching as high as $28.80 per share on December 19, 2016.  The economic loss, i.e.,

1521375_1

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                    - 59 -

1    damages, suffered by Plaintiff and other members of the Class was a direct and proximate result of

2    Defendants' misrepresentations artificially inflating Super Micro's common stock price and the

3    subsequent significant declines in the value of Super Micro common stock as the true state of the

4    Company's operations was revealed to the market in a series of partial disclosures correcting the

5    misrepresentations or revealing the economic impact thereof.

6          138.   Defendants' false and misleading statements and omissions were revealed to the

7    market through a series of partial disclosures – some mitigated by further false or misleading

8    statements or omissions – beginning with the revelation on August 29, 2017, of the Company's

9    inability to timely file its FY17 Form 10-K and extending through (and potentially beyond)

10   November 15, 2018, following the announcements of its suspension from the NASDAQ, its ongoing

11   investigation into the accounting treatment of thousands of transactions, the estimated impact on the

12   Company's historical financial statements and the need for a restatement.

**NO SAFE HARBOR**

13

14         139.   Super Micro's verbal "safe harbor" warnings accompanying its oral forward-looking

15   statements ("FLS") issued during the Class Period were ineffective to shield those statements from

16   liability.

17         140.   Defendants are also liable for any false or misleading FLS plead because, at the time

18   each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized

19   or approved by an executive officer of Super Micro who knew that the FLS was false.  None of the

20   historic or present tense statements made by Defendants were assumptions underlying or relating to

21   any plan, projection or statement of future economic performance, as they were not stated to be such

22   assumptions underlying or relating to any projection or statement of future economic performance

23   when made, nor were any of the projections or forecasts made by Defendants expressly related to or

24   stated to be dependent on those historic or present tense statements when made.

25         141.   Super Micro's purported cautionary language is inadequate to insulate Defendants'

26   false statements under the statutory safe harbor because each of the disclosures is vague and

27   boilerplate language.  And, in multiple instances, the purported risks were referenced as potential or

28   contingent outcomes when in fact, the purported risks warned of had already come to fruition and

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                                    - 60 -

were negatively impacting the Company.  For example, warning that "[b]ecause of the inherent limitations in all control systems, no evaluation of controls can provide absolute assurance that all control issues and instances of management override or improper acts, if any, have been detected" and that "[t]hese inherent limitations include the realities that judgments in decision making can be faulty, and that breakdowns can occur because of simple errors or mistakes" applies to virtually any company.  The language is so vague as to be meaningless.  Similarly meaningless are the universally applicable and contingent statements that:

- "If we are unable to favorably assess the effectiveness of our internal control over financial reporting, or if our independent auditors are unable to provide an unqualified attestation report on our internal control over financial reporting, our stock price could be adversely affected."

- "If we identify such issues or if we are unable to produce accurate and timely financial statements, our stock price may be adversely affected and we may be unable to maintain compliance with Nasdaq listing requirements."

- "If we fail to maintain effective internal controls in future periods, our operating results, financial position and stock price could be adversely affected."

## APPLICABILITY OF PRESUMPTION OF RELIANCE:
## FRAUD ON THE MARKET

142.    Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

(a)    Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)    The omissions and misrepresentations were material;

(c)    The Company's stock traded in an efficient market;

(d)    The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's stock; and

(e)    Plaintiff and other members of the Class purchased Super Micro common stock between the time Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

143.    At all relevant times, the market for Super Micro's common stock was efficient for the following reasons, among others:

1    (a)    As a regulated issuer, Super Micro filed periodic public reports with the SEC

2 with the exception of its delinquent reports (i.e., its annual reports on Forms 10-K for FY17 and

3 FY18 ended June 30, 2017 and 2018, respectively, and its quarterly reports on Forms 10-Q for 1Q18

4 ended September 30, 2017, 2Q18 ended December 31, 2017, 3Q18 ended March 31, 2018 and 1Q19

5 ended September 30, 2018);

6    (b)    Super Micro's stock traded on the NASDAQ until August 22, 2018, and

7 thereafter its shares were quoted on the OTC Markets under the trading symbol SMCI; and

8    (c)    Super Micro regularly communicated with public investors via established

9 market communication mechanisms, including through regular dissemination of press releases on the

10 major news wire services and through other wide-ranging public disclosures, such as

11 communications with the financial press, securities analysts and other similar reporting services.

