United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LOGAN HESSEFORT,
Plaintiff,
v.
SUPER MICRO COMPUTER, INC., et al.,
Defendants.

Case No. 18-cv-00838-JST

**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS**

Re: ECF Nos. 99, 100

Before the Court are two motions to dismiss Plaintiffs' third amended consolidated class action complaint ("TAC") filed by Defendants Super Micro Computer, Inc. ("Super Micro"), Charles Liang, Perry G. Hayes, and Wally Liaw, ECF No. 99, and Defendant Howard Hideshima, ECF No. 100, and Defendants' supplemental brief in support of their motion to dismiss Plaintiffs' fourth amended consolidated class action complaint ("FAC"), ECF No. 112. Per the parties' stipulation, Defendants' motions to dismiss the TAC remain operative and are supplemented by briefing that addresses new allegations contained in the FAC, which was filed in response to three Securities and Exchange Commission ("SEC") cease-and-desist orders ("SEC Orders") published after Defendants' briefing on the TAC was complete. *See* ECF No. 109.[1] The Court will deny Hideshima's motion and deny the other motion in part and grant it in part.

## I. BACKGROUND

Plaintiffs have filed a federal securities class action complaint on behalf of all purchasers

[1] The FAC adds allegations to the complaint without changing the numbering of any paragraphs. Thus, any cites to the TAC are also accurate cites to the FAC. *Compare* ECF No. 96 *with* ECF No. 110; *see, e.g.*, FAC ¶¶ 215.1-215.7 (paragraphs added to the FAC to describe how the SEC Orders support a strong inference of scienter). To simplify matters, the Court will cite to the FAC even when describing arguments made in the parties' briefs regarding the TAC.

of Super Micro's common stock between August 5, 2016 and January 30, 2018 (the "class period"). ECF No. 110 (FAC) ¶ 2. They allege that Super Micro made false and misleading statements and failed to disclose adverse information regarding the company. *Id.* ¶ 3.

### A. Factual Background

For the purposes of this order, the following allegations in the FAC are taken to be true. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

Super Micro provides "high-efficiency server technology and innovation" and other "computing solutions." FAC ¶ 30. This lawsuit stems from an internal audit initiated by Super Micro in September 2017 that led to financial restatements for fiscal years ("FY") 2013 through 2017. *Id.* ¶¶ 82-130; ECF Nos. 110-1, 110-2, 110-3, 110-4. Between FY13 and FY17, Super Micro overstated its revenue by $104.7 million (1.1 percent), net income by $20.3 million (6.8 percent), and earnings per share by $0.41 (6.8 percent). FAC ¶ 156. Super Micro also overstated its quarterly results, including GAAP EPS by as much as 32%, quarterly revenue by as much as $40 million or 6%, and accounts receivable by as much as 65%. *Id.* ¶ 4(d). These inflations allowed Super Micro to falsely assert it had met or exceeded expectations in three out of five quarters during the class period. *Id.* ¶ 4(e).

In 2015, before the start of the class period, Super Micro twice failed to meet SEC filing deadlines due to accounting irregularities and was required to issue a prior period adjustment. *Id.* ¶ 7. The company assured investors that it had taken steps to remedy these problems, including implementing a new accounting system. *Id.* In October 2017, however, Super Micro disclosed that a sales transaction had been improperly recorded as revenue one quarter too early. *Id.* ¶¶ 15, 84. Super Micro's Audit Committee began an investigation, which in turn caused delays in meeting the company's SEC filing requirements. *Id.* ¶¶ 79-113. Moreover, once the Audit Committee completed its investigation, the company announced that it would need additional time to analyze the impact of the investigation on the company's historical financial statements, and that its 2018 SEC filings would be delayed. *Id.* ¶ 94. On March 16, 2018, Super Micro disclosed that its stock was subject to delisting by NASDAQ. *Id.* ¶ 102. On August 21, 2018, Super Micro disclosed that its SEC filings dating back to the company's FY17 Form 10-K would remain

delinquent, and as such, the Company expected to be delisted, *id.* ¶¶ 112-13, which it was on August 23, 2018, *id.* at ¶ 122. Defendant Hideshima, who had been Chief Financial Officer ("CFO"), as well as Defendant Liaw, who was Senior Vice President of International Sales, both "departed" during the class period. *Id.* ¶ 94.

In May 2019, Super Micro filed its delayed FY17 Form 10-K, which included financial "[a]djustments" and "restate[ments]" for fiscal years 2013 through 2017 (collectively, "the Restatement"). *Id.* ¶ 130. In its Form 10-K, Super Micro identified and described "material weaknesses" in its internal controls over financial reporting. *Id.* ¶¶ 131-33. Super Micro described a "culture of aggressively focusing on quarterly revenue without sufficient focus on compliance" and stated that "[s]enior management did not establish and promote a control environment with an appropriate tone of compliance and control consciousness throughout the entire Company." *Id.* ¶ 132 (emphasis omitted). Further, the Form 10-K stated that certain sales, finance, and operations personnel, "including officers and managers, were aware of, condoned or were involved in actions that reflected an inappropriate tone at the top," including shipping products in advance of requested delivery dates and other improper practices. *Id.* (emphasis omitted). Super Micro detailed a remediation plan that included restructuring the sales organization and establishing training programs, among other efforts. *Id.* ¶ 142.

Plaintiffs allege that Super Micro made materially false statements related to this sequence of events in its SEC filings as well as in press releases and conference calls. *Id.* ¶¶ 45-92. The alleged false statements involved commentary on: (1) Super Micro's financial performance; (2) the effectiveness of Super Micro's internal operations and controls; (3) Super Micro's compliance with generally accepted accounting principles ("GAAP"); and (4) the investigation and its consequences, including delinquent filings and NASDAQ compliance. *Id.*

On August 25, 2020, the SEC entered three cease-and-desist orders against Defendants Super Micro, Hideshima, and Liang. ECF Nos. 110-5, 110-6, 110-7. The SEC Orders are the result of the SEC investigation into the events underlying Plaintiffs' allegations. The SEC Order regarding Super Micro described the company improperly accelerating revenue recognition and understating expenses in FY 2015-2017, and explained that "Super Micro executives . . . failed to

devise and maintain sufficient internal accounting controls with respect to proper revenue recognition." 110-5 at 4. The SEC ordered Super Micro to pay a penalty of $17.5 million and to "cease and desist from committing or causing any violations and any future violations of Sections 17(a)(2) and (3) of the Securities Act and Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B), of the Exchange Act and Rules 12b-20, 13a-1, 13a-11, and 13a-13 thereunder." *Id.* at 13. The SEC Order against Liang found that he had "received profits from stock sales during the 12-month periods following the filings containing financial results that Super Micro restated as a result of misconduct." ECF No. 110-7 at 3. Liang was therefore ordered to "reimburse Super Micro for a total of $2,122,000 pursuant to Section 304(a) of [the] Sarbanes-Oxley Act of 2002," and to "cease and desist from committing or causing any violations and any future violations of Section 304 of the Sarbanes Oxley Act of 2002." *Id.* at 7.

