ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
DANIEL J. PFEFFERBAUM (248631)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
dpfefferbaum@rgrdlaw.com
– and –
ELLEN GUSIKOFF STEWART (144892)
PATTON L. JOHNSON (320631)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com
pjohnson@rgrdlaw.com

Lead Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| LOGAN HESSEFORT, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> SUPER MICRO COMPUTER, INC., et al., <br><br> Defendants. | Lead Case No. 4:18-cv-00838-JST <br><br> <u>CLASS ACTION</u> <br><br> NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF <br><br> JUDGE:  Hon. Jon S. Tigar <br> DATE:   March 2, 2023 <br> TIME:   2:00 p.m. <br>         (via videoconference) |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...........................................................................................................1

II.  PROCEDURAL AND FACTUAL BACKGROUND...............................................2

III. STANDARDS FOR FINAL APPROVAL OF CLASS ACTION
     SETTLEMENTS........................................................................................................5

    A.   Class Certification Remains Appropriate ........................................................5

    B.   The Settlement Warrants Final Approval ........................................................6

    C.   The Proposed Settlement Satisfies the Requirements of Rule 23(e)(2)...................8

        1.   Rule 23(e)(2)(A): Lead Plaintiff and Its Counsel Have Adequately
            Represented the Class ...........................................................................8

        2.   Rule 23(e)(2)(B): The Proposed Settlement Was Negotiated at
            Arm's-Length After Mediation with an Experienced Mediator .................8

        3.   Rule 23(e)(2)(C)(i): The Proposed Settlement Is Adequate
            Considering the Costs, Risk and Delay of Trial and Appeal .....................9

            a.   The Costs and Risks of Trial and Appeal Support Approval
                of the Settlement ........................................................................9

            b.   The Proposed Settlement Eliminates the Additional Cost
                and Delay of Continued Litigation ...............................................11

        4.   Rule 23(e)(2)(C)(ii): The Proposed Method for Distributing Relief
            Is Effective ...........................................................................................12

        5.   Rule 23(e)(2)(c)(iii): Attorneys' Fees ..............................................13

        6.   Rule 23(e)(2)(iv): Other Agreements...............................................13

        7.   Rule 23(e)(2)(D): The Proposed Plan of Allocation Treats Class
            Members Equitably...............................................................................14

    D.   The Remaining Ninth Circuit Factors Are Satisfied........................................14

        1.   Discovery Completed and Stage of the Proceedings ................................14

        2.   Counsel Views this Good-Faith Settlement as Fair, Reasonable,
            and Adequate ........................................................................................15

        3.   The Reaction of Class Members to the Settlement ...................................15

        4.   The Settlement Amount ........................................................................16

1

2                                                                                                    **Page**

3
                  5.      The Risk of Attaining Class Certification....................................................16

IV.     THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION............................17

V.      NOTICE TO THE CLASS SATISFIES DUE PROCESS ................................................17

VI.     CONCLUSION.........................................................................................................................18
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page**

3

**CASES**

4

*Campbell v. Facebook, Inc.*,
5    951 F.3d 1106 (9th Cir. 2020) ..................................................................6

6    *Carson v. Am. Brands, Inc.*,
7    450 U.S. 79 (1981) .....................................................................................6

8    *Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ................................................................7, 9
9
    *Class Plaintiffs v. City of Seattle*,
10    955 F.2d 1268 (9th Cir. 1992) ...............................................................17

11   *Cmty. Res. for Indep. Living v. Mobility Works of Cal., LLC*,
12    533 F. Supp. 3d 881 (N.D. Cal. 2020) .....................................................8

13   *Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005) ..................................................................................9
14
    *Fleming v. Imax Labs. Inc.*,
15    2022 WL 2789496 (N.D. Cal. July 15, 2022) .....................................5, 18

16   *Foster v. Adams & Assocs., Inc.*,
17    2022 WL 425559 (N.D. Cal. Feb. 11, 2022) ...........................................15

18   *Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .............................................................7, 8
19
    *Hayes v. MagnaChip Semiconductor Corp.*,
20    2016 WL 6902856 (N.D. Cal. Nov. 21, 2016) ........................................18

21   *Hefler v. Wells Fargo & Co.*,
    2018 WL 6619983 (N.D. Cal. Dec. 18, 2018),
22    *aff'd sub nom. Hefler v. Pekoc*
23    802 F'Appx 285 (9th Cir. 2020) ........................................................9, 13

24   *In re Capstone Turbine Corp. Sec. Litig.*,
    2020 WL 7889062 (C.D. Cal. Aug. 26, 2020)........................................13
25
    *In re Charles Schwab Corp. Sec. Litig.*,
26    2011 WL 1481424 (N.D. Cal. Apr. 19, 2011) ..........................................8

27   *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig.*,
28    2019 WL 2554232 (N.D. Cal. May 3, 2019) .............................................7

**Page**

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ...........................................................................10

*In re Glob. Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................................................14

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) .............................................................................................6, 8

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) ..................................................................................10

*In re LinkedIn User Privacy Litig.*,
    309 F.R.D. 573 (N.D. Cal. 2015) ...........................................................................................15

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..................................................................................14

*In re Portal Software, Inc. Sec. Litig.*,
    2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ........................................................................18

*In re Qwest Commc'ns Int'l, Inc.*,
    396 F. Supp. 2d 1178 (D. Colo. 2004) ...............................................................................10, 11

*In re Veritas Software Corp. Sec. Litig.*,
    496 F.3d 962 (9th Circ. 2007) ...............................................................................................18

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    895 F.3d 597 (9th Cir. 2018) ..................................................................................................6

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    2020 WL 4212811 (N.D. Cal. July 22, 2020),
    *aff'd*, 2022 WL 2304236 (9th Cir. June 27, 2022) ...............................................................12

*In re Zynga Inc. Sec. Litig.*,
    2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) .........................................................................11

*Kastler v. Oh My Green, Inc.*,
    2022 WL 1157491 (N.D. Cal. Apr. 19, 2022) ..........................................................................6

*Longo v. OSI Sys., Inc.*,
    2022 U.S. Dist. LEXIS 158606 (C.D. Cal. Aug. 31, 2022) ...........................................9, 13, 14

*Mauss v. NuVasive, Inc.*,
    2018 WL 6421623 (S.D. Cal. Dec. 6, 2018) ...........................................................................17

**Page**

*May v. Kush Co Holdings, Inc.*,
  2020 WL 6587533 (C.D. Cal. Sept. 25, 2020) ...................................................................10

*Mendoza v. Hyundai Motor Co.*,
  2017 WL 342059 (N.D. Cal. Jan. 23, 2017) .......................................................................7

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ......................................................................................18

*Norton v. LVNV Funding, LLC*,
  2021 WL 3129568 (N.D. Cal. July 23, 2021).....................................................................7

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*,
  688 F.2d 615 (9th Cir. 1982) ..........................................................................................6, 9

*Redwen v. Sino Clean Energy, Inc.*,
  2013 U.S. Dist. LEXIS 100275 (C.D. Cal. July 9, 2013) .................................................10

