UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOGAN HESSEFORT,<br><br>Plaintiff,<br><br>v.<br><br>SUPER MICRO COMPUTER, INC., et al.,<br><br>Defendants. | Case No. 18-cv-00838-JST<br><br>**ORDER GRANTING LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION AND GRANTING LEAD COUNSEL'S MOTION FOR ATTORNEY'S FEES AND EXPENSES**<br><br>Re: ECF Nos. 160, 161 |

Before the Court is Lead Plaintiff New York Hotel Trades Council & Hotel Association of New York City, Inc. Pension Fund's unopposed motion for final approval of a class action settlement and plan of allocation. Lead Counsel Robbins Geller Rudman & Dowd LLP ("Robbins Geller") also seeks an award of attorney's fees and costs.[1] The Court previously granted a motion for preliminary approval. ECF No. 159. No class member has objected to the settlement, and "Lead Counsel received a single request that an individual, and his wife, be excluded from the [s]ettlement."[2] ECF No. 164 at 3 & n.2. The Court held final fairness hearings on March 2, 2023 and May 4, 2023. The Court will now grant the motions.

---

[1] Labaton Sucharow LLP served as additional counsel in this matter (collectively with Robbins Geller, "Plaintiff's Counsel"). Labaton Sucharow has submitted a declaration in support of the motion for attorney's fees and costs that provides a breakdown of its billing, expenses, and calculates a lodestar, but it does not request a separate fee award because, under the settlement agreement, "Lead Counsel shall . . . allocate the attorney[']s[] fees amongst" additional counsel. ECF No. 154. The cost award requested by Plaintiff's Counsel includes expenses incurred by both Robbins Geller and Labaton Sucharow. *See* ECF No. 161 at 24-25.

[2] Lead Counsel also states that the individual's request "did not provide any supporting documentation showing that these individuals purchased shares during the Class Period, nor did it explain why they chose not to participate." ECF No. 164 at 3 n.2.

## I. BACKGROUND

### A. Parties and Claims

Plaintiffs filed a federal securities class action complaint on behalf of all purchasers of Defendant Super Micro Computer, Inc.'s common stock between August 5, 2016 and January 30, 2018. ECF No. 110 ¶ 2. The factual basis for Plaintiff's claims is set forth more fully in the Court's March 29, 2021 order granting in part and denying in part Defendants' motions to dismiss. ECF No. 124. In brief, Plaintiffs allege that Defendants "ma[de] false and misleading statements and omissions concerning the Company's accounting, internal controls, operations, financial performance and prospects, and . . . engag[ed] in a fraudulent scheme, acts, practices and course of business that deceived investors" in violation of Sections "10(b) and 20(a) of the Securities Exchange Act of 1934 . . . and Rule 10b-5 promulgated thereunder[.]" ECF No. 110 ¶ 3.

### B. Procedural History

On February 8, 2018, Plaintiffs Logan Hessefort and United Union of Roofers, Waterproofers & Allied Workers Local Union No. 8 WBPA Fund filed two separate class action complaints against Super Micro, Howard Hideshima, and Charles Liang. ECF No. 1; Case No. 4:18-cv-850-JST, ECF No. 1.[3] The complaints each allege the same violations of federal securities laws. *See* ECF No. 46 at 4. The Court consolidated the two cases, appointed the New York Hotel Trades Council & Hotel Association of New York City, Inc. Pension Fund ("NYHTC") as lead plaintiff, and approved NYHTC's choice of lead counsel, Robbins Geller. *Id.* at 7.

Plaintiffs filed a consolidated class action complaint on September 24, 2018, adding Hayes, who was Senior Vice President for Investor Relations during the class period, as a defendant. ECF No. 51. Plaintiffs filed a first amended consolidated class action complaint on January 22, 2019. ECF No. 61. Defendants moved to dismiss the first amended consolidated class action complaint, ECF Nos. 62, 63; however, the parties subsequently stipulated to allow Plaintiffs to amend their complaint, mooting the motions to dismiss. ECF No. 70 at 3. On June

---

[3] Unless otherwise noted, all ECF citations in this order are to Case No. 4:18-cv-838-JST.

21, 2019, Plaintiffs filed the second amended consolidated class action complaint, adding Wally Liaw as a defendant. ECF No. 71. Defendants filed separate motions to dismiss the second amended complaint, ECF Nos. 75, 76, which the Court granted, ECF No. 95. In its order, the Court held that Plaintiffs failed to sufficiently plead scienter "as to any Defendants with the particularity required by the PSLRA," and granted leave to amend. *Id.* at 18.