12                    **CLASS ACTION ALLEGATIONS**

13    144.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules

14 of Civil Procedure on behalf of all members of the Class.  Excluded from the Class are Defendants

15 and their families, and directors and officers of Super Micro and their families and affiliates.

16    145.    The members of the Class are so numerous that joinder of all members is

17 impracticable.  The disposition of their claims in a class action will provide substantial benefits to

18 the parties and the Court.  Super Micro has 48.69 million shares of common stock outstanding.

19    146.    There is a well-defined community of interest in the questions of law and fact

20 involved in this case.  Questions of law and fact common to the members of the Class which

21 predominate over questions which may affect individual Class members include:

22    (a)    Whether the Exchange Act was violated by Defendants;

23    (b)    Whether Defendants omitted or misrepresented material facts;

24    (c)    Whether Defendants' statements omitted material facts necessary in order to

25 make the statements made, in light of the circumstances under which they were made, not

26 misleading;

27    (d)    Whether Defendants knew, or were deliberately reckless in not knowing, that

28 their statements were false and misleading;

1521375_1

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                              - 62 -

1          (e)       Whether the price of Super Micro's common stock was artificially inflated;

2    and

3          (f)       The extent of damage sustained by Class members and the appropriate

4    measure of damages.

5          147.    Plaintiff's claims are typical of those of the Class because Plaintiff and the Class

6    sustained damages from Defendants' wrongful conduct.

7          148.    Plaintiff will adequately protect the interests of the Class and has retained counsel

8    who are experienced in class action securities litigation.  Plaintiff has no interests which conflict

9    with those of the Class.

10         149.    A class action is superior to other available methods for the fair and efficient

11   adjudication of this controversy.

12                                        **COUNT I**

13   **For Violation of §10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder**
     **Against All Defendants**

14

15         150.    Plaintiff incorporates ¶¶1-149 by reference.

16         151.    During the Class Period, Defendants disseminated or approved the false statements

17   specified above, which they knew, or were deliberately reckless in not knowing, were misleading in

18   that they contained misrepresentations and failed to disclose material facts necessary in order to

19   make the statements made, in light of the circumstances under which they were made, not

20   misleading.

21         152.    Defendants violated §10(b) of the Exchange Act and Rule 10b-5 promulgated

22   thereunder in that they:

23         (a)       Employed devices, schemes, and artifices to defraud;

24         (b)       Made untrue statements of material facts or omitted to state material facts

25   necessary in order to make the statements made, in light of the circumstances under which they were

26   made, not misleading; or

27

28

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                              - 63 -

1          (c)     Engaged in acts, practices, and a course of business that operated as a fraud or

2  deceit upon Plaintiff and others similarly situated in connection with their purchases of Super Micro

3  common stock during the Class Period.

4        153.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of

5  the market, they paid artificially inflated prices for Super Micro's common stock.  Plaintiff and the

6  Class would not have purchased Super Micro common stock at the prices they paid, or at all, if they

7  had been aware that the market prices had been artificially and falsely inflated by Defendants'

8  misleading statements.

9        154.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the

10  other members of the Class suffered damages in connection with their purchases of Super Micro

11  common stock during the Class Period.

**COUNT II**

**For Violation of §20(a) of the Exchange Act**
**Against All Defendants**

15        155.    Plaintiff incorporates ¶¶1-154 by reference.

16        156.    The Individual Defendants acted as controlling persons of Super Micro within the

meaning of §20(a) of the Exchange Act.  By virtue of their positions and their power to control

public statements about Super Micro, the Individual Defendants had the power and ability to control

the actions of Super Micro and its employees.  Super Micro controlled the Individual Defendants and

its other officers and employees.  By reason of such conduct, Defendants are liable pursuant to

§20(a) of the Exchange Act.