The SEC order against Hideshima contains more details regarding his specific role in the revenue recognition violations. For example, the SEC order explains that Hideshima "engaged in improper accounting and caused internal accounting controls failures," "was on notice that Super Micro employees engaged in a number of improper practices to accelerate revenue recognition and reporting, . . . failed to adequately address the internal control failures and stop these practices going forward," and was "responsible for certain accounting decisions that did not conform with GAAP." ECF No. 110-6 at 3. Finally, the SEC found that "Hideshima knew that Super Micro was misusing its cooperative marketing program to pay a variety of unrelated expenses and, in certain instances, he proposed that co-op funds be used for non-marketing purposes, which caused Super Micro to understate these expenses." *Id.* After detailing the findings that supported these conclusions, the SEC ordered Hideshima to pay a penalty of $50,000, disgorgement of $260,844, and prejudgment interest of $40,212, and to "cease and desist from committing or causing any violations and any future violations of Sections 13(a), 13(b)(2)(A), 13(b)(2)(B), and13(b)(5) of the Exchange Act and Rules 12b-20, 13a-1, 13a-11, 13a-13 and 13b2-1 thereunder." *Id.* at 12.

Plaintiffs assert that "[t]he SEC's findings . . . corroborate the allegations previously set forth in the TAC," FAC ¶ 152.2, and that "[t]he findings in the SEC Orders, which were the result of a formal multi-year investigation[,] . . . support a strong inference of scienter," *id.* ¶ 215.1; *id.*

¶¶ 215.1-215.7.

### B. Procedural Background

On February 8, 2018, Plaintiffs Logan Hessefort and United Union of Roofers, Waterproofers & Allied Workers Local Union No. 8 WBPA Fund filed two separate class action complaints against Super Micro, Hideshima, and Liang. ECF No. 1; Case No. 4:18-cv-850-JST, ECF No. 1.[2] The complaints alleged the same violations of federal securities laws. *See* ECF No. 46 at 4. The Court consolidated the two cases, appointed the New York Hotel Trades Council & Hotel Association of New York City, Inc. Pension Fund ("NYHTC") as lead plaintiff, and approved NYHTC's choice of lead counsel. *Id.* at 7.

Plaintiffs filed a consolidated class action complaint on September 24, 2018, adding Hayes, who was Senior Vice President for Investor Relations during the class period, FAC ¶ 33, as a defendant, ECF No. 51. In November 2018, Super Micro filed a new Form 8-K indicating an intent to issue additional financial restatements. ECF No. 70 at 2. The parties stipulated to allow Plaintiffs to file an amended complaint incorporating these developments. ECF No. 60. Plaintiffs filed a first amended consolidated class action complaint on January 22, 2019. ECF No. 61. Defendants moved to dismiss the first amended consolidated class action complaint, ECF Nos. 62, 63, and Plaintiffs filed an opposition, ECF No. 68. On May 17, 2019, however, Super Micro issued additional financial restatements. ECF No. 70 at 3. The parties again stipulated to allow Plaintiffs to amend their complaint, *id.*, mooting the motions to dismiss. On June 21, 2019, Plaintiffs filed the second amended consolidated class action complaint ("SAC"), adding Liaw as a defendant and incorporating the recent developments. ECF No. 71. Defendants Super Micro, Liang, Liaw, and Hayes and Defendant Hideshima filed separate motions to dismiss the SAC. ECF Nos. 75, 76. The Court granted both motions to dismiss after considering Plaintiffs' allegations individually and through a holistic review and determining that they did not create a strong inference that Defendants acted with the required state of mind. ECF No. 95. The Court held that Plaintiffs failed to sufficiently plead scienter "as to any Defendants with the particularity

[2] Unless otherwise noted, all ECF citations in this order are to Case No. 4:18-cv-838-JST.

required by the PSLRA," and granted leave to amend. *Id.* at 18.

On April 22, 2020, Plaintiffs filed the TAC. ECF No. 96. The TAC asserted two causes of action: (1) violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. §240.10b-5; and (2) violation of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). TAC ¶¶ 262-68. Plaintiffs asserted that the TAC added "new allegations, and clarifie[d] prior allegations" in an attempt "to address the identified shortcomings" of the SAC. *Id.* ¶ 4. Defendants Super Micro, Liang, Liaw, and Hayes and Defendant Hideshima filed separate motions to dismiss on June 5, 2020. ECF Nos. 99, 100. Plaintiffs filed a consolidated opposition, ECF No. 101, and Defendants filed separate replies, ECF Nos. 102, 103.

On August 26, 2020, after all briefing on the instant motions were complete, but before the scheduled hearing, Plaintiffs filed a statement of recent decision to make the Court aware of the recently filed SEC Orders. ECF No. 104. On September 16, 2020, the Court held a videoconference with the parties to discuss how the Court should consider the SEC orders. The parties agreed that a fourth amended complaint would be necessary and that they would meet and confer regarding whether the briefing on the TAC was moot. ECF No. 107. On September 24, 2020, the Court granted the parties' stipulation for the briefing on the TAC to remain operative, and for the parties to each submit supplemental briefing addressing the new allegations in the FAC. ECF No. 109. Defendants filed their supplemental brief on October 28, 2020. ECF No. 112. Plaintiffs responded, ECF No. 116, and Defendants replied, ECF No. 118. The Court took the motions under submission without a hearing.

### C. Summary of Amendments

The primary allegations that Plaintiffs have added to their complaint regard the qualitative and quantitative impact of Super Micro's accounting violations and findings from the SEC Orders.

Plaintiffs stress the quantitative impact of the revenue recognition violations by including quarterly and annual statistics to demonstrate how "Defendants' net sales and accounting misconduct . . . significantly inflated quarterly results" and how "the gross amount of sales and accounting misconduct is significantly larger" than the effect of the violations over a five year period. FAC ¶ 4(d). Plaintiffs also explain that these quarterly inflations had important qualitative

impacts because they allowed Super Micro to falsely assert that it "was meeting or exceeding guidance and Wall Street consensus expectations" in four out of five years impacted by the Restatement and three out of five quarters during the class period. *Id* ¶ 4(e). Plaintiffs argue that these new allegations support a strong inference of scienter based on Super Micro's GAAP violations, ECF 101 at 33-34, or the core operations inference, *id.* at 35-37.

In the FAC, Plaintiffs point to the SEC Orders as evidencing "the participation in, and knowledge of, sales and accounting misconduct," including examples of "executives 'engaged in improper accounting.'" FAC ¶4(h). Plaintiffs include specific allegations of Hideshima's involvement – who they contend was "at the heart of the accounting misconduct," ECF No. 116 at 4 – asserting that he "was aware and understood that recognition of revenue violated GAAP, yet he approved more than $150 million in improperly recognized revenue." *Id.* (quotation marks omitted). Plaintiffs contend that the SEC Orders "corroborate" their allegations and "support a strong inference of scienter directly and under all theories previously alleged." *Id.*

Plaintiffs also assert new allegations specific to the scienter of Defendants Liang, Hideshima, and Liaw. Plaintiffs now contend that the Liaw and Hideshima's departures were terminations – rather than resignations – which makes their departures more suspicious and stronger evidence of scienter. *Id.* at 31-33; FAC ¶ 4(g). In addition, Plaintiffs allege that Liang obtained two personal margin loans during the class period that were collateralized by Super Micro stock. *Id.* ¶ 4(f). These loans, Plaintiffs argue, were in violation of "the Company's insider trading policy" and motivated Liang to conceal fraudulent conduct and inflate Super Micro's stock price. ECF No. 101 at 26. Plaintiffs also elaborate on their previous assertion regarding Super Micro's "failure to remediate the prior material weakness related to the revenue recognition of contracts with extended product warranties," SAC ¶ 172, by asserting that Liang and Hideshima's involvement in prior false claims involving the extended warranties – as well as their false claim that the "material weakness" had been remediated – supports an inference of scienter here, FAC ¶¶ 234-37.