*Rodriguez v. Nike Retail Servs., Inc.*,
  2022 WL 254349 (N.D. Cal. Jan. 27, 2022) ......................................................................15

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ................................................................................8, 15, 17

*Smith v. Dominion Bridge Corp.*,
  2007 WL 1101272 (E.D. Pa. Apr. 11, 2007) .....................................................................10

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ..............................................................................................12

*Vataj v. Johnson*,
  2021 WL 1550478 (N.D. Cal. Apr. 20, 2021) ...................................................................17

*Vataj v. Johnson*,
  2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) ....................................................................12

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §78j(b).........................................................................................................................2, 3, 7, 9
  §78t(a)..................................................................................................................................2, 3

**Page**

Federal Rules of Civil Procedure
    Rule 23 .................................................................................................................18
    Rule 23(c)(1) .........................................................................................................16
    Rule 23(c)(2)(B) ...................................................................................................17
    Rule 23(e) ......................................................................................................1, 6, 7
    Rule 23(e)(1)(B) ...................................................................................................17
    Rule 23(e)(2) ...................................................................................................6, 7, 8
    Rule 23(e)(2)(A) ....................................................................................................8
    Rule 23(e)(2)(B) ....................................................................................................8
    Rule 23(e)(2)(C) ....................................................................................................9
    Rule 23(e)(2)(C)(i) ................................................................................................9
    Rule 23(e)(2)(C)(ii) .............................................................................................12
    Rule 23(e)(2)(c)(iii) .......................................................................................13, 14
    Rule 23(e)(2)(iv) ..................................................................................................13
    Rule 23(e)(2)(D) ..................................................................................................14
    Rule 23(e)(3) ..........................................................................................................6

## SECONDARY AUTHORITIES

Janeen McIntosh and Svetlana Starykh,
    *Recent Trends in Securities Class Action Litigation:*
    *2021 Full-Year Review*
    (NERA Jan. 25, 2022) .........................................................................................16

Laarni T. Bulan & Laura E. Simmons,
    *Securities Class Action Settlements: 2021 Review and Analysis*
    (Cornerstone Research 2022) .............................................................................16

1    **NOTICE OF MOTION AND MOTION**

2    **TO:     ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

3          PLEASE TAKE NOTICE THAT at 2:00 p.m. on March 2, 2023, via teleconference, in the

4    courtroom of the Honorable Jon S. Tigar, in the United States District Court for the Northern District

5    of California, 1301 Clay Street, Oakland, California, Lead Plaintiff New York Hotel Trades Council

6    & Hotel Association of New York City, Inc. Pension Fund ("New York Pension Fund") will and

7    hereby does respectfully move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for

8    entry of a judgment granting final approval of the proposed Settlement and entry of an order granting

9    approval of the proposed Plan of Allocation.

10          This Motion is based on the following Memorandum of Points and Authorities, as well as the

11    accompanying Declaration of Daniel J. Pfefferbaum in Support of Motions for: (1) Final Approval of

12    Class Action Settlement; (2) Approval of Plan of Allocation; and (3) Award of Attorneys' Fees and

13    Expenses ("Pfefferbaum Declaration" or "Pfefferbaum Decl."), with attached exhibits, the

14    Declarations of Plaintiff's Counsel, all prior pleadings and papers in this Action, the arguments of

15    counsel, and such additional information or argument as may be required by the Court.

16          A proposed Final Judgment and Order of Dismissal with Prejudice will be submitted with

17    Lead Plaintiff's reply submission on February 23, 2023, after the February 9, 2023 deadline for

18    Class Members to object to the Settlement or Plan of Allocation has passed.

19

20

21

22

23

24

25

26

27

28

1

**STATEMENT OF ISSUES TO BE DECIDED**

2

    1.      Whether the Court should grant final approval of the Settlement.

3

    2.      Whether the Court should approve the Plan of Allocation.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Pursuant to Federal Rules of Civil Procedure Rule 23(e), Lead Plaintiff, on behalf of itself and all members of the Class, respectfully submits this memorandum in support of its motion for: (1) final approval of the Settlement of the Action for $18.25 million in cash, and (2) approval of the Plan of Allocation.  The terms of the Settlement are set forth in the Stipulation of Settlement dated April 8, 2022 (the "Stipulation").[1]  *See* ECF 154.

The $18,250,000 Settlement, achieved only after nearly four years of hard-fought litigation, is a very good result for the Class.  As detailed in the accompanying Pfefferbaum Declaration, over the course of this Action, Lead Plaintiff litigated numerous motions to dismiss, overcame an order dismissing the Action, moved for class certification, and obtained extensive discovery from the Company and key third-parties.  As a result, Lead Plaintiff and Lead Counsel had a thorough understanding of the strengths and weaknesses of their claims when the parties reached the Settlement following mediation led by a highly experienced mediator, Michelle Yoshida of Phillips ADR.

From the outset and throughout the Action, Defendants adamantly denied liability and asserted strong defenses, in particular those based upon a Securities and Exchange Commission investigation that settled with no admissions of fraud.  Lead Counsel made it clear that it would continue to litigate rather than settle for less than fair value.

Lead Counsel is experienced in prosecuting securities class actions, and has concluded that the Settlement, which recovers nearly one-quarter of maximum estimated recoverable damages, is an excellent result based on all relevant factors, including, *inter alia*: (a) the substantial risk, expense, and uncertainty in continuing the Action through summary judgment, trial and likely post-trial motion(s) and appeal(s); (b) the relative strengths and weaknesses of the claims and defenses asserted; (c) a complete analysis of the evidence obtained and the legal and factual issues presented; (d) past experience in litigating complex actions similar to the Action; and (e) the disputes between

---

[1]    All capitalized terms not defined herein shall have the same meaning set forth in the Stipulation.

the parties concerning the merits and damages.  Moreover, Lead Plaintiff – which is the type of institutional investor Congress envisioned when passing the Private Securities Litigation Reform Act of 1995 ("PSLRA") – fully supports the Settlement.

The reaction of the Class thus far also supports the Settlement and Plan of Allocation. Pursuant to the Order Preliminarily Approving Settlement and Providing for Notice, ECF 159 (the "Preliminary Approval Order"), over 20,500 copies of the Notice were sent to potential Class Members and nominees, and notice was published in *The Wall Street Journal* and transmitted over *Business Wire*.  *See* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Murray Decl."), ¶¶11, 13, attached as Ex. B to the Pfefferbaum Declaration.  While the February 9, 2023 deadline to object to the Settlement and Plan of Allocation has not yet passed, to date no objections have been received.[2]

Lead Plaintiff also requests that the Court approve the proposed Plan of Allocation, which was set forth in the Notice sent to Class Members.  The Plan of Allocation governs how claims will be calculated and how settlement proceeds will be distributed among Authorized Claimants.  The Plan of Allocation is based on the analysis of Lead Plaintiff's damages consultant, and utilizes the out-of-pocket measure of damages, *i.e.*, the difference between what Class Members paid for their Super Micro common stock during the Class Period and what they would have paid had the alleged misstatements and omissions not been made.