On April 22, 2020, Plaintiffs filed the third amended complaint. ECF No. 96. Defendants again moved to dismiss the complaint. ECF Nos. 99, 100. On August 26, 2020, after all briefing on the motions to dismiss the third amended complaint were complete, but before the scheduled hearing, Plaintiffs filed a statement of recent decision to make the Court aware of the recently filed SEC orders that they wished to incorporate into a fourth amended complaint. ECF No. 104. On September 24, 2020, the Court granted the parties' stipulation for the briefing on the third amended complaint to remain operative, and for the parties to also submit supplemental briefing addressing the new allegations in the fourth amended complaint. ECF No. 109. The Court granted in part and denied in part the motions to dismiss. ECF No. 124.

The parties then conducted discovery. Lead Plaintiff served discovery requests, including requests for documents, interrogatories, and Defendants conducted two depositions. ECF No. 162 ¶¶ 30-35. On September 1, 2021, Lead Plaintiff filed a motion for class certification, ECF No. 143, which Defendants did not oppose, ECF No. 149. On December 2, 2021, the parties mediated this matter before Michelle Yoshida of Phillip ADR, but the parties did not reach an agreement. ECF No. 162 ¶ 42. However, the parties' settlement discussions continued, leading to the agreement now before the Court. *Id.* ¶ 43. On April 8, 2022, the parties filed an unopposed motion for preliminary approval of proposed settlement, ECF No. 152, and on November 8, 2022, the Court preliminarily approved the settlement, ECF No. 159.

**C.     Terms of Settlement**

Defendants agree to pay $18,250,000 plus interest (the "Settlement Amount"). ECF No. 154 at 10 ¶¶ 1.31-1.32, 12 ¶¶ 2.1-2.2. The amount of $4,562,500, or 25 percent of the Settlement Amount, and an estimated $310,000 in costs plus interest would be deducted from the Settlement Amount subject to Court approval. *Id.* at 19-20 ¶¶ 6.1-6.4, 56-57. The remaining Settlement

3

Amount would be distributed pursuant to the plan of allocation, which "provides a formula for calculating the recognized claim . . . based on such information as when the person purchased and sold its Super Micro common stock on the open market." ECF No. 162 ¶ 10. Each claimant will receive "a *pro rata* distribution[.]" *Id.*

## II.     FINAL APPROVAL OF SETTLEMENT

### A.     Legal Standard

"The claims, issues, or defenses of a certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). In addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* at 1026. In making that determination, the district court must balance several factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.[4]

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).[5]

Settlements that occur before formal class certification also "require a higher standard of fairness." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). In reviewing such settlements, in addition to considering the above factors, the court also must ensure that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset*

---

[4] There is no governmental participant in this case, so the Court does not consider that factor.
[5] The 2018 amendments to Rule 23 require the district to court to consider a similar list of factors, including the adequacy of representation by class representatives and class counsel, whether the proposal was negotiated as arm's length, and the adequacy of the relief and equitable treatment of class members. Fed. R. Civ. P. 23(e)(2). These factors were "not designed 'to displace any factor [developed under existing circuits' precedent], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'" *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) (quoting Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment).

4

1  *Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011) (internal quotation marks, alteration, and citation omitted).

### B. CAFA Compliance

This action is subject to the requirements of the Class Action Fairness Act of 2005 ("CAFA") which requires that, within ten days of the filing of a proposed settlement, each defendant serve a notice containing certain required information upon the appropriate state and federal officials. 28 U.S.C § 1715(b). CAFA also prohibits a court from granting final approval until 90 days have elapsed since notice was served under Section 1715(b). *Id.* § 1715(d). Defendants did not complete the mailing of notice until February 2, 2023. ECF No. 163 at 1. Accordingly, while the Court held the final approval hearing on March 2, 2023, it continued the hearing to May 4, 2023, which is more than 90 days after Defendants sent their CAFA notice. ECF No. 165.

On May 3, 2023, Defendants' counsel filed a letter stating that "no federal or state authority has responded substantively to the CAFA notice." ECF No. 171. Specifically, "[n]o statement of interest and no objection to the settlement has been filed, and no federal or state authority has sought to intervene in these proceedings." *Id.*

### C. Discussion

For the reasons that follow, the Court will grant final approval of the settlement.