1521375_1

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST      - 64 -

1

**PRAYER FOR RELIEF**

2

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

3

A.     Determining that this action is a proper class action and certifying Plaintiff as Class

4

representatives under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead

5

Counsel;

6

B.     Awarding compensatory damages in favor of Plaintiff and the other Class members

7

against all Defendants, jointly and severally, for all damages sustained as a result of Defendants'

8

wrongdoing, in an amount to be proven at trial, including interest thereon;

9

C.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this

10

action, including counsel fees and expert fees; and

11

D.     Such equitable, injunctive or other relief as may be deemed appropriate by the Court.

12

**JURY DEMAND**

13

Plaintiff demands a trial by jury.

14

DATED:  January 22, 2019                    ROBBINS GELLER RUDMAN
                                            & DOWD LLP

15
                                            SHAWN A. WILLIAMS
                                            DANIEL J. PFEFFERBAUM
16                                          ARMEN ZOHRABIAN

17

18                                                 s/ Daniel J. Pfefferbaum
                                            DANIEL J. PFEFFERBAUM

19

20                                          Post Montgomery Center
                                            One Montgomery Street, Suite 1800
21                                          San Francisco, CA  94104
                                            Telephone:  415/288-4545
22                                          415/288-4534 (fax)

23                                          Lead Counsel for Plaintiffs

24

25

26

27

28

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST                                    - 65 -

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify under penalty of perjury that on January 22, 2019, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

                                    s/ Daniel J. Pfefferbaum
                                 DANIEL J. PFEFFERBAUM

                                 ROBBINS GELLER RUDMAN
                                   & DOWD LLP
                                 Post Montgomery Center
                                 One Montgomery Street, Suite 1800
                                 San Francisco, CA  94104
                                 Telephone:  415/288-4545
                                 415/288-4534 (fax)
                                 E-mail:  dpfefferbaum@rgrdlaw.com

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS - 3:18-cv-00838-JST

**Mailing Information for a Case 3:18-cv-00838-JST Hessefort v. Super Micro Computer, Inc. et al**

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Daniel Scott Carlton**
  scottcarlton@paulhastings.com,melmanahan@paulhastings.com,lindayoung@paulhastings.com,nicolasmorgan@paulhastings.com

- **Richard Martin Heimann**
  rheimann@lchb.com

- **Stephen D. Hibbard**
  sdhibbard@jonesday.com,jctang@jonesday.com,cdelacroix@jonesday.com,jvallette@jonesday.com,marniephillips@jonesday.com,jjew@jonesday.com

- **J Alexander Hood , II**
  ahood@pomlaw.com,abarbosa@pomlaw.com

- **Lester Rene Hooker**
  lhooker@saxenawhite.com,e-file@saxenawhite.com,cwallace@saxenawhite.com

- **Jeremy A Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com,lpvega@pomlaw.com

- **Katherine Collinge Lubin**
  klubin@lchb.com,rtexier@lchb.com

- **Tricia Lynn McCormick**
  triciam@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Nicolas Morgan**
  nicolasmorgan@dlapiper.com,jette.brasher@dlapiper.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com,jpalazzolo@pomlaw.com

- **Daniel Jacob Pfefferbaum**
  DPfefferbaum@rgrdlaw.com,smorris@rgrdlaw.com,khuang@rgrdlaw.com,mburch@rgrdlaw.com,abell@rgrdlaw.com,e_file_sd@rgrdlaw.com,6064570420@filings.do

- **Laurence M. Rosen**
  lrosen@rosenlegal.com,larry.rosen@earthlink.net

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,kmccarty@rgrdlaw.com,e_file_sd@rgrdlaw.com,1101510420@filings.docketbird.com

- **Armen Zohrabian**
  AZohrabian@rgrdlaw.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)