Other allegations that Plaintiffs assert are new to their complaint regard Super Micro's Restatement, FAC ¶¶ 4(a)-(b), and were addressed in the Court's prior order, *see* ECF 95 at 10.

## II. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## III. LEGAL STANDARD

### A. The Dual Pleading Requirements

Section 10(b) of the Securities Exchange Act of 1934 prohibits any act or omission resulting in fraud or deceit in connection with the purchase or sale of any security. To establish a violation of Section 10(b), a plaintiff must plead: (1) a material misrepresentation or omission made by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. *See Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 157 (2008). Defendants' motions challenge only the scienter element.

On a motion to dismiss, the Court accepts as true the material facts alleged in the complaint, together with reasonable inferences to be drawn from those facts. *Navarro*, 250 F.3d at 732. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, while a plaintiff generally need only plead "enough facts to state a claim to relief that is plausible on its face" to survive a motion to dismiss, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), "[s]ecurities fraud class actions must meet the higher, exacting pleading standards of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act (PSLRA)," *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 604 (9th Cir. 2014).

Under the PSLRA and Rule 9(b), a complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" with respect to each alleged false statement or omission, and "a party must state with particularity the circumstances constituting fraud or mistake." 15 U.S.C. § 78u-4(b)(2)(A); Fed. R. Civ. P. 9(b); *see also Or. Pub. Emps. Ret. Fund*, 774 F.3d at 605. "If the complaint does not satisfy the PSLRA's pleading requirements, the Court must grant a motion to dismiss the complaint. 15 U.S.C. § 78u-4(b)(3)(A).

**B. Scienter**

The required state of mind under the PSLRA is a "mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193-94 n.12 (1976). To adequately establish scienter, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A).

The "strong inference" required by the PSLRA "must be more than merely 'reasonable' or 'permissible' – it must be cogent and compelling, thus strong in light of other explanations." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007). "A court must compare the malicious and innocent inferences cognizable from the facts pled in the complaint, and only allow the complaint to survive a motion to dismiss if the malicious inference is at least as compelling as any opposing innocent inference." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009). In evaluating whether a complaint satisfies the "strong inference" requirement, courts must undertake a two-step inquiry by first considering "whether any of the allegations, standing alone, are sufficient to create a strong inference of scienter," and "if no individual allegation is sufficient, . . . conduct[ing] a 'holistic' review of the same allegations to determine whether the insufficient allegations combine to create a strong inference of intentional conduct or deliberate recklessness." *Curry v. Yelp Inc.*, 875 F.3d 1219, 1226 (9th Cir. 2017) (citation omitted).

Scienter is a "mental state that not only covers intent to deceive, manipulate, or defraud, but also deliberate recklessness." *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 705 (9th Cir. 2016) (quotation marks and citations omitted). "Deliberate recklessness is an *extreme* departure from the standards of ordinary care, which presents a danger of misleading buyers or sellers that is either known to the defendant or is so *obvious* that the actor must have been aware of it." *Webb v. Solarcity Corp.*, 884 F.3d 844, 851 (9th Cir. 2018) (alteration and citation omitted). Stated differently, deliberate recklessness requires that an actor "had reasonable grounds to believe material facts existed that were misstated or omitted, but nonetheless failed to obtain and disclose such facts although [the actor] could have done so without extraordinary effort." *Police Ret. Sys.*

*of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1063 (9th Cir. 2014) (citation omitted). "Facts showing mere recklessness or a motive to commit fraud and opportunity to do so provide some reasonable inference of intent, but are not sufficient to establish a strong inference of deliberate recklessness." *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012).

## IV. DISCUSSION

Defendants move to dismiss the FAC on the basis that Plaintiffs have failed to adequately plead scienter.[3] Defendants argue that Plaintiffs' FAC includes new arguments based on the same facts that were included in the SAC, that the few new facts that are presented in the FAC do not warrant a different outcome, and that the FAC should therefore be dismissed on the same grounds as the SAC. ECF No. 102 at 6; ECF No. 99. Hideshima also moves to dismiss Plaintiffs' 20(a) claim on the basis that Liang was in ultimate control of Super Micro. ECF No. 100 at 8-10. Defendants argue that Plaintiffs' new allegations regarding the SEC Orders do not support "a strong inference that the individual defendants made a material misstatement with scienter, *i.e.*, either intentionally or with deliberate recklessness." ECF No. 112 at 2.

If the scienter requirement is met as to any of the individual defendants, it is also met as to Super Micro because Defendants do not argue that the individual defendants were acting outside the scope of their apparent authority. *In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 476 (9th Cir. 2015) ("The scienter of the senior controlling officers of a corporation may be attributed to the corporation itself to establish liability as a primary violator of § 10(b) and Rule 10b-5 when those senior officials were acting within the scope of their apparent authority.").[4]

Defendants do not challenge the falsity or materiality of the statements that Plaintiffs detail

---

[3] Because Hideshima's motion to dismiss closely mirrors the other Defendants' motion, the Court will reference it only where it provides facts or analysis not present in the other motion.

[4] Plaintiffs also contend that Super Micro's "corporate scienter" can be found based on the "admission that its officers and managers, acting within the scope of their authority and in pursuit of quarterly revenues, knew of, participated in and attempted to obscure, rampant violations of accounting rules," even if the Court holds that Plaintiffs have insufficiently alleged scienter against the individual defendants FAC ¶ 4(c); ECF No. 116 at 10; *see also* ECF No. 101 at 25-26. Because the Court finds a strong inference of scienter as to Hideshima and Liang, it need not reach Plaintiffs' arguments regarding corporate scienter. ECF No. 101 at 24-26.

United States District Court
Northern District of California

in the FAC, or that Plaintiffs' losses were caused by these false or misleading statements. *See* ECF Nos. 99; *see also* ECF No. 102 at 6-7 (admitting that "Defendants are not moving to dismiss the [FAC] for failure to plead the PSLRA's elements of falsity and materiality.").[5] The Court therefore only considers Plaintiffs' allegations of scienter in regards to their Section 10(b) claims. The Court holds that the FAC sufficiently pleads a strong inference of scienter as to Hideshima, Liang, and Super Micro, and that Plaintiffs have adequately pleaded Section 20(a) control person liability as to Super Micro, Liang, Hideshima, and Liaw.

### A. Section 10(b) Scienter

Defendants maintain that "the most plausible inference [is] that Super Micro's sales personnel acted without the knowledge or deliberate recklessness of Defendants Liang, Hideshima, Liaw, and Hayes," and argue that Plaintiffs' allegations "are particularly scant as to individual defendants Hayes, Hideshima, and Liaw." ECF No. 99 at 13, 29. The Court considers Plaintiffs' new allegations before conducting its holistic analysis, *see Curry*, 875 F.3d at 1226, and refers to but does not repeat the analysis of its prior order.