In short, the $18,250,000 Settlement of this complex securities fraud action, and the associated Plan of Allocation to distribute it, are fair and reasonable, and the Settlement itself is an excellent result for the Class.  Lead Plaintiff and Lead Counsel strongly support its approval by the Court.

## II.    PROCEDURAL AND FACTUAL BACKGROUND

On February 8, 2018, two related securities class action complaints were filed on behalf of purchasers of Super Micro common stock, alleging that Defendants violated §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") by issuing materially false and misleading

---

[2]    Should any objections be received, Lead Counsel will address them in its reply papers.

1   statements between August 5, 2016 through January 30, 2018, inclusive.  On April 9, 2018, New

2   York Pension Fund moved to consolidate the two cases and have itself appointed as Lead Plaintiff

3   and Robbins Geller Rudman & Dowd LLP ("Robbins Geller") appointed as Lead Counsel.  ECF 12.

4   On May 25, 2018, the Court granted the motion in full.  ECF 46.

5         Following further factual investigation, on September 24, 2018, Lead Plaintiff filed its

6   consolidated complaint (the "CC").  The CC alleged that Super Micro, and several of its executive

7   officers, violated the federal securities laws by materially misrepresenting the Company's financial

8   results, internal controls over financial and disclosure reporting, Generally Accepted Accounting

9   Principles ("GAAP"), accounting compliance, and the Company's own investigation of these issues.

10  ECF 51.  The CC further alleged that the full accounting of the alleged fraud remained concealed as

11  at the time of its filing, as the Company was still delinquent on its required financial filings.  *Id.*

12        By stipulation, Defendants agreed that Lead Plaintiff could amend the CC to add additional

13  details concerning the alleged misstatements that became known after the CC was filed.  ECF 61.

14  On January 22, 2019, Lead Plaintiff filed the First Amended Complaint ("FAC").

15        On March 8, 2019, Defendants filed two motions to dismiss the FAC in its entirety.  ECF 62-

16  63.  Among other things, Defendants argued that Lead Plaintiff failed to adequately allege falsity,

17  materiality, and scienter, and that Lead Plaintiff's control person allegations should be dismissed.

18  *Id.*  Lead Plaintiff opposed Defendants' motions in a consolidated filing on April 22, 2019.  ECF 68.

19        Prior to the date by which Defendants had to file their replies in support of their motions to

20  dismiss the FAC, Super Micro made additional disclosures, including restating its financial

21  statements for fiscal years 2015 and 2016, and the first three quarters of fiscal year 2017.

22  Pfefferbaum Decl., ¶21.  On June 21, 2019, Lead Plaintiff filed the Second Amended Complaint

23  ("SAC") to incorporate additional facts and allegations.  ECF 71.  The SAC also added an additional

24  defendant, Wally Liaw.  *Id.*, ECF 71.

25        On July 26, 2019, Defendants filed two new motions to dismiss.  ECF 75-76.  While

26  Defendants again argued that their actions were inconsistent with scienter and that the control person

27  claims should be dismissed, they no longer argued that their statements were not false but rather that

28

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
- 4:18-cv-00838-JST                                                              - 3 -

1 | certain allegedly misleading statements and omissions were not otherwise actionable.  Pfefferbaum
2 | Decl., ¶22.  Lead Plaintiff opposed these motions on August 30, 2019.  *Id.*

3 |       On March 23, 2020, the Court issued an order granting the motions to dismiss ("2020 MTD
4 | Order"), finding that the alleged inflated financial statements were not significant enough to
5 | overcome the opposing innocent inference, and that Lead Plaintiff had therefore failed to adequately
6 | allege scienter.  ECF 95.  The 2020 MTD Order granted Lead Plaintiff leave to amend.  *Id.*

7 |       The Third Amended Complaint ("TAC"), filed on April 22, 2020, included new allegations
8 | and clarified prior allegations to address the shortcomings found by the Court in the 2020 MTD
9 | Order.  ECF 96.  On June 5, 2020, Defendants filed their motions to dismiss the TAC, arguing that
10 | Lead Plaintiff's new allegations still did not support an inference of scienter, and that defendants
11 | Hayes, Liaw, and Hideshima were not control persons.  ECF 99.

12 |       On August 26, 2020, after all briefing on the motion to dismiss the TAC was complete, but
13 | before the scheduled hearing, Lead Plaintiff filed a statement of recent decision to make the Court
14 | aware of recently-filed cease-and-desist orders in proceedings before the Securities Exchange
15 | Commission ("SEC") against Defendants Super Micro, Hideshima and Liang, dated August 25,
16 | 2020 (the "SEC Orders").  Pfefferbaum Decl., ¶¶5(i), 26.  The Court thereafter held a conference
17 | with the Parties to address the SEC Orders.  *Id.*, ¶26.

18 |       In accordance with the Parties' agreement, on October 14, 2020, Lead Plaintiff filed the
19 | operative Fourth Amended Complaint (the "Complaint").  ECF 110.  On March 29, 2021, following
20 | supplemental briefing on Defendants' motions to dismiss the Complaint, the Court denied
21 | Hideshima's motion to dismiss in its entirety, and denied in part and granted in part the other
22 | Defendants' motions (the "2021 MTD Order").  ECF 124.

23 |       Following resolution of the motions to dismiss, the PSLRA-mandated discovery stay was
24 | lifted and discovery commenced.  Lead Plaintiff requested and obtained over 170,000 documents,
25 | totaling more than 1,000,000 pages from Defendants and third parties, including the Company's
26 | auditors and financial consultants.  Pfefferbaum Decl., ¶¶30-35.  After lengthy negotiations, Lead
27 | Plaintiff also obtained 14 deposition transcripts, and related exhibits, of depositions taken by the
28 | SEC.  Lead Plaintiff also served several interrogatories.  *Id.*, ¶36.

1    Defendants served discovery on Lead Plaintiff, and deposed Lead Plaintiff's market

2    efficiency expert and Lead Plaintiff's investment manager. *Id.*, ¶38. Lead Plaintiff filed its motion

3    for class certification on September 1, 2021. ECF 143. Defendants filed a notice of non-opposition.

4    ECF 149.

5    At the time the Settlement was reached, the first fact depositions were scheduled, but

6    cancelled upon reaching the agreement to resolve the Action. Pfefferbaum Decl., ¶39.

7    On December 2, 2021, the parties participated in a full-day mediation before Michelle

8    Yoshida of Phillips ADR. *Id.*, ¶42. In advance of the mediation session, the parties prepared and

9    exchanged detailed mediation submissions. *Id.* The parties engaged in good faith, arm's-length

10   negotiations, but did not reach an agreement. *Id.* Following additional negotiations overseen by Ms.

11   Yoshida, Ms. Yoshida ultimately issued a mediator's proposal to settle the litigation for

12   $18,250,000, which both sides accepted. *Id.*, ¶43.