#### 1. Adequacy of Notice

A "court must direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). The parties must provide class members with "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "[T]he class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 624 (9th Cir. 1982).

The Court approved the parties' proposed notice plan when it granted preliminary approval. *See* ECF No. 159. Under the approved notice plan, Plaintiff retained Gilardi & Co.

LLC ("Gilardi") as the claims administrator. *Id.* ¶ 8. "As of January 25, 2023, Gilardi has mailed a total of 20,512 Claim Packages to potential Class Members and nominees." ECF No. 162-2 ¶ 11. Of the 20,512 claims packages mailed by Gilardi, 351 were returned by the post office as undeliverable as addressed. *Id.* ¶ 12. Gilardi could not locate updated addresses for these packages, so they remain undelivered. *Id.* Further, since November 28, 2022, Gilardi has maintained a "specific, toll-free telephone helpline . . . to accommodate potential Class Member inquiries" and a "website dedicated to this Settlement . . . to provide additional information to Class Members and to provide answers to frequently asked questions." *Id.* ¶¶ 14-15. And "on December 5, 2022, Gilardi caused the Summary Notice to be published in *The Wall Street Journal* and to be transmitted over *Business Wire*[.]" *Id.* ¶ 13.

The deadline for class members to object to or opt out of the settlement was February 9, 2023. *Id.* at 10. No class member has objected to the settlement, and one individual sent an opt out request on behalf of himself and his wife. ECF No. 164 at 3 & n.2

In light of the above procedures, which adhere to the previously approved notice plan, the Court finds that the parties have sufficiently provided notice to the settlement class members. *See Perkins v. LinkedIn Corp.*, No. 13-cv-04303-LHK, 2016 WL 613255, at *7 (N.D. Cal. Feb. 16, 2016) (finding class notice adequate where the approved notice was sent in accordance with the approved notice plan, which was "consistent with the requirements of Rule 23 and due process").

### 2. Fairness, Adequacy, and Reasonableness

#### a. Adequate Representation of the Class

The Ninth Circuit has explained that "adequacy of representation . . . requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego*, 213 F.3d at 462.

During the preliminary approval stage, the Court found no evidence of a conflict between the class and the representatives or counsel. ECF 159 ¶ 1. No contrary evidence has emerged, and no issues have been raised by class members. Similarly, the Court finds that Lead Counsel are experienced in class action litigation and have vigorously prosecuted this action on behalf of the

1   class. The Court concludes that this factor weighs in favor of approval.

2                      **b.      Strength of Plaintiff's Case and Risks of Litigation**

3   Approval of a class settlement is appropriate when "there are significant barriers plaintiffs

4   must overcome in making their case." *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848,

5   851 (N.D. Cal. 2010). Difficulties and risks in litigating weigh in favor of approving a class

6   settlement. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).

7   Lead Plaintiff acknowledges that they face significant obstacles if the case were to proceed

8   toward trial. *See* ECF 162-1 ¶ 4. Defendants continue to dispute liability and damages. ECF No.

9   162 ¶¶ 47-53. The risks specific to this case include the need to prove that (1) Defendants acted

10  with the requisite scienter, which is "complex and difficult to establish at trial" in any case, *In re*

11  *Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) (recognizing that "the

12  issues of scienter and causation are complex and difficult to establish at trial"); *see also Hefler*,

13  2018 WL 6619983, at *7 (acknowledging the "difficulties in proving scienter" at trial); and (2) the

14  alleged misconduct was material, where Defendants' argue that "the overstatement recorded in the

15  Company's financial statements was immaterial as it was just 1.1% of revenue, and 6.8% of net

16  income," ECF No. 162 ¶ 48. Additionally, there is a risk that the damages would be reduced

17  because "Defendants disclosed the truth about their conduct, and ultimate restatement, over a

18  period of 21 months." *Id.* ¶ 53. Finally, even if Plaintiff was eventually successful, continuing

19  litigation would likely delay any payments to class members for several years. *Id.* ¶ 55.

20  Because of the potential difficulty Plaintiff faces litigating this case, the Court finds that

21  this factor weighs in favor of approval.