#### 1. GAAP Violations – Qualitative and Quantitative Impact

Many of Plaintiffs' allegations revolve around Defendants' improper revenue recognition, which violated the GAAP and resulted in Super Micro falsely claiming to have met or exceeded financial expectations. As noted in the Court's prior order, Defendants do not deny that Super Micro violated GAAP standards for revenue recognition, but argue that the violations were not significant enough to support an inference of scienter. ECF No. 95 at 10-11. The FAC includes Plaintiffs' prior allegations that Super Micro overstated its revenue by 1.1 percent, net income by 6.8 percent, and earnings per share ("EPS") by 6.8 percent for FY13 through FY17, FAC ¶ 156, and bolster them with details of inflated quarterly and annual financial results, *id.* ¶¶ 157, 216, and

---

[5] In the context of disputing the allegations underlying Plaintiffs' Section 20(a) claim, Defendants argue that "Plaintiffs have not sufficiently alleged the falsity and scienter elements of their section 10(b) claim," ECF No. 99 at 31, but Defendants focus exclusively on Plaintiffs' "new scienter allegations" in its discussion of Plaintiffs' Section 10(b) claim, *see id.* at 16-31. The only statements that Defendants argue "were not false" were those made by Hayes. *See* ECF No. 102 at 18. However, the Court need not reach this argument because Plaintiffs have failed to allege scienter as to Hayes.

explanations of how the misstated financial statements caused Super Micro to falsely claim that it met or beat financial estimates during the class period, *id.* ¶ 217.

Plaintiffs allege that Super Micro inflated the quarterly GAAP EPS by as much as 32%, quarterly revenue by as much as 6%, and accounts receivable by as much as 65%. *Id.* ¶ 4(d). Plaintiffs argue that Super Micro's inflations allowed it to falsely claim to have met or exceeded EPS guidance during three out of the five class period quarters and the three years preceding the class period. ECF No. 101 at 19-20. Defendants respond that Plaintiffs "cherry-pick, from Super Micro's restated financials, isolated data points from snapshots of time," ECF No. 99 at 9-10, and that "Plaintiffs' theory that Defendants wanted Super Micro to appear commercially successful by beating expectations cannot support an inference of scienter" because "[a]ll corporate managers want their companies to appear successful," *id.* at 20-21.

The Court first considers whether the magnitude of the GAAP violations is enough to infer scienter. Plaintiffs rely on *In re Obalon Therapeutics, Inc.*, No. 18-cv-0352-AJB-WVG, 2019 WL 4729461, at *8 (S.D. Cal. Sept. 25, 2019) and *Luna v. Marvell Tech. Grp.*, No. C 15-05447 WHA, 2017 WL 2171273, at *2 (N.D. Cal. May 17, 2017) to argue that the "significant overstatements of key metrics support a strong inference of scienter as to the Individual Defendants." ECF No. 101 at 22-23. Although "significant violations of GAAP standards can provide evidence of scienter so long as they are pled with particularity," *In re Daou Sys., Inc.*, 411 F.3d 1006, 1022 (9th Cir. 2005) (citation omitted), neither *Obalon* nor *Luna* exclusively relied on the magnitude of the violation to find scienter. *Obalon* points to the alleged overstatement of a company's quarterly revenue by 5% to support its holding that the lead plaintiff adequately pled falsity, but the court went on to rely on other allegations – including those regarding a whistleblower and the arrangement of a secondary offering – to find an inference of scienter. *See Obalon*, 2019 WL 4729461 at *8-9.

Likewise, *Luna* supports the import of the quantitative and qualitative impact of Super Micro's revenue recognition violations, but not a holding that these violations alone establish an inference of scienter as to the individual defendants. The *Luna* court found the fact that suspect transactions constituted as much as 46% of EPS in at least one affected quarter – and the fact that

the defendant company would have missed its quarterly targets without the suspect transactions – as "support[ing] an inference that certain revenue was prematurely recognized due to pressure from senior management to meet revenue targets." 2017 WL 2171273, at *4. But *Luna* held that these allegations were *not* sufficient to support an inference that the company's two CFOs "had the requisite state of mind." *Id.* at *5-6. As the Court is not aware of a case in which an overstatement of similar size supported a finding of scienter on its own, the Court again holds that the overstatements alone do not create an inference of scienter. *See* ECF No. 95 at 11-12.

The Court next considers whether it can infer scienter based on the fact that Super Micro's revenue recognition violations allowed it to falsely claim to have met or beat Wall Street consensus. Plaintiffs rely on *Luna* and *S.E.C. v. Todd*, 642 F.3d 1207, 1222 (9th Cir. 2011) for support. *See* ECF No. 101 at 19-21. As explained above, *Luna* held that such inflations contributed to the court's inference of scienter as to the company's CEO, but were not sufficient to support an inference of scienter as to other individual defendants. 2017 WL 2171273, at *3, *5-6. *Todd* also does little to support Plaintiffs' position. In *Todd*, the Ninth Circuit held that a company's former President and CEO "acted at least recklessly" when he claimed that the company's "financial growth was 'accelerated,'" despite understanding that two unusual transactions – which were one-time events – were the only reasons the company was able to meet analysts' quarterly expectations. 642 F.3d at 1220-22. Those circumstances are readily distinguishable from the allegations here and do not support holding that the fact inflations allowed a company to meet quarterly expectations – alone – supports an inference of scienter.

Although the GAAP violations do not create an inference of scienter on their own, the Court will consider the quantitative and qualitative impact of these violations in its holistic analysis of scienter.

**2. Departures of Hideshima and Liaw**

Plaintiffs allege that although the Court considered Defendants Hideshima and Liaw to have resigned from Super Micro in its prior order, the departures of these defendants were labeled "terminations," and – drawing inferences in favor of Plaintiffs – the Court should consider these employees as fired for cause. FAC ¶ 4(g); ECF No. 101 at 31-33. Plaintiffs contend that a



United States District Court
Northern District of California

termination is more suspicious and therefore stronger evidence of scienter than a resignation. However, Plaintiffs' arguments are inconsistent because they also argue that the record supports an inference that Super Micro forced Hideshima and Liaw "to resign." *Id.* at 32. Defendants contend that Hideshima and Liaw resigned and points to the fact that "the FY 17 Form 10-K uses the terms 'resignation' and 'terminations' interchangeably" to rebut Plaintiffs' argument that these employees were fired. ECF No. 99 at 23. Defendants aver that nothing in the FAC affects the Court's conclusion that the most plausible inference from the departures of Liaw and Hideshima – as well as other employees – is that "problems occurred on their watch" and they "failed to adequately supervise their departments." ECF No. 102 at 14.

The only new case that Plaintiffs provide to support their position that Hideshima and Liaw's terminations support an inference of scienter is *In re WageWorks, Inc., Sec. Litig.*, No. 18-CV-01523-JSW, 2020 WL 2896547 (N.D. Cal. June 1, 2020). *See* ECF No. 101 at 31-33. But *WageWorks* held that the circumstances surrounding two *resignations* supported an inference of scienter. 2020 WL 2896547, at *6-8. And the *Wageworks* court gave several reasons for holding that the resignations were "uncharacteristic," including that inadequate communication "from senior management" was connected to the company's improper accounting and that the company's accounting firm stating that it could not rely on the representations of either of the executives who had resigned. *Id.* Plaintiffs do not point to comparable allegations to support their conclusion that the departures of Liaw and Hideshima were "uncharacteristic."