13   The Parties filed the Stipulation of Settlement on April 8, 2022. On November 8, 2022, the

14   Court granted preliminary approval of the Settlement, directed notice be provided to the Class, and

15   set a schedule for further briefing seeking final approval of the Settlement, the Plan of Allocation,

16   and an award of attorneys' fees and expenses. ECF 159.

17   **III.    STANDARDS FOR FINAL APPROVAL OF CLASS ACTION
            SETTLEMENTS**

18

19   **A.    Class Certification Remains Appropriate**

20   In granting preliminary approval, the Court found this case appropriate for class certification

21   for settlement purposes, and appointed New York Pension Fund as class representative and Robbins

22   Geller as class counsel. ECF 159, ¶¶4-6. Because nothing has changed since preliminary approval

23   that would undermine the Court's conclusion, class certification for settlement purposes remains

24   appropriate. *See Fleming v. Imax Labs. Inc.*, 2022 WL 2789496, *4 (N.D. Cal. July 15, 2022).[3]

25

26

27   _____
     [3]    As previously noted, Defendants took discovery from Lead Plaintiff, its investment manager and
     Lead Plaintiff's market efficiency expert, and thereafter did not oppose Lead Plaintiff's motion for
28   class certification. ECF 149.

1      **B.      The Settlement Warrants Final Approval**

2           The Ninth Circuit recognizes a "'strong judicial policy that favors settlements, particularly

3      where complex class action litigation is concerned.'"[4]  *Campbell v. Facebook, Inc.*, 951 F.3d 1106,

4      1121 (9th Cir. 2020) (quoting *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir.

5      2019)).  The decision of whether a settlement is fair is ultimately left for the sound discretion of the

6      trial judge.  *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 895

7      F.3d 597, 611 (9th Cir. 2018) ("Deciding whether a settlement is fair is ultimately 'an amalgam of

8      delicate balancing, gross approximations and rough justice,' best left to the district judge.").  Courts,

9      however, should not convert settlement approval into an inquiry into the merits as "'the court's

10     intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a

11     lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is

12     not the product of fraud or overreaching by, or collusion between, the negotiating parties.'"  *Kastler*

13     *v. Oh My Green, Inc.*, 2022 WL 1157491, at *3 (N.D. Cal. Apr. 19, 2022) (quoting *Officers for Just.*

14     *v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982)); *see also Carson v.*

15     *Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981) (cautioning against "resolv[ing] unsettled legal

16     questions" on settlement approval).

17          Federal Rule of Civil Procedure 23(e) requires judicial approval for the settlement of claims

18     brought as a class action and provides "the court may approve [a proposed settlement] only after a

19     hearing and only on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  To

20     determine whether a settlement is "fair, reasonable, and adequate," the Court must

21              consider[] whether: (A) the class representatives and class counsel have adequately
               represented the class; (B) the proposal was negotiated at arm's length; (C) the relief
22              provided for the class is adequate, taking into account: (i) the costs, risks, and delay
               of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief
23              to the class, including the method of processing class-member claims; (iii) the terms
               of any proposed award of attorney's fees, including timing of payment; (iv) and any
24              agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats
               class members equitably relative to each other.
25
       *Id.*
26

27     _____

28     [4]     Citations are omitted and emphasis is added throughout unless otherwise indicated.

1    In addition to the Rule 23(e) considerations, courts in the Ninth Circuit consider the

2    following factors when examining whether a proposed settlement comports with Rule 23(e)(2):

3        (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely
         duration of further litigation; (3) the risk of maintaining class action status

4        throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery
         completed and the stage of the proceedings; (6) the experience and views of counsel;

5        (7) the presence of a governmental participant; and (8) the reaction of the class
         members to the proposed settlement.

6    *Mendoza v. Hyundai Motor Co.*, 2017 WL 342059, at *4 (N.D. Cal. Jan. 23, 2017)[5] (quoting

7    *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)); *see also Hanlon v. Chrysler*

8    *Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

9        The Preliminary Approval Order considered the Rule 23(e)(2) and Ninth Circuit factors when

10   assessing the Settlement and found that it was fair, reasonable, and adequate, subject to further

11   consideration at the Final Approval hearing. *See* ECF 159.  The Court's conclusion on preliminary

12   approval is equally true now as nothing has changed between November 8, 2022, and the present.

13   *See In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig.*, 2019 WL

14   2554232, at *2 (N.D. Cal. May 3, 2019) ("Those conclusions [drawn at preliminary approval] stand

15   and counsel equally in favor of final approval now.").

16       Lead Plaintiff respectfully submits that the proposed Settlement satisfies Rule 23(e)(2), the

17   relevant Ninth Circuit factors, and the guidelines set forth in the Northern District of California's

18   Procedural Guidance for Class Action Settlements (the "Guidelines"),[6] and warrants approval as fair,

19   reasonable, and adequate.

20

21

22

---

23   [5]   "Because there is no governmental entity involved in this litigation, this [seventh] factor is

24   inapplicable." *Id.* at *7.  Nonetheless, it should be noted that the SEC (which addressed much of the
     same conduct alleged by Lead Plaintiff in a separate inquiry) reached settlements with three

25   defendants without a finding of fraudulent intent.  Lead Plaintiff has obtained this Settlement in the
     context of more difficult-to-prove §10(b) violations.

26   [6]   The Guidelines may be accessed at http://www.cand.uscourts.gov/forms/procedural-guidance-

27   for-class-action-settlements.  While a court may "consider them," the Guidelines "do not carry the
     weight of law."  *Norton v. LVNV Funding, LLC*, 2021 WL 3129568, at *12 (N.D. Cal. July 23,

28   2021).

**C.    The Proposed Settlement Satisfies the Requirements of Rule 23(e)(2)**

**1.    Rule 23(e)(2)(A): Lead Plaintiff and Its Counsel Have Adequately Represented the Class**

Lead Plaintiff and Lead Counsel have more than adequately represented the Class as required by Rule 23(e)(2)(A).  *See generally* Declaration of John Heim in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Award of Attorneys' Fees and Expenses ("New York Pension Fund Decl."), attached as Ex. A to the Pfefferbaum Declaration.   The excellent Settlement negotiated on the Class's behalf is the result of the diligent prosecution of this Action for nearly four years.  *See In re Charles Schwab Corp. Sec. Litig.*, 2011 WL 1481424, at *5 (N.D. Cal. Apr. 19, 2011) (finding Rule 23(e)(2)(A) satisfied when "class counsel had completed discovery and had conducted extensive motion practice").  Lead Plaintiff has no interests antagonistic to those of other Class Members; rather, they share the common interest in obtaining the largest possible recovery from Defendants.  *See Hyundai*, 926 F.3d at 566 ("To determine legal adequacy, we resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" (quoting *Hanlon*, 150 F.3d at 1020)).  Lead Counsel is highly qualified and experienced in securities litigation, *see* Pfefferbaum Decl., ¶45, actively pursued the claims of Super Micro investors in this Court, and advocated vociferously for the Class's best interests throughout this litigation.