22                     **c.      Effectiveness of Distribution Method, Terms of Attorney's Fees,
                                 and Supplemental Agreements**

23  The Court must consider "the effectiveness of [the] proposed method of distributing relief

24  to the class." Fed. R. Civ. P. 23(e)(2)(C)(ii). As explained below, the Court concludes that the

25  plan of allocation, which is based on when a claimant purchased and sold their Super Micro

26  common stock, is reasonable. The Court further finds that the proposed claims process provides

27  an effective method of implementing that plan by ensuring that the claimant provides sufficient

28

information to calculate the recognized loss amount. Therefore, this factor weighs in favor of approval.

The Court evaluates in detail "the terms of [the] proposed award of attorney's fees," Fed. R. Civ. P. 23(e)(2)(C)(iii), in connection with Class counsel's motion for fees and costs. In short, this factor also weighs in favor of approval.

The only supplemental "agreement identified under Rule 23(e)(3)," Fed. R. Civ. P. 23(e)(C)(iv), permits Defendants to terminate the settlement if a certain percentage of the class requests exclusion. ECF No. 160 at 22. The existence of a termination option triggered by the number of class members who opt out of the settlement does not by itself render the settlement unfair. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015). The Court previously reviewed the supplemental agreement under seal and concluded that the termination provision is fair and reasonable. *See* ECF No. 159. The Court concludes that the agreement does not weigh against approval.

### d. Equitable Treatment of Class Members

Consistent with Rule 23's instruction to consider whether "the proposal treats class members equitably relative to each other," Fed. R. Civ. P. 23(e)(2)(D), the Court considers whether the settlement "improperly grant[s] preferential treatment to class representatives or segments of the class," *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

Under the settlement, class members who submit timely claims will receive payments on a pro rata basis "based on a formula that takes into account such information as: (a) when a claimant's share was purchased and sold; (b) the amount of the alleged artificial inflation per share at the time of purchase and sale; and (c) the purchase price of the share." ECF No. 162 ¶ 59. In granting preliminary approval, the Court found that this allocation did not constitute improper preferential treatment. ECF No. 159 ¶ 1. As explained in greater detail below, the Court adheres to its view that the allocation plan is equitable.

### e. Settlement Amount

Although not articulated as a separate factor in Rule 23(e), "[t]he relief that the settlement

8

is expected to provide to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C)-(D) advisory committee's note to 2018 amendment. The Court therefore examines "the amount offered in settlement." *Hanlon*, 150 F.3d at 1026.

To evaluate the adequacy of the settlement amount, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware*, 484 F. Supp. 2d at 1080. But "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Just.*, 688 F.2d at 628.

Here, the $18.25 million fund achieves a good result for the class. Lead Plaintiff's consultant calculates that the settlement "represents approximately 22% of the estimated recoverable damages." ECF No. 162 ¶ 4. This recovery is higher than recoveries achieved in other securities fraud class actions of similar size (between $75 and $149 million) which settled for median recoveries of 4.9 percent between 2012 and 2020, and 7.4 percent in 2021. Cornerstone Research, *Securities Class Action Settlements: 2021 Review and Analysis* 6 (2021); *see also* Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review* 20, fig. 20 (2022). The recovery is also higher than the median settlement as a percentage of "simplified tiered damages" in the Ninth Circuit, which was 4.9 percent. Cornerstone Research, *supra*, at 19. Accordingly, the amount of the settlement also weighs in favor of approval.

### f. Extent of Discovery

"[I]n the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *In re Mego*, 213 F.3d at 459 (quotation marks omitted). However, the extent of discovery completed supports approval of a proposed settlement, especially when litigation has "proceeded to a point at which both plaintiffs and defendants ha[ve] a clear view of the strengths and weaknesses of their cases." *Chun-Hoon*, 716 F. Supp. 2d at 852 (quotation marks omitted).

Here, the parties conducted sufficient discovery to make an informed decision about the adequacy of the settlement. The parties exchanged and reviewed written discovery, which

included the production and review of over 170,000 documents, totaling over 1,000,000 pages, and class certification discovery. ECF No. 162 ¶¶ 35-38. Additionally, Defendants took the deposition of Lead Plaintiff's market efficiency expert and investment manager, Lead Plaintiff filed a class certification motion, the parties briefed four motions to dismiss, and the parties engaged in a full-day mediation and subsequent settlement negotiations. *Id.* ¶¶ 28, 38, 41-43; *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (finding the parties were sufficiently informed about the case prior to settling because they engaged in discovery, took depositions, briefed motions, and participated in mediation). This factor weighs in favor of approval.