In addition, although Plaintiffs are correct that in considering the scienter of Hideshima and Liaw the Court can no longer distinguish *Luna* on the basis that the CEO there was terminated, *see* ECF No. 101 at 31, Plaintiffs do not address the other ways in which the Court has found *Luna* to be distinguishable, *see* ECF No. 95 at 13. As explained in the Court's prior order, the *Luna* court emphasized that an inference of scienter could be drawn from the CEO's termination in part because the company "ha[d] not fired or re-trained any lower-level employees." 2017 WL 2171273 at *5. The same is not true here. The remedial training targeted line-level sales employees and executives, and the SEC Orders allege specific instances of misconduct by lower-level employees. *See, e.g.*, ECF No. 110-5 ¶¶ 20, 28. Additionally, other

United States District Court
Northern District of California

allegations supported an inference of scienter as to the CEO who was terminated in *Luna* – including that he micromanaged the company – that are not present for Hideshima or Liaw.

As described in more detail in the Court's prior order, Plaintiffs have failed to adequately allege that Hideshima and Liaw's departures were "suspicious" or "uncharacteristic" enough to support an inference of scienter that is at least as strong as the reasonable assumption that Liaw and Hideshima were fired or resigned because the errors that led to the Restatement occurred on their watch. The Court therefore considers these departures in its holistic scienter analysis.

**3. Liang's Margin Loans**

Plaintiffs allege that Liang had a motive to conceal fraudulent conduct and inflate Super Micro's stock price because he used Super Micro stock to obtain two personal margin loans totaling 12.9 million dollars that were subject to repayment if the stock price declined. FAC ¶¶ 4(f), 150. Defendants assert that Liang's incentives from the margin loans was comparable to executives whose compensation is tied to a company's stock price and that without "any allegation that Liang sold Super Micro stock during the class period, Plaintiffs' scienter theory makes no sense" because Liang would not have held onto his shares of Super Micro stock before the margin loans were called. ECF No. 99 at 21-22.

The out-of-circuit cases that Plaintiffs rely on support considering Liang's margin loans as a possible motive to commit fraud, but they do not support holding that margin loans of this magnitude can support an inference of scienter on their own. *See, e.g.*, *Hall v. The Children's Place Retail Stores, Inc.*, 580 F. Supp. 2d 212, 233 (S.D.N.Y. 2008) (considering "collectively" facts that included the executive's resignation and "pledged shares of stock" to find a strong inference of scienter); *Meyer v. Concordia Int'l Corp.*, No. 16 Civ. 6567 (RMB), 2017 WL 4083603 at *6-7 (S.D.N.Y. July 28, 2017); *see also In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392, 416 (S.D.N.Y. 2003) (finding a financial incentive of having "at least $900 million in loans secured by [executive's] WorldCom holdings" to be "unique and substantial"). As the Court is not aware of a case in which loans of similar size were held to support a finding of scienter on their own, the Court holds that Liang's margin loans do not establish an inference of scienter.

As Plaintiffs emphasize, however, "scienter is assessed collectively," and the Court will

consider the effect of Liang's margin loans in its holistic scienter analysis. ECF No. 116 at 9-10.

**4. Other Allegations the Court Previously Considered**

Plaintiffs include allegations in the FAC, and arguments in their opposition to Defendants' motion to dismiss, that this Court has already addressed in its prior order. *See, e.g.*, FAC ¶¶ 4(a)-(b). Plaintiffs repeat, for example, their assertion that the Restatement implicates Liang, Hideshima, and Liaw because – as a result of their positions and responsibilities at the company – they must be the "officers and managers" and the "senior management" the Restatement refers to, even though they were not referenced by name. ECF No. 101 at 28-31. The Court has already held that the Restatement's generalized statements about management do not support an inference of scienter as to any of the individual defendants. ECF 95 at 10. The Court will not repeat that analysis here, but it will consider these allegations in its holistic scienter analysis.[6]

Plaintiffs also renew their allegations regarding remediation efforts but contend that they "have grown stronger." ECF No. 101 at 33. In addition to the remediation efforts described in earlier versions of the complaint – such as appointing new executives, instituting trainings, and strengthening Super Micro's code of conduct – Plaintiffs point to the 2019 Form 10-K's "adoption of a charter to promote ethical business conduct and compliance with the law." *Id.*; FAC ¶ 152. Defendants respond that, as the Court noted in its prior order, Plaintiffs' arguments are undermined by the fact that Super Micro's company-wide remediation efforts targeted line-level sales employees as well as senior executives. ECF No. 102 at 15; ECF No. 118 at 4-5. The Court again concludes that Super Micro's company-wide remediation program, even coupled with the departures of Hideshima and Liaw, do not establish that individual defendants acted with fraudulent intent. *See* ECF No. 95 at 12-14. *In re Sipex Corp. Securities Litigation*, No. C 05-00392 WHA, 2005 WL 3096178 (N.D. Cal. Nov. 17, 2005) does not affect this conclusion. The *Sipex* court determined that remedial measures similar to those taken here were "strong medicine,"

[6] Plaintiffs' allegation that Liang, Liaw, and Hideshima are the "[s]enior management" and "officers and managers" in the Restatement because they are identified on Super Micro's website and in company statements as three of five "Executive Officers" only further supports the Court's conclusion that the Restatement is not enough to infer scienter as to the individual defendants as opposed to, say, the other two individuals Super Micro holds out as its executive officers. *See* TAC ¶ 208.

United States District Court
Northern District of California

but it also relied on allegations that a CEO had "engineered" a sham sale worth $350,000 in order to infer scienter to the CEO and the company, and held that the complaint had not established a strong inference of scienter as to the company's prior CEO. 2005 WL 3096178 at *3.

Finally, Plaintiffs reiterate their arguments regarding Super Micro's internal control shortcomings and SOX certifications. ECF No. 101 at 34-35 & n.16. Plaintiffs contend that internal control failures support an inference of scienter not merely due to the net financial impact of the Restatement, but because of the evidence that Hideshima and Liang evaluated Super Micro's internal controls and determined them to be effective . *Id.* at 35. Defendants aver that the evidence of executives failing to devise sufficient internal accounting controls at most reflects a pattern of negligent conduct. ECF No. 99 at 25-26; ECF No. 112 at 6-7. The Court held in its prior order that Plaintiffs' allegations regarding Super Micro's internal control did not support an inference of scienter on their own. ECF 95 at 10, 14. No allegations in the FAC compels the Court to revisit that conclusion.

Although the Court again rejects Plaintiffs' contention that these allegations support an inference of scienter individually, it will consider them in its holistic analysis.

**5. Core Operations Doctrine**

Plaintiffs allege that the "core operations inference establishes scienter as to Liang, Hideshima and Liaw," FAC ¶ 247, and that the findings of the SEC Orders strengthen this inference, *id.* ¶ 215.7. Defendants respond that Plaintiffs' allegations regarding the core operations inference "remain materially unchanged from the SAC" and ask the Court to reject these allegations for the reasons articulated in its prior order. ECF No. 99 at 27-28. Defendants also contend that Plaintiffs do not plead a "'specific admission' tying the individual defendants to a 'particular suspect transaction.'" ECF No. 104 at 17-18. The Court notes that Defendants did not revisit the core operations inference in their supplemental briefing. *See* ECF Nos. 112; 118.

Under the core operations doctrine, "[a]llegations regarding management's role may help satisfy the PSLRA scienter requirement . . . where they are particular and suggest that defendants had actual access to the disputed information," or, "in rare circumstances" and "without accompanying particularized allegations, where the nature of the relevant fact is of such

prominence that it would be 'absurd' to suggest that management was without knowledge of the matter." *Reese v. Malone*, 747 F.3d 557, 575-76 (9th Cir. 2014), *overruled on other grounds by City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 616 (9th Cir. 2017) (quotation marks and citations omitted). To show "actual access," a plaintiff "must produce either specific admissions by one or more corporate executives of detailed involvement in the minutia of a company's operations . . . or witness accounts demonstrating that executives had actual involvement in creating false reports." *Police Ret. Sys.*, 759 F.3d at 1062.