**2.    Rule 23(e)(2)(B): The Proposed Settlement Was Negotiated at Arm's-Length After Mediation with an Experienced Mediator**

Rule 23(e)(2)(B) asks whether a proposed settlement is procedurally adequate, *i.e.*, whether "the proposal was negotiated at arm's length."  Fed. R. Civ. P. 23(e)(2)(B).  "[The Ninth Circuit] put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *accord Cmty. Res. for Indep. Living v. Mobility Works of Cal., LLC*, 533 F. Supp. 3d 881, 889 (N.D. Cal. 2020).  The Parties here reached the Settlement only after a formal mediation session and several weeks of additional negotiations overseen by an experienced mediator, Michelle Yoshida of Phillips ADR.  *See* Pfefferbaum Decl., ¶¶41-43.  Mediation efforts did not begin until Defendants' motions to dismiss

were decided, document discovery was undertaken, and class certification briefing and related depositions were underway.  Given the efforts of the Parties over the last four years, there can be no question that counsel "'had a sound basis for measuring the terms of the settlement.'"  *Longo v. OSI Sys., Inc.*, 2022 U.S. Dist. LEXIS 158606, at *11 (C.D. Cal. Aug. 31, 2022).   These facts demonstrate that the Settlement is the result of arm's-length negotiations and "not the product of fraud or overreaching by, or collusion between, the negotiating parties."  *Officers for Just.*, 688 F.2d at 625.

### 3. Rule 23(e)(2)(C)(i): The Proposed Settlement Is Adequate Considering the Costs, Risk and Delay of Trial and Appeal

Pursuant to Rule 23(e)(2)(C), the Court also must consider the substantive adequacy of the proposed Settlement in determining final approval.  Rule 23(e)(2)(C)(i) considers "the costs, risks, and delay of trial and appeal," and the relevant overlapping Ninth Circuit factors address "the strength of the plaintiffs' case" and "the risk, expense, complexity, and likely duration of further litigation." *Churchill*, 361 F.3d at 575.  While Lead Plaintiff believes its claims have merit and that the Class would prevail on any summary judgment motions, it nevertheless recognizes the numerous risks and uncertainties in proceeding to trial.  In fact, securities class actions "'are highly complex and [litigating] securities class litigation is notably difficult and notoriously uncertain.'"  *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F'Appx 285 (9th Cir. 2020).   As discussed below, the benefits conferred on Class Members by the Settlement outweigh the costs, risks, and delay of further litigation, and confirm the adequacy and reasonableness of the Settlement.

### a. The Costs and Risks of Trial and Appeal Support Approval of the Settlement

In order to prove liability under the Exchange Act, a plaintiff must demonstrate, *inter alia*, that: (i) defendants were responsible for materially false or misleading statements; (ii) defendants acted with scienter (*i.e.*, that defendants made their misrepresentations knowingly or recklessly); (iii) that plaintiffs' losses were caused by defendants' misrepresentations (*i.e.*, "loss causation"); and (iv) that plaintiffs and the class members suffered damages. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005).  Lead Plaintiff would be required to prove each of these elements to

1   prevail, whereas Defendants needed only to succeed on one defense to defeat the entire action.  *See*

2   Pfefferbaum Decl., ¶¶46-53.  Although Lead Plaintiff is confident in the abilities of Lead Counsel to

3   prove the case, the risk of loss was still real.  *See Redwen v. Sino Clean Energy, Inc.*, 2013 U.S. Dist.

4   LEXIS 100275, at *19 (C.D. Cal. July 9, 2013) ("Courts experienced with securities fraud litigation

5   'routinely recognize that securities class actions present hurdles to proving liability that are difficult

6   for plaintiffs to clear.'" (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at

7   *17 (S.D.N.Y. Nov. 8, 2010)).

8          Defendants advanced several plausible arguments disputing both liability and damages.  *See*

9   Pfefferbaum Decl., ¶¶47-53.  For example, Defendants disputed that they acted with the requisite

10  scienter.  *See, e.g.*, *id.*, ¶¶47-51.[7]  Scienter is notoriously "complex and difficult to establish at trial"

11  in any case.  *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007).  Juries

12  cannot read minds and evidence of a mental state is rarely direct; meaning the jurors must infer it.

13  *See, e.g.*, *Smith v. Dominion Bridge Corp.*, 2007 WL 1101272, at *5 (E.D. Pa. Apr. 11, 2007)

14  ("Since stockholders normally have 'little more than circumstantial and accretive evidence to

15  establish the requisite scienter,' proving scienter is an 'uncertain and difficult necessity for

16  plaintiffs.'").  In this case the task was even more difficult because the SEC Orders did not find any

17  of the Defendants acted with scienter.  Likewise, "[i]t is well-settled within the Ninth Circuit that 'a

18  failure to follow GAAP, without more, does not establish scienter.'"  *May v. Kush Co Holdings, Inc.*,

19  2020 WL 6587533, at *4 (C.D. Cal. Sept. 25, 2020).  Defendants argued that the alleged misconduct

20  was only negligent and not material, as the prematurely recognized revenue was from actual (not

21  fabricated) sales transactions, merely recorded in the wrong period.  They also argued that

22  accounting principles are technical, fact-specific, complex and subject to judgment calls as to the

23  proper treatment.  Because GAAP is not "'a canonical set of rules that will ensure identical

24  accounting treatment of identical transactions by all accountants'" the determination of many of the

25  accounting issues would be subject to expert testimony.  *See In re Qwest Commc'ns Int'l, Inc.*, 396

26  F. Supp. 2d 1178, 1186 (D. Colo. 2004).  Indeed, "GAAP generally tolerates a range of reasonable

27  ---

[7]   As previously noted, following Super Micro's restatement of its financial statements, it no longer
28  challenged the falsity of the alleged misstatements and omissions.

1  treatments, leaving the choice among reasonable treatments to management." *Id*.  Defendants

2  maintained throughout the litigation that Hideshima and Liang acted in good faith to ensure that

3  Super Micro's financial results were accurately reported.  Pfefferbaum Decl., ¶50.

4       If the jury successfully navigated scienter, they would then have to resolve Defendants'

5  arguments regarding materiality, loss causation, and damages.  Defendants argued that the

6  overstatement recorded in the Company's financial statements was just 1.1% of revenue, and 6.8%

7  of net income.  *See id.*, ¶48.  Lead Plaintiff faced further risk that recoverable damages could be

8  limited because Defendants disclosed the truth about their conduct and, ultimate restatement, over a

9  period of 21 months.  Pfefferbaum Decl., ¶53.  The slow, drawn out process of disclosure created

10 risks to proving that the share price declines were a result of the disclosures as opposed solely to

11 other non-fraud related information.  *Id*.  For lay people these were not going to be easy issues to

12 understand, much less resolve, in the face of competing expert testimony.  *See, e.g.*, *In re Zynga Inc.*

13 *Sec. Litig.*, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015) ("'[I]t [is] difficult for [plaintiff] to

14 prove loss causation and damages at trial.'") (second and third alterations in original).  These

15 arguments, plus the complexity of the underlying accounting issues here, were substantial obstacles

16 to Lead Plaintiff's success at trial.