### g. Counsel's Experience

The Court also considers "the experience and views of counsel." *Hanlon*, 150 F.3d at 1026. That counsel advocate in favor of this Settlement weighs in favor of its approval.[6]

### h. Absence of Collusion and Arm's Length Negotiations

"Where . . . the parties negotiate a settlement agreement before the class has been certified, settlement approval requires a higher standard of fairness," *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) (quotation marks omitted), and the Court must examine the risk of collusion with "an even higher level of scrutiny for evidence of collusion or other conflicts of interest," *In re Bluetooth*, 654 F.3d at 946. Signs of potential collusion include: (1) a disproportionate distribution of the settlement fund to counsel; (2) negotiation of a "clear sailing agreement"; and (3) an arrangement for funds not awarded to revert to defendant rather than to be added to the settlement fund. *Id.* at 947. If "multiple indicia of possible implicit collusion" are present, the Court has a "special 'obligat[ion] to assure itself that the fees awarded in the agreement [are] not unreasonably high.'" *Id.* (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)).

---

[6] The Court considers this factor, as it must, but gives it little weight. "[A]lthough a court might give weight to the fact that counsel for the class or the defendant favors the settlement, the court should keep in mind that the lawyers who negotiated the settlement will rarely offer anything less than a strong, favorable endorsement." *Principles of the Law of Aggregate Litigation* § 3.05 cmt. a (Am. Law. Inst. 2010).

10

1  The Court previously found no signs of collusion because Lead Counsel's intended fee
2  request was presumptively proportionate to the settlement.  ECF No. 159 ¶ 1.  The Court again
3  makes the same finding.  Additionally, the settlement contains a clear sailing provision nor any
4  reversionary language.  *See* ECF No. 154 ¶ 5.9.  Therefore, the Court concludes that this factor
5  weighs in favor of approval.

#### i. Reaction of the Class

Finally, the Court considers the class's reaction to the settlement.  "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision*, 559 F. Supp. 2d at 1043.  Here, the reaction of the class was favorable.  No class member has objected to the settlement and only one individual requested exclusion.  ECF No. 164 at 3 & n.2.  This factor therefore favors approval.  *See Churchill Vill.*, 361 F.3d at 577 (holding that approval of a settlement that received 45 objections (0.05 percent) and 500 opt-outs (0.56 percent) out of 90,000 class members was proper).

### 3. Balance of Factors

All of the above factors support granting final approval.  The Court finds that the settlement is fair, adequate, and reasonable, and grants Plaintiff's motion for final approval.

## III. FINAL APPROVAL OF PLAN OF ALLOCATION

### A. Legal Standard

"Approval of a plan of allocation of settlement proceeds in a class action . . . is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *In re Oracle Sec. Litig.*, No. C–90–0931–VRW, 1994 WL 502054, at *1-2 (N.D. Cal. June 18, 1994) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284-85 (9th Cir. 1992)).

### B. Analysis

The allocation plan for the settlement tailors the recovery of each class member to the timing of any sales or purchases of Super Micro common stock, as well as the number of shares involved with each class member's claim.  *See* ECF No. 162 ¶ 10.  In other words, the allocation

11

plan disburses the settlement fund to class members "on a pro rata basis" based on the relative size of the potential claims that they are compromising. *See id.* This type of pro rata distribution has frequently been determined to be fair, adequate, and reasonable. *See, e.g.*, *Hefler*, 2018 WL 6619983, at *12; *Thomas v. MagnaChip Semiconductor Corp.*, No. 14-cv-01160-JST, 2017 WL 4750628, at *8 (N.D. Cal. Oct. 20, 2017); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M–071827 SI, 2013 WL 1365900, at *4 (N.D. Cal. Apr. 3, 2013) (approving similar plan of distribution); *In re Vitamins Antitrust Litig.*, No. 99–197 TFH, 2000 WL 1737867, at *6 (D.D.C. Mar. 31, 2000) ("Settlement distributions, such as this one, that apportion funds according to the relative amount of damages suffered by class members have repeatedly been deemed fair and reasonable."). The Court concludes that this plan, which does not discriminate between class members, is fair and reasonable.