For the reasons explained in the Court's discussion of the quantitative impact of Super Micro's GAAP violations, the alleged fraud is not "of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter" under the core operations doctrine. *Reese*, 747 F.3d at 576. And as discussed above, Plaintiffs have not adequately supported their position that Liang, Hideshima, and Liaw were the "officers and managers" implicated in the Restatement. *See* ECF No. 95 at 10.

In its last order, the Court explained that Plaintiffs had not provided allegations "particular enough" to plead that Liang, Hideshima, and Liaw had "actual access" to the fraudulent conduct. [7] ECF No. 95 at 16. The Court faulted Plaintiffs for failing to include "'specific admissions' by any of the individual Defendants of their involvement in revenue recognition procedures" or allegations linking Defendants to "particular suspect transactions." *Id.* The FAC does not add any

---

[7] Plaintiffs take issue with the fact that "the Court did not previously consider the application of the core operations inference to the statements made by Hayes following the Company's announcement that it would not be able to timely file its 2017 Form 10-K on August 29, 2017." ECF No. 101 at 37. However, the FAC only identifies the core operations inference as establishing scienter "as to Liang, Hideshima, and Liaw." FAC ¶ 247. In addition, Plaintiffs seem to rely on the fact that Hayes "spoke extensively with Hideshima at investor presentations," and was President of a subsidiary of Super Micro to support their contention that Hayes "either knew or recklessly disregarded the truth" of the statements Hayes made following the Company's announcement that it would not be able to timely file its 2017 Form 10-K. *See* ECF No. 116 at 6 n.3; ECF No. 101 at 37. The Court first notes that Plaintiffs do not address Defendants' argument that Plaintiffs have failed to plead the falsity of Hayes' statements – let alone establish an inference of scienter under the core operations doctrine – considering the Audit Committee "complete[d] its investigation within one month of Hayes' statement," and considering Hayes assured investors that "*other than the restatement*, there were no structural changes that would affect the operating expenses of the company." ECF No. 104 at 18 (emphasis in original). Second, the Court holds that Plaintiffs' allegations that Hayes was President of a subsidiary and had conversations with Hideshima are not specific enough to establish that Hayes had "actual access" to disputed information. *See Police Ret. Sys.*, 759 F.3d at 1062.



United States District Court
Northern District of California

admissions by individual defendants or further allegations linking Liaw or Liang to particular suspect transactions. And Plaintiffs' vague argument regarding the "duties and responsibilities" of Liang and Hideshima do not affect the Court's prior analysis of Defendants' "actual access" to the fraudulent conduct. *See* ECF No. 101 at 36; *Bodri v. GoPro*, 252 F. Supp. 3d 912, 932-33 (N.D. Cal. 2017) (holding that allegations of actual access "must consist of more than generalities about management's access to data"). However, the FAC includes allegations linking Hideshima to particular suspect transactions that do affect the Court's analysis.

The FAC adds many allegations – based on the findings of the SEC Orders – that detail Hideshima's involvement in suspect transactions that contributed to Super Micro's revenue recognition violations. *See, e.g.*, FAC ¶ 152.6 ("Hideshima approved Super Micro's recognition of more than $150 million in total revenue from [a] customer at the time of shipment" despite being "informed of the [customer's] inability to pay within payment terms," which "under GAAP" required Super Micro to recognize revenue when it received payments from the customer.); ¶ 152.7 ("Super Micro improperly and prematurely recognized over $45 million in revenues [from a customer] from FY15 to FY17 upon shipment despite having agreed to FOB Destination terms with [this] customer," even though "[i]n light of the information Hideshima received, he should have known that recognition of revenue upon shipment to this customer was not appropriate under GAAP."); ¶ 152.9 ("As a result of a practice instituted by Hideshima, Super Micro prevented certain customers in Russia and Eastern Europe from taking possession of products but improperly recognized the revenue anyway."); ¶ 152.10 ("Hideshima did not put in place sufficient internal controls to address" the improper recognition of revenue at the time of shipment on incomplete or misassembled products "and 'failed to reverse the recognition of revenue after he was on notice' of the issue," including the improper recognition of a particular $4 million order at the end of FY 2016.). Because Defendants do not address the core operations inference in their supplemental briefing, they have not considered how these new allegations affect Hideshima's "actual access" to fraudulent conduct. *See* ECF Nos. 112, 118.

In *South Ferry*, the Ninth Circuit explained that "[w]here a complaint relies on allegations that management had an important role in the company but does not contain additional detailed

allegations about the defendants' actual exposure to information, it will usually fall short of the PSLRA standard." 542 F.3d at 784. *South Ferry* described two cases where core operations allegations independently satisfied the PSLRA because they went "beyond a mere inference of management knowledge of all 'core operations'" by "includ[ing] details about the defendants' access to information within the company." *Id.* at 785. *In re Daou Systems, Inc.*, for example, "includ[ed] specific allegations that defendants actually did monitor the data that were the subject of the allegedly false statements." *Id.* (citing *Daou*, 411 F.3d at 1022-23); *see also Police Ret. Sys.*, 759 F.3d at 1062 (describing *South Ferry* as "explaining that information about corporate structure may raise a strong inference of scienter 'in conjunction with detailed and specific allegations about management's exposure to factual information within the company'" but holding that "impressions of witnesses who lacked direct access to the executives" failed to support an inference of scienter (citation omitted)). Plaintiffs have alleged that Hideshima had "actual access" to information about suspect transactions that contributed to Super Micro's revenue recognition violations. These allegations – especially when considered alongside Hideshima's position as CFO, his departure from the company, the Restatement's criticism of an "inappropriate tone at the top," and the fact that the GAAP violations allowed Super Micro to meet or beat guidance and Wall Street consensus expectations when it otherwise would not have – supports a strong inference that Hideshima acted with the required state of mind.

**6. Holistic Analysis**

Because Plaintiffs have not alleged scienter of Liang, Hayes, or Liaw based on any individual allegation, the Court will conduct a holistic review "to determine whether the insufficient allegations combine to create a strong inference of intentional conduct or deliberate recklessness." *Curry*, 875 F.3d at 1226 (citation omitted).

In summary, Plaintiffs allege that Super Micro admitted to maintaining "a culture of aggressively focusing on quarterly revenue without sufficient focus on compliance" and that its "[s]enior management did not establish and promote a control environment with an appropriate tone of compliance and control consciousness throughout the entire Company." FAC ¶ 132. In addition, Plaintiffs contend that Super Micro violated GAAP standards, resulting in a financial

overstatement of 1.1 to 6.8 percent, depending on the metric, *id.* ¶ 156, and specifically inflated quarterly results, ¶¶ 157, 216, causing Super Micro to falsely claim to have met or exceeded financial estimates and expectations during the class period, *id.* ¶ 217. Plaintiffs also allege that Super Micro lacked sufficient internal controls, *id.* ¶ 169-89, and undertook "extensive remediation efforts," *id.* ¶¶ 230-32. Finally, Plaintiffs point to the SEC Orders as corroborating their allegations and "support[ing] a strong inference of scienter directly." *Id.* ¶ 4(h).