17            **b.     The Proposed Settlement Eliminates the Additional
                       Cost and Delay of Continued Litigation**

18

19       There remained much work to be done in this Action.  For instance, if the Settlement was not

20 reached, the parties would be faced with taking and/or defending many fact depositions, exchanging

21 expert reports and conducting expert discovery, briefing summary judgment and motions to exclude,

22 trying the case before a jury, and litigating the inevitable appeals.  Each of these steps is both

23 complex and expensive and the case likely would not be resolved until several years down the road.

24 Moreover, many hours of the Court's time and resources have also been spared as a result of the

25 Settlement.

26       The $18.25 million Settlement, at this juncture, results in an immediate, substantial, and

27 tangible recovery, without the considerable risk, expense and delay of further litigation.  Courts have

28 consistently recognized that "the cost, complexity and time of fully litigating the case" are key

1   factors in evaluating the reasonableness of a settlement. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d

2   1370, 1376 (9th Cir. 1993); *see also In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL

3   4212811, at *9 (N.D. Cal. July 22, 2020) ("[F]urther litigation would have delayed any potential

4   recovery . . . and would have been costly and risky.  By contrast, the Settlement provides . . . timely

5   and certain recovery."), *aff'd*, 2022 WL 2304236 (9th Cir. June 27, 2022).  *See also Vataj v.*

6   *Johnson*, 2021 WL 5161927, at *6 (N.D. Cal. Nov. 5, 2021) ("'Unless the settlement is clearly

7   inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with

8   uncertain results.'").

9        Here, Lead Plaintiff and Lead Counsel recognize that further litigation of this Action, as

10   noted above, would have presented considerable pre-trial, post-trial and appellate obstacles and

11   delays and that failure on any of the relevant elements would have been fatal to Lead Plaintiff's

12   claims.  The Settlement, which results in an immediate and substantial recovery, is a far better option

13   for the Class.

14        **4.    Rule 23(e)(2)(C)(ii): The Proposed Method for Distributing**
                  **Relief Is Effective**

15

16        Lead Plaintiff and Lead Counsel have also taken substantial efforts to notify the Class about

17   the proposed Settlement under Rule 23(e)(2)(C)(ii).  Pursuant to the Preliminary Approval Order,

18   more than 20,500 copies of the Notice and Proof of Claim were mailed to potential Class Members

19   and nominees; the Summary Notice was published in *The Wall Street Journal* and transmitted over

20   *Business Wire*; and the website created for this Action contains key documents, including the

21   Stipulation, Notice, Proof of Claim Form, and Preliminary Approval Order.  *See* Murray Decl., ¶¶5-

22   13, 15.

23        The claims process here is identical to those commonly and effectively used in connection

24   with other securities class action settlements.  The standard claim form requests the information

25   necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation.  The Plan of

26

27

28

Allocation, discussed further in Part IV below, will govern how claims will be calculated and, ultimately, how funds will be distributed to claimants.[8]

### 5.    Rule 23(e)(2)(c)(iii): Attorneys' Fees

Rule 23(e)(2)(c)(iii) address "the terms of any proposed award of attorneys' fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(c)(iii). As discussed in Lead Counsel's Memorandum in Support of an Award of Attorneys' Fees and Expenses ("Fee Brief"), submitted herewith, Lead Counsel seeks a benchmark attorneys' fee of 25% of the Settlement Amount and expenses of $304,937, plus interest on both amounts. This fee request was fully disclosed in the Notice (Murray Decl., Ex. A, Notice at ¶5), approved by Lead Plaintiff (New York Pension Fund Decl., ¶5), and is consistent with awards in securities and other class action settlements. *See* Fee Brief, §III.B.1. The Fee Brief likewise sets forth the reasons the fees and expenses and should be paid in full at the time of their award. *See* Fee Brief, §V.

### 6.    Rule 23(e)(2)(iv): Other Agreements

As discussed in Lead Plaintiffs' preliminary approval brief (ECF 152 at 14) and in the Stipulation (¶7.3), Defendants and Lead Plaintiff have entered into a standard supplemental agreement which provides that if Class Members opt out of the Settlement and the number of shares of Super Micro common stock represented by such opt outs equals or exceeds a certain threshold, Defendants shall have the option to terminate the Settlement. Such agreements are common and do not undermine the propriety of the Settlement. *Longo*, 2022, U.S. Dist. LEXIS 158606, at *17.

---

[8]    Once Notice and Administration Expenses, Taxes, Tax Expenses, and Court-approved attorneys' fees and expenses have been paid from the Settlement Fund, the remaining amount will be distributed pursuant to the Plan of Allocation. *See* Stipulation, ¶5.4. These distributions shall be repeated until the balance remaining in the Settlement Fund is *de minimis*. *Id.*, ¶5.9.

In the case that there are any *de minimis* residual funds that are not feasible or economic to reallocate, Lead Plaintiff proposes that such funds be donated to the Investor Protection Trust, a 501(c)(3) non-profit dedicated to investor education and protection. *See, e.g.*, *In re Capstone Turbine Corp. Sec. Litig.*, 2020 WL 7889062, at *2 (C.D. Cal. Aug. 26, 2020) (approving distribution plan that providing that, "[a]t such time as Lead Counsel, in consultation with the Claims Administrator, determines that no additional distributions are cost-effective, then the funds will be donated to Investor Protection Trust"); *Hefler*, 2018 WL 6619983, at *11 ("[T]he Court concludes that the Investor Protection Trust's mission of educating investors makes it an appropriate *cy pres* beneficiary.").

1    The Court reviewed the Supplement Agreement in connection with the Joint Administrative

2    Motion to File Supplemental Agreement Under Seal (ECF 153-4), and found "compelling reasons"

3    for maintaining the confidentiality of the Supplemental Agreement.  ECF 158.

4           **7.**       **Rule 23(e)(2)(D): The Proposed Plan of Allocation Treats Class**
                     **Members Equitably**

5           Pursuant to Rule 23(e)(2)(D), the Plan of Allocation must "treat[] class members equitably

6    relative to each other."  Fed. R. Civ. P. 23(e)(2)(c)(iii).  Assessment of the Settlement's Plan of

7    Allocation "'is governed by the same standards of review applicable to approval of the settlement as

8    a whole: the plan must be fair, reasonable and adequate.'"  *In re Omnivision Techs., Inc.*, 559

9    F. Supp. 2d 1036, 1045 (N.D. Cal. 2008).  The Plan of Allocation details how the settlement

10   proceeds will be distributed among Authorized Claimants and provides formulas for calculating the

11   recognized claim of each Class Member based on each such Person's purchases or acquisitions of

12   Super Micro common stock during the Class Period and if or when they sold.  It is fair, reasonable,

13   and adequate because all eligible Class Members will be subject to the same formulas for

14   distribution of the Settlement and each Authorized Claimant, including the Lead Plaintiff, will

15   receive a *pro rata* distribution pursuant to the Plan of Allocation.  *See, e.g.*, *Longo*, 2022 U.S. Dist.