## IV. ATTORNEY'S FEES

### A. Legal Standard

"While attorneys' fees and costs may be awarded in a certified class action . . . courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941 (citation omitted). "Where a settlement produces a common fund for the benefit of the entire class," as here, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to assess the reasonableness of the requested attorney's fee award. *Id.* at 942. "Because the benefit to the class is easily quantified in common-fund settlements," the Ninth Circuit permits district courts "to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *Id.* The Ninth Circuit maintains a well-established "benchmark for an attorneys' fee award in a successful class action [as] twenty-five percent of the entire common fund." *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997). Courts in the Ninth Circuit generally start with the 25 percent benchmark and adjust upward or downward depending on:

> the extent to which class counsel "achieved exceptional results for the class," whether the case was risky for class counsel, whether counsel's performance "generated benefits beyond the cash

12

> settlement fund," the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*In re Online DVD-Rental*, 779 F.3d at 954-55 (quoting *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002)). In addition, courts often crosscheck the amount of fees against the lodestar. "Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at 1050. "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941. Regardless of whether the court uses the lodestar or percentage approach, the main inquiry is whether the fee award is "reasonable in relation to what the plaintiffs recovered." *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000).

**B.     Discussion**

Lead Counsel seeks the Court's approval of a $4,562,500 attorney's fee award, representing 25 percent of the Settlement Amount. ECF No. 162 ¶¶ 64-70. Lead Counsel argue that the award is reasonable because counsel achieved an excellent recovery, faced substantial litigation risks, displayed a high level of skill and professionalism, and pursued the litigation on a contingent basis. ECF No. 161 at 18-24. Lead Counsel also notes that the requested fee award is similar to those made in other cases and no class members have objected to it. *Id.* After careful review of Lead Counsel's declarations and filings, the Court agrees that $4,562,500 constitutes a reasonable attorney's fees award.

**1.     Benchmark Analysis**

Lead Counsel requests 25 percent, which is the "benchmark" percentage for a reasonable fee award in the Ninth Circuit. *In re Online DVD-Rental*, 779 F.3d at 954-55. Other district courts have awarded 25 percent of similar sized common settlement funds. *See, e.g.*, *In re BofI Holding, Inc. Sec. Litig.*, No. 3:15-CV-02324-GPC-KSC, 2022 WL 9497235, at *14 (S.D. Cal. Oct. 14, 2022) (approving a fee award of 25 percent, plus interest, of a $14.1 million common fund); *Kendall v. Odonate Therapeutics, Inc.*, No. 3:20-cv-01828-H-LL, 2022 WL 1997530, at *7

(S.D. Cal. June 6, 2022) (approving award of 33 1/3 percent of a 12.75 million common fund).

None of the other relevant factors provide any reason to vary downward from counsel's fee request. The Court considers the results achieved; the level of risk; and the burdens on class counsel. The first and "most critical factor [in determining attorney's fees] is the degree of success obtained."[7] *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). As noted above, Lead Counsel obtained an excellent result for the class when compared to similar cases, despite comparable risks. *See In re Omnivision*, 559 F. Supp. 2d at 1046. Second, Lead Counsel faced substantial risks in pursuing this litigation, given the inherent uncertainties of trying securities fraud cases. *Id.* at 1047; *see also In re Facebook, Inc., IPO Sec. & Derivative Litig.*, MDL No. 12-2389, 2018 WL 6168013, at *15 (S.D.N.Y. Nov. 26, 2018) ("Courts have recognized that, in general, securities actions are highly complex and that securities class litigation is notably difficult and notoriously uncertain." (quotation marks and citations omitted)). Given the litigation resources involved, any victory in this Court would almost certainly have had to be defended on appeal as well. Third, Lead Counsel bore a heavy financial burden in expending substantial resources on a contingency basis. Each of these factors weighs in favor of the award.

### 2. Lodestar Cross-Check

To confirm an award's reasonableness through a lodestar cross-check, a court takes "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. "[T]he determination of fees 'should not result in a second major litigation'" and "trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011) (quoting *Hensley*, 461 U.S. at 437). Rather, the Court seeks to "do rough justice, not to achieve auditing perfection." *Id.* at 838. A district court must "exclude from this initial fee calculation hours that were not 'reasonably expended.'" *Hensley*, 461 U.S. at 434 (citation omitted). Additionally, the reasonable hourly rate must be based on the "experience, skill, and reputation of the attorney requesting fees" as well as

---

[7] As the Court has noted in the past, consideration of counsel's degree of success is at least partly subsumed by the percentage recovery method, under which "counsel's success provides its own reward." *Rodman v. Safeway Inc.*, No. 11-cv-03003-JST, 2018 WL 4030558, at *3 n.3.