Defendants argue that Plaintiffs have failed to adequately allege scienter under a holistic analysis and that their "allegations are particularly scant as to individual defendants Hayes . . . and Liaw." ECF No. 99 at 29. The Court will consider the individual defendants – and the allegations specific to each of them – in turn. Because the Court has already held that Plaintiffs has satisfied the "strong inference" requirement as to Hideshima under the core operations inference, it need not conduct a holistic analysis of his scienter.

**a. Charles Liang**

Plaintiffs' new allegations have the greatest impact on the Court's holistic analysis of Liang's scienter. In the Court's last order, it noted that "[i]n many ways" the allegations here "resemble those made by the plaintiffs in *Luna*." ECF No. 95 at 18. However, the Court held that "[c]ritically . . . the violations in both of those cases were of much greater magnitude." *Id.* Plaintiffs' new allegations regarding the quantitative and qualitative effect of the violations on specific quarters during the class period brings these allegations closer to *Luna*.

Although the magnitude and effect of the GAAP violations are insufficient on their own to support a strong inference of scienter, they must be viewed in light of the other allegations regarding Liang's scienter. Allegations the Court must consider in this analysis include: Liang's position as CEO and the statements in the Restatement regarding Super Micro's "inappropriate tone at the top," FAC ¶ 132; Liang's statements "repeatedly . . . assur[ing] investors of the strength of the Company's internal controls," including by holding himself out as having "conducted an evaluation of the effectiveness of [Super Micro's] internal control over financial reporting" with Hideshima, *id.* ¶¶ 48, 50; Liang's motive to conceal fraudulent conduct based on his use of Super Micro stock to obtain two personal margin loans, *id.* ¶ 4(f); that "Liang is known to obsess over



United States District Court
Northern District of California

every detail of Super Micro's business," *id.* ¶ 31; and that "Liang was singled out as needing training on compliant sales practices, effective internal controls and revenue recognition compliance" as part of the remediation plans detailed in the FY17 Form 10-K, *id.* ¶ 23.

In the face of these allegations, Defendants argue that this case is still distinguishable from *Luna*, ECF No. 99 at 28-29, and contend that *Alaska Electric Pension Fund v. Asar*, 768 F. App'x 175, 186 (5th Cir. 2019) is "the most analogous case," ECF No. 102 at 14. Defendants distinguish *Luna* because "multiple other employees also resigned," and "the remedial training adopted by Super Micro 'targeted line-level sales employees as well as senior executives.'" ECF No. 99 at 29 (quoting ECF No. 95). Defendants encourage the Court instead to follow *Asar*'s holding that "allegations regarding "a 'large' accounting restatement, . . . a motive to inflate the company's stock price, . . . [and] the 'tone' set by senior management result[ing] in inappropriate accounting decisions and entries" were insufficient to tie "the individual defendants to the 'subgroup [of employees] that acted with the requisite scienter,'" ECF No. 102 at 19 (quoting *Asar*, 768 F. App'x at 186). Defendants also emphasize that the SEC order against Liang includes no findings that he was involved in or knew of any suspect transactions, asserting that "[t]he fact that the SEC orders contain no allegations of wrongdoing by [Liang] tells the Court all it needs to know about the strength of Plaintiffs' scienter case against [him]." ECF No. 112 at 2-3.

Defendants' arguments are unavailing. First, the Ninth Circuit has held that courts "draw no inference from the SEC's decision not to plead scienter or charge defendants with fraud" and that district courts "err[] in concluding that the SEC's decision not to plead scienter hurts plaintiffs' ability to plead a strong inference of scienter." *VeriFone*, 704 F.3d at 707. Second, this case is readily distinguishable from *Asar* because the allegations against Liang are more particularized and there is less known about who at Super Micro was primarily responsible for orchestrating the fraud. Notably, the *Asar* court found that allegations regarding an "inappropriate tone at the top" were not enough to support scienter in part because it was "undisputed . . . that a former lower-level employee orchestrated a large part of the fraud," which made it "more likely" that the "fraud flowed from the bottom up." 768 F. App'x at 186 (quotation marks and alterations omitted). The fact that Liang was known "to "obsess over every detail of Super Micro's busines

[including] approving custom orders" also causes the Restatement's admission of an "inappropriate tone at the top" to be more significant here than the tone allegations were found to be in *Asar*. The Court holds that this case is most analogous to *Luna*.

The allegations against Liang are particularly similar to those made against the CEO in *Luna* who allegedly had "unusually tight control over key decisions." 2017 WL 2171273 at *4. Although Liang was not fired like the CEO in *Luna* was, he was singled out in the remediation training announced by Super Micro. FAC ¶ 23. In addition, other circumstances not present in *Luna* further support an inference of scienter. For example, Liang and Hideshima evaluated Super Micro's internal controls and assured investors of their strength, and Liang had a motive to conceal fraud due to his margin loans – which were called in 2018 and resulted in Liang personally borrowing $12.9 million from his sister-in-law to repay them. *See id.* ¶¶ 58, 50, 150. These allegations, when considered alongside the fact that Super Micro's revenue recognition violations allowed the company to falsely claim to have met or exceeded EPS guidance, as well as other financial expectations, support a strong inference of scienter as to Liang.

The Court therefore holds that the inference that Liang knew of or was deliberately reckless in not knowing of the fraudulent conduct at Super Micro is "at least as compelling as any opposing innocent inference." *Zucco*, 552 F.3d at 991.

**b. Perry G. Hayes**

Plaintiffs do not add any allegations specific to Defendant Hayes in their FAC. They also fail to provide legal support for their contention that a strong inference of scienter has been sufficiently pleaded as to Hayes based on their general allegations of fraud. The Court therefore holds that any inference of scienter as to Hayes does not overcome the "opposing innocent inference" that members of Super Micro's senior management team – such as Hideshima or Liang – and/or sales personnel acted without the knowledge or deliberate recklessness of Hayes. *Zucco*, 552 F.3d at 991. Accordingly, the Court holds that Plaintiffs have not pleaded scienter as to Hayes with the particularity required by the PSLRA.

**c. Wally Liaw**

The only allegation specific to Defendant Liaw that is new to the FAC is that Liaw's

departure from the company should be considered a firing rather than a resignation. FAC ¶ 227. As described above, Plaintiffs are inconsistent in treating Liaw's departure as a termination rather than a resignation. And, as further elaborated above and in the Court's prior order, Plaintiffs have failed to adequately allege that Liaw's departure was "suspicious" or "uncharacteristic" enough to support an inference of scienter that is at least as strong as the reasonable assumption that Liaw was fired or resigned because the errors that led to the Restatement occurred on his watch.

Plaintiffs' other allegations regarding Liaw's scienter are largely based on his senior position in the company and his signature on financial filings – including Sarbanes-Oxley ("SOX") certifications – that certified the accuracy of Super Micro's financial statements and that Super Micro was in compliance with GAAP. However, signatures of SOX certifications are not "substantial" in the scienter calculus. *Zucco*, 552 F.3d at 1004. In addition, despite Liaw's position as Vice President of International Sales, unlike Liang or the CEO in *Luna*, Plaintiffs do not allege that Liaw had an "unusually tight control over key decisions" or otherwise evidence that Liaw knew or was deliberately reckless in not knowing about the fraudulent conduct. *See* 2017 WL 2171273 at *4.