16   LEXIS 158606, at *18 ("Specifically, each authorized claimant's share of the net settlement amount

17   will be based on when the claimant acquired and sold the subject securities.  Accordingly, this factor

18   also weighs in favor of final approval."); *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436,

19   462 (S.D.N.Y. 2004) ("Pro-rata distribution of settlement funds based on investment loss is clearly a

20   reasonable approach.").

21         **D.**      **The Remaining Ninth Circuit Factors Are Satisfied**

22            **1.**      **Discovery Completed and Stage of the Proceedings**

23          The Parties reached the Settlement after extensive briefing on Defendants' various motions to

24   dismiss, and the production and review of over 170,000 documents, totaling over 1,000,000 pages,

25   and class certification discovery.  Pfefferbaum Decl., ¶35.  That discovery provided significant

26   insight into the strengths and challenges of the case and the Parties had a thorough understanding of

27   the arguments and evidence, and potential witnesses that would inform the trial.  *Id.*, ¶¶47-53.  There

28

can be no question that Lead Plaintiff and Lead Counsel had sufficient information to evaluate the case and the merits of the Settlement by the time it was reached.  *See Foster v. Adams & Assocs., Inc.*, 2022 WL 425559, at *6 (N.D. Cal. Feb. 11, 2022) (finding "Plaintiffs were 'armed with sufficient information about the case' to broker a fair settlement" given extensive discovery, years of litigation, and multiple settlement conferences).  This factor strongly weighs in favor of this Court's approval of the Settlement.

### 2.      Counsel Views this Good-Faith Settlement as Fair, Reasonable, and Adequate

The Ninth Circuit recognizes that parties "'represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.'"  *Rodriguez*, 563 F.3d at 967.  Thus, courts grant great weight to the recommendations and opinions of experienced counsel.  *See Rodriguez v. Nike Retail Servs., Inc.*, 2022 WL 254349, at *4 (N.D. Cal. Jan. 27, 2022) (noting "the experience and views of counsel . . . favors approving the settlement" and highlighting counsel's "thorough understanding of the strengths and weaknesses of th[e] case and their extensive experience litigating prior . . . class actions cases").

Lead Counsel has extensive experience representing plaintiffs in securities and other complex class action litigation and have negotiated numerous substantial class action settlements across the country.  www.rgrdlaw.com.  As a result of this experience, and with the assistance of sophisticated consultants and experts when appropriate, Lead Counsel possessed a firm understanding of the strengths and weaknesses of the claims by the time the Settlement was reached.  Lead Counsel concluded that the Settlement is an outstanding result for the Class.  Lead Plaintiff, which was active in the litigation, authorized counsel to settle it and supports the reasonableness of the Settlement.  *See* New York Pension Fund Decl., ¶¶4-5.

### 3.      The Reaction of Class Members to the Settlement

The reaction of the Class to the Settlement supports approving the Settlement.  *See Foster*, 2022 WL 425559, at *6 ("Thus, the Court 'may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it.'"); *accord In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015).  Notice and Proof of Claim Forms were

1   mailed to potential Class Members and nominees and the Summary Notice was published in *The*

2   *Wall Street Journal* and transmitted over *Business Wire*. *See* Murray Decl., ¶¶11, 13. The deadline

3   to object to any aspect of the Settlement is February 9, 2023. To date, no objections have been

4   received.[9] Nor have any Class Members opted out of the Class. Lead Plaintiff will address any

5   objections, if any, in its reply papers.

### 4.      The Settlement Amount

7       The $18.25 million recovery achieved by the Settlement is an excellent result for the Class.

8   The Settlement provides an immediate, tangible, significant recovery to the Class and eliminates the

9   risk that the Class could recover less than the Settlement Amount, or nothing at all, following further

10  litigation and trial. Importantly, this recovery far exceeds the median securities settlement as a

11  percentage of estimated damages. As noted previously, it represents approximately 22% of the

12  estimated recoverable damages. This recovery is three times the median percentage recovery for

13  cases settled with estimated damages of between $75 and $149 million in 2021, and exceeds the

14  median recovery of similar cases settled in between 2012 and 2021. *See* Laarni T. Bulan & Laura E.

15  Simmons, *Securities Class Action Settlements: 2021 Review and Analysis* (Cornerstone Research

16  2021) ("Cornerstone Report") at 6; Janeen McIntosh and Svetlana Starykh, *Recent Trends in*

17  *Securities Class Action Litigation: 2021 Full-Year Review*, at 20, fig. 20 (NERA Jan. 25, 2022),

18  attached as Exhibits C and D, respectively, to the Pfefferbaum Declaration. This recovery also

19  exceeds the median settlement as a percentage of estimated damages in the Ninth Circuit from 2012

20  through 2021 -4.9%. *See* Cornerstone Report at 19.

### 5.      The Risk of Attaining Class Certification

22      Although Defendants did not oppose class certification, they may later have moved to

23  decertify the Class or seek to shorten the Class Period. Rule 23(c)(1) provides that a class

24  certification order may be altered or amended at any time before a decision on the merits. This

25  factor weighs in favor of approval.

---

[9]   To date, of the 20,512 mailed Notices, 351 were undeliverable. No updated addresses were
located, so no additional Notices were re-mailed. *See* Murray Decl., ¶12. As noted above, as of the
date of this memorandum, no Class Members have opted out of the Class. *Id.*, ¶17.

1    In sum, Lead Counsel obtained an excellent result for the Class, and the Court should find

2    that the Settlement is fair, reasonable, and adequate and grant final approval.

3    **IV.    THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION**

4    In addition to seeking final approval of the Settlement, Lead Plaintiff seeks final approval of

5    the Plan of Allocation that the Court preliminarily approved on November 8, 2022.  ECF 159.  The

6    Plan of Allocation is considered separately from the fairness of the Settlement but is nevertheless

7    governed by the same legal standards: the plan must be fair and reasonable.  *See Class Plaintiffs v.*

8    *City of Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992); *see also Vataj v. Johnson*, 2021 WL 1550478,

9    at *10 (N.D. Cal. Apr. 20, 2021) ("'[C]ourts recognize that an allocation formula need only have a

10   reasonable, rational basis, particularly if recommended by experienced and competent counsel.'").