14

"the rate prevailing in the community for similar work performed by [comparable] attorneys . . . ." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986), *amended by* 808 F.2d 1373 (9th Cir. 1987). To inform and assist the Court in making this assessment, "the burden is on the fee applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

Lead Counsel has calculated a total lodestar of $4,315,767.50 that results in a multiplier of 1.05.[8] Lead Counsel's rates range from $770 to $1,350 for partners or of counsel attorneys; from $175 to $630 for associates or summer associates; and from $275 to $375 for paralegals. ECF No. 161-1 at 11-12. For purposes of the lodestar cross-check, the Court finds that these rates are reasonable. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (finding reasonable rates of $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals, given blended hourly rate of $529).

However, the Court has concerns over other aspects of Lead Counsel's lodestar calculation. First, the lodestar also includes rates from $150 to $625 for litigation support from employees like investigators, research analysts, forensic accountants, economic analysts, and document clerks. ECF No. 161-1 at 11-12. While the work of non-attorneys, like paralegals, is included into a lodestar calculation, courts are divided on whether work, including clerical work, from litigation support staff should be included in the lodestar calculation. *Compare In re Chiron Corp. Sec. Litig.*, No. C-04-4293 VRW, 2007 WL 4249902, at *5 (N.D. Cal. Nov. 30, 2007) (noting that "$227,209.25 for so-called 'professional support staff,' including investigators, library service, economic analysts and others . . . are more properly treated as reimbursable expenses") *and Rojas v. Zaninovich*, No. 1:09–cv–0705–AWI–JLT, 2015 WL 3657172, at *30 (E.D. Cal. June 11, 2015), *report and recommendation adopted*, No. 1:09-CV-00705-AWI-JLT, 2015 WL

---

[8] The Court uses Lead Counsel's current rather historic rates, which is a well-established method of ensuring that "[a]ttorneys in common fund cases [are] compensated for any delay in payment[.]" *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1010 (9th Cir. 2002) (citing *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 609 (9th Cir. 1997)).

15

13662178 (E.D. Cal. Oct. 2, 2015) ("Given the clerical nature of these tasks, the time attributed to a 'document clerk' should not be included in the lodestar calculation.") *with In re Celera Corp. Sec. Litig.*, No. 5:10-CV-02604-EJD, 2015 WL 7351449, at *10 (N.D. Cal. Nov. 20, 2015) (including hours from document clerks and economic analysts in the lodestar calculation); *see also Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989) ("[T]he [attorney's] fee must take into account the work not only of attorneys, but also of secretaries, messengers, librarians, janitors, and others whose labor contributes to the work product for which an attorney bills her client. . . . We thus take as our starting point the self-evident proposition that the 'reasonable attorney's fee' provided for by statute should compensate the work of paralegals, as well as that of attorneys."); *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) ("[T]he government contends that the filing, transcript, and document organization time was clerical in nature and should have been subsumed in firm overhead rather than billed at paralegal rates. This contention has merit."). If the Court were to exclude the hours performed by all the ligation support employees, the lodestar would be reduced by $571,611. And if the Court were to exclude only the clerical work performed by the litigation support employees, the lodestar would be reduced by $45,395.

Second, the lodestar includes time billed at the rate of $420 for a contract attorney, but Lead Counsel only paid the contract attorney $49.37 per hour. ECF No. 161-1 at 3 ¶ 7; *id.* at 11-12. This Court has previously expressed its concerns with the use of nominal market rates for contract attorneys in the lodestar context. *See In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 527 (N.D. Cal. 2020), *aff'd*, 845 F. App'x 563 (9th Cir. 2021) (collecting cases). Lead Counsel provides no evidence regarding the prevailing market rates for contract attorneys, and the Court concludes that such rates are different from the rates for in-firm attorneys. *Id.* at 531. Thus, as in *Wells Fargo*, "the Court concludes simply that Co-Lead Counsel have not met their burden of "produc[ing] satisfactory evidence . . . that the requested rates [for contract attorneys] are in line with those prevailing in the community." *Id.* (alterations in original) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). Previously, when the Court lacked such information, it used the average hourly rate lead counsel actually paid the contract attorney. *Id*. Here, that rate is $49.37. ECF No. 161-1 at 3 ¶ 7. If the Court were to use $49.37 instead of

16

$420, the lodestar would be reduced by $363,016.