The allegations against Liaw are analogous to those made against the CFOs in *Luna*. The *Luna* court held that a strong inference of scienter as to two CFOs was not adequately supported because little was alleged other than the timing of their departures and "their role as part of senior management." *Id.* at *5-6. Similarly, Plaintiffs have not made particular allegations as to Liaw's access to information or involvement with suspect interactions that would support a strong inference of scienter. In all, the Court concludes that Plaintiffs' allegations against Liaw do not overcome the "opposing innocent inference" that other executives and/or sales personnel acted without the knowledge or deliberate recklessness of Liaw. *Zucco*, 552 F.3d at 991. Accordingly, the Court holds that Plaintiffs have not pleaded scienter as to Defendant Liaw with the particularity required by the PSLRA.

**B. Section 20(a) Control Person Liability**

Section 20(a) of the Exchange Act, which forms the basis of Plaintiffs' second cause of action, extends liability to persons who directly or indirectly control any person liable under the

United States District Court
Northern District of California

securities laws. 15 U.S.C. § 78t(a). Under Section 20(a), "a defendant employee of a corporation who has violated the securities laws will be jointly and severally liable to the plaintiff, as long as the plaintiff demonstrates a 'primary violation of federal securities law' and that the 'defendant exercised actual power or control over the primary violator.'" *City of Dearborn Heights*, 856 F.3d at 623 (quoting *Zucco*, 552 F.3d at 990). "'Control' is defined as 'the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.'" *Luna*, 2017 WL 2171273, at *6 (quoting 17 § C.F.R. 230.405). "The definition of 'person' under the Act encompasses a 'company.'" *Todd*, 642 F.3d at 1223 (quoting 15 U.S.C. § 78c(a)(9)).

"Whether [the defendant] is a controlling person is an intensely factual question, involving scrutiny of the defendant's participation in the day-to-day affairs of the corporation and the defendant's power to control corporate actions." *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000) (citation omitted). "[A]lthough a person's being an officer or director does not create any *presumption* of control, it is a sort of red light." *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1163 (9th Cir. 1996) (emphasis in original) (quotation marks and citations omitted). "Courts have found general allegations concerning an individual's title and responsibilities to be sufficient to establish control at the motion to dismiss stage." *In re Energy Recovery Inc. Sec. Litig.*, No. 15-cv-00265-EMC, 2016 WL 324150, at *25 (N.D. Cal. Jan. 27, 2016) (quotation marks and citations omitted); *see also In re Cylink Sec. Litig.*, 178 F. Supp. 2d 1077, 1089 (N.D. Cal. 2001) (finding plaintiffs sufficiently alleged control with allegations that the individual defendants "by virtue of their executive and managerial positions had the power to control and influence . . . ."). This Court has held that the "control" element of a Section 20(a) claim is subject to "Rule 8's lower pleading standards." *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 1070116, at *14 (N.D. Cal. Feb. 27, 2018).

Plaintiffs bring a 20(a) claim against all Defendants. Plaintiffs argue that the individual defendants acted as controlling persons over Super Micro "and its employees" within the meaning of Section 20(a) and that Super Micro controlled the individual defendants "and its other officers and employees." FAC ¶ 268.

Defendants do not dispute Super Micro and Liang's control person liability other than to allege that Plaintiffs have not adequately pled a primary violation of Section 10(b). ECF No. 99 at 31. The Court has already held that Plaintiffs have adequately pled a primary violation of Section 10(b) as to Liang, Hideshima, and Super Micro.

Hideshima argues that Liang and other members of senior management "were in ultimate control of Super Micro to the exclusion of Mr. Hideshima." ECF No. 100 at 7. However, *Luna* – the case Hideshima relies on – does not support his position. First, and critically, unlike the CFOs in *Luna*, the Court has held that Hideshima was a primary violator of Section 10(b). Second, *Luna* does not hold that control person liability is somehow mutually exclusive. Finally, the Court notes that the allegations regarding Hideshima's control over Super Micro are more significant than those against the CFOs in *Luna*. Plaintiffs allege that Hideshima was Super Micro's CFO "for over a decade," signed many "SEC filings and SOX certifications which made clear that he had responsibility for establishing and maintaining disclosure controls and internal controls over financial reporting," and that he "regularly spoke on behalf of Super Micro." ECF No. 101 at 40 (quotation marks, alterations, and citations omitted).

Plaintiffs frame their allegations regarding Liaw's control over Super Micro as being comparable to their allegations concerning Hideshima's control. As Plaintiffs summarize, Liaw "co-founded [Super Micro], served on its Board, as its Corporate Secretary and its Vice President of International Sales, held over 4% of Super Micro's shares, and signed the Company's FY16 Form 10-K and Super Micro's proxy statement." *Id.* at 41 (citations omitted). Super Micro also publicly identifies Hideshima, Liang, and Liaw as three of five individuals that make up the Company's "Senior Management." FAC ¶ 208. The Court holds that "Plaintiffs have adequately pleaded control under Rule 8's lower pleading standards. Plaintiffs adequately allege that [Liaw] had the power to control and influence by virtue of [his] executive and managerial position[]" and in his role signing relevant financial statements. *Hefler*, 2018 WL 1070116, at *14.

Finally, Plaintiffs contend that they have sufficiently alleged Hayes's control liability because Hayes "served as Senior Vice President of Investor Relations, was identified by Super Micro as the point of contact for investors, made statements about the internal controls and

financial statements as well [as] the status of the investigation on earnings calls and during public presentations where he represented Super Micro at dozens of non-deal roadshow and investor conferences, and also serves" as President of a subsidiary of Super Micro. ECF No. 101 at 41 (citations omitted). In support of their position, Plaintiffs cite cases holding that "making the statements is analogous to signing financial statements, which is generally held to be sufficient to demonstrate control person status," and that "courts have found general allegations concerning an individual's title and responsibilities to be sufficient to establish control." *Id.* (quoting *Petrie v. Elec. Game Card, Inc.*, No. SA CV 10-0252-DOC (RNBx), 2015 WL 475958, at *7 (C.D. Cal. Feb. 5, 2015) and *In re Montage Tech. Grp. Ltd. Sec. Litig.*, 78 Supp. 3d 1215, 1228 (N.D. Cal. 2015)). However, unlike *Petrie*, the statements that Plaintiffs allege Hayes made had to do with Hideshima working "on the issues related to the filing of the 10-K" and the timing and preliminary results of Super Micro's audit committee's investigation. FAC ¶¶ 86-87, 92, 95, 106. Otherwise, Plaintiffs allege that Hayes refused to answer questions "related to the 10-K filing" and "the Audit Committee investigation" and made a vague claim that "everything [was] on track." *Id.* None of Hayes's alleged statements are analogous to signing financial statements. And Plaintiffs cite no case, and the Court is aware of none, that has held that the title and responsibilities of a Vice President of Investor Relations – who is not held out by the company as senior management – is sufficient to establish control person liability. The Court declines to do so here, and therefore finds that, even under the more liberal standard of Rule 8, Plaintiffs have failed to adequately plead control liability as to Hayes.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

United States District Court
Northern District of California

**CONCLUSION**

Plaintiffs' 10(b) claims against Defendants Hayes and Liaw and 20(a) claim against Hayes are dismissed with prejudice. The Court denies leave to amend because Plaintiffs have had multiple opportunities to amend their complaint, including after a fully-reasoned decision critiquing the same allegations. *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008). In all other respects, Defendants' motions are denied.

**IT IS SO ORDERED.**

Dated: March 29, 2021

JON S. TIGAR
United States District Judge