11   As noted, the Plan of Allocation here provides an equitable basis to allocate the Net Settlement Fund

12   among all Authorized Claimants (Class Members who submit an acceptable Proof of Claim and who

13   have a recognized loss under the Plan of Allocation).  Individual claimants' recoveries will depend

14   upon when they bought Super Micro stock during the Class Period and whether and when they sold

15   their shares.  Authorized Claimants will recover their proportional "pro rata" amount of the Net

16   Settlement Fund.  This is the traditional and reasonable approach to allocating securities settlements.

17   *See, e.g.*, *Mauss v. NuVasive, Inc.*, 2018 WL 6421623, at *4 (S.D. Cal. Dec. 6, 2018) ("'A plan of

18   allocation that reimburses class members based on the extent of their injuries is generally

19   reasonable.'").  No objections to the Plan of Allocation have been filed.  As a result, the Plan of

20   Allocation is fair and reasonable and should be approved.

21   **V.    NOTICE TO THE CLASS SATISFIES DUE PROCESS**

22   A district court "must direct notice in a reasonable manner to all class members who would

23   be bound by the proposal," Fed. R. Civ. P. 23(e)(1)(B), and "must direct to class members the best

24   notice that is practicable under the circumstances, including individual notice to all members who

25   can be identified through reasonable effort," Fed. R. Civ. P. 23(c)(2)(B).  The notice also must

26   describe "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to

27   investigate and to come forward and be heard."  *Rodriguez*, 563 F.3d at 962 (internal quotation

28   marks omitted).  The PSLRA further requires that the settlement notice include a statement

1   explaining a plaintiff's recovery "to allow class members to evaluate a proposed settlement." *In re*

2   *Veritas Software Corp. Sec. Litig.*, 496 F.3d 962, 969 (9th Circ. 2007); *see also In re Portal*

3   *Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *8 (N.D. Cal. Nov. 26, 2007) (recognizing the

4   "overarching policy concern of fair, accurate disclosure to class members").

5          The substance of the Notice satisfies Rule 23 and due process.  The Claims Administrator has

6   disseminated over 20,500 copies of the Court-approved Notice to potential Class Members and their

7   nominees who could be identified with reasonable effort, from multiple sources.  *See* Murray Decl.,

8   ¶¶5-11.  In addition, the Court-approved Summary Notice was published in *The Wall Street Journal*

9   and over *Business Wire*. *Id.*, ¶13.  The Claims Administrator also provided all information regarding

10  the Settlement online through the Settlement website. *Id.*, ¶15.  The Notice provides the necessary

11  information for Class Members to make an informed decision regarding the proposed Settlement, as

12  required by the PSLRA.  The Notice further explains that the Net Settlement Fund will be distributed

13  to eligible Class Members who submit valid and timely Proof of Claim Forms under the Plan as

14  described in the Notice.  The notice program here fairly apprises Class Members of their rights with

15  respect to the Settlement, is the best notice practicable under the circumstances, and complies with

16  the Court's Preliminary Approval Order, Federal Rule of Civil Procedure 23, the PSLRA, and due

17  process.  *See, e.g.*, *Fleming*, 2022 WL 2789496, at *5-*6; *Hayes v. MagnaChip Semiconductor*

18  *Corp.*, 2016 WL 6902856, at *4 (N.D. Cal. Nov. 21, 2016); *Nat'l Rural Telecomms. Coop. v.*

19  *DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (finding notice sufficient when, as here, it

20  described background of case and terms of proposed settlement and it provided class members "with

21  clear instructions about how to object").

22  **VI.    CONCLUSION**

23         After nearly four years of vigorous litigation, Lead Counsel obtained a very strong $18.25

24  million Settlement for the Class without the risk of proceeding through further discovery, summary

25  judgment, and possibly losing at trial.  Therefore, Lead Plaintiff respectfully requests that the Court

26  approve the Settlement and the Plan of Allocation.

27

28

1   DATED:  January 26, 2023

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS
DANIEL J. PFEFFERBAUM


                s/Daniel J. Pfefferbaum
        DANIEL J. PFEFFERBAUM

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART
PATTON L. JOHNSON
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com
pjohnson@rgrdlaw.com

Lead Counsel for Plaintiffs

PITTA LLP
VINCENT F. PITTA
120 Broadway, 28th Floor
New York, NY  10271
Telephone: 212/652-3890
212/652-3891 (fax)

Additional Counsel for Plaintiffs

LABATON SUCHAROW LLP
CHRISTINE M. FOX
140 Broadway, 34th Floor
New York, NY  10005
Telephone:  212/907-0700
212/818-0477 (fax)
cfox@labaton.com

Additional Counsel for the Proposed Class

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on January 26, 2023, I authorized the

electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will

send notification of such filing to the email addresses on the attached Electronic Mail Notice List,

and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service

to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Daniel J. Pfefferbaum
DANIEL J. PFEFFERBAUM

ROBBINS GELLER RUDMAN
    & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
Email: dpfefferbaum@rgrdlaw.com

## Mailing Information for a Case 4:18-cv-00838-JST Hessefort v. Super Micro Computer, Inc. et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Daniel J. Bergeson**
  dbergeson@be-law.com,sbrill@be-law.com

- **Daniel Scott Carlton**
  scottcarlton@paulhastings.com,melmanahan@paulhastings.com,lisavermeulen@paulhastings.com,nicolasmorgan@paulhastings.com

- **Nathaniel Peardon Garrett**
  ngarrett@jonesday.com,DocketPacificWest@jonesday.com,ecf-9d8e07160ff2@ecf.pacerpro.com,mlandsborough@jonesday.com

- **Ellen Anne Gusikoff-Stewart**
  elleng@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Richard Martin Heimann**
  rheimann@lchb.com,richard-heimann-2279@ecf.pacerpro.com

- **Stephen D. Hibbard**
  powens@jonesday.com,jctang@jonesday.com,cdelacroix@jonesday.com,Californiadockets@jonesday.com,rolivo@jonesday.com,ecf-9d8e07160ff2@ecf.pacerpro.com,sdhibbard@jonesday.com,docketpacificwest@jonesday.com

- **J Alexander Hood , II**
  ahood@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Lester Rene Hooker**
  lhooker@saxenawhite.com,e-file@saxenawhite.com

- **Patton L. Johnson**
  pjohnson@rgrdlaw.com,E_File_SD@rgrdlaw.com,PJohnson2019@ecf.courtdrive.com,tdevries@rgrdlaw.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,fgravenson@pomlaw.com,ipareja@pomlaw.com

- **Katherine Collinge Lubin**
  klubin@lchb.com,katherine-benson-5279@ecf.pacerpro.com,rtexier@lchb.com

- **Tricia Lynn McCormick**
  triciam@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Caroline McIntyre**
  cmcintyre@be-law.com,mflores@be-law.com

- **Nicolas Morgan**
  nicolasmorgan@dlapiper.com,jette.brasher@dlapiper.com

- **Dennis Francis Murphy**
  dennismurphy@jonesday.com,cdelacroix@jonesday.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,jalieberman@pomlaw.com,ahood@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,abarbosa@pomlaw.com,fgravenson@poml

- **Daniel Jacob Pfefferbaum**
  DPfefferbaum@rgrdlaw.com,dpfefferbaumRGRD@ecf.courtdrive.com,e_file_sd@rgrdlaw.com,sbloyd@rgrdlaw.com

- **Laurence Matthew Rosen**
  lrosen@rosenlegal.com,larry.rosen@earthlink.net,lrosen@ecf.courtdrive.com

- **John C. Tang**
  jctang@jonesday.com,mdavis@jonesday.com,californiadockets@jonesday.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,ShawnW@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)