Finally, Lead Counsel spent 1,503.05 hours preparing complaints, 1,605.70 hours opposing the motions to dismiss, and 2,507.20 hours on discovery, including document review and fact depositions. ECF No. 161-1 at 40, 45. Even given the complexity of this litigation, the discovery requested and received, and the four motions to dismiss, these hours are excessive. *See Hefler*, 2018 WL 6619983, at *14 (finding spending "1,192 hours preparing complaints and its substitution motion, and 1,535 hours opposing [eight] motions to dismiss" was excessive). If the Court were to decrease the fees incurred on these tasks by half – and the Court makes no decision here about what actual reduction would be appropriate – the lodestar would be reduced by $1,381,684.69.

However, even if the Court were to assume that the lodestar should not include work conducted by all litigation support staff; that the Court should apply an hourly rate of $49.37 for the contract attorney; and that the Court should include only half of the hours expended on complaints, motions to dismiss oppositions, and discovery, Lead Counsel's lodestar would still be below 3.0. Percentage awards in the range of one to four times the lodestar are typical in common fund cases. *See Vizcaino*, 290 F.3d at 1051 n.6 (citations omitted) (finding a range of 0.6 to 19.6 in a survey of 24 cases, with 83 percent in the 1.0 to 4.0 range and 54 percent in the 1.5 to 3.0 range). Accordingly, because Lead Counsel's lodestar multiplier is within the range of reasonableness, it supports the requested award.

### 3. Reaction of the Class

As with the settlement itself, the lack of objections from institutional investors "who presumably had the means, the motive, and the sophistication to raise objections" weighs in favor of approval. *In re Bisys Sec. Litig.*, No. 04 CIV. 3840(JSR), 2007 WL 2049726, at *1 (S.D.N.Y. July 16, 2007). Accordingly, because the Court has verified under both the lodestar method and the percentage-recovery method that the amount of requested fees is reasonable, the Court awards 25 percent of the $18.25 million Settlement Amount, or $4,562,500, plus interest to Lead Counsel.

## V.   COSTS

### A.   Legal Standard

An attorney is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotation marks omitted). To support an expense award, Plaintiffs should file an itemized list of their expenses by category, listing the total amount advanced for each category, allowing the Court to assess whether the expenses are reasonable. *Wren v. RGIS Inventory Specialists*, No. 06-cv-05778-JCS, 2011 WL 1230826, at *29-30 (N.D. Cal. Apr. 1, 2011), *supplemented*, No. 06-cv-05778-JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011).

### B.   Analysis

Although the notice packet informed class members that Plaintiff's Counsel would seek reimbursement of up to $310,000 in expenses, ECF No. 162-2 at 10, counsel are now seeking reimbursement of $304,937.06 in expenses, ECF No. 161 at 24. Plaintiff's Counsel have provided itemized lists of the costs and expenses separated by category. ECF Nos. 161-1 at 5-7 ¶¶ 15-21, 47, 49-79, 82-159, 161-2 at 4-5 ¶¶ 14-16, 30, 32-60. Most expenses resulted from retention of experts, consultants, and investigators; research costs; mediation fees; and e-discovery document hosting. ECF Nos. 161-1 at 5-7 ¶¶ 15-21, 47, 49-79, 82-159, 161-2 at 4-5 ¶¶ 14-16, 30, 32-60. The Court finds Plaintiff's Counsel's expenses reasonable and grants the request.

## CONCLUSION

For the foregoing reasons, the Court hereby orders as follows:

1.   For the reasons set forth in its November 8, 2022 order, ECF No. 159, the Court confirms its certification of the class for settlement purposes only.

2.   The Court grants final approval of the proposed settlement agreement and plan of allocation.

3.   The Court grants the motion for attorney's fees and costs. The Court will withhold ten percent of the awarded attorney's fees and expenses and interest earned thereon until a post-

distribution accounting has been filed.[9]  A post-distribution accounting must be filed within 21 days after the distribution of settlement funds.

**IT IS SO ORDERED.**

Dated:  May 5, 2023



JON S. TIGAR
United States District Judge

---

[9] Lead Counsel argues that the entirety of the requested attorney's fees and expenses should be disbursed to it upon entry of this order because the value of the claims is "neither variable nor dependent upon future events"; "Lead Counsel will devote whatever time is necessary to ensure the distribution is completed accurately and in a timely fashion"; and "Lead Counsel has not been paid for over four years of work."  ECF No. 161 at 25-27.  The Court has considered these comments but is not persuaded to abandon its customary practice of withholding a percentage of the award